## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF SPECIFIED TRADE CLAIMS AND (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER ON OCTOBER 9, 2018, AT 2:30 P.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]   Due to the large number of debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion (this "Motion").

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively):  (a) authorizing the Debtors to pay the Specified Trade Claims (as defined herein) in the ordinary course of business on a postpetition basis, subject to the terms of this Motion; and (b) confirming the administrative expense priority status and allowed administrative treatment of the Debtors' outstanding orders and undisputed obligations for the postpetition delivery and performance of goods and services and authorizing payment of such obligations in the ordinary course of business.  In addition, the Debtors request a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

---

2       A detailed description of the Debtors' businesses and the reasons for commencing the chapter 11 cases is set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Westmoreland Coal Company, in Support of Chapter 11 Petitions and First Day Pleadings*, to be filed in connection herewith (the "First Day Declaration"). The terms "WLB Debtors" and "WMLP Debtors" shall have the meanings ascribed to them in the First Day Declaration.

final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 362, 363, 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rules 6004-2 and 9013-1(m) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

4.      Westmoreland Coal Company and its Debtor and non-Debtor affiliates operate the sixth-largest coal-mining enterprise in North America, including 19 coal mines in six states and Canada.  The Debtors primarily produce and sell thermal coal to investment grade power plants under long-term, cost-protected contracts, as well as to industrial customers and barbeque charcoal manufacturers.   Headquartered in Englewood, Colorado, the Debtors and their non-Debtor subsidiaries employ approximately 2,971 individuals.  The Debtors' revenue for the twelve-month period that ended August 31, 2018, totaled approximately $850 million.  As of the Petition Date, the Debtors' aggregate prepetition indebtedness totaled approximately $1.1 billion.

5.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Specified Trade Claims

6.      The Debtors derive their operating cash flow primarily from their coal sales and coal processing operations.  The Debtors' ability to produce and deliver coal in a timely manner is critically important to their financial performance and depends on their prompt receipt of a wide

3

range of both goods and services that are necessary in the coal mining industry.  Thus, the seamless interaction with various suppliers, service providers, contractors, and other third-party vendors is necessary for the Debtors' continued operations.

7.     Many of the Debtors' vendors are in the unique position of holding a virtual monopoly over the goods and services they provide the Debtors.  Replacement vendors, even where available, likely would be at a substantially higher cost for the Debtors.  In the coal mining industry, the need for an uninterrupted supply of unique mining-related supplies, equipment, spare parts, and services is critical.  Mining equipment must be inspected and repaired on a daily basis in order to maintain safe and orderly working conditions, and the Debtors require large deliveries of fuel daily to sustain their equipment and their operations.  Any interruption in the supply of goods and services from the Debtors' vendors—however brief—would disrupt the Debtors' operations, and could cause irreparable harm to the Debtors' businesses, goodwill, employees, customer base, and market share.  Such harm likely would far outweigh the cost to pay these vendors.  Accordingly, the Debtors request authorization to pay the Shipping and Warehousing Claims, the Lien Claims, the Foreign Claims, the 503(b)(9) Claims, and the Health, Welfare, and Safety Claims (each as defined herein) (collectively, the "Specified Trade Claims," the holders of such claims, the "Specified Trade Claimants").

**I.     Shippers and Warehousemen.**

8.     The Debtors depend on delivery services, trucking and rail transport companies, freight terminal and port operators, transloaders, customs brokers, shippers, and other transportation service providers (collectively, the "Shippers") that ship, transport, store, engage in customs business, and otherwise facilitate the movement of goods, materials, equipment, and other property related to the Debtors' operations (collectively, the "Materials").  The Debtors also rely

4

on warehousemen, bailees, storage facilities, coal blending operators, and other storage providers to store Materials in transit (collectively, the "Warehousemen").

9.     The Debtors seek to pay the prepetition shipping and warehousing charges (including, for the avoidance of doubt, throughput charges) with respect to coal and other goods in transit (collectively, the "Shipping and Warehousing Claims"), because the services provided by the Shippers and Warehousemen are essential to the Debtors' day-to-day operations in that they are necessary for the Debtors to transport coal from the mines to preparation plants, from the preparation plants to dock/rail terminals or customers, and from these terminals to domestic and international customers.  At any given time, there are numerous shipments en route to and from various locations across the country and internationally.  Therefore, certain Shippers and Warehousemen currently possess goods that are vital to the Debtors' operations.

10.    Under certain state laws, to the extent the Debtors have not paid for such services, a Shipper or Warehouseman may have a lien on the goods in its possession, which secures the charges or expenses incurred in connection with the transportation or storage of the goods. In addition, pursuant to section 363(e) of the Bankruptcy Code, the Shippers and Warehouseman, as bailees, may be entitled to adequate protection for any valid possessory lien.[3]  As a result, certain Shippers and Warehousemen may refuse to deliver or release Materials or other property in their possession or control until their invoices are paid and their liens redeemed, which could severely disrupt the Debtors' operations and cause the Debtors to lose a substantial amount of revenue and future business.    Accordingly, because the Debtors are dependent on these Shippers and

---

[3]    For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." U.C.C. § 7-307(a) (2003).

Warehousemen, it is essential that the commencement of these cases not give any Shippers and Warehousemen reason or excuse to cease performing their obligations.

11.     As of the Petition Date, the Debtors estimate that approximately $2.6 million in accrued but unpaid Shipping and Warehousing Claims remain outstanding, approximately $2.2 million of which will become due and owing within the first 25 days of these chapter 11 cases.

**II.     Lien Claimants.**

12.     The Debtors also seek to pay the prepetition charges of certain contractors, repairmen, and other third-party service providers (collectively, the "Lien Claimants") that repair, maintain, and otherwise service necessary equipment and machinery used in the Debtors' operations.  Such services are central to the Debtors' daily operations.  Further, the work being performed by the Lien Claimants is, in many instances, technical and requires specialized expertise that only a limited number of service providers may have.  Absent payment of the accrued prepetition claims of the Lien Claimants, the Debtors may have no alternative service providers, or no service providers that will be able to perform the required services in a reasonable time. Thus, it is critical to the continuity of the Debtors' operations that they maintain their relationships with these essential service provides.

13.     Pursuant to applicable nonbankruptcy law, certain Claimants may have a right to assert and perfect trade, mechanics', and/or mineral liens over the Debtors' leaseholds, as well as essential parts, machinery, and other equipment (any such liens, collectively, the "Lien Claims")[4] on account of unpaid goods or services, notwithstanding the automatic stay under section 362 of the Bankruptcy Code.  In fact, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of

---

[4]     The Debtors do not concede that any liens (contractual, common law, statutory, or otherwise) described in the motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such liens, and to seek avoidance thereof.

perfecting such Lien Claims, to the extent consistent with section 546(b) of the Bankruptcy Code, or to the extent the act is accomplished within the 30-day period set forth in section 547(e)(2)(A) of the Bankruptcy Code, is expressly excluded from the automatic stay.  Absent payment of any outstanding prepetition amounts, the Debtors believe that Lien Claimants may refuse or attempt to refuse to provide services for or honor obligations under their existing agreements with the Debtors on a going-forward basis.

14.     As of the Petition Date, the Debtors estimate that approximately $13.7 million of accrued but unpaid Lien Claims remain outstanding, approximately $11.5 million of which will become due and owing within the first 25 days of these chapter 11 cases.

**III.     Foreign Suppliers**.

15.     The Debtors have significant assets and operations in Canada and regularly incur obligations (the "Foreign Claims") to numerous suppliers of goods or services (the "Foreign Suppliers") in Canada and other foreign jurisdictions.  The Foreign Suppliers provide goods and services, including mine maintenance and repair, logistics, warehousing, safety and environmental compliance, information technology, and accounting and human resources functions to the Debtors.

16.     Certain Foreign Suppliers may lack meaningful contacts with the United States and consider themselves beyond the jurisdiction of this Court and therefore disregard the automatic stay.  Further, it likely would be unduly time-consuming and expensive to seek to enforce the automatic stay, thereby compounding the loss and disruption in services to seek to enforce an order of the Court abroad  in many instances.

17.     As of the Petition Date, the Debtors do not believe they owe any amounts on account of accrued but unpaid Foreign Claims.

**IV.     Payment of 503(b)(9) Claims**.

18.     The Debtors received certain goods or materials from various vendors (collectively, the "503(b)(9) Claimants") within the 20-day period before the Petition Date.  Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts. Rather, the Debtors often obtain supplies on an order-by-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims.

19.     The Debtors also believe certain 503(b)(9) Claimants may seek to reduce the Debtors' existing trade credit—or demand payment in cash on delivery—further exacerbating the Debtors' limited liquidity.  The Debtors believe that as of the Petition Date, they owe approximately $9.4 million on account of goods delivered within the 20 days prior to the Petition Date, the value of which may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.[5]

20.     Accordingly, the Debtors request the authority, but not the direction, to pay those undisputed claims arising from the value of such goods received by the Debtors within 20 days before the Petition Date that were sold to the Debtors in the ordinary course of business (each, a "503(b)(9) Claim").  The Debtors do not seek to accelerate or modify existing payment terms with respect to the 503(b)(9) Claims.  Rather, the Debtors will pay the 503(b)(9) Claims as they come due in the ordinary course of business.

**V.     Health, Welfare, and Safety Claims**.

21.     The Debtors incur obligations to suppliers (such suppliers, the "Health, Welfare, and Safety Suppliers") of goods and services utilized in the Debtors' operations, payment of which

---

[5]     The Debtors do not concede that any claims described in this Motion are conclusively entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, and the Debtors expressly reserve the right to contest the extent or validity of all such claims.

is necessary to ensure the health, safety, and uninterrupted and successful operation of the Debtors' business, but which are not Shipping and Warehousing Claims, Lien Claims, Foreign Claims, or 503(b)(9) Claims (the "Health, Welfare, and Safety Claims").  Any attempt by the Health, Welfare, and Safety Suppliers to refuse delivery of goods or service on account of nonpayment of prepetition Health, Welfare, and Safety Claims could severely disrupt the Debtors' operations at great expense to the Debtors' estates.

## VI.     Payment of Certain Royalties.

22.     A mineral interest generally consists of an interest in minerals in place under a parcel of land, typically in the nature of a fee simple interest in real property, which entitles its owner to the exclusive right to, among other things, enter the land to explore for and produce such minerals from the land.  Through a written agreement (a "Coal Lease"), owners of mineral interests in coal convey a property interest in such minerals to a third party that entitles the such party to the exclusive right to capture minerals from the relevant parcel of land for a term of years "and so long thereafter" as minerals are produced in paying quantities, in exchange for either a share of production or payments.

23.     As of the Petition Date, the Debtors held approximately 80 coal leases (collectively, the "Coal Leases").  Failure to make payments on account of the Coal Leases (collectively, the "Royalty Payments") would have a material adverse effect on the Debtors and their interests in the Coal Leases.  Accordingly, the Debtors request authority to pay certain prepetition Royalty Payments in their sole discretion.

## VII.    Payment of Outstanding Orders.

24.     Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Orders").  To avoid becoming general unsecured creditors of the Debtors'

estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition.   To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders and authorizing the Debtors to satisfy such obligations in the ordinary course of business on a postpetition basis.

### Basis for Relief

I.      **The Court Should Authorize the Payment of the Specified Trade Claims**.

25.      Courts in the Fifth Circuit and others have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.   *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, courts rely on several legal theories rooted in sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

26.     Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding  that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-possession to pay prepetition claims); *In re CEI Roofing, Inc.*, 315 B.R. 50, 56 (Bankr. N.D. Tex. 2004) (finding that "[b]ecause Congress has specifically provided that prepetition wage claims up to a certain amount per claim be elevated to priority status under § 503(1)(3)" the court's job is easier when it considers approval of such prepetition claims); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business).  The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.  *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

27.     Courts also have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g.*, *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 31, 2016) (authorizing debtors to pay certain prepetition claims under section 105 and 363); *see In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004) (recognizing that payment of prepetition claims may be permitted under section 363); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages); *Armstrong*, 29 B.R. at 397–98 (relying on section 363 of the Bankruptcy Code to allow contractor

to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

28.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 B.R. at 497.  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. at 59 (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497).  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.  The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . " *Id.*

29.     Here, the relief requested herein is appropriate and warranted under both sections 363(b) and 105(a) of the Bankruptcy Code.  The authority to satisfy the Specified Trade Claims in the initial days of these chapter 11 cases without disrupting their operations will send a clear signal to the marketplace, including key suppliers and customers, that the Debtors are willing and, importantly, able to conduct business as usual during their chapter 11 cases.  Indeed, where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to shippers, warehousemen, and other lien claimants under similar circumstances. *See, e.g.*, *In re EXCO Resources Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Jan. 18, 2018) (authorizing debtors to pay certain prepetition claims that may give rise to statutory liens); *In re CJ Holdings Co.*, No. 16-

33590 (DRJ) (Bankr. S.D. Tex. July 21, 2016) (same); *In re Linn Energy, LLC*, No. 16-60040

(DRJ) (Bankr. S.D. Tex. June 27, 2016) (same); *In re Sandridge Energy, Inc.*, No. 16-32488 (DRJ)

(Bankr. S.D. Tex. May 18, 2016) (same); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ)

(Bankr. S.D. Tex. May 2, 2016) (same).[6]

## II.   The Court May Authorize the Payment of Claims Entitled to Administrative Expense Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

30.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the

"value of any goods received by the debtor within 20 days before the date of commencement of a

case under this title in which goods have been sold to the debtor in the ordinary course of such

debtor's business."  These claims must be paid in full for the Debtors to confirm a chapter 11 plan.

*See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment of such claims now only provides such

parties with what they would be entitled to receive under a chapter 11 plan.   Conversely, the

Debtors' failure to pay these claims could cause significant concerns among the Debtors' vendors

regarding the Debtors' prospects for continuing to operate as a going-concern during these chapter

11 cases.  Indeed, all creditors will benefit from the seamless transition of the Debtors' operations

into bankruptcy.

31.     The Bankruptcy Code does not prohibit a debtor from paying such claims prior to

confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors

believe they may pay such claims in accordance with their business judgment pursuant to

section 363(c)(1) of the Bankruptcy Code.  *See In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC)

(Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think arguably the [D]ebtor could pay its

503(b)(9) claimants without court approval.").  The timing of such payments also lies squarely

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

within the Court's discretion. *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").

32.     The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates.  Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to the equipment and goods necessary to maintain the Debtors' business operations.  Failure to honor these claims in the ordinary course of business also may cause the Debtors' vendor base to withhold support for the Debtors during the chapter 11 process.  Such vendors could accelerate or eliminate favorable trade terms, and the resulting costs and distractions could impair the Debtors' ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

33.     In addition, courts in this district have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re EXCO Res., Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 13, 2018) (authorizing debtors to pay certain prepetition claims under section 105 and 363); *In re Seadrill Limited*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Oct. 10, 2017) (same); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 31, 2016); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) (same); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same).[7]

---

[7]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

III.     **The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized**.

34.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are in fact, administrative expense priority claims because they benefit the estate postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, granting the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

35.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority.  The attendant disruption to the continuous and timely flow of critical raw materials and other goods to the Debtors would force the Debtors to potentially halt operations and production, damage the Debtors' business reputation, erode the Debtors' customer base, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

36.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations

15

and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management

system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized

payment in respect of the Specified Trade Claims.  Accordingly, the Debtors believe that checks

or wire transfer requests, other than those relating to authorized payments, will not be honored

inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all

applicable financial institutions, when requested by the Debtors, to receive, process, honor, and

pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Emergency Consideration

37.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request

emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a

court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the

extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this

Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the

viability of their operations and that any delay in granting the relief requested could hinder the

Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested

relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors'

operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors

submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule

6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion

on an emergency basis.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

38.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after

the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

For the reasons discussed above, granting the relief requested herein is integral to the Debtors'

ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

39.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

40.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are

valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

**Notice**

41.     The Debtors will provide notice of this Motion to the following parties or their respective counsel (collectively, the "Notice Parties"):  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the indenture trustee under the WLB Debtors' 8.75% senior secured notes due 2022; (d) the ad hoc group of lenders under the WLB Debtors' prepetition term loan facility due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022; (e) the administrative agent under the WLB Debtors' prepetition term loan facility due 2020; (f) the administrative agent under the WLB Debtors' bridge loan facility due 2019; (g) the administrative agent under the WMLP Debtors' term loan facility due 2018; (h) the ad hoc committee of certain lenders under the WMLP Debtors' term loan facility due 2018; (i) the administrative agent under the WLB Debtors' proposed debtor-in-possession financing facility; (j) the lenders under the WLB Debtors' proposed debtor-in-possession financing facility; (k) any statutory committee appointed in these cases; (l) the United States Attorney's Office for the Southern District of Texas; (m) the Internal Revenue Service; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the offices of the attorneys general for the states in which the Debtors operate; (p) the Securities and Exchange Commission; (q) the Pension Benefit Guaranty Corporation; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
October 9, 2018

/s/ Patricia B. Tomasco
_____
Patricia B. Tomasco (Bar No. 01797600)
Matthew D. Cavenaugh (Bar No. 24062656)
Jennifer F. Wertz (Bar No. 24072822)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:           ptomasco@jw.com
                 mcavenaugh@jw.com
                 jwertz@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

James H.M. Sprayregen, P.C.
Michael B. Slade (Bar No. 24013521)
Gregory F. Pesce (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 michael.slade@kirkland.com
                 gregory.pesce@kirkland.com

-and-

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com

-and-

Anna G. Rotman, P.C. (TX Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:   (713) 836-3600
Email:           anna.rotman@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on October 9, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re:  Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE**
**PAYMENT OF SPECIFIED TRADE CLAIMS AND (II) CONFIRMING**
**ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the payment of the Specified Trade Claims (as defined in the Motion) in the ordinary course of business on a postpetition basis, subject to the terms of this Interim Order and (b) confirming the administrative expense priority status of the Debtors' undisputed obligations for the postpetition delivery of goods and services and authorizing payment of such obligations in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant

---

[1]   Due to the large number of debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion. The terms "WLB Debtors" and "WMLP Debtors" shall have the meanings ascribed to them in the First Day Declaration.

to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2018, at__:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2018, and shall be served on:  (a) the Debtors, Westmoreland Coal Company, 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112, Attn.: Jennifer Grafton; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.:  Gregory F. Pesce and Timothy R. Bow; (c) proposed co-counsel for the Debtors, Jackson Walker L.L.P., 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.:  Patricia B. Tomasco, Matthew D. Cavenaugh, and Jennifer F. Wertz; (d) counsel to the indenture trustee under the WLB Debtors' 8.75% senior secured notes due 2022; (e) counsel to the ad hoc group of lenders under the WLB Debtors' prepetition term loan due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn.:  Thomas Moers Mayer and Stephen Zide; (f) co-counsel to the ad hoc group

2

of lenders under the WLB Debtors' prepetition term loan due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022, Porter Hedges LLP, 1000 Main Street, Houston, Texas 77002, Attn.: John F. Higgins; (g) counsel to the administrative agent under the WLB Debtors' prepetition term loan facility due 2020; (h) counsel to the administrative agent under the WLB Debtors' bridge loan facility; (i) counsel to the administrative agent under the WMLP Debtors' term loan facility due 2018; (j) counsel to the ad hoc committee of certain lenders under the WMLP Debtors' term loan facility due 2018, Schulte Roth & Zabel, 919 Third Avenue, New York, NY 10022, Attn.: David M. Hillman and Kristine Manoukian; (k) counsel to the lenders under the WLB Debtors' proposed debtor-in-possession financing, (l) counsel to the administrative agent under the WLB Debtors' proposed debtor-in-possession financing facility, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn.: Thomas Moers Mayer and Stephen Zide; (m) co-counsel to the administrative agent under the WLB Debtors' proposed debtor-in-possession financing facility, Porter Hedges LLP, 1000 Main Street, Houston, Texas 77002, Attn.: John F. Higgins; (n) counsel to the Conflicts Committee of the Board of Directors for Westmoreland Resource Partners GP, LLC, Jones Day, 77 W. Wacker Dr., Chicago, Illinois 60601, Attn.: Timothy Hoffman, Jones Day, 901 Lakeside Ave E, Cleveland, OH 44114 Attn.: Heather Lennox; (o) counsel to any statutory committee appointed in these cases; and (p) Office of The United States Trustee, 515 Rusk Street Houston, Texas 77002.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, prepetition Specified Trade Claims in the ordinary course of business.

4.     The Debtors are authorized, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, prepetition Royalty Payments in the ordinary course of business.

5.     Any party that accepts payment from the Debtors on account of a Specified Trade Claim shall be deemed to have agreed to the terms and provisions of this Interim Order.

6.     The Debtors shall maintain a matrix summarizing amounts paid on account of Specified Trade Claims subject to the terms of this Interim Order, including the following information:  (a) the name of the Specified Trade Claimant paid; (b) the amount paid to each Specified Trade Claimant (each a "Payment"); (c) the total amount paid to the Specified Trade Claimant to date; (d) the category of Specified Trade Claimant, as further described and classified in the Motion; (e) the Debtor or Debtors who made the Payment; (f) the date of the Payment; and (g) the purpose of the Payment.  This matrix will be provided every other week, one week in arrears, to the advisors to the Required Consenting Stakeholders (as defined in the Restructuring Support Agreement, attached to the First Day Declaration), to the advisors to the Required Lenders (as defined in the DIP Order (as defined below)), counsel to the DIP Facility Agent (as defined in the DIP Order), counsel to the ad hoc committee of certain lenders under the WMLP Debtors' prepetition term loan facility due 2018 (only to the extent that the relief herein affects the WMLP Debtors), the U.S. Trustee, and any statutory committee of creditors appointed in these chapter 11 cases.

7.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

8.     If any party accepts payment on behalf of a claim for Specified Trade Claims under this Interim Order, and such claim is determined by the Court after notice and a hearing (a) in the

4

case of Shipping and Warehousing Claims, Foreign Claims, and Lien Claims, not to give rise to a statutory or contractual lien, or (b) in the case of 503(b)(9) Claims, not to give rise to a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code, the Debtors are authorized, after consulting with counsel to the Required Lenders (as defined in the DIP Order) and counsel to the MLP Secured Lenders (as defined in the Cash Collateral Order), to avoid such payment (to the extent so determined by the Court) as a postpetition transfer under section 549 of the Bankruptcy Code, and the party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payment exceeds the postpetition obligations then outstanding, without the right of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. Upon recovery of such payments by the Debtors, the obligation shall be reinstated as a prepetition claim in the amount so recovered.

9. If any party accepts payment on behalf of a Specified Trade Claim under this Interim Order, such party shall be deemed to agree to (a) continue providing goods and services to the Debtors in the ordinary course of business, on the normal and customary trade terms, practices, and programs (including, credit limits, pricing, cash discounts, timing of payments, and allowances), that are at least as favorable to the Debtors as those that were in effect before the Petition Date and (b) provide 90 days' advance written notice of such party's intent to discontinue providing goods and services to the Debtors.  The Debtors reserve the right to require more favorable trade terms with any Shipper, Warehouseman, Foreign Supplier, Lien Claimant, or Health, Welfare and Safety Supplier as a condition to payment of any prepetition claim.

10. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

11.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

12.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment to a Specified Trade Claimant that is an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtors.  To the extent the Debtors intend to make a payment to a Specified Trade Claimant that is an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practicable, provide the U.S. Trustee and any statutory committee appointed in these chapter 11 cases three (3) business days' advance notice and an opportunity to object; *provided* that if the U.S. Trustee or an appointed statutory committee objects to the payment, the Debtors shall not make such payment without further order of the Court.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

14.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any of the Specified Trade Claims.

15.     Solely with respect to the WMLP Debtors, notwithstanding anything to the contrary set forth herein:  (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed under any orders authorizing the WMLP Debtors' use of cash collateral (in each case, the "Cash Collateral Order"), including any budget in connection therewith (the "WMLP Budget"); and (b) to the extent there is any inconsistency between the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order and the WMLP Budget shall control.

16.     Solely with respect to the WLB Debtors, notwithstanding anything to the contrary set forth herein:  (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the WLB Debtors under the WLB Debtors' postpetition financing agreement (including with respect to any budgets governing or relating therewith, the "DIP Documents") and any orders (in each case, the "DIP Order") approving the DIP Documents and governing the WLB Debtors' use of cash collateral; and (b) to the extent there is any inconsistency between the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order and DIP Documents shall control.

17.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2018
Houston, Texas                                    _____
                                                  UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING**
**THE PAYMENT OF SPECIFIED TRADE CLAIMS**
**CLAIMS AND OUTSTANDING ORDERS, AND (II) CONFIRMING**
**ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the payment of the Specified Trade Claims (as defined in the Motion) in the ordinary course of business on a postpetition basis, subject to the terms of this Final Order, and (b) confirming the administrative expense priority status of the Debtors' undisputed obligations for the postpetition delivery of goods and services and authorizing payment of such obligations in the ordinary course of business, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this

---

[1]   Due to the large number of debtors in these chapter 11 cases, for which joint administration has been requested, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion. The terms "WLB Debtors" and "WMLP Debtors" shall have the meanings ascribed to them in the First Day Declaration.

Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, prepetition Specified Trade Claims in the ordinary course of business.

3.      The Debtors are authorized, in their sole discretion, to pay all or part of, and discharge, on a case-by-case basis, prepetition Royalty Payments in the ordinary course of business.

4.      The Debtors shall maintain a matrix summarizing amounts paid on account of Specified Trade Claims subject to the terms of this Final Order, including the following information:  (a) the name of the Specified Trade Claimant paid; (b) the amount paid to each Specified Trade Claimant (each a "Payment"); (c) the total amount paid to the Specified Trade Claimant to date; (d) the category of Specified Trade Claimant, as further described and classified in the Motion; (e) the Debtor or Debtors who made the Payment; (f) the date of the Payment; and

2

(g) the purpose of the Payment.  This matrix will be provided every other week, one week in arrears, to the advisors to the Required Consenting Stakeholders (as defined in the Restructuring Support Agreement, attached to the First Day Declaration), to the advisors to the Required Lenders (as defined in the DIP Order (as defined below)), counsel to the DIP Facility Agent (as defined in the DIP Order), counsel to the ad hoc committee of certain lenders under the WMLP Debtors' prepetition term loan facility due 2018 (only to the extent that the relief herein affects the WMLP Debtors), the U.S. Trustee, and any statutory committee of creditors appointed in these chapter 11 cases.

5.      The Debtors are authorized, in their sole discretion, to pay prepetition 503(b)(9) Claims.

6.      Any party that accepts payment from the Debtors on account of a Specified Trade Claim shall be deemed to have agreed to the terms and provisions of this Final Order.

7.      If any party accepts payment on behalf of a claim for Specified Trade Claims under this Final Order, and such claim is determined by the Court after notice and a hearing (a) in the case of Shipping and Warehousing Claims, Foreign Claims, and Lien Claims, not to give rise to a statutory or contractual lien, or (b) in the case of 503(b)(9) Claims, not to give rise to a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code, the Debtors are authorized, after consulting with counsel to the Required Lenders (as defined in the DIP Order) and counsel to the MLP Secured Lenders (as defined in the Cash Collateral Order), to avoid such payment (to the extent so determined by the Court) as a postpetition transfer under section 549 of the Bankruptcy Code, and the party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payment exceeds the postpetition obligations then outstanding, without

the right of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. Upon recovery of such payments by the Debtors, the obligation shall be reinstated as a prepetition claim in the amount so recovered.

8.      If any party accepts payment on behalf of a Specified Trade Claim under this Final Order, such party shall be deemed to agree to (a) continue providing goods and services to the Debtors in the ordinary course of business, on the normal and customary trade terms, practices, and programs (including, credit limits, pricing, cash discounts, timing of payments, and allowances), that are at least as favorable to the Debtors as those that were in effect before the Petition Date and (b) provide 90 days' advance written notice of such party's intent to discontinue providing goods and services to the Debtors.

9.      All undisputed obligations related to the shipment of goods delivered to and accepted by the Debtors following the commencement of these chapter 11 cases, or for the provision of services to the Debtors following the commencement of these chapter 11 cases, which arise under the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

10.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights or the rights of any other Person under the Bankruptcy Code or any other applicable

4

law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

11.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment to a Specified Trade Claimant that is an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtors.  To the extent the Debtors intend to make a payment to a Specified Trade Claimant that is an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practicable, provide the U.S. Trustee and any statutory committee appointed in these chapter 11 cases three (3) business days' advance notice and an opportunity to object; *provided* that if the U.S. Trustee or an appointed statutory committee objects to the payment, the Debtors shall not make such payment without further order of the Court.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any of the Specified Trade Claims.

14.     Solely with respect to the WMLP Debtors, notwithstanding anything to the contrary set forth herein: (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed under any orders authorizing the WMLP Debtors' use of cash collateral (in each case, the "Cash Collateral Order"), including any budget in connection therewith (the "WMLP Budget"); and (b) to the extent there is any inconsistency between the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order and the WMLP Budget shall control.

15.     Solely with respect to the WLB Debtors, notwithstanding anything to the contrary set forth herein:  (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the WLB Debtors under the WLB Debtors' postpetition financing agreement (including with respect to any budgets governing or relating therewith, the "DIP Documents") and any orders (in each case, the "DIP Order") approving the DIP Documents and governing the WLB Debtors' use of cash collateral; and (b) to the extent there is any inconsistency between the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order and DIP Documents shall control.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

19.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2018
Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE