**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
11/15/2018

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER (I) AUTHORIZING WESTMORELAND
COAL COMPANY AND CERTAIN DEBTOR AFFILIATES
TO PERFORM OBLIGATIONS RELATED TO THE STALKING HORSE BID,
(II) APPROVING BIDDING PROCEDURES WITH RESPECT TO
SUBSTANTIALLY ALL ASSETS, (III) APPROVING CONTRACT ASSUMPTION
AND ASSIGNMENT PROCEDURES, (IV) SCHEDULING BID DEADLINES AND AN
AUCTION, (V) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
RESPECT TO THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION,
AND (VI) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Upon the motion (the "Bidding Procedures Motion")[2] of Westmoreland Coal Company and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases,[3] for entry of an order (this "Order"), (a) authorizing the WLB Debtors to perform certain obligations related to the Stalking Horse Bid (as defined herein), (b) approving the Bidding Procedures, substantially in the form attached hereto as **Exhibit 2**, (c) approving procedures for

---

[1]    Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the Bidding Procedures (as defined below), as applicable.

[3]    The relief granted in this order is solely limited to Westmoreland Coal Company and its Debtor affiliates, other than the WMLP Debtors (as defined herein) (collectively, the "WLB Debtors").  The "WMLP Debtors" means, collectively, Westmoreland Resource Partners GP, LLC, Westmoreland Resource Partners, LP, and its subsidiaries.

assuming and assigning executory contracts and unexpired leases, and certain related notices, (d) scheduling submission deadlines for bids, the Auction (if necessary), and the Disclosure Statement Hearing and the Confirmation Hearing and the objection deadlines relating thereto, (e) approving the Sale Notice, substantially in the form attached hereto as **Exhibit 3**, and (f) approving the Cure Notice, substantially in the form attached hereto as **Exhibit 4**, all as more fully set forth in the Bidding Procedures Motion; and the Court having reviewed any evidence in support of the Bidding Procedures Motion; and the Court having reviewed the Bidding Procedures Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Bidding Procedures Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the Bidding Procedures Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS AS FOLLOWS**:[4]

A.  <u>Jurisdiction and Venue</u>.  The Court has jurisdiction to consider the Bidding Procedures Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the Amended Standing Order, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  <u>Notice of the Bidding Procedures Motion</u>.  As reflected in the certificate of service filed on October 18, 2018 [Docket No. 217] (the "Certificate of Service"), the Bidding Procedures Motion and the notice of the Hearing was served on the Court's electronic filing system and the

---

[4]  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

Notice Parties.  The notice of the Bidding Procedures Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Bidding Procedures Motion, and no other or further notice of the Bidding Procedures Motion or the Hearing is necessary.  A reasonable and fair opportunity to object to the Bidding Procedures Motion and the relief granted in this Order has been afforded under the circumstances.

C.     Stalking Horse Bid.  The WLB Debtors have demonstrated and proven to the satisfaction of this Court that their performance of the obligations related to the Sale Transaction contemplated by the RSA (the "Stalking Horse Bid"), with an entity (the "Stalking Horse Bidder") to be formed on behalf of holders of the WLB Debtors' prepetition secured notes due 2022 and prepetition secured term loans due 2020 and performance thereunder is in the best interests of the WLB Debtors, their creditors, and their estates, and that the foregoing represents a prudent exercise of the WLB Debtors' sound business judgment.  The WLB Debtors have articulated good, sufficient, and sound business justifications and compelling circumstances for performance of obligations related to the Stalking Horse Bid in that, among other things, the Stalking Horse Bid constitutes the highest or otherwise best restructuring proposal that the WLB Debtors have received to date and the approval of the relief requested is a necessary and constructive step toward the confirmation and consummation of a chapter 11 plan, and the Stalking Horse Bid allows the WLB Debtors to solicit the highest or otherwise best bid for their assets through the Bidding Procedures.  Additionally, the Stalking Horse Bid provides a solution for substantially all of the WLB Debtors' assets, including, for the avoidance of doubt, the Core Assets and the Non-Core Assets, including the assets associated with the Non-Core Mines (as defined in **Exhibit 1** hereto), because the Stalking Horse Bid includes an agreement by the Stalking Horse Bidder to accept any

of the Non-Core Assets to the extent a third party has not agreed, prior to the Effective Date, to acquire such Non-Core Assets.

        D.      The Stalking Horse Bid was negotiated by the parties at arm's-length and in good faith by the WLB Debtors and the Stalking Horse Bidder.  Furthermore, the Stalking Horse Purchase Bid will serve as a minimum or floor bid on which the WLB Debtors, their creditors, suppliers, vendors, and other bidders may rely.  The Stalking Horse Bidder is providing a material benefit to the WLB Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the WLB Debtors' assets will be received.  Accordingly, the Stalking Horse Bid is reasonable and appropriate, and represents the best method for maximizing value for the benefit of the WLB Debtors' estates.

        E.      <u>Bidding Procedures</u>.  The WLB Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **<u>Exhibit 2</u>**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the WLB Debtors' estates, their creditors, and other parties in interest.

        F.      <u>Sale Notice</u>.  The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

        G.      <u>Auction</u>.  The Auction, if held, is necessary to determine whether any entity other than the Stalking Horse Bidder is willing to enter into a definitive agreement on terms and conditions more favorable to the WLB Debtors than the Stalking Horse Bid.

        **NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

        1.      The Bidding Procedures Motion is granted as set forth herein.

2.      The WLB Debtors' performance of obligations related to the Stalking Horse Bid is hereby approved; *provided* that consummation of the Sale Transaction to the Stalking Horse Bidder or any other Successful Bidder, and the terms of any purchase agreement with the Stalking Horse Bidder or any other Successful Bidder, shall remain subject to entry of a Court order confirming a chapter 11 plan with respect to the Sale Transaction to the Stalking Horse Bidder or any other Successful Bidder.  Notwithstanding anything to the contrary herein, including, without limitation, this Order's authorization of, and approval of the WLB Debtors' performance of obligations related to the Stalking Horse Bid, the entry of this Order and the relief granted hereby is without prejudice to the rights of any party to object or respond to the Sale Transaction, the Plan, the Stalking Horse Purchase Agreement, or any other document or instrument contemplated by any of the foregoing, and all such rights are reserved and preserved in all respects.

**A.      Important Dates and Deadlines.**

3.      **<u>Sale and Confirmation Schedule</u>**.  The following dates and deadlines regarding the Sale Transaction are hereby established, subject to the right of the WLB Debtors, in consultation with the Consultation Parties[5] and subject to the RSA and the orders approving the WLB Debtors' postpetition financing facility, to modify the following dates, or, with respect to the dates in paragraph 3.b and 3.f, to seek Court approval to modify such dates:

> a.      **Disclosure Statement Objection Deadline**: The deadline by which all objections to the Disclosure Statement Motion must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties is 4:00 p.m. (prevailing Central Time) on November 30, 2018 (the "<u>Disclosure Statement Objection Deadline</u>");

---

[5]      "<u>Consultation Parties</u>" means the following parties:  (a) counsel or financial advisors to the DIP Lenders (as defined in the DIP Orders); (b) counsel or financial advisors to the ad hoc group of Prepetition Secured Parties; (c) counsel to the DIP Agent; (d) counsel to the Prepetition Term Loan Agent; (e) counsel to the Prepetition Indenture Trustee; and (f) the counsel to the official committee of unsecured creditors.

b.  **Disclosure Statement Hearing**: The hearing to consider approval of the Disclosure Statement and related solicitation documents pursuant to section 1125 of the Bankruptcy Code shall take place before the Honorable David R. Jones, United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), on **December 18, 2018, at 2:00 p.m. (prevailing Central Time)**;

c.  **Bid Deadline**: **January 15, 2019, at 4:00 p.m. (prevailing Central Time)** is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be **actually received** by the parties specified in the Bidding Procedures (the "Bid Deadline");

d.  **Auction**: **January 22, 2019, at 10:00 a.m. (prevailing Eastern Time)** is the date and time the Auction, if one is needed, will be held at the offices of counsel to the WLB Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022;

e.  **Confirmation Objection Deadline**: The deadline by which all objections to the Plan (including any Successful Bids (as defined in the Bidding Procedures)) must be filed with the Court and served so as to be **actually received** by the appropriate notice parties (the "Confirmation Objection Deadline") is January 25, 2019, at 4:00 p.m. (prevailing Central Time); *provided* that if the Auction occurs after January 22, 2019, the deadline for objections to the conduct of the Auction or selection of the Successful Bid(s) or Back-Up Bid(s) shall be automatically extended through 4:00 p.m. (prevailing Central Time) on the date that is three (3) days following the Auction;

f.  **Confirmation Hearing**: The Confirmation Hearing approving the Sale to the Successful Bidder and confirming the Plan is scheduled to commence before the Court on **February 13, 2019** at 10:00 a.m. (prevailing central time).

4.  **Objection Deadline.**  An objection to the Disclosure Statement Motion must be filed with the Court and served so as to be **actually received** by the Notice Parties by the Disclosure Statement Objection Deadline.  An objection to any Successful Bids must be filed with the Court and served so as to be **actually received** by the Notice Parties by the Confirmation Objection Deadline.  No party may object to the right of the Prepetition Secured Parties (as defined below) to credit bid any of their respective secured claims under applicable law, *provided* that any party's right to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, and nothing in this Order shall limit the rights of the official committee of unsecured creditors (the

"Committee") to bring a Challenge (as defined in the orders authorizing the WLB Debtors to obtain postpetition secured financing (the "DIP Orders")).  A party's failure to timely file or make an objection in accordance with this Order (as such objection deadlines may be extended by the WLB Debtors or the Court) shall forever bar such party from asserting any objection to the Disclosure Statement Motion or the Plan, as applicable, including the consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement(s), including the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder, and shall be deemed to constitute consent by such contract counterparty (each a "Contract Counterparty" and collectively, the "Contract Counterparties") to consummation of the Sale.

**B.      Stalking Horse Bid.**

5.      Each of the administrative agent under the WLB Debtors' prepetition term loan facility, and the indenture trustee under the WLB Debtors' prepetition secured notes, including their respective assignees or designees (including the Stalking Horse Bidder) (collectively, the "Prepetition Secured Parties") shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid.  The Stalking Horse Bidder is not required to make a Good Faith Deposit.

6.      The WLB Debtors are authorized to provide bid protections to the Stalking Horse Bidder in the form of reimbursement of any and all of the Stalking Horse Bidder's reasonable and documented fees and expenses in connection with the Sale and the chapter 11 cases (collectively, the "Expense Reimbursement").  Other than the Stalking Horse Bidder, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale.

**C.      The Bidding Procedures.**

7.      The Bidding Procedures, attached hereto as **Exhibit 2** and incorporated by reference as though fully set forth herein, are hereby approved and the WLB Debtors are authorized to solicit bids and conduct an Auction on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a higher or otherwise better offer must do so strictly in accordance with the terms of the Bidding Procedures and this Order.

**D.      Auction Hearing Notice and Related Relief.**

8.      The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved.  As soon as practicable after entry of this Order, the WLB Debtors shall serve the Bidding Procedures, Sale Notice, and Cure Notice upon the Notice Parties.  In addition, as soon as practicable after entry of this Order, the WLB Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, once in *The New York Times (National Edition)* to provide notice to any other potential interested parties.

**E.      The Assumption and Assignment Procedures.**

9.      The Assumption and Assignment Procedures set forth in the Bidding Procedures Motion regarding the assumption and assignment of the Assigned Contracts proposed to be assumed by the WLB Debtors and assigned to a Successful Bidder are approved.

> a.      **Cure Notice**. As soon as practicable after entry of this Order, the WLB Debtors, with the consent of the Stalking Horse Bidder (such consent not to be unreasonably withheld or conditioned) and subject to consultation with the Consultation Parties, shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice annexed as **Exhibit 4** to this Order on all Contract Counterparties, and post the Cure Notice to the Case Website (www.donlinrecano.com/westmoreland).
>
> b.      **Content of Cure Notice**. The Cure Notice shall notify the applicable Contract Counterparties that the Assigned Contracts may be subject to

assumption and assignment in connection with a proposed sale transaction, and contain the following information: (i) a list of the Assigned Contracts; (ii) the applicable Contract Counterparties; (iii) the WLB Debtors' good faith estimates of the Cure Costs; and (iv) the deadline by which any Contract Counterparty to an Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the WLB Debtors or assumed and assigned pursuant to any Successful Bid.

c.  **Objections**. Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be **actually received** by counsel to the WLB Debtors prior to **January 10, 2019, at 4:00 p.m. (prevailing Central Time) (***i.e.***, three business days before the Bid Deadline of January 15, 2019)**; *provided* that the WLB Debtors, subject to the consent of the Required Consenting Stakeholders and consultation with the Consultation Parties, may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.  **Effects of Filing an Objection to a Cure Notice**. A properly filed and served objection to a Cure Notice will reserve such objecting party's rights against the WLB Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the objection, but will not constitute an objection to the remaining relief requested in the Sale to the Successful Bidder.

e.  **Dispute Resolution**. Any objection to the proposed assumption and assignment of an Assigned Contract, or Cure Costs, that remain unresolved as of the Confirmation Hearing, shall be heard at the Confirmation Hearing (or at such later date as may be fixed by the Court). Upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the later of either (i) the date such Contract Counterparty receives the Cure Notice, or (ii) the Effective Date. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Stalking Horse Bidder's or other Successful Bidder's reasonable discretion. To the extent an Assigned

Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Stalking Horse Bidder or other Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing.  If an Assigned Contract Objection is not satisfactorily resolved, the Stalking Horse Bidder or other Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Stalking Horse Bidder or other Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

f.      **Supplemental Cure Notice**.  The WLB Debtors reserve the right, with the consent of the Successful Bidder(s) and subject to consultation with the Consultation Parties, at any time after the Assumption and Assignment Service Date and before the closing of a Sale Transaction, to: (a) supplement the Assigned Contract Schedule attached to the Cure Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale; (b) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (c) modify the previously stated Cure Cost associated with any Assigned Contracts.  In the event that the WLB Debtors exercise any of the rights reserved above, the WLB Debtors will promptly provide the Consultation Parties with notice and an opportunity to object to any such actions, and thereafter will serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty, and its attorney, if known, to each impacted Assigned Contract at the last known address available to the WLB Debtors.  Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice. Any Assigned Contract Counterparty listed on a Supplemental Cure Notice may file a Supplemental Assigned Contract Objection only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any.  All Supplemental Assigned Contract Objections must: (a) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (b) include appropriate documentation in support of the objection; and (c) be filed and served on the Objection Recipients no later than fourteen days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

g.      **Supplemental Hearing**.  If a Contract Counterparty files a Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the WLB Debtors will seek a Supplemental Assigned Contract Hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts.  If there is no such

objection, then the WLB Debtors will obtain a Supplemental Assigned Contract Order, including by filing a certification of no objection, fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Cure Notice.

10.     If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the WLB Debtors or the Successful Bidder, or the property of any of them.

11.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the earlier of (a) the Confirmation Objection Deadline or Supplemental Assigned Contract Hearing, as applicable, and (b) 4:00 p.m. (prevailing Central Time) on the date that is 14 days following (i) the Assumption and Assignment Service Date, or (ii) the date of Service of the Supplemental Cure Notice, as applicable.  Such objections will be resolved at the Confirmation Hearing or Supplemental Assigned Contract Hearing, as applicable.  The WLB Debtors may adjourn the resolution of any such objection to a later hearing.

12.     The inclusion of an Assigned Contract in the Cure Notice (or Supplemental Cure Notice) will not:  (a) obligate the WLB Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the WLB Debtors that such Assigned Contract is an executory

contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

13.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the WLB Debtors, the WLB Debtors' lenders, the Stalking Horse Bidder, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto.

14.     Solely in respect of the procedures for assuming and assigning, or rejecting, Executory Contracts or Unexpired Leases, in the event of any inconsistencies between this Order, the Bidding Procedures Motion, or the Bidding Procedures, this Order shall govern in all respects.

15.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Bidding Procedures Motion.

17.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Complex Case Procedures are satisfied by the contents of the Bidding Procedures Motion.

18.     This Order shall be immediately effective and enforceable upon entry hereof.

19.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed:  November 15, 2018.**

---

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## Exhibit 1

### Non-Core Mines

| Mine | County, State |
|------|---------------|
| Absaloka Mine (Active Thermal Coal Mine) | Big Horn, Montana |
| Buckingham Mine (Active Thermal Coal Mine) | Perry, Ohio |
| Beulah Mine (Active Thermal Coal Mine) | McLean & Oliver, North Dakota |
| Savage Mine (Active Thermal Coal Mine) | Richland, Montana |
| Jewett Mine (Reclamation Project) | Leon & Freestone & Limestone, Texas |
| Haystack Mine (Permitted Thermal Coal Mine, Temporarily Idled) | Uinta, Wyoming |

**Exhibit 2**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF
WESTMORELAND COAL COMPANY AND CERTAIN DEBTOR AFFILIATES**

On [_____], 2018, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Authorizing Westmoreland Coal Company and Certain Debtor Affiliates to Perform Obligations Related to the Stalking Horse Bid, (II) Approving Bidding Procedures with Respect to Substantially All Assets, (III) Approving Contract Assumption and Assignment Procedures, (IV) Scheduling Bid Deadlines and an Auction, (V) Scheduling Hearings and Objection Deadlines with Respect to the Disclosure Statement and Plan Confirmation, and (VI) Approving the Form and Manner of Notice Thereof* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process by which Westmoreland Coal Company and certain of its affiliates (collectively, the "WLB Debtors")[3] are authorized to conduct an auction (the "Auction") for the sale of the WLB Debtors' assets (including, for the avoidance of doubt, both Core Assets and any Non-Core Assets to the extent a third party has not agreed, prior to the effective date of the Plan (the "Effective Date"), to acquire such Non-Core Assets as a result of the Non-Core Asset Marketing Process (as defined below)) pursuant to a chapter 11 plan

---

[1]    Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

[3]    The relief granted in the Bidding Procedures Order is solely limited to Westmoreland Coal Company and its Debtor affiliates, other than the WMLP Debtors (as defined herein) (collectively, the "WLB Debtors").  The "WMLP Debtors" means, collectively, Westmoreland Resource Partners GP, LLC, Westmoreland Resource Partners, LP, and its subsidiaries.

(the "Sale").[4]

The WLB Debtors selected the bid (the "Stalking Horse Bid") submitted by an entity formed on behalf of the WLB Debtors' prepetition secured creditors (the "Stalking Horse Bidder") after a closed bidding process. Having announced the Stalking Horse Bid, the WLB Debtors will now conduct a round of open bidding intended to obtain the highest or otherwise best bid for the WLB Debtors' assets, culminating in an Auction.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Donlin, Recano & Company, Inc. by calling (800) 499-8519 or visiting the WLB Debtors' restructuring website at (www.donlinrecano.com/westmoreland).**

## I.      Assets to be Auctioned.

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the WLB Debtors' assets. The assets will be offered for sale in one or more combinations, and as a whole, through an Auction. The WLB Debtors, in consultation with the Consultation Parties, may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the assets in any combination. The Stalking Horse Bid referenced herein provides for the Stalking Horse Bidder's acquisition of the Core Assets and agreement to accept any of the Non-Core Assets to the extent a third party has not agreed, prior to the Effective Date, to acquire such Non-Core Assets.

At the Auction, the WLB Debtors will solicit bids for substantially all of their assets, including any Non-Core Assets that have not been sold by the WLB Debtors prior to the Auction as a result of the Non-Core Asset Marketing Process.

## II.     Non-Core Asset Marketing Process.

Notably, the WLB Debtors have been marketing the Non-Core Assets for sale (the "Non-Core Asset Marketing Process"), including the Non-Core Mines listed on **Exhibit 1** to the Bidding Procedures Order. Any parties interested in purchasing such Non-Core Assets before the Auction should contact Centerview Partners LLC ("Centerview"), 31 West 52nd Street, 22nd Floor, New York, New York 10019, Attn.: Marc D. Puntus (mpuntus@centerview.com) and Steven W. Bremer (sbremer@centerview.com). For the avoidance of doubt, these Bidding Procedures do not apply to the Non-Core Asset Marketing Process. To the extent any Non-Core Assets are sold (or a binding agreement to sell such Non-Core Assets is entered into) pursuant to the Non-Core Asset Marketing Process prior to the date of the Auction, the applicable Non-Core Assets will not be part of the Auction; *provided*, that to the extent any Non-Core Assets are not sold by the WLB Debtors (or a binding agreement to sell such Non-Core Assets is not entered into) prior to the date

---

[4]     For the avoidance of doubt, these Bidding Procedures are subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral and debtor in possession financing with respect to the WLB Debtors.

of the Auction, the applicable Non-Core Assets may be sold as part of the Auction.

## III.  Public Announcement of Auction.

As soon as reasonably practicable after entry of the Bidding Procedures Order, the WLB Debtors shall serve on the Notice Parties a notice of the Auction and Sale (the "Sale Notice") pursuant to the terms of the Bidding Procedures Order.  In addition, as soon as practicable after entry of the Bidding Procedures Order, the WLB Debtors will publish the Sale Notice, with any modifications necessary for ease of publication, once in *The New York Times (National Edition)* to provide notice to any other potential interested parties.

## IV.  Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than the Stalking Horse Bidder) interested in purchasing one or more of the WLB Debtors' assets (a "Potential Bidder") must deliver or have previously delivered to the WLB Debtors, if determined to be necessary by the WLB Debtors in their reasonable discretion, the following documents:

    a.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the WLB Debtors;

    b.    preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction (including current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be acceptable to the WLB Debtors;

    c.    preliminary proof by the Potential Bidder of its ability to receive any and all necessary governmental, licensing, regulatory, and other approvals; and

    d.    details regarding the ownership and capital structure of the Potential Bidder, including detail related to the Potential Bidder's beneficial owners, ultimate beneficial owners, and controlling entities, and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction.

The WLB Debtors, after consultation with the Consultation Parties, shall determine and notify each Potential Bidder as to whether such Potential Bidder has submitted acceptable preliminary documentation.  Only those Potential Bidders that have submitted acceptable preliminary documentation (each, an "Acceptable Bidder") to the reasonable satisfaction of the WLB Debtors and their advisors may submit bids to purchase any of the WLB Debtors' assets. Each Prepetition Secured Party shall at all times be deemed an Acceptable Bidder.

**V.      Acceptable Bidder Requirements.**

To participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to the WLB Debtors and their advisors an irrevocable offer for purchase of the applicable assets being bid on (the "Bid"), and shall meet the following criteria:

a.      **Purchased Assets and Assumed Liabilities:**  Each Bid must clearly state which of the WLB Debtors' assets the Acceptable Bidder seeks to acquire, and which liabilities of the applicable WLB Debtor the Acceptable Bidder agrees to assume;

b.      **Good Faith Deposit:**  Each Bid, other than the Stalking Horse Bid, must be accompanied by a cash deposit in the amount of the lesser of (i) ten percent (10%) of the cash consideration of such bid (including, for Bids seeking to acquire substantially all of the Core Assets, the amount necessary to pay all accrued but unpaid principal, interest, fees, expenses, and other costs under or on account of the DIP Facility) and (ii) $20 million, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the WLB Debtors (the "Good Faith Deposit");

c.      **Purchase Price**:  Each Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (the "Purchase Price").  Each Bid for a combination of assets must (i) provide a breakdown of the share of the Purchase Price allocable to each of the assets included in the Bid, (ii) state whether the Bid is conditioned upon the Acceptable Bidder being the Successful Bidder for any of the other assets included in the Bid and, if so, which assets, and (iii) state whether the Acceptable Bidder is willing to purchase any of the assets included in the Bid individually, and if so, the price the Acceptable Bidder would pay for each such asset;

d.      **Minimum Bid**:

(i)      At a minimum, each Bid seeking to acquire all of the WLB Debtors' assets must have a Purchase Price that in the WLB Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a value equal to or greater than the aggregate cash consideration, assumed liabilities, and other non-cash consideration contemplated by the Stalking Horse Bid,[5] including, unless otherwise agreed to by the WLB Debtors and Required Consenting Stakeholders (as defined in the RSA), the agreement to purchase the Non-Core Assets to the extent a third party has not agreed, prior to the Effective Date, to acquire such Non-Core Assets (as more fully set forth in the applicable definitive documentation) plus (i) cash consideration in the amount of all accrued but unpaid principal, interest, fees, expenses, and other costs under or on account of the DIP Facility, plus (ii) $2.5 million in cash or cash equivalents (collectively, the

---

[5]      The Stalking Horse Bid will include a credit bid in the amount of fifty-five percent (55%) of the amount of the First Lien Claims (as defined in the Plan) as of the Petition Date.

"Initial Overbid"); or

    (ii)    At a minimum, each Bid seeking to acquire individual assets or combinations of assets that are less than all of the WLB Debtors' assets (each a "Partial Bid") must have a Purchase Price that in the WLB Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a value, individually or in conjunction with one or more other Bids, that satisfies the criteria for being a Qualified Bid (as defined below);

e.    **Markup of the APA:**  Each Acceptable Bidder must provide an executed purchase agreement as well as a redline of such agreement marked to reflect the amendments and modifications made to the form of the asset purchase agreement with respect to the Stalking Horse Bid (the "Stalking Horse Purchase Agreement") provided by the WLB Debtors to Potential Bidders;

f.    **Same or Better Terms; Bid Documents:**  Except as otherwise provided in the Bidding Procedures, each Bid must be, in the WLB Debtors' reasonable business judgment, after consultation with the Consultation Parties, substantially on the same or better terms than the terms of the Stalking Horse Purchase Agreement. Each Bid must include duly executed, ancillary transaction documents necessary to effectuate the transactions contemplated in the Bid (such documents, the "Bid Documents");

g.    **Employee Obligations:**  Each Bid must indicate whether the Acceptable Bidder intends to hire all employees who are primarily employed at the assets included in the Bid.  Each Bid must further expressly propose a treatment of the WLB Debtors' prepetition collective bargaining agreements (the "CBAs"), pension obligations and other post-employment benefits (collectively, the "Employee Obligations");

h.    **Committed Financing:**  Each Bid must include committed financing, documented to the WLB Debtors' reasonable satisfaction, that demonstrates the Acceptable Bidder has received sufficient debt and equity funding commitments to satisfy such Acceptable Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Centerview and Kirkland & Ellis LLP should contact regarding such committed financing.  Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the WLB Debtors;

i.    **Pro Forma Capital Structure:**  Each Bid must include a description of the Bidder's pro forma capital structure;

j.    **Contingencies; No Financing or Diligence Outs:**  Any Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of the specified representations and warranties or the satisfaction at the

closing of specified conditions, which shall not be more burdensome, in the WLB Debtors' reasonable business judgment, after consultation with the Consultation Parties, than those contemplated by the Stalking Horse Bid;

k.    **As-Is, Where-Is:**    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed Asset Purchase Agreement;

l.    **Authorization:**    Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

m.    **Adequate Assurance of Future Performance:**    Each Bid must (i) identify the executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all cure costs related to such executory contracts and unexpired leases by the Acceptable Bidder and (iii) demonstrate, in the WLB Debtors' and Centerview's reasonable business judgment, after consultation with the Consultation Parties, that the Acceptable Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases;

n.    **Transfer of Mining Permits/Assumption of Reclamation Obligations:** Each Bid, including the Stalking Horse Bid, must (i) provide that the Bidder will: (a) take transfer of or obtain permits for the mining operations to be acquired, (b) assume all associated reclamation obligations with respect to the mines subject to the Bid to the extent required under applicable nonbankruptcy law, and (c) obtain assignment of or replace the reclamation surety bonds associated with such permits, and (ii) provide evidence of:  (a) the Bidder's ability to satisfy the conditions set forth in (i) of this paragraph (including verification that the Bidder is not, and will not be as of the time of the transfer, "permit blocked" under the federal Surface Mining Control and Reclamation Act by application of the federal Applicant Violator System), and (b) the Bidder's financial resources necessary to obtain assignment of or replace the reclamation surety bonds associated with such permits, which evidence may include a letter from a surety company confirming that the Bidder is a "qualified  buyer" (as such term is used in the surety industry). The applicable Bidder shall also provide all such evidence submitted (subject to any applicable confidentiality agreements that may be entered into) to surety providers of the relevant mines to be acquired, and the WLB Debtors shall consult with such surety companies with respect to such Bidder's ability to obtain or take transfer of

6

the permits and obtain assignment of or replace surety bonds, each as required by the applicable regulators;

o.   **Government Approvals:**  Each Bid, including the Stalking Horse Bid, must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the WLB Debtors, after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

p.   **Government Approvals Timeframe:**  Each Bid must set forth an estimated timeframe for obtaining any required internal, governmental, licensing, regulatory or other approvals or consents for consummating any proposed Sale;

q.   **Executory Contracts and Leases:**  Each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required;

r.   **Compliance  with  Bankruptcy  Code  and  Non-Bankruptcy  Law; Acknowledgment:**  Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law.  Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures;

s.   **Irrevocable:**  Each Bid must remain irrevocable until the Court enters the Confirmation Order (as defined below) approving the Sale and the Successful Bid (as defined below); *provided* that if the Stalking Horse Bid is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Purchase Agreement pending entry of the Confirmation Order.

In the event a Bid is chosen as the Back-Up Bid (as defined below), it must remain irrevocable until the WLB Debtors and the Successful Bidder consummate the applicable Sale; *provided*, that if the Stalking Horse Bid is selected as the Back-Up Bid, such bid must remain irrevocable until the Outside Date (as defined in the RSA) or as otherwise agreed to by the WLB Debtors and the Required Consenting Stakeholders.

t.   **Letters of Credit:**  Any Bid must provide that the applicable bidder agrees that the obligations of any non-Debtor affiliate of the WLB Debtors (and, for the avoidance of doubt, not the WMLP Debtors) with regard to any letters of credit issued on behalf of any WLB Debtor with respect to the applicable purchased assets will either be assumed, replaced, or continued, as applicable.

In addition to the above, each Acceptable Bidder shall provide the following information:

u.   **Identity:**  Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors and ultimate controlling entities that will be bidding for or purchasing the applicable assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  Each Bid must also include contact information for the specific person(s) whom Centerview and Kirkland & Ellis LLP should contact regarding such Bid; and

v.   **Expenses:**  Each Bid, except for the Stalking Horse Bid, shall not seek or request any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the WLB Debtors' reasonable discretion, after consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the WLB Debtors' reasonable discretion, be deemed to be "Qualified Bidders."

Within one business day after the Bid Deadline, the WLB Debtors after consultation with the Consultation Parties, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction.  Any Bid that is not deemed a Qualified Bid shall not be considered by the WLB Debtors; *provided*, however, that if the WLB Debtors receive a Bid prior to the Bid Deadline (as defined below) that does not satisfy the requirements of a Qualified Bid, the WLB Debtors may, after consultation with the Consultation Parties, provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder, the Stalking Horse Bid shall be deemed a Qualified Bid, and the Stalking Horse Bidder may participate in the Auction with respect to WLB Debtors' assets.

Notwithstanding the separate Non-Core Asset Marketing Process, to the extent that a Bid includes any Non-Core Assets for which the WLB Debtors have not yet entered into definitive transaction documentation to effectuate a sale, the WLB Debtors, after consultation with the Consultation Parties, may select any Bid for such Non-Core Assets as a Successful Bid (as defined below) following the Auction.

To the extent that a Bid includes any Non-Core Assets for which the WLB Debtors have entered into definitive transaction documentation to effectuate a sale but such sale has not been completed at the time of the Auction, the WLB Debtors, after consultation with the Consultation Parties, may select any Bid for such Non-Core Assets as a Back-Up Bid following the Auction. The WLB Debtors will inform such Acceptable Bidder at the earliest convenience after submission of the Bid of its selection as a Back-Up Bid.  For the avoidance of doubt, the foregoing shall not affect any Core Assets included in such Bid.

**VI.** **Obtaining Due Diligence Access.**

Only Acceptable Bidders, including the Stalking Horse Bidder, shall be eligible to receive due diligence information and access to the WLB Debtors' electronic data room and to additional non-public information regarding the WLB Debtors. ***Other than the Prepetition Secured Parties exercising their right to credit bid any of their respective secured claims under applicable law, no Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement.*** All due diligence requests must be directed to Centerview. The WLB Debtors will provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the WLB Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the WLB Debtors' electronic data room. Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the WLB Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the WLB Debtors without the prior written consent of the WLB Debtors. The due diligence period will end on the Bid Deadline (as defined herein) and subsequent to the Bid Deadline the WLB Debtors shall have no obligation to furnish any due diligence information. For the avoidance of doubt, Acceptable Bidders may engage in discussions with the Committee's advisors (subject to any applicable confidentiality agreement or protective order) with the prior consent and/or participation of the WLB Debtors and prior notice to the Stalking Horse Bidder.

In connection with the provision of due diligence information to Acceptable Bidders, the WLB Debtors shall not furnish any confidential information relating to the WLB Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The WLB Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the WLB Debtors may decline to provide such information to Acceptable Bidders who, in the WLB Debtors' reasonable business judgment, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate any Sale. For any Bidder who is a competitor or customer of the WLB Debtors or is affiliated with any competitors or customers of the WLB Debtors, the WLB Debtors reserve the right to withhold or modify any diligence materials that the WLB Debtors, in their sole discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

**A.** **Communications with Qualified Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Qualified Bidders shall be through Centerview.

**B.** **Due Diligence from Qualified Bidders.**

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the WLB Debtors or their advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder

9

to comply with such reasonable requests for additional information and due diligence access may be a basis for the WLB Debtors to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

> **Centerview Partners LLC, 31 West 52nd Street, 22nd Floor, New York, New York 10019, Attn.: Johannes Preis (jpreis@centerview.com), shall coordinate all requests for additional information and due diligence access on behalf of the WLB Debtors.**

## VII.   Indications of Interest.

The WLB Debtors reserve the right to require Acceptable Bidders to submit written indications of interest prior to the Bid Deadline specifying, among other things, the assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party.  If an Acceptable Bidder fails to comply with any such request by the WLB Debtors, the WLB Debtors, after consultation with the Consultation Parties, may deny such Acceptable Bidder further diligence access or deny such Acceptable Bidder further participation in the Auction process.  The WLB Debtors also reserve the right to exclude any Acceptable Bidder (prior to its submission of a Qualified Bid) from continuing in the Auction process if the WLB Debtors determine, after consultation with the Consultation Parties, that the consideration proposed to be paid by such Acceptable Bidder is insufficient.

## VIII.   Bid Deadline.

Binding Bids must be received by (1) the WLB Debtors' counsel, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Stephen E. Hessler, P.C. (stephen.hessler@kirkland.com), and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.:   Gregory F. Pesce (gregory.pesce@kirkland.com) and Timothy R. Bow (timothy.bow@kirkland.com) and (2) the WLB Debtors' financial advisor, Centerview Partners LLC, 31 West 52nd Street, 22nd Floor, New York, New York 10019, Attn.: Marc D. Puntus (mpuntus@centerview.com) and Steven W. Bremer (sbremer@centerview.com), in each case so as to be **actually received** no later than 4:00 p.m. (prevailing Central Time) on January 15, 2019 (the "Bid Deadline").

## IX.   Evaluation of Qualified Bids.

The WLB Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the WLB Debtors' judgment, after consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the WLB Debtors' assets (the "Starting Bid").  When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the WLB Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the WLB Debtors deem appropriate:  (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the WLB Debtors' estates from the transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the proposed treatment of the Employee Obligations.  Three business days prior to the date of the Auction, the WLB Debtors shall notify the Stalking Horse Bidder and all Qualified Bidders as to

which Qualified Bid is the Starting Bid for the Auction with respect to the applicable assets.  At such time, the WLB Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder and each Qualified Bidder.

## X.      No Qualified Bids.

If no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline, then the WLB Debtors may cancel the Auction, and may decide, in the WLB Debtors' reasonable business judgment, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of the Confirmation Order approving a Sale of the WLB Debtors' assets to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement.

## XI.     Auction.

If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline with respect to any applicable assets, then the WLB Debtors shall conduct the Auction with respect to such assets.  The Auction for each applicable asset shall commence on **January 22, 2019, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the WLB Debtors determine, after consultation with the Consultation Parties and subject to the consent of the Required Consenting Stakeholders (as defined in the RSA) and the Required Lenders (as defined in the DIP Credit Agreement), in which case the WLB Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      except as otherwise provided herein, the Auction will be conducted openly;

b.      only Qualified Bidders shall be entitled to bid at the Auction;

c.      the Qualified Bidders shall appear at the Auction in person or through duly authorized representatives;

d.      only a reasonable number of authorized representatives of the WLB Debtors, the Prepetition Secured Parties, the statutory committee appointed on behalf of general unsecured creditors in the WLB Debtors' chapter 11 cases, and each Qualified Bidder, and their respective advisors, shall be permitted to attend the Auction;

e.      bidding shall begin with any applicable Starting Bid;

f.      subsequent bids (each an "Overbid") shall be made in minimum increments of $1,000,000, provided that the Stalking Horse Bidder may credit bid any remaining amounts of its secured claims in connection with an Overbid;

g.      during the course of the Auction, the WLB Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids

and inform each Qualified Bidder which Overbid(s) reflect, in the WLB Debtors' view, after consultation with the Consultation Parties, the highest or otherwise best bid(s) for the applicable assets;

h.    the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

i.    each Qualified Bidder will be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or any Sale;

j.    each Qualified Bidder will be required to confirm that its bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bid;

k.    the Court and the WLB Debtors will not consider bids made after the Auction has been closed; and

l.    notwithstanding anything herein to the contrary, the WLB Debtors, after consultation with the Consultation Parties and subject to the consent of the Required Consenting Stakeholders (as defined in the RSA) and the Required Lenders (as defined in the DIP Credit Agreement), may at any time choose to cancel the Auction or adjourn the Auction by either filing a notice on the docket of the Court or making a statement in open court.

At the Auction, the WLB Debtors shall have the right to, after consultation with the Consultation Parties, adopt and announce additional Auction Procedures that are not inconsistent with the existing Auction Procedures, including, for example, other Auction Procedures necessary for the WLB Debtors to consider any bids to purchase fewer than all of the WLB Debtors' assets and for the WLB Debtors to exercise their right to move to "blind" bidding for Qualified Bidders including cash in their bids.

## XII.    Acceptance of the Successful Bid.

The Auction shall continue until there is only one Qualified Bid or a combination of Qualified Bids that the WLB Debtors, in consultation with the Consultation Parties, determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, is the highest or otherwise best bid to purchase any or all of the WLB Debtors' assets (each, a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the WLB Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the WLB Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the WLB Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the WLB Debtors' estates from the transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the proposed treatment of the Employee Obligations.

Any Qualified Bidder that submits a Successful Bid will be deemed a "<u>Successful Bidder</u>" with respect to the applicable assets.

Each Successful Bidder and the WLB Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

Upon the selection of the Successful Bidder(s), to the extent that the WLB Debtors and a Successful Bidder determine that the closing of the Sale to the Successful Bidder may occur prior to the transfer of any of the WLB Debtors' existing mining permits that are being transferred to such Successful Bidder, the WLB Debtors and the Successful Bidder will consult with the WLB Debtors' surety providers at the relevant mine(s) being acquired by such Successful Bidder regarding entering into an agreement that would allow the Successful Bidder to conduct business at such mine(s) under the WLB Debtors' existing mining permits, pending the transfer of the relevant mining permits to the Successful Bidder. The WLB Debtors' surety providers have indicated that they will require each such Successful Bidder to enter into an agreement with the applicable surety provider, which agreements shall provide, among other things, that the Successful Bidder (a) is liable for correcting any violations or defaults relating to the mine(s) with the pending permit transfers, (b) indemnifies the WLB Debtors and their surety providers in the event of any default, claim, or loss that occurs at the mine(s) with the pending permit transfers while the permit transfers are pending, and (c) agrees to such other terms and provisions as may be required by such surety providers and such Successful Bidder in their sole and absolute discretion, including, without limitation, terms requiring the Successful Bidder to post collateral for such surety providers' bonds relating to such permits pending transfer; <u>provided</u> that nothing in this paragraph alters any legal requirements under applicable police and regulatory law. Nothing herein shall be deemed to require any party to enter into any such agreement or any surety provider to consent to any operations under a permit relating to any surety bond.

The WLB Debtors shall incorporate the results of the Auction and any Successful Bid into the chapter 11 plan that is submitted to the Court for confirmation (as such plan may be amended, modified, or supplemented, the "<u>Plan</u>," the order confirming the Plan, the "<u>Confirmation Order</u>," and the hearing to consider confirmation of the Plan, the "<u>Confirmation Hearing</u>").

## XIII.  Designation of Back-Up Bidder.

The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "<u>Back-Up Bid</u>") to purchase any or all of the applicable assets (the "<u>Back-Up Bidder</u>") will be determined by the WLB Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. If for any reason a Successful Bidder fails to consummate the purchase of such assets within the time permitted after the entry of the Confirmation Order, then the Back-Up Bidder will, after the WLB Debtors consult with the Consultation Parties for a period not to exceed two business days absent an extension by the WLB Debtors, automatically be deemed to have submitted the Successful Bid for such assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such assets and shall be required to consummate any Sale with the WLB Debtors as soon as is commercially practicable without further order of the Court, provided that the WLB Debtors shall file a notice with the Court.

## XIV.   Approval of Sale Transactions.

The WLB Debtors, in consultation with the Consultation Parties, will present the results of the Auction to the Court for approval at the Confirmation Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that:  (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in the Bidding Procedures; and (4) consummation of any Sale as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the WLB Debtors and the WLB Debtors' assets, and is in the best interests of the WLB Debtors and their estates.

The Confirmation Hearing is presently scheduled to commence on **February 13, 2019**, at **[●] a/p.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones, United States Bankruptcy Court for the Southern District of Texas.

## XV.   Return of Good Faith Deposit.

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the purchase price paid for the applicable assets.  If a Successful Bidder fails to consummate any Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the WLB Debtors, and all parties in interest, and the WLB Debtors specifically, reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Back-Up Bidders will be returned within 5 business days after the Auction or upon the permanent withdrawal of the proposed Sale, and the Good Faith Deposit of any Back-Up Bidders will be returned within 5 business days after the consummation of any Sale or upon the permanent withdrawal of the proposed Sale.

## XVI.   Reservation of Rights.

The WLB Debtors reserve their rights to, after consultation with the Consultation Parties and subject to the RSA and the orders approving the WLB Debtors' postpetition financing facility, modify these Bidding Procedures in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties, in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the WLB Debtors' assets, including, without limitation:  (1) extending the deadlines set forth in these Bidding Procedures; (2) after consultation with the Consultation Parties, adjourning the Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.  For the avoidance of doubt, the WLB Debtors reserve the right at any point prior to the selection of the Successful Bidder to, after consultation with the Consultation Parties, terminate the Sale processes contemplated hereunder with respect to any or all of the WLB Debtors' assets and seek to sell any or all assets pursuant to section 363(b) of the Bankruptcy Code.

## XVII.  Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures and subject in all respects to the terms of the RSA, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a WLB Debtor or the board of directors, board of managers, or similar governing body of a WLB Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided*, however, that the WLB Debtors shall provide the Consultation Parties with notice of such action or inaction within two (2) Business Days of such action or inaction.  If, at the Auction, the WLB Debtors exercise the foregoing right to take any action or refrain from taking any action to the extent failing to do so would be inconsistent with applicable law or their fiduciary obligations under applicable law, the WLB Debtors shall provide the Consultation Parties with notice of such action or inaction as soon as practicable.

Further, notwithstanding anything to the contrary in these Bidding Procedures and subject in all respects to the terms of the RSA, through the date of the Auction, the WLB Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the WLB Debtors' assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the WLB Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a WLB Debtor (including any Consenting Stakeholder (as defined in the RSA)), any other party in interest in these chapter 11 cases (including any official committee and the United States Trustee), or any other entity regarding Alternate Proposals; *provided*, however, that notwithstanding anything to the contrary herein, if the WLB Debtors receive a proposal or expression of interest (orally or in writing) from a third party regarding an Alternate Proposal, the WLB Debtors shall provide counsel to the Consenting Stakeholders with such Alternate Proposal within one (1) Business Day, including the identity of the party or parties making such proposal or expression of interest.

*[The remainder of this page is intentionally left blank]*

**<u>Exhibit 3</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) Case No. 18-35672 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF AUCTION FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF**
**WESTMORELAND COAL COMPANY AND CERTAIN DEBTOR AFFILIATES FREE**
**AND CLEAR OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that certain of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "WLB Debtors")[2] are soliciting offers for the purchase of substantially all of the WLB Debtors' assets and assumption of certain liabilities of the WLB Debtors consistent with the bidding procedures (the "Bidding Procedures")[3] approved by the United States Bankruptcy Court for the Southern District of Texas (the "Court") by entry of an order on [__], 2018 [Docket No. [____]] (the "Bidding Procedures Order"). **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

---

[1]  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]  The relief granted in the Bidding Procedures Order is solely limited to Westmoreland Coal Company and its Debtor affiliates, other than the WMLP Debtors (as defined herein) (collectively, the "WLB Debtors").  The "WMLP Debtors" means, collectively, Westmoreland Resource Partners GP, LLC, Westmoreland Resource Partners, LP, and its subsidiaries.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

> Copies of the Bidding Procedures Order, the Bidding Procedures, or other documents related thereto are available upon request to Donlin, Recano & Company, Inc. by calling (800) 499-8519 or visiting the Debtors' restructuring website at (www.donlinrecano.com/westmoreland).

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **January 15, 2019**, at **4:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the WLB Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the WLB Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **January 22, 2019**, at **10:00 am. (prevailing Eastern Time)** at Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

**PLEASE TAKE FURTHER NOTICE** that the WLB Debtors expect to seek approval of each Sale at the Confirmation Hearing, which is presently scheduled to commence on **February 13, 2019**, at **[●] a/p.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable David R. Jones in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.]

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court, so that it may be **actually received** by the following parties, prior to January 25, 2019, at 4:00 p.m. (prevailing Central Time) (the "Sale Objection Deadline"); *provided* that if the Auction occurs after January 22, 2019, the Sale Objection Deadline shall be automatically extended through 4:00 p.m. (prevailing Central Time) on the date that is three (3) days following the Auction.

| Counsel to the WLB Debtors | The United States Trustee |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn.: Stephen E. Hessler, P.C.<br>(stephen.hessler@kirkland.com)<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn.: Gregory F. Pesce<br>(gregory.pesce@kirkland.com) and<br>Timothy R. Bow (timothy.bow@kirkland.com) | Office of the United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn.: Stephen Statham |

| Counsel to the Ad Hoc Group | Counsel to the Official Committee of Unsecured Creditors |
|---|---|
| Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 Attn.:  Thomas Moers Mayer (tmayer@kramerlevin.com) and Stephen D. Zide (szide@kramerlevin.com) | Morrison & Foerster LLP 250 West 55th Street New York, NY 10019 Attn:  Lorenzo Marinuzzi, Esq. (lmarinuzzi@mofo.com) Todd M. Goren, Esq. (tgoren@mofo.com) Jennifer L. Marines, Esq. (jmarines@mofo.com) |

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The Confirmation Order is expected to provide, among other things, that the Successful Bidder from the Sale will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Successful Bidder shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement (in the case where the Stalking Horse Bidder is the Successful Bidder) or a separate asset purchase agreement entered into with the Successful Bidder (if the Stalking Horse Bidder is not the Successful Bidder), the consummation of the Sale, or the transfer or operation of the assets, to (a) be a legal successor, or otherwise be deemed a successor to the WLB Debtors (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the Effective Date); (b) have, de facto or otherwise, merged with or into the WLB Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the WLB Debtors, in the case of each of (a), (b), and (c), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Federal Coal Mine Health and Safety Act of 1969, the Black Lung Benefits Act, the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the WLB Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the WLB Debtors' liability under such law, rule

3

or regulation or doctrine.  All rights of any party to set off any claims, debts or obligations owed by or to the Successful Bidder in connection with the assets shall be extinguished on the Effective Date pursuant to the Confirmation Order. Other than as expressly set forth in the Stalking Horse Purchase Agreement (or another Successful Bidder's purchase agreement, as applicable) with respect to Assumed Liabilities, the Successful Bidder shall not have any responsibility for (a) any liability or other obligation of the WLB Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the WLB Debtors or any of their predecessors or affiliates. To the greatest extent allowed by applicable law, the Successful Bidder shall have no liability whatsoever with respect to the WLB Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the WLB Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Effective Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets prior to the Effective Date. The Stalking Horse Bidder would not have entered into the Stalking Horse Purchase Agreement but for the foregoing protections against potential claims based upon "successor liability" theories.

**PLEASE TAKE FURTHER NOTICE** that certain governmental agencies, including but not limited to, the United States, the Railroad Commission of Texas, Ohio Department of Natural Resources, Ohio Environmental Protection Agency, and North Dakota Public Service Commission will request that substantially the following language appear in the Confirmation Order or other operative order approving the Sale (for the avoidance of doubt, all parties' rights are reserved with respect to the inclusion of such language in the Confirmation Order, including the WLB Debtors, the Stalking Horse Bidder, and any prospective bidder for the WLB Debtors' assets):

"Nothing in this Confirmation Order or the Sale Transaction Documentation releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Confirmation Order; provided, however, that nothing herein shall subject the Purchaser to any liability to a governmental unit for penalties for days of violation prior to closing, response costs incurred by a governmental unit prior to closing, or any liability relating to offsite disposal that occurred prior to closing.  In addition, nothing in this Confirmation Order or the Sale Transaction Documentation authorizes the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law."

**PLEASE TAKE FURTHER NOTICE** that the WLB Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Motion, Bidding Procedures, and Bidding Procedures Order, as well as all related exhibits, are available: (a) free of charge upon request to Donlin, Recano & Company, Inc. (the notice and claims agent retained in these chapter 11 cases) by calling (800) 499-8519; (b) by visiting the website maintained in these chapter 11 cases at (www.donlinrecano.com/westmoreland); or (c) for a fee via PACER by visiting (http://www.txs.uscourts.gov).

Houston, Texas
Dated [_____], 2018

/ / DRAFT

| | |
|---|---|
| Patricia B. Tomasco (Bar No. 01797600) | James H.M. Sprayregen, P.C. |
| Elizabeth C. Freeman (Bar No. 24009222) | Michael B. Slade (Bar No. 24013521) |
| Matthew D. Cavenaugh (Bar No. 24062656) | Gregory F. Pesce (admitted *pro hac vice*) |
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| 1401 McKinney Street, Suite 1900 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Houston, Texas 77010 | 300 North LaSalle |
| Telephone:      (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile:      (713) 752-4221 | Telephone:      (312) 862-2000 |
| Email:          ptomasco@jw.com | Facsimile:      (312) 862-2200 |
|                 efreeman@jw.com | Email:          james.sprayregen@kirkland.com |
|                 mcavenaugh@jw.com |                 michael.slade@kirkland.com |
| | gregory.pesce@kirkland.com |

*Proposed Conflicts Counsel to the WLB Debtors and Local Counsel to the Debtors and Debtors in Possession*

-and-

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com

-and-

Anna G. Rotman, P.C. (Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:   (713) 836-3600
Email:          anna.rotman@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit 4</u>**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE WLB DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE** that on [ ], 2018, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered the *Order (I) Authorizing Westmoreland Coal Company and Certain Debtor Affiliates to Perform Obligations Related to the Stalking Horse Bid, (II) Approving Bidding Procedures with Respect to Substantially All Assets, (III) Approving Contract Assumption and Assignment Procedures, (IV) Scheduling Bid Deadlines and an Auction, (V) Scheduling Hearings and Objection Deadlines with Respect to the Disclosure Statement and Plan Confirmation, and (VI) Approving the Form and Manner of Notice Thereof* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] authorizing the WLB Debtors[3] to conduct an auction (the "<u>Auction</u>") to select the party to purchase substantially all of the WLB Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as **<u>Exhibit 2</u>**, the "<u>Bidding Procedures</u>").

---

[1]     Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3]     This relief granted in the Bidding Procedures Order is solely limited to Westmoreland Coal Company and its Debtor affiliates, other than the WMLP Debtors (as defined herein) (collectively, the "<u>WLB Debtors</u>"). The "<u>WMLP Debtors</u>" means, collectively, Westmoreland Resource Partners GP, LLC, Westmoreland Resource Partners, LP, and its subsidiaries.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the WLB Debtors **may** assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale.  The Assigned Contracts Schedule can also be viewed on the Debtors' Case Website (www.donlinrecano.com/westmoreland).  The WLB Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court and served and **actually received no later than January 10, 2019**, at **4:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**") and if you object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, be filed with the Court and **actually received no later than the earlier of (a) the Confirmation Objection Deadline or Supplemental Assigned Contract Hearing, as applicable, and (b) 4:00 p.m. (prevailing Central Time) on the date that is 14 days following (x) the Assumption and Assignment Service Date, or (y) the date of Service of the Supplemental Cure Notice, as applicable**, in each case, by the following parties:  (a)  counsel for the WLB Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.:  Gregory F. Pesce and Timothy R. Bow; (b) counsel to the ad hoc group of lenders under the WLB Debtors' prepetition term loan due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn.:  Thomas Moers Mayer and Stephen D. Zide; (c) counsel to the Official Committee of Unsecured Creditors, Morrison & Foerster LLP, 250 West 55th Street New York, NY 10019, Attn:  Lorenzo Marinuzzi, Esq., Todd M. Goren, Esq., and Jennifer L. Marines, Esq.; and (d) Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.:  Stephen Statham.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b)  the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the WLB Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

2

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Costs in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Confirmation Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the WLB Debtors at any time or assumed and assigned, and all rights of the WLB Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved.  Moreover, the WLB Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the WLB Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the WLB Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the WLB Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

Houston, Texas
Dated [_____], 2018

/ / DRAFT

| | |
|---|---|
| Patricia B. Tomasco (Bar No. 01797600) | James H.M. Sprayregen, P.C. |
| Elizabeth C. Freeman (Bar No. 24009222) | Michael B. Slade (Bar No. 24013521) |
| Matthew D. Cavenaugh (Bar No. 24062656) | Gregory F. Pesce (admitted *pro hac vice*) |
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| 1401 McKinney Street, Suite 1900 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Houston, Texas 77010 | 300 North LaSalle |

Patricia B. Tomasco (Bar No. 01797600)
Elizabeth C. Freeman (Bar No. 24009222)
Matthew D. Cavenaugh (Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          ptomasco@jw.com
                  efreeman@jw.com
                  mcavenaugh@jw.com

*Proposed Conflicts Counsel to the WLB Debtors
and Local Counsel to the Debtors and Debtors in
Possession*

James H.M. Sprayregen, P.C.
Michael B. Slade (Bar No. 24013521)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                  michael.slade@kirkland.com
                  gregory.pesce@kirkland.com

-and-

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com

-and-

Anna G. Rotman, P.C. (Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:   (713) 836-3600
Email:          anna.rotman@kirkland.com

*Proposed Counsel to the Debtors
and Debtors in Possession*