# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DEBTORS' MOTION TO EXTEND THE EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **A HEARING WILL BE HELD ON THIS MATTER ON JANUARY 16, 2019, AT 8:00 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")[2] respectfully state as follows in support of this motion (this "<u>Motion</u>").

---

[1]  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]  A detailed description of the Debtors' businesses and the reasons for commencing the chapter 11 cases is set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Westmoreland Coal Company, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 54].

### Preliminary Statement[3]

1.      The Debtors seek a 120-day extension of their exclusive periods to file and solicit acceptance of a chapter 11 plan in order to continue their efforts to maximize stakeholder value and bring these chapter 11 cases to a value-maximizing conclusion.

2.      As the Court is aware, following nearly a year of intensive negotiations, Westmoreland Coal Company and its Debtor subsidiaries (other than the WMLP Debtors) (collectively, the "WLB Debtors") entered into the Restructuring Support Agreement (the "Restructuring Support Agreement"), dated October 9, 2018.  The Restructuring Support Agreement sets forth a consensual framework for a value-maximizing restructuring of the WLB Debtors' business enterprise that will permit the WLB Debtors to expeditiously emerge from chapter 11 at a time when political, economic, and financial challenges continue to affect the coal industry.  The Restructuring Support Agreement, which enjoys the support of approximately 87 percent of the WLB Debtors' prepetition secured term lenders and secured noteholders, contemplates a going concern sale pursuant to a chapter 11 plan and commits the consenting creditors to serve as the stalking horse bidder for such sale.

3.      To capture the full benefit of the Restructuring Support Agreement, the WLB Debtors must proceed through these chapter 11 cases at a steady pace.  The Restructuring Support Agreement contains milestones that require the WLB Debtors to confirm a chapter 11 plan by February 14, 2019.  To this end, the WLB Debtors have made significant progress to date.  On October 18, 2018, the WLB Debtors filed their bidding procedures motion.  On October 25, 2018, the WLB Debtors filed a chapter 11 plan and related disclosure statement.  On November 15, 2018,

---

[3]   Capitalized terms used but not defined in this Section have the meanings ascribed to them elsewhere in this Motion.

the Court approved the WLB Debtors' proposed bidding procedures. The WLB Debtors subsequently updated their chapter 11 plan and disclosure statement for case, industry, and business developments. On December 18, 2018, the Court approved the adequacy of the WLB Debtors' disclosure statement and solicitation materials and solicitation commenced. Pursuant to the current confirmation timeline, the confirmation hearing is scheduled to commence on February 13, 2019, and the WLB Debtors intend to consummate their chapter 11 plan on February 28, 2019 (or as soon as possible thereafter). The WLB Debtors intend to, and are on track to, proceed with this timeline, which will benefit all stakeholders.

4.     During the initial exclusive periods, Westmoreland Resources GP, LLC (the "GP"), Westmoreland Resource Partners, LP, and its subsidiaries (together with the GP, collectively, the "WMLP Debtors") progressed their restructuring strategy. More specifically, the GP's Conflicts Committee (the "Conflicts Committee"), with assistance from its investment banker, Lazard Frères, continued to market the WMLP Debtors' assets. The Conflicts Committee will continue to diligently pursue its marketing process and engage with potentially interested parties. This opportunity to secure incremental value, however, exists only so long as the WMLP Debtors maintain exclusivity.

5.     The Debtors also obtained various forms of "first day" and "second day" relief. More specifically, the Debtors reached an agreement with the Official Committee of Unsecured Creditors (the "Committee") that cleared the way for final authorization for the WMLP Debtors to continue to use cash collateral on a consensual basis and the WLB Debtors to enter into a $110 million DIP facility. The final cash collateral and DIP orders permit the Debtors to finance their respective operations, reconcile claims, and retain and incentivize their valuable employees

(including through approval of their key non-insider employee retention plan, which was approved on December 18, 2018).

6.      Finally, the Debtors have continued to actively engage with key stakeholders, including the Committee regarding its investigation and other important restructuring matters, as well as the WLB Debtors' DIP lenders, the WMLP Debtors' term lenders, the Debtors' unions, the Pension Benefit Guaranty Corporation, and certain sureties, as well as participants in the Debtors' various postpetition marketing processes.

7.      While the WLB Debtors have made significant progress to date, much work remains to address certain key matters, particularly with respect to the Debtors' labor and retiree obligations.  For example, in December 2018, the WLB Debtors reached an agreement with the leadership of the International Union of Operating Engineers regarding certain modifications to the San Juan collective bargaining agreements.  Unfortunately, on December 18, 2018, the IUOE's membership refused to ratify that agreement.  Accordingly, the WLB Debtors are engaging with their stalking horse bidder regarding options with respect to the San Juan collective bargaining agreements.  Additionally, the WLB Debtors' engagement with the United Mine Workers of America, which represents certain employees and retirees (the "UMWA") has not yet resulted in a consensual agreement with respect to modified collective bargaining agreements and retiree obligations.  The WLB Debtors' efforts to address these matters have been further complicated by the fact that — more than a month after the Court ordered the appointment of an official committee of Coal Act retirees — no retirees have stepped forward to serve on such committee.  The lack of a Coal Act retiree committee has limited the Debtors' ability to engage with their Coal Act retirees.  Absent resolution, the WLB Debtors will have no choice but to seek relief pursuant to sections 1113 and 1114 of the Bankruptcy Code.

8.      The WMLP Debtors also require an extension of the exclusive periods because the sale process for the WMLP Debtors' assets is still ongoing and a stalking horse bidder has not yet been selected with respect to those assets.  The WMLP Debtors, therefore, require additional time to evaluate the most value-maximizing path for such Debtors' estates and stakeholders.

9.      The Debtors' exclusivity period to file a plan is currently set to expire after February 6, 2019.  Thus, the Debtors seek the 120-day extension as described herein.  Granting the extension of each Debtor's exclusive right to file and solicit acceptance of a chapter 11 plan will allow the Debtors to continue toward emergence in an efficient, organized fashion.  For all of the foregoing reasons, and the reasons more specifically described herein, a 120-day extension of exclusivity is appropriate.

### Relief Requested

10.     The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, extending each Debtor's exclusive right to file a chapter 11 plan through and including June 6, 2019, and to solicit votes thereon through and including August 5, 2019 (collectively, the "Exclusivity Periods"), without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods.

### Jurisdiction and Venue

11.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The basis for the relief requested herein is section 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## Background

13.     Westmoreland Coal Company and its Debtor and non-Debtor affiliates operate the sixth-largest coal-mining enterprise in North America, including 19 coal mines in six states and Canada. The Debtors primarily produce and sell thermal coal to investment grade power plants under long-term, cost-protected contracts, as well as to industrial customers and barbeque charcoal manufacturers. Headquartered in Englewood, Colorado, the Debtors and their non-Debtor subsidiaries employ approximately 2,971 individuals. As of October 9, 2018 (the "Petition Date"), the Debtors' aggregate prepetition funded indebtedness totaled approximately $1.1 billion. The Debtors are also burdened by substantial pension and retiree medical obligations.

14.     On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 18, 2018, the United States Trustee (the "U.S. Trustee") appointed the Committee in the Debtors' bankruptcy cases [Docket No. 206]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Basis for Relief

15.     A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such

plan.  "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated."  *In re Burns and Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (internal quotation marks omitted) (quoting H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).  In these chapter 11 cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will expire on February 6, 2019, and April 7, 2019, respectively, absent further order of the Court.

16.     Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.  Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs.  *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 4-04-CV-530-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *see also In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.), Hr'g Tr. July 15, 2009, 137:8–11 (granting debtors' second exclusivity extension because debtors should be entitled to as much time as needed to develop their best plan and "exclusivity was

designed, in part, to give debtors that privilege, unless it's being abused");[4] *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (citing factors relevant to whether "cause" exists to extend exclusive periods).

17.     Courts within the Fifth Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See Mirant*, 2004 WL 2250986, at * 3 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (extending exclusivity based on the totality of the circumstances); *see also In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y 2011) (noting that "the court has broad discretion in extending or terminating exclusivity"); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) (holding that section 1121(d) of the Bankruptcy Code provides the bankruptcy court "with flexibility to either reduce or increase that period of exclusivity within its discretion").  In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods.  These factors include the following:

    (a)     the size and complexity of the case;

    (b)     the need for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    (c)     whether the debtor has made progress in negotiations with its creditors;

    (d)     the existence of good faith progress toward reorganization;

---

[4]     The various hearing transcripts referenced herein are not attached hereto due to their voluminous nature; however, copies of such documents are available upon request to the Debtors' counsel.

(e)     whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

(f)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(g)     the fact that the debtor is paying its bills as they become due;

(h)     the amount of time which has elapsed in the case; and/or

(i)     whether an unresolved contingency exists.

*See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 600-01 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. at 674-77 (denying motion to terminate exclusivity based on factors for cause).

18.     Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods.  *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (listing all nine factors later set forth in *Adelphia*, determining "cause" to extend exclusivity existed without finding that every factor was met); *see also In the Matter of Excel Maritime Carriers Ltd.*, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (noting in an exclusivity termination context that the ultimate consideration for the court is what will best move the case forward in the best interests of all parties).  Further, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan.  *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) (noting that during the initial 120-day period in which debtors have an exclusive right to file a chapter 11 plan, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable

time' has been satisfied.") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also Borders*, 460 B.R. at 825 (same).

19.     Courts in this and other districts have approved similar relief in other complex chapter 11 cases at the initial exclusivity hearing.  *See, e.g.*, *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. January 8, 2018) (granting an initial exclusivity extension of 180 days); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Oct. 3, 2017) (granting an initial exclusivity extension of approximately 180 days); *In re Ultra Petroleum Corp.*, No. 16-32202 (Bankr. S.D. Tex. Feb. 22, 2017) (granting initial exclusivity extension of 120 days); *In re CJ Holding Co.*, No. 16-33590 (Bankr. S.D. Tex. Nov. 3, 2016) (granting an initial exclusivity extension of 120 days); *In re SandRidge Energy Inc.*, No. 16-32488 (Bankr. S.D. Tex. Aug. 30, 2016) (granting an initial exclusivity extension of 120 days).[5]  Such initial extensions are reasonable, as serial short-term extensions lead to instability by forcing parties to continue returning to court over-and-over again to litigate exclusivity.  *See In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Feb. 21, 2012, 7:24–8:3 (extending exclusivity, in part, because "everything else in the case ground to a significant halt, in light of prior fights about exclusivity").

20.     Here, as set forth in detail below, the relevant factors strongly favor initial extensions of the Exclusivity Periods.

**I.     The Debtors' Chapter 11 Cases Are Large and Complex**.

21.     While the Debtors own and operate valuable coal assets, the constant competition from inexpensive natural gas and the recent sustained downturn in coal production have significantly reduced the Debtors' cash flow from operations.  As of the Petition Date, thirty-seven

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

different Debtor entities had approximately $1.1 billion in funded debt, consisting of the WMLP Debtors' $326.8 million term loan facility, the WLB Debtors' $110 million DIP facility, and the WLB Debtors' roughly $670 million in prepetition secured debt.  Additionally, and central to these chapter 11 cases, the WLB Debtors are party to multiple collective bargaining agreements and face considerable legacy liabilities (largely pension and retiree medical obligations).

22.      The WLB Debtors have spent significant time prosecuting their chapter 11 plan process, including obtaining approval of the disclosure statement and bidding procedures.  At the same time, the WMLP Debtors have been marketing their assets since before the commencement of these chapter 11 cases.  The variety of active stakeholders has complicated the sale process, as the Debtors have a wide range of interests (including labor, retiree, environmental, and other constituencies) to bring to a consensus on what would already be a large and complex transaction. The WMLP Debtors received final indications of interest on their assets mid-November and have continued to engage with their secured term lenders, the Conflicts Committee, and the WLB Debtors.

23.      Further, the Debtors are negotiating with multiple parties in interest that have taken an active role in these chapter 11 cases, including the Committee, the WLB Debtors' DIP Lenders, the WMLP Debtors' secured term lenders, certain sureties, the UMWA, and the IUOE, among others.  The Debtors have devoted substantial time and energy to consensually resolving any issues with these parties and look forward to continuing to work productively with all parties.

24.      Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods.  *See Express One*, 194 B.R. at 100-01 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in

formulating a plan"); *see also In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.), Hr'g Tr. Sept. 16, 2014, 73:5–17 (granting debtors' six-month extension in "an extremely complex case" with "a lot of things that are moving" and where the debtors have "a long way to go in order to get to a plan of reorganization that is hopefully confirmable whether on a global basis or in pieces"); *In re Cengage Learning, Inc.*, No. 13-44106 (Bankr. E.D.N.Y.), Hr'g Tr. Oct. 25, 2013, 59:4–14 (granting debtors' first request for extension in a case of "substantial size and complexity" where, among other things, the debtors had $5.8 billion in debt and nearly 5,000 employees); *In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 376:13–20 (granting debtors' second request for extension where "[t]he debtors have large and complex cases" involving over $2 billion in consolidated assets, $1.5 billion in secured debt, thirty debtors, and five large and complicated businesses). Thus, the size and complexity of these chapter 11 cases alone provide sufficient cause for the Court to extend the Exclusivity Periods.

## II.     The Debtors Have Made Significant Progress in Negotiating in Good Faith with All Creditors and Administering These Chapter 11 Cases.

25.     Since the Petition Date, the WLB Debtors have made significant progress in negotiating with their stakeholders and administering these chapter 11 cases, which further warrants an extension of the Exclusivity Periods because the WLB Debtors:  (a) gained final approval of the WLB Debtors' $110 million DIP facility; (b) obtained approval of bidding procedures and disclosure statement and commenced solicitation of the WLB Debtors' chapter 11 plan; (c) engaged with sureties, environmental regulators, and other constituencies regarding the WLB Debtors' sale and plan processes; and (d) participated in multiple in-person bargaining sessions with the UMWA and IUOE regarding possible collective bargaining and retiree medical modifications.

26.     Finally, the Debtors addressed matters related to both the WLB and WMLP cases: (a) obtained first-day and second-day relief, established the claims bar dates, retained ordinary course professionals, and established interim compensation procedures; (b) engaged with the Committee regarding its independent investigation of the Debtors, which has included the exchange of documents that total nearly 200,000 pages in the aggregate; (c) established the general bar date and filed schedules of assets and liabilities and statements of financial affairs, which exceeded 5,200 pages in length; and (d) secured Court approval of the key employee retention program.

27.     The Debtors' efforts to promote consensus whenever possible further support the extension of the Exclusivity Periods, as the Debtors have every intention of building consensus as they develop chapter 11 plans for the WLB Debtors and WMLP Debtors.  *See Mirant*, 2004 WL 2250986, at *2 ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization."); *see also In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 377:2–8 (granting debtors' second exclusivity extension based, in part, on compromises reached between the debtors and their stakeholders and concluding that the debtors' "good-faith progress is also evidenced by these settlements, which evidence . . . progress in trying to reach some consensus on the end game strategy in these cases, and the timing for such a strategy"); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del.), Hr'g Tr. Dec. 7, 2009, 70:2–4 (extending exclusivity based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution").

28.     If granted, the Debtors will use these extended Exclusivity Periods to build further consensus for their chapter 11 exit strategies.  The Debtors look forward to continuing to work with each stakeholder in an effort to make the process as consensual as possible.  Accordingly, the

Debtors' efforts and the progress in these chapter 11 cases serve as further support for extending the Exclusivity Periods as requested herein.

**III.      Extending the Exclusivity Periods Is Required to Resolve Certain Contingencies**.

29.      Confirmation of two chapter 11 plans may ultimately be dependent on the Debtors' ability to resolve their labor-related matters and all parties performing the time- and labor-intensive task of resolving the myriad claims expected against the various Debtors in these cases.  Notably, the WMLP Debtors have not yet identified a stalking horse bidder and/or filed a chapter 11 plan. Similarly, as described above, the WLB Debtors have not yet reached consensus with the UMWA or the IUOE and/or their retiree constituencies regarding possible modifications to the WLB Debtors' collective bargaining and retiree benefit obligations.  Much work remains to develop a consensual resolution and, absent such a resolution, the WLB Debtors are required under sections 1113 and 1114 of the Bankruptcy Code to file a motion to reject the WLB Debtors' existing collective bargaining agreements and modify the WLB Debtors' existing retiree benefits.  The WLB Debtors plan to use the extended Exclusivity Periods, should the Court grant them, to continue these efforts to reach consensus.

30.      Courts similarly have recognized that the need to resolve important contingencies justifies extending exclusivity periods.  *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del.), Hr'g Tr. Sept. 16, 2014, 73:5–20 (extending exclusivity to allow the process to play out with respect to various outstanding issues); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y.), Hr'g Tr. Oct. 25, 2013, 46–51 (extending exclusivity to allow completion of plan mediation); *In re Corus Bankshares, Inc.*, No. 10-26881 (PSH) (Bankr. N.D. Ill.), Hr'g Tr. Sept. 23, 2010, 34:7–24 (extending exclusivity to resolve ambiguities in tax law that could substantially affect the restructuring).  Therefore, the need to resolve the important contingent issues also merits the requested relief.

**IV.     An Extension of the Exclusivity Periods Will Not Prejudice Creditors**.

31.     This request for an extension of the Exclusivity Periods is the Debtors' first and comes roughly three months into these chapter 11 cases.  Courts routinely grant a debtor's request for an initial exclusivity extension, particularly for a period of 120 days.  *See, e.g.*, *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. January 8, 2018) (granting an initial exclusivity extension of 180 days); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Oct. 3, 2017) (granting an initial exclusivity extension of approximately 180 days); *In re Ultra Petroleum Corp.*, No. 16-32202 (Bankr. S.D. Tex. Feb. 22, 2017) (granting initial exclusivity extension of 120 days); *In re CJ Holding Co.*, No. 16-33590 (Bankr. S.D. Tex. Nov. 3, 2016) (granting an initial exclusivity extension of 120 days); *In re SandRidge Energy Inc.*, No. 16-32488 (Bankr. S.D. Tex. Aug. 30, 2016) (granting an initial exclusivity extension of 120 days).

32.     As discussed, the Debtors accomplished a great deal to transition into chapter 11 and stabilize operations.  But complex issues evince the need for additional time for the Debtors to consult and negotiate with their stakeholders.  The early stage of these cases further supports the requested extensions.  *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.), Hr'g Tr. Sept. 16, 2014, 73:21–25 (granting debtors' request for a six-month extension because "just a two month or three month even extension of exclusivity won't accomplish anything, we're going to be right back here having the same argument and you're going to get the same ruling, provided things continue to move").

33.     The Debtors seek to maintain exclusivity so parties with competing interests do not hinder their efforts to finalize a value-maximizing restructuring.  Extending the Exclusivity Periods will not prejudice creditors, but will in fact benefit creditors by avoiding the drain on estate assets attendant to the potential proposal of competing chapter 11 plans.  All stakeholders benefit from that continued stability and predictability, which comes only with the Debtors being the sole

potential plan proponents.  Moreover, even if the Bankruptcy Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing to the Bankruptcy Court that cause supports termination of the Debtors' exclusivity.  Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will instead benefit the Debtors, their creditors, and all other key parties in interest.

**V.      The Debtors Are Not Pressuring Creditors by Requesting an Extension of the Exclusivity Periods**.

34.      The Debtors' restructuring process is intended to produce plans that maximize the value of the Debtors' estates for all of the Debtors' key economic stakeholders.  All creditor constituencies are benefitted by providing the Debtors with sufficient time to run a thorough and fulsome sale process.  Through the sale process, the Debtors will determine what transaction or combination of transactions will provide the greatest value to their estates and the greatest recovery to their creditors.  The chapter 11 plan filing exclusive period currently is set to expire on February 6, 2019.  Based on the Debtors' projected sale timeline, this date would fall within a critical period of the sale process, when the WLB Debtors will be preparing to confirm their chapter 11 plan and the WMLP Debtors will be seeking approval of their bidding and sale procedures with respect to the sale of their assets.  The Debtors have expended substantial time, capital, and energy to ensure that their restructuring results in a value-maximizing transaction or series of transactions for the benefit of all parties in interest.  Out of an abundance of caution, the Debtors request an extension of the Exclusivity Periods not to pressure creditors, but to avoid a potential last-minute disruption of what the Debtors hope will be a hard-fought consensual resolution.

**VI.      The Debtors Are Paying Their Debts as They Come Due**.

35.      Since the Petition Date, the Debtors have paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order.

**VII.     Relatively Little Time Has Elapsed in the Chapter 11 Cases**.

36.      The fact that these cases remain at an early stage in the chapter 11 process further supports the requested extensions.  The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes roughly three months after the Petition Date. As discussed above, during the pendency of these cases, the Debtors have made significant efforts to bring stability to their operations.  The Debtors seek the extension of the Exclusivity Periods contemplated herein to conclude their discussions with their respective stakeholders, promptly prosecute chapter 11 plans, and proceed toward emergence in an efficient, organized manner.

<u>**Notice**</u>

37.      The Debtors will provide notice of this Motion to the following parties or their respective counsel (collectively, the "<u>Notice Parties</u>"):  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Committee; (c) the indenture trustee under the WLB Debtors' 8.75% senior secured notes due 2022; (d) the ad hoc group of lenders under the WLB Debtors' prepetition term loan facility due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022; (e) the administrative agent under the WLB Debtors' prepetition term loan facility due 2020; (f) the administrative agent under the WLB Debtors' bridge loan facility due 2019; (g) the administrative agent under the WMLP Debtors' term loan facility due 2018; (h) the ad hoc group of lenders under the WMLP Debtors' term loan facility due 2018; (i) the administrative agent under the WLB Debtors' debtor-in-possession financing facility; (j) the lenders under the WLB Debtors' debtor-in-possession financing facility; (k) any statutory committee appointed in these cases; (l) the United States Attorney's Office for the Southern District of Texas; (m) the Internal

Revenue Service; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the offices of the attorneys general for the states in which the Debtors operate; (p) the Securities and Exchange Commission; (q) the Pension Benefit Guaranty Corporation; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

38.     No prior request for the relief sought in this motion has been made to this or any other Court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
December 20, 2018

<u>/s/ Patricia B. Tomasco</u>

Patricia B. Tomasco (Bar No. 01797600)
Elizabeth C. Freeman (Bar No. 24009222)
Matthew D. Cavenaugh (Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:        (713) 752-4200
Facsimile:        (713) 752-4221
Email:            ptomasco@jw.com
                  efreeman@jw.com
                  mcavenaugh@jw.com

*Conflicts Counsel to the WLB Debtors and Local Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Michael B. Slade (Bar No. 24013521)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            james.sprayregen@kirkland.com
                  michael.slade@kirkland.com
                  gregory.pesce@kirkland.com

-and-

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com

-and-

Anna G. Rotman, P.C. (Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:        (713) 836-3600
Email:            anna.rotman@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on December 20, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia M. Tomasco*
Patricia M. Tomasco