UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
HENRY G. HOBBS, JR.
ACTING UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN DISTRICTS OF TEXAS
HECTOR DURAN
TRIAL ATTORNEY
515 Rusk, Suite 3516
Houston, Texas   77002
Telephone:  (713) 718-4650 x 241
Fax:  (713) 718-4670

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: § | CASE NO. | |
| § | | |
| WESTMORELAND COAL COMPANY, § | 18-35672 (DRJ) | |
| *et al.,* § | (Chapter 11) | |
| § | | |
| DEBTORS[1] § | (Jointly Administered) | |

**OBJECTION OF UNITED STATES TRUSTEE**
**TO DEBTORS' JOINT CHAPTER 11 PLAN**

TO THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Henry G. Hobbs, Jr., the Acting United States Trustee for Region 7, by and through the undersigned counsel, who respectfully files this Objection to the proposed Joint Chapter 11 Plan of Westmoreland Coal Company and Certain of Its Debtor Affiliates (the "Plan") [Dkt. No. 788], and represents as follows:

---

[1] Due to the large number of debtors in these chapter 11 cases, which are jointly administered, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

.

## I.     Preliminary Statement

The Plan does not satisfy the requirements of section 1129(a) of the Bankruptcy Code and is therefore unconfirmable. First, the Plan improperly provides broad third party releases, exculpations and injunctions to many non-debtors who are not stakeholders or otherwise actively involved in these bankruptcy cases in violation of section 524(e) of the Bankruptcy Code and applicable Fifth Circuit law. Second, the Plan provides for a discharge of debts for the Debtors contrary to section 1141(d)(3) of the Bankruptcy Code. Third, the Plan may violate section 503(c) of the Bankruptcy Code depending upon whether the board of directors of the Purchaser has discretion or not to adopt and implement the Employee Incentive Plan.

## II. Jurisdiction, Venue & Constitutional Authority to Enter a Final Order

1.     The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1408.

2.     The Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, the Acting United States Trustee consents to the entry of a final order or judgment by this Court in this matter.

3.     Henry G. Hobbs, Jr. is the duly appointed Acting United States Trustee for Region 7, Southern and Western Districts of Texas, under 28 U.S.C. § 581(a)(7).

4.     Pursuant to 11 U.S.C. § 307, the Acting United States Trustee has standing to raise, appear and be heard on any issue in a case or proceeding under the Bankruptcy Code.

5.     Pursuant to 28 U.S.C. § 586(a)(3), the Acting United States Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11

U.S.C. § 101 *et seq*. Specifically, the Acting United States Trustee is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code, including monitoring the progress of such cases and taking such actions as the Acting United States Trustee deems to be appropriate to prevent undue delay in such progress. 28 U.S.C. § 586(a)(3)(G).

### III. Factual Background

**A.  General Information**

6.  On October 9, 2018, the Debtors filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code. Since the orders for relief under chapter 11 were entered, the Debtors have operated as debtors in possession under 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

7.  On October 18, 2018, the Acting United States Trustee appointed the Official Committee of Unsecured Creditors. *See* Dkt. No. 206.

8.  On December 14, 2018, the Debtors filed revised versions of the Disclosure Statement and Plan. *See* Dkt. Nos. 788 and 789. The Plan includes the following table summarizing the treatment and voting status of each of the classes of claims and interests:

| **Class** | **Claims and Interests** | **Status** | **Voting Rights** |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 6 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |

| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
|---|---|---|---|
| Class 9 | WCC Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

Plan, Art. III.A.

9. On December 19, 2018, the Court entered the Order approving the adequacy of the Disclosure Statement and the form of the ballots and notices. *See* Dkt. No. 841. The ballots for the impaired classes that are entitled to vote, including the Class 3 Holders of First Lien Secured Claims and the Class 4 Holders of General Unsecured Claims, include a box for electing to opt-out of the third party releases. *Id.* Moreover, the notices for the impaired and unimpaired classes that are not entitled to vote also include a box for electing to opt-out of the third party releases. *Id.*

## IV.  Objection

**A.  The Plan Fails to Satisfy the Requirements for Confirmation Under Section 1129(a)(1)**

10. Section 1129(a) of the Bankruptcy Code sets forth the requirements for confirming a chapter 11 plan on a consensual basis, when each impaired class of claims votes to approve the plan. Among other things, a plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

11. The Debtors bear the burden of establishing that the Plan complies with all of the elements of section 1129. *In re Cypresswood Land Partners, I,* 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied.") (citing *In re Internet Navigator Inc.,* 289 B.R. 128, 131 (Bankr. N.D. Iowa 2003)).

12. Under section 1129(a) of the Bankruptcy Code, debtors must carry their burden by a preponderance of the evidence. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re*

*Briscoe Enters. Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) ("[p]reponderance of the evidence is the debtor's appropriate standard of proof . . . under § 1129(a). . .); *In re T-H New Orleans Ltd. Partnership,* 116 F.3d 790, 801 (5th Cir. 1997); *In re Star Ambulance Serv., LLC,* 540 B.R. 251, 259 (Bankr. S.D. Tex. 2015) ("As proponent of the Plan, the Debtor must establish by a preponderance of the evidence that each of the confirmation requirements set forth in Bankruptcy Code § 1129 has been met.").

13. Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must comply with all applicable provisions of the Bankruptcy Code. The Plan, however, fails to satisfy this requirement for several reasons. Specifically, (i) the third-party releases proposed under the Plan from Releasing Parties who are not stakeholders or otherwise actively involved in these cases (the "Former Parties") are non-consensual and therefore violate section 524(e) of the Bankruptcy Code and (ii) the discharge of debts under the Plan violates section 1141(d)(3) of the Bankruptcy Code.

**B.      The Overly Broad Release, Exculpation and Injunction Provisions of the Plan Violate Section 524(e) of the Bankruptcy Code Insofar as the Former Parties are Concerned**

14. The Plan provides, in pertinent part:

> As of the Plan Effective Date, each Releasing Party is deemed to have released and discharged each WLB Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the WLB Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the WLB Debtors, the WLB Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a WLB Debtor and another WLB Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any

5

other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence.

Plan, Art. IX.E.

15. Accordingly, pursuant to the definition of a Releasing Party in the Plan, all holders of claims and interests will be deemed to have consented to the third party releases if they (i) vote to accept the Plan, (ii) abstain from voting on the Plan and do not opt out of the releases in the Plan, (iii) vote to reject the Plan and do not opt out of the releases in the Plan, or (iv) are deemed to reject or presumed to accept the Plan and do not opt out of the releases in the Plan. Plan, Art. I.A.131. Clearly, the burden is placed on the holders of claims and interests to opt out of the releases in the Plan, unless they vote to accept the Plan.

16. The Released Parties are defined as:

(a) the Successful Bidder; (b) the Stalking Horse Purchaser; (c) each Consenting Stakeholder; (d) the Holders of First Lien Claims; (e) the Holders of Bridge Loan Claims; (f) the DIP Lenders; (g) the Bridge Loan Agent; (h) the Credit Agreement Agent; (i) the DIP Agent; (j) the First Lien Notes Trustee; (k) each current and former Affiliate of each Entity in clause (a) through (j); (l) with respect to each Entity in clause (a) through (k), each such Entity's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (m) with respect to each WLB Debtor, each such WLB Debtor's current and former equity holders (unless an equity holder has opted out of being a Releasing Party, in which case such equity holder shall not be a Released Party), subsidiaries (other than the WMLP Debtors), officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Notwithstanding the above, the definition of "Released Parties" shall specifically exclude, in their respective capacities as such, (a) the WMLP Debtors, (b) their current and former lenders (and agents under any lending facility), and (c) each of the foregoing's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

Plan, Art. I.A.130.

      17.      The Plan also addresses exculpations and provides, in pertinent part:

> Except as otherwise specifically provided in the Plan, no Exculpated Party[2] shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.
>
> Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence,

---

[2]     "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the WLB Debtors; (b) the Consenting Stakeholders; (c) the Successful Bidder; (d) the DIP Lenders; (e) the DIP Agent; (f) the Holders of First Lien Claims; (g) the First Lien Notes Trustee; (h) the Credit Agreement Agent; (i) the Bridge Loan Agent; (j) the Holders of the Bridge Loan Claims; (k) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (l) with respect to each WLB Debtor, each such WLB Debtor's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. Plan, Art. I.A.66.

> criminal conduct, malpractice, misuse of commercially sensitive confidential information for competitive purposes that causes damages, or ultra vires acts as determined by a Final Order.

Plan, Art. IX.F.

18. According to the Disclosure Statement, the consideration for the third party releases under the Plan is:

> The consideration for releasing Claims under the Plan is the mutual releases provided by Released Parties to all other Released Parties. The WLB Debtors believe that this constitutes sufficient exchange of consideration in accordance with recent chapter 11 cases.

Disclosure Statement, Art. II.M.

19. The Plan provides that the Confirmation Order will approve of the third party releases under section 1123(b)(3)(A) and Bankruptcy Rule 9019. Specifically, it provides:

> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the WLB Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

Plan, Art. IX.E.

20. For releases to satisfy the requirements of a valid settlement there must be "consent and consideration by each participant in the agreement to be valid." *In re Bigler LP,* 442 B.R. 537, 544 (Bankr. S.D. Tex. 2010); *In re Wood Growers Central Storage Co.,* 371 B.R. 768, 776 (Bankr. N.D. Tex. 2007)(citing *Republic Supply Co., v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir. 1987).

8

21. The Former Parties consist of former officers, directors, representatives, professionals, affiliates, and equity holders (unless opted out of being a Releasing Party and Released Party) of the WLB Debtors, the Committee, the Successful Bidder, the Stalking Horse Purchaser, the Consenting Stakeholders, the Holders of First Lien Claims, the Holders of Bridge Loan Claims, the DIP Lenders, the Bridge Loan Agent, the Credit Agreement Agent, the DIP Agent, and the First Lien Notes Trustee. They are included in the definitions of a Releasing Party, Released Party, and Exculpated Party. The Former Parties are not stakeholders or otherwise actively involved in these bankruptcy cases. The third party release does not support a valid settlement insofar as the Former Parties are concerned because they did not receive notice, did not provide consent to be a Releasing Party, and did not receive a separate and valuable consideration from each Released Party.

22. The Disclosure Statement does not provide an explanation as to how the proposed third party releases and exculpations the Debtors propose meet the requirements set forth by Fifth Circuit precedent. The Debtors have not demonstrated in any way, nor to any degree, the appropriateness of the proposed provisions. The Fifth Circuit Court of Appeals has held that non-consensual, non-debtor releases and injunctions are prohibited under section 524(e) and must be struck from plans. *In re Pacific Lumber Co.*, 584 F.3d 229, 252-53 (5th Cir. 2009). In *Pacific Lumber Co.*, the Fifth Circuit evaluated a plan that released and exculpated various parties from liability relating to proposing, implementing, and administering the plan, other than for gross negligence and willful misconduct. It further clearly stated its view:

> In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties. *See, e.g., In re Coho Resources, Inc.,* 345 F.3d 338, 342 (5th Cir. 2003); *Hall v. National Gypsum Co.,* 105 F.3d 225, 229 (5th Cir. 1997); *Matter of Edgeworth,* 993 F.2d 51, 53-54 (5th Cir. 1993); *Feld v. Zale Corporation,* 62 F.3d 746 (5th Cir. 1995). These cases

> seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions.
>
> MRC/Marathon suggest we adopt a more lenient approach to non-debtor releases taken by other courts. . . Besides conflicting with *Feld v. Zale Corp.*, these cases all concerned global settlements of mass claims against the debtors and co-liable parties. . . . In fact, the Bankruptcy Code now permits bankruptcy courts to enjoin third-party asbestos claims under certain circumstances, 11 U.S.C. § 524(g), which suggests non-debtor releases are most appropriate as a method to channel mass claims toward a specific pool of assets. . . . There are no allegations in this record that either MRC/Marathon or their or the Debtor's officers or directors were jointly liable for any of [the debtors'] pre-petition debt. They are not guarantors or sureties, nor are they insurers. Instead, the essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose.

*In re Pacific Lumber Co.*, 584 F.3d at 252.

Additionally, the Court in *Pacific Lumber* specifically held that the fresh start of section 524(e) provided to debtors is not intended to serve this purpose of releasing parties from any negligent conduct that occurred during the course of the bankruptcy. *Id.* at 252-53. The Fifth Circuit further held that only the creditors' committee and its members, as the only disinterested volunteers, could obtain a release under this provision, and struck the provision as to all other parties. *Id. See also In re Vitro S.A.B. de CV,* 701 F.3d 1031 (5th Cir. 2012); *In re Bigler LP*, 442 B.R. 537 (Bankr. S.D. Tex. 2010); and *In re Patriot Place, Ltd.,* 486 B.R. 773 (Bankr. W.D. Tex. 2013).

23. Section 524(e) of the Bankruptcy Code prohibits the release and permanent injunction of claims against non-debtors in most circumstances. *See* 11 U.S.C. § 524(e) ("Except as provided in subsection (a)(3) . . . discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). Coupled with the interpretation of this code section by the Fifth Circuit, the Plan and the overly broad release,

10

injunction and exculpation clauses do not appear to be supported by any legal basis insofar as the Former Parties are concerned.

**C.    Disclosure Statement Lacks Adequate Information Regarding the Discharge**

24.    The Plan contemplates the sale of substantially all of the assets of the WLB Debtors. Disclosure Statement, Art. I.C.

25.    The Plan provides that:

> Pursuant to 1141(d) of the Bankruptcy Code, . . . the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Plan Effective Date, of Claims (including Black Lung Claims and any Intercompany Claims resolved or compromised after the Plan Effective Date by the Plan Administrator), Interests, and Causes of Action. . . .The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Plan Effective Date occurring.

Plan, Art. IX.B. As such, the Plan appears to provide for the Debtors to receive a discharge, without providing any clear legal justification.

26.    Section 1141(d)(3) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if (a) the plan is a liquidating plan, (b) the debtor will not be engaging in business after the consummation of the plan, and (c) the debtor would not be entitled to a discharge under 11 U.S.C. § 727(a).  *See* 11 U.S.C. § 1141(d)(3).  Under the facts and circumstances of these cases, the Debtors have failed to provide a legal justification for the WLB Debtors eligibility to receive a discharge.

**D.    The Plan May Violate Section 503(c) of the Bankruptcy Code**

27.    The Plan states that:

> Following the Plan Effective Date, the initial board of directors of the Purchaser *shall, in its sole discretion, adopt and implement the Employee Incentive Plan,* which shall provide for the terms and conditions under which the EP Pool may be allocated and distributed to certain participating employees of the Purchaser.

11

Plan, Art. IV.E. (emphasis added). It is unclear whether the board of directors of the Purchaser has the discretion or not to adopt and implement the Employee Incentive Plan.

28. The Plan defines the EIP Pool as:

> The EIP Pool is a pool of stock-based awards, in the form of options, appreciation rights, profit interests, or similar securities, as applicable, representing between 5 and 10 percent of the aggregate amount of Purchaser Stock, determined on a fully diluted and fully distributed basis, which will be reserved for distribution to certain participating employees of the Purchaser pursuant to the Employee Incentive Plan.

Plan, Art. 1.A.62.

29. Exhibit A of the RSA states that:

> On the Plan Effective Date, Purchaser will reserve exclusively for participating employees (such reserve, the "EIP Pool") a pool of shares of common stock or limited liability company Interests of Purchaser representing no less than 5% and up to 10% of Purchaser's common stock or limited liability interests in the form of options, appreciation rights, profit interests, or similar securities, as applicable, determined on a fully diluted and fully distributed basis (i.e., assuming conversion of all outstanding convertible securities and full distribution of the EIP Pool and all securities contemplated by the Plan). The terms and conditions for any initial awards shall be determined by the board of directors of the Purchaser.

Plan, Exhibit A, Plan Term Sheet of the RSA.

30. If this Court confirms the Plan, then the Employee Incentive Plan will be deemed approved. Because it is unclear whether the board of directors of the Purchaser has discretion to adopt and implement the Employee Incentive Plan, the Acting United States Trustee, out of an abundance of caution, raises the issue whether the Plan complies with section 503(c) of the Bankruptcy Code.

31. If section 503(c) does apply, the Debtors bear the burden of establishing that the Employee Incentive Plan satisfies all of the Code's requirements. *See GT*

*Advanced Tech., Inc. v. Harrington*, 2015 WL 4459502, *5 (Bankr. D.N.H. July 21, 2015) (*citing In re Hawker Beechcraft, Inc*., 489 B.R. 308, 313 (Bankr. S.D.N.Y. 2012)).

### V. Reservation of Rights

32. The Acting United States Trustee acknowledges the fact that the Debtors are negotiating with various constituencies regarding the Plan. To that end, the Acting United States Trustee reserves the right to object to other deficiencies at the hearing on confirmation of the Plan. Moreover, the Acting United States Trustee is concerned that to the extent that significant amendments to the Plan are filed prior to the confirmation hearing, that the parties are deprived of proper notice as required under Bankruptcy Rule 2002. Accordingly, the Acting United States Trustee also reserves the right to object on the grounds that any amendments should require proper notice under the Bankruptcy Rules.

**WHEREFORE,** the Acting United States Trustee respectfully requests that this Court enter an order which denies confirmation of the Plan, and for any and all further relief as may be equitable and just.

Dated: January 25, 2019              Respectfully Submitted,

HENRY G. HOBBS, JR.
ACTING UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN
DISTRICTS OF TEXAS

By:   /s/ Hector Duran
    Hector Duran
    Trial Attorney
    Texas Bar No. 00783996
    515 Rusk, Suite 3516
    Houston, TX 77002
    Telephone: (713) 718-4650 x 241
    Fax: (713) 718-4670

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 25, 2019, I conferred with Elizabeth Freeman of Jackson Walker LLP, counsel for the Debtors, but the parties were unable to resolve the matter before the objection deadline.

/s/ Hector Duran
Hector Duran

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission or BNC noticing to all Pacer System participants in these bankruptcy cases, on the 25th day of January, 2019.

/s/ Hector Duran
Hector Duran