# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DEBTORS' EMERGENCY MOTION TO WAIVE COMPLIANCE WITH SECTION 345(B) OF THE BANKRUPTCY CODE ON AN FINAL BASIS

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion (this "Motion").

---

1   Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

2   A detailed description of the Debtors' businesses and the reasons for commencing the chapter 11 cases is set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Westmoreland Coal Company, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 54] (the "First Day Declaration").

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (respectfully, the "Order") waiving compliance with section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## Jurisdiction

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are section 345(b) of the Bankruptcy Code, rule 7007-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

4.      Westmoreland Coal Company and its Debtor and non-Debtor affiliates operate the sixth-largest coal-mining enterprise in North America, including 19 coal mines in six states and Canada.  The Debtors primarily produce and sell thermal coal to investment grade power plants under long-term, cost-protected contracts, as well as to industrial customers and barbeque charcoal manufacturers.  Headquartered in Englewood, Colorado, the Debtors and their non-Debtor subsidiaries employ approximately 2,971 individuals.  The Debtors' revenue for the twelve-month

period that ended August 31, 2018, totaled approximately $850 million.  As of the Petition Date, the Debtors' aggregate prepetition indebtedness totaled approximately $1.1 billion.

5.        On October 9, 2018 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On October 18, 2018, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 206] (the "Committee").

6.        On the Petition Date, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Continue to Perform Intercompany Transactions* [Docket No. 16] (the "Cash Management Motion")[3] seeking, inter alia, the authority to continue using their existing Cash Management System, Bank Accounts, and Business Forms.  The Court entered an order approving the Cash Management Motion [Docket No. 83] on an interim basis that same day, and, on November 15, 2018, the Court entered an order approving the Cash Management Motion on a final basis [Docket No. 518] (the "Final Cash Management Order").

**Preliminary Statement**

7.        As described more fully in the Cash Management Motion, the Cash Management System currently is comprised of a total of 69 bank accounts (collectively, the "Bank Accounts"), each of which is identified on Exhibit 1 annexed to the Final Cash Management Order that are held

---

[3]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Cash Management Motion.

at ten different banks in Canadian dollars and U.S. dollars (collectively, the "Cash Management Banks"): Bank of New York Mellon ("BNY"); Canadian Imperial Bank of Commerce–Canada ("CIBC-Canada"); CIBC Bank US ("CIBC-US"); First Interstate Bank ("First Interstate"); First Tennessee Bank ("First Tennessee"); MorganStanley ("MorganStanley"); Texas Capital Bank ("Texas Capital"); UBS Financial Services, Inc. ("UBS"); Wellington Shields ("Wellington"); and Wells Fargo Bank ("Wells Fargo").

8.     BNY, First Tennessee, Texas Capital, and Wells Fargo are designated as authorized depositories in the Southern District of Texas by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), pursuant to the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), and as such, comply with the requirements under section 345(b) of the Bankruptcy Code.

9.     The other Cash Management Banks are not authorized depositories. Nonetheless, these banks, with which the Debtors have long-standing business relationships, are well-capitalized and financially stable institutions. In any event, the Debtors maintain that all of the institutions at which the Bank Accounts are maintained are insured by the Federal Deposit Insurance Corporation (the "FDIC") or the Canada Deposit Insurance Corporation (the "CDIC"). Of the approximately 61 Bank Accounts that are not held in authorized depositories, but are insured by the FDIC, most comply with section 345(b) of the Bankruptcy Code because such Bank Accounts do not hold funds in excess of the $250,000 limit imposed by the FDIC (the "FDIC Limit"). Approximately 25 Bank Accounts are Subsidiary Operating Accounts or Payroll Accounts, which are zero-balanced accounts and generally are swept daily into one of the Concentration Accounts. Likewise, the three Dormant Accounts contain approximately $2,000,

collectively, and thus, comply with the FDIC Limit.  Approximately nine of the remaining Bank Accounts are also in compliance with the FDIC Limit.

10.     The remaining Bank Accounts which are not in compliance with section 345(b) of the Bankruptcy Code are held primarily at CIBC-Canada or CIBC-US (the "Remaining Bank Accounts"), a well-established global financing institution, with whom the Debtors have a long-standing, preexisting relationship.  The principal basis for their noncompliance with the U.S. Trustee Guidelines is location—not financial soundness or stability.  Indeed, since the Remaining Bank Accounts are based outside of the United States, they are less likely to be identified as an authorized depository in the U.S. Trustee Guidelines.

11.     Following the Petition Date, the Debtors worked to ensure that the vast majority of Bank Accounts comply with section 345(b) of the Bankruptcy Code.  Specifically, the Debtors first engaged with CIBC-Canada and CIBC-US regarding their becoming an authorized depository or the possibility of posting a bond.  CIBC-Canada and CIBC-US declined to become an authorized depository, and the posting of a bond proved too difficult for the Debtors, because it would require significant liquidity and resources of the Debtors, thus depleting recoveries to other parties in interest.  The Debtors next then analyzed whether it would be feasible to transfer the Remaining Bank Accounts to an authorized depository, but ultimately determined that doing so was not achievable without major disruption to ongoing business operations and the Debtors' restructuring as a whole.  As such, the Debtors have no way of bringing the Remaining Bank Accounts into compliance with section 345(b) of the Bankruptcy Code without causing potentially material harm to the Debtors' Cash Management System and their business operations.  The vast majority of the Debtors' operational Bank Accounts, including the Concentration Accounts, Customer Deposit Accounts, Payroll Accounts, and Subsidiary Operating Accounts, are held at CIBC-US or

CIBC-Canada. These Bank Accounts, therefore, are the backbone of the Debtors' business operations. Any change would need to be carefully analyzed and executed to ensure that there is no disruption or interruption to inflows of customer monies, payment of employee wages, or operating expenses routinely paid out of the Subsidiary Operating Accounts. Moreover, as part of the Sale Transaction (described in detail in the *Joint Chapter 11 Plan of Westmoreland Coal Company and Certain of Its Debtor Affiliates* [Docket No. 294] (the "Plan")), substantially all of the Cash Management System, including the Remaining Bank Accounts of the WLB Debtors, will be transferred to the Purchaser.[4]  Indeed, the WLB Debtors currently have their confirmation hearing scheduled for February 28, 2019, with the closing date of the Sale Transaction anticipated to occur promptly thereafter—mere weeks away. Requiring the Debtors to move these accounts to an authorized depository now would delay and potentially dismantle the Sale Transaction, and consequently, the conclusion of the WLB Debtors' cases. At the very least, doing so now would require significant time and resources and would severely disrupt the Debtors' restructuring process to the detriment of all interested parties. Therefore, with respect to the Remaining Bank Accounts, the Debtors seek a waiver of the requirements of section 345(b) of the Bankruptcy Code.

12.     Further, as discussed above, the vast majority of the Bank Accounts that are not held at authorized depositories nonetheless comply with section 345(b) of the Bankruptcy Code because they are maintained at a bank insured by the FDIC and hold funds within the FDIC Limit. Therefore, granting a waiver of section 345(b) of the Bankruptcy Code would not negatively affect any party in interest, particularly in light of the proximity to the confirmation hearing.

---

[4]     The terms "Sale Transaction" and "Purchaser" shall have the meanings ascribed to them in the Plan. For the avoidance of doubt, the WMLP Debtors' Bank Accounts will not be transferred to the Purchaser.

13.     In light of the foregoing, the Debtors seek a waiver of section 345(b) of the Bankruptcy Code.

## **Basis for Relief**

14.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the U. S. Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303.  *See* 11 U.S.C. § 345(b).  A bankruptcy court, however, may waive these requirements "for cause."  *Id.*; *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

15.     The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) "for cause" arises from the 1994 amendments to the Bankruptcy Code.  The legislative history of that amendment provides as follows:

> Section 345 of the Code governs investments of funds of bankruptcy estates.  The purpose is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate.  Under current law, all investments are required to be FDIC insured, collateralized or bonded.  While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors.  This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33 F.3d 294 (3d Cir. 1994).

*In re Service Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994)).

16.     In *Service Merchandise*, the bankruptcy court identified the following factors as a guide for determining whether cause exists to waive the requirements of section 345(b) of the Bankruptcy Code:

(a)     the sophistication of the debtor's business;

(b)     the size of the debtor's business operations;

(c)     the amount of investments involved;

(d)     the Moody's and Standard and Poor ratings of the financial institutions where the debtor's funds are held;

(e)     the complexity of the case;

(f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;

(g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)     the benefit to the debtor of current practices;

(i)     the harm, if any, to the estate; and

(j)     the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.

*Serv. Merch. Co.*, 240 B.R. at 896.  The *Service Merchandise* court examined these factors and concluded that "cause" existed to warrant relief under section 345(b) of the Bankruptcy Code because the debtors were "large, sophisticated [companies] with a complex cash management system[,]" with the ability to shift money as needed to ensure that their funds were safe.  *Id.* Moreover, the benefits to the debtor in waiving the section 345(b) requirements far outweighed any potential harm to the estate, and the failure to waive the requirements "would needlessly handcuff these debtors' reorganization efforts."  *Id.* at 896–97.

17.     As in *Service Merchandise*, the Debtors are a large, sophisticated enterprise with a complex cash management system that allows their remaining operations to function efficiently

and with minimal risk.  The Remaining Bank Accounts that do not comply with section 345(b) of the Bankruptcy Code are in CIBC-Canada, which is a well-established global financial institution that is heavily regulated with strict capital and reporting requirements.  These requirements reduces risks to the funds deposited in such accounts.  Moreover, the Debtors and CIBC-Canada have a preexisting relationship whereby CIBC-Canada is familiar with the Debtors' current marketing and sale processes.  Thus, the Debtors' ability to continue to use the Remaining Bank Accounts will be administratively convenient, efficient, and minimize unnecessary costs to the estates. Finally, as part of the Sale Transaction, the Cash Management System, including the Remaining Bank Accounts, will be transferred to the Purchaser.  Requiring the Debtors to move these accounts to an authorized depository now (assuming one would take on these accounts) could potentially dismantle the Sale Transaction, and would at the very least severely disrupt the Debtors' restructuring process to the detriment of the Debtors' creditors.

18.     Considering that the vast majority of Bank Accounts comply with section 345(b) of the Bankruptcy Code, granting a waiver from the requirements under section 345(b) of the Bankruptcy Code would not negatively affect any party in interest.  Accordingly, the factors show that sufficient cause exists to grant a waiver of section 345(b) of the Bankruptcy Code with respect to the Remaining Bank Accounts.

19.     Courts in this district have granted relief similar to that requested herein in other complex chapter 11 cases.  *See, e.g., In re Seadrill Limited*, No. 17-60079 (Bankr. S.D. Tex. Oct. 24, 2017) (waiving the requirements of section 345(b); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017) (same); *In re Midstates Petrol. Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same); In re Sherwin Alumina Co., No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (same); *In re CCNG Energy Partners, LP*, No. 15-70136 (Bankr. W.D.

Tex. Oct. 29, 2015) (same); *In re RREAF O&G Portfolio #2 LLC*; No. 15-70094 (Bankr. W.D. Tex. Jul. 14, 2015) (same).

## **Emergency Consideration**

20.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion.  As set forth herein, the waiver of compliance with section 345(b) of the Bankruptcy Code is necessary for the Debtors' successful restructuring and this emergency Motion is necessary to prevent unnecessary delay in these chapter 11 cases.  Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## **Notice**

21.     The Debtors will provide notice of this Motion to the following parties or their respective counsel (collectively, the "Notice Parties"):  (a) the Office of the U. S. Trustee for the Southern District of Texas; (b) the Committee; (c) the indenture trustee under the WLB Debtors' 8.75% senior secured notes due 2022; (d) the ad hoc group of lenders under the WLB Debtors' prepetition term loan facility due 2020 and the WLB Debtors' 8.75% senior secured notes due 2022; (e) the administrative agent under the WLB Debtors' prepetition term loan facility due 2020; (f) the administrative agent under the WLB Debtors' bridge loan facility due 2019; (g) the administrative agent under the WMLP Debtors' term loan facility due 2018; (h) the ad hoc committee of certain lenders under the WMLP Debtors' term loan facility due 2018; (i) the administrative agent under the WLB Debtors' debtor-in-possession financing facility; (j) the lenders under the WLB Debtors' debtor-in-possession financing facility; (k) any statutory committee appointed in these cases; (l) the United States Attorney's Office for the Southern District of Texas; (m) the Internal Revenue Service; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the

offices of the attorneys general for the states in which the Debtors operate; (p) the Securities and Exchange Commission; (q)  the Cash Management Banks; and (s) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

22.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
February 7, 2019

/s/ Patricia B. Tomasco
_____

Patricia B. Tomasco (Bar No. 01797600)
Matthew D. Cavenaugh (Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         ptomasco@jw.com
               mcavenaugh@jw.com

*Conflicts Counsel to the WLB Debtors and Local Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Michael B. Slade (Bar No. 24013521)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               michael.slade@kirkland.com
               gregory.pesce@kirkland.com

-and-

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com

-and-

Anna G. Rotman, P.C. (Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:     (713) 836-3600
Email:         anna.rotman@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on February 7, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco