# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/28/2019

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | ) | Case No. 18-35672 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1367** |

## ORDER AUTHORIZING AND APPROVING
## INTERCOMPANY SETTLEMENT TERM SHEET

Upon the motion (the "Motion")[2] of the above-captioned Debtors for entry of this Order, (a) approving a settlement consistent with the Term Sheet (the "Settlement") attached hereto as **Annex 1**, by and among the WLB Debtors and the WMLP Debtors and their respective secured creditors, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1409; and this Court having found that the parties negotiated the terms and conditions of the Settlement in good faith, at arm's length, and free of any collusion; and this Court having found that the terms and conditions of the Settlement are fair, equitable, reasonable and in the best interests of the WLB Debtors and the WMLP Debtors, their respective estates, creditors and equity holders, and is a

---

[1]  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland.  Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion and the Term Sheet, as applicable.

valid and sound exercise of the business judgment of the WLB Debtors and the WMLP Debtors and should be approved; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having found that there is good cause for waiving the stay referred to in Bankruptcy Rule 6004(h), to the extent it is applicable; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT.

1.     The Motion is granted as provided herein.

2.     The terms of the Settlement attached hereto as **Annex 1** are approved.

3.     The WLB Debtors and the WMLP Debtors are hereby authorized and directed to effectuate the Settlement consistent with the Term Sheet, and the Debtors are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately continue and fully implement the Settlement in accordance with the terms and conditions set forth in the Term Sheet, all of which are hereby approved.

4.     Notwithstanding the terms and conditions set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 495], all fees and payments contemplated under the Settlement shall be governed in accordance therewith.

5.     The WLB Debtors and/or the WLB Purchaser are each authorized and directed to consummate the acquisition of Public Units, tendered to them in connection with the Tender Offer.

6.     Upon the Debtors' entry into the Settlement, it shall be binding on them, their estates, and any trustee appointed in these cases.

7.     In the event the Effective Date (as defined in the term sheet attached as **Exhibit 1** to **Exhibit A** to the *WMLP Debtors' Emergency Motion for Entry of an Order Authorizing and Approving the Settlement Term Sheet Between the WMLP Debtors, the MLP Secured Lenders, and the Committee* [Docket No. 1497] (the "WMLP UCC Settlement Term Sheet") does not occur, then within 30 days of delivery of a Termination Notice (as defined in the WMLP UCC Settlement Term Sheet), the Committee may file a motion for reconsideration of this Order (the standard for any such reconsideration being as if the Settlement had not been approved) for the sole purpose of allowing the WLB Debtors (or their plan administrator or claims administrator, as applicable) to assert unsecured claims (if any) against the WMLP Debtors solely as a defense to any unsecured claims (if any) that any WMLP Debtor may assert against the WLB Debtors; *provided*, *further*, that all parties' rights to challenge any such request for reconsideration are fully reserved and preserved.

8.     Upon entry of this Order, the MLP Secured Parties shall be deemed to consent to payment of the $572,000 of Additional Tax and Interest to the Wyoming DOR by Westmoreland Kemmerer, LLC (or another WMLP Debtor) (the "Wyoming Payment"), and if such payment is not made within two (2) business days after the entry of this Order, the WMLP Debtors agree that any additional interest, fees, fines, or other costs with respect to the Wyoming Payment accruing after that time shall be liabilities of their estates with no further recourse to the WLB Debtors.

9.     Notwithstanding anything to the contrary herein, this Order shall not release any claims, counterclaims, rights, demands, causes of action or defenses under applicable law that PacifiCorp has or may have against any of the WMLP Debtors; *provided* that the rights of all

parties (including the WLB Debtors and the WMLP Debtors) with respect to any such claims, counterclaims, rights, demands, causes of action or defenses are fully reserved and preserved in all respects.

10.     In the event of a breach of section 11.1 (in respect of Westmoreland Coal Company in its capacity as employer of the Employees) of the Buyer's APA[3], the Sellers shall enforce such section against the Buyer at the request, and at the sole expense, of the WLB Debtors, the WLB Purchaser or the WLB Secured Lenders in accordance with the terms of the Buyer APA.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed: February 28, 2019**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

---

[3] "Buyer's APA" shall have the meaning ascribed to it in the *Order (I) Approving the Sale of the Kemmerer Mine and Substantially All Assets Related Thereto Free and Clear of All Non-Assumed Liens, Claims, Encumbrances and Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief.*

## Annex 1

**Term Sheet**

Execution Version

## Summary Terms and Conditions For an Agreement Resolving
## Intercompany Issues Between WMLP Debtors, WLB Debtors, and Certain Other Parties

This term sheet (the "Term Sheet"), dated as of February 12, 2019, proposes terms for a proposed settlement (the "Settlement") resolving all issues, including without limitation, intercompany claims, among (a) Westmoreland Resource Partners, LP ("WMLP") and its subsidiaries (collectively with WMLP, the "WMLP Debtors"); (b) Westmoreland Coal Company ("WLB") and its subsidiaries not including the WMLP Debtors (collectively, excluding the WMLP Debtors, the "WLB Debtors," and including the WMLP Debtors, the "Debtors"), as part of the Debtors' bankruptcy cases initiated on October 9, 2018 (the "Petition Date"), under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); (c) the WLB Secured Lenders;[1] and (d) the MLP Secured Lenders (as defined in the MLP Cash Collateral Order).[2]

THIS TERM SHEET IS NOT AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.

---

[1] WLB Secured Lenders means holders of DIP Facility Claims, Credit Agreement Claims and First Lien Notes Claims.  To the extent that the consent of the WLB Secured Lenders is necessary for matters related to this Term Sheet, such consent shall be provided by the Required Consenting Stakeholders.

[2] Capitalized terms used herein shall have the meanings ascribed to such terms as set forth later in this Term Sheet, or if not defined herein, shall have the meanings ascribed to such terms in the *Joint Chapter 11 Plan of Westmoreland Coal Company and Certain of Its Debtor Affiliates* [Docket No. 788-1] (as may be amended, modified or supplemented from time to time in accordance with the terms thereof (the "WLB Chapter 11 Plan") or the *Final Order (I) Authorizing the MLP Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Certain Protections to Prepetition Lenders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 521] (as amended, modified or supplemented from time to time in accordance with the terms thereof, the "MLP Cash Collateral Order"), as applicable.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Kemmerer Pension Plan** | Upon entry of an order granting the relief requested in the pending motion pursuant to sections 1113 and 1114 of the Bankruptcy Code [Docket No. 1091] (the "1113/1114 Order"), the Elkol-Sorenson Plan (as defined in the Disclosure Statement) shall be frozen with respect to both participation and accruals pursuant to applicable law, which freeze shall go into effect on March 10, 2019 in accordance with the notices sent pursuant to section 204(h) of the Internal Revenue Code. The purchaser of the assets of the WLB Debtors (the "WLB Purchaser")[3] shall become the plan sponsor for the Elkol-Sorenson Plan and assume such obligations under such frozen pension plan effective as of the effective date under the WLB Chapter 11 Plan (such date, the "WLB Plan Effective Date"). For the avoidance of doubt, the Kemmerer Assets shall be sold free and clear of any pension obligations, and none of the WMLP Debtors or any purchaser of any of the WMLP Debtors' assets shall assume, or become the plan sponsor, of any defined benefit pension plan, including the Elkol-Sorenson Plan, unless such purchaser of the Kemmerer Assets agrees to do so in writing. |
| **Settlement Amounts Pursuant to Section 1114** | • Any amounts agreed to be paid to, or on behalf of, the United Mine Workers of America ("UMWA") in a settlement, or pursuant to the 1113/1114 Order, in each case, with respect to any retiree benefit obligations (the "OPEB Settlement") shall be allocated in the following manner: (i) the WMLP Debtors only will pay $1 million towards any OPEB Settlement, which amounts will be used solely with respect to Kemmerer-related UMWA retiree benefit obligations (the "WMLP OPEB Settlement Payment"), and (ii) the balance shall be paid by the WLB Debtors, the WLB Secured Lenders, or their respective designee(s); provided, that a payment in excess of $5 million by the WLB Debtors or the WLB Secured Lenders shall require the consent of the WLB Secured Lenders.<br><br>• Except as provided under the MLP TSA or pursuant to the terms of the OPEB Settlement, each, in form and substance acceptable to the MLP Secured Lenders and the WLB Secured Lenders, upon the payment of the OPEB Settlement and the effective date of the 1113/1114 Order, neither the WLB Debtors, the WLB Purchaser, nor the WMLP Debtors shall have any obligation with respect to any Retiree Benefits relating to or arising from the Kemmerer CBA (as each such term is defined in the 1113/1114 motion). |
| **Services and Transition Services Agreements** | • Subject to the entry into each MLP TSA, on the WLB Plan Effective Date, the Services Agreement (the "Prior Shared Services Agreement"), dated as of January 1, 2015, between the Westmoreland Resources GP, LLC (the "GP") and WMLP shall be rejected pursuant to section 365 of the Bankruptcy Code. Any undisputed amounts accrued after the Petition Date and owed by WMLP under |

---

[3] For purposes of this Term Sheet, all subsequent references to any of the WLB Debtors shall refer to, as the context requires, the successors of such WLB Debtors, including the WLB Debtors as reorganized pursuant to the WLB Chapter 11 Plan (if applicable), the Liquidating Trust or the Plan Administrator, as applicable. The WLB Chapter 11 Plan and any order approving the Settlement shall provide that the Settlement and each MLP TSA shall be binding on and enforceable against the any successor of WLB Debtors, including the WLB Debtors as reorganized pursuant to the WLB Chapter 11 Plan (if applicable), the Liquidating Trust and the Plan Administrator. To the extent the restructuring transactions under the WLB Chapter 11 Plan includes a reorganization of the WLB Debtors' businesses as a going concern, the parties to this Term Sheet will work in good faith to give effect to the terms and intent of the Term Sheet.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| | the Prior Shared Services Agreement on the WLB Plan Effective Date, but not yet paid to the WLB Debtors, shall promptly be paid or reimbursed to the WLB Debtors through the Account Debit when such amounts come due in accordance with current practice. |
| | The Required Consenting Stakeholders shall cause the WLB Purchaser to, and the WLB Purchaser and the WLB Debtors shall, on the WLB Plan Effective Date, enter into two Transition Services Agreements with the applicable WMLP Debtor, or, at such WMLP Debtor's request, the purchaser of the assets encompassing the Kemmerer mine (the "Kemmerer Assets", and such purchaser, the "Kemmerer Purchaser"): one for Back-Office Services[4] (the "Back-Office TSA") and one for Management Services[5] (the "Management TSA" and collectively with the Back-Office TSA, the "MLP TSA") that will include the following terms and conditions:<br><br>• Back-Office TSA.  For the period commencing on the WLB Plan Effective Date until terminated by WMLP,[6] the WLB Purchaser will continue to provide Back-Office Services related to the Kemmerer Assets now provided to the WMLP Debtors in connection with the Kemmerer Assets under the Prior Shared Services Agreement, at the current service levels thereunder, in exchange for prompt and timely payment, when due and payable, of the following: the MLP TSA Fee for Back-Office Services, the Employee Payroll/Benefits Reimbursement, undisputed payments (if any) due pursuant to the Stipulation[7] and the WMLP Expense Share. |

---

[4] "Back-Office Services" consist of general and administrative services, including, legal, accounting, treasury, insurance administration and claims processing, risk management, health, safety and environmental, information technology, human resources, credit, payroll, internal audit, and taxes, consistent with the Prior Shared Services Agreement.

[5] "Management Services" consist of certain operating services and engineering services, including financial modelling services, sales and marketing (including contracts for the sale, storage and handling, and logistics and transportation of coal) consistent with the Prior Shared Services Agreement.

[6] For purposes of this "Services and Transition Services Agreements" section, (a) all rights and obligations shall accrue to the applicable MLP TSA counterparty:  either the applicable WMLP Debtors or the Kemmerer Purchaser, in its capacity as a contract counterparty or an assignee of the applicable WMLP Debtors, as applicable, and for ease of reading, this section shall use "WMLP" when referring to the applicable MLP TSA counterparty, and (b) if any WMLP Debtor has an express consent, termination or election right or other similar discretionary right, then the MLP Secured Lenders shall also have a corresponding consent right over such action of the WMLP Debtor; provided, however, that if a WMLP Debtor and the MLP Secured Lenders disagree on a particular course of action or decision, then the MLP Secured Lenders may request the Bankruptcy Court to resolve the dispute on no less than two (2) days' prior notice.

[7] "Stipulation" shall mean the *Third Stipulation and Agreed Order Among (A) Westmoreland Resources Partners, LP and its Subsidiaries, (B) Westmoreland Coal Company and Certain of its Subsidiaries and (C) the MLP Required Lenders Modifying Cash Collateral Order* [Docket No. 1117].  The following process will be used in the event that amounts are owed by the WMLP Debtors to the WLB Debtors under the Stipulation:

• Within 3 business days of the receipt of any amounts due under the Stipulation, the WLB Debtors shall provide notice of such amounts to the WMLP Debtors (the "Reimbursement Documentation"), with copies to counsel to the WLB Secured Lenders and MLP Secured Lenders.

• The WMLP Debtors and the MLP Secured Lenders shall have 10 business days to object to any such Reimbursement Documentation, which objection shall be in writing and delivered to the WLB Debtors and the WLB Purchaser, with copy to counsel to the WLB Secured Lenders and MLP Secured Lenders.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| | • Management TSA: For the period commencing on the WLB Plan Effective Date until terminated by WMLP, the WLB Purchaser will continue to provide Management Services related to the Kemmerer Assets now provided to the WMLP Debtors in connection with the Kemmerer Assets under the Prior Shared Services Agreement, in substantial accordance with current service levels thereunder, in exchange for prompt and timely payment, when due and payable, of the following:  MLP TSA Fee for Management Services, the Employee Payroll/Benefits Reimbursement, undisputed payments (if any) due pursuant to the Stipulation and the WMLP Expense Share.  WMLP, with the consent of the MLP Secured Lenders, may elect to receive only Back-Office Services (and terminate the Management TSA) upon notice to WLB and WLB Purchaser. <br><br> • WMLP Breach:[8] <br><br>     o If WMLP breaches the applicable MLP TSA by failing to timely make the payments set forth in the applicable MLP TSA when due and payable, then the WLB Purchaser shall provide written notice (which may be via e-mail) of such breach to WMLP and the MLP Secured Lenders.  If WMLP does not cure or dispute such breach within five (5) business days of receipt of such notice, then WLB Purchaser may, in its sole discretion, terminate the applicable MLP TSA; provided, however, that if, within the foregoing cure period, WMLP notifies WLB Purchaser (which may be via e-mail) that it disputes that a breach has occurred, then WLB Purchaser shall not be entitled to terminate the applicable MLP TSA until it obtains a determination from the Bankruptcy Court that such a breach has occurred entitling the WLB Purchaser to terminate; provided, further, that the parties to such dispute consent to have it heard by the Bankruptcy Court on shortened notice of not less than two (2) business days' notice (if requested); provided, further that, if the use of cash collateral is terminated under the MLP Cash Collateral Order, the WLB Purchaser may terminate any MLP TSA immediately to the extent such MLP TSA has not been assigned by the applicable WMLP Debtor prior to the date of such termination. <br><br>     o If WMLP materially breaches one of the applicable MLP TSAs by reason other than failing to timely make payments set forth in the applicable MLP TSA, to the extent due and payable, then the WLB Purchaser shall provide written notice (which may be via e-mail) of such breach to WMLP and the MLP Secured Lenders.  If WMLP does not cure or dispute such breach within forty-five (45) days of |

---

• If the WMLP Debtors or the MLP Secured Lenders have not objected to the Reimbursement Documentation, then after the 10th business day, the WLB Debtors shall collect the undisputed amounts from the Reimbursement Documentation by Account Debit.

• Any dispute related to the Reimbursement Documentation shall be resolved by the Bankruptcy Court and the parties to such dispute consent to have such dispute heard on shortened notice of not less than seven days' notice (if requested).

[8] Unless the MLP TSAs have been assigned to the Kemmerer Purchaser, the MLP TSAs shall automatically terminate upon the entry of a final and non-appealable order converting or dismissing the WMLP Debtors' chapter 11 cases (and the WMLP Debtors shall have no further obligations under the MLP TSA upon such termination) if not otherwise agreed by the WLB Debtors and the WLB Purchaser.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| | receipt of such notice, then WLB Purchaser may, in its sole discretion, (x) terminate the applicable MLP TSA; provided, however, that if, within the foregoing cure period, WMLP notifies WLB Purchaser (which may be via e-mail) that it disputes that a breach has occurred, then WLB Purchaser shall not be entitled to terminate the applicable MLP TSA until it obtains a determination from the Bankruptcy Court that such a breach has occurred entitling the WLB Purchaser to terminate; provided, further, that the parties to such dispute consent to have it heard by the Bankruptcy Court on shortened notice of not less than seven (7) days' notice (if requested), or (y) assign the applicable MLP TSA to a third-party if, within fifteen (15) days of sending such notice of breach, WLB Purchaser has provided further notice to WMLP (which may be via e-mail) of such intent to assign the applicable MLP TSA, effective upon the forty-sixth (46th) day of a breach that has not been cured, and WLB Purchaser has consulted with WMLP regarding the identity and qualifications of the proposed assignee (which assignee may be requested by WMLP, in its sole discretion, to provide reasonable adequate assurance of future performance under the applicable assigned MLP TSA, and the Bankruptcy Court shall determine any dispute regarding such adequate assurance).  WLB Purchaser agrees that, until such time as the breach is cured, adjudicated by the Bankruptcy Court, or the applicable MLP TSA is terminated or assigned as set forth in (x) or (y), it will continue to provide services under the applicable MLP TSA.  Any dispute regarding the ability of the proposed assignee to perform such services shall be determined by the Bankruptcy Court.<br><br>• WLB Purchaser Breach:<br><br>   o   If the WLB Purchaser materially breaches the applicable MLP TSA, then WMLP shall provide written notice of such breach to the WLB Purchaser, with a copy to the MLP Secured Lenders (each of which may be via e-mail).  If the WLB Purchaser does not cure or dispute such breach within forty-five (45) days of receipt of such notice, then WMLP may, in its sole discretion, (i) terminate the applicable MLP TSA or (ii) withhold the then-applicable MLP TSA Fees and the amounts (if any) due under the Stipulation, in each case, that are due as of the date of the breach and any such amounts that would become payable subsequently; provided, however, that if, within the foregoing cure period, WLB Purchaser notifies WMLP (which may be via e-mail) that it disputes that a breach has occurred, then WMLP shall not be entitled to terminate the applicable MLP TSA or withhold the then-applicable MLP TSA Fee or the amounts (if any) due under the Stipulation until it obtains a determination from the Bankruptcy Court that such a breach has occurred entitling WMLP to terminate or so withhold; provided, further, that the parties to such dispute consent to have it heard by |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
|  | the Bankruptcy Court on shortened notice of not less than seven (7) days' notice (if requested).  WLB Purchaser agrees that, until such time as the breach is cured, adjudicated by the Bankruptcy Court, or the applicable MLP TSA is terminated, it will continue to provide uninterrupted services under the applicable MLP TSA notwithstanding WLB Purchaser's purported breach.<br><br>• The "MLP TSA Fee" means cash in an amount equal to (x) $400,000 per month for months where both Back-Office Services and Management Services are provided and (y) $200,000 per month for months where only Back-Office Services are provided.  Unless WMLP terminates the applicable MLP TSA prior to the first business day of the given month or there is a breach by the WLB Purchaser that has not been cured within the cure period set forth in the preceding paragraph, the WLB Purchaser will collect the applicable MLP TSA Fee on the first business day of the given month by Account Debit (unless with respect to an assignee of the WMLP Debtors, the Bankruptcy Court determines a means of adequate assurance of future performance other than the Account Debit).  Unless there is a material breach by WLB Purchaser, each month's MLP TSA Fee shall be non-refundable (provided that WMLP shall be entitled to a refund of 50% of the applicable MLP TSA Fee for a given month if WMLP terminates the MLP TSA prior to the 15th day of such month), and not subject to setoff, defense or counterclaim.<br><br>• The WLB Purchaser may allocate a pro rata share (based on the ratio of the number of hours worked for the WMLP Debtors in a given month to the total number of hours worked by the applicable individual in such month) of the monthly compensation of Joe Micheletti, Jen Grafton and Scott Henry for services rendered to WMLP, which shall be included in and billed under the applicable MLP TSA; provided, however, that the amount of any increase to the amount of such monthly compensation, following the WLB Plan Effective Date through the termination of the applicable MLP TSA, shall be subject to the consent of the WMLP Debtors and the MLP Secured Lenders (such consent not to unreasonably withheld), and if such consents are not provided, such increased compensation rate shall not be charged to WMLP under the applicable MLP TSA.<br><br>• Notwithstanding the termination of the Prior Shared Services Agreement as set forth in this Term Sheet, WLB shall continue to employ and pay the employees (including UMWA members subject to the "CBA" section of this Term Sheet) who perform services on behalf of WMLP during the term of the applicable MLP TSA (which individuals shall remain employees of WLB) (the "Employees") all wages and benefits paid or payable to Employees in connection with the Kemmerer Assets and shall, in accordance with current practice, collect amounts for estimated payroll and benefits one day in advance of the funding of the applicable payroll and benefits (the "Employee Payroll/Benefits Reimbursement") by debiting the bank account maintained for the WMLP Debtors for such purposes (such debiting, the "Account Debit"), which accounts shall remain open until the date of the termination of the transition services period in the applicable MLP TSA (and unless with respect to an assignee of the WMLP |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| | Debtors, the Bankruptcy Court determines a means of adequate assurance of future performance other than the Account Debit). From and after the WLB Plan Effective Date, the WLB Purchaser shall provide the administrative services to process the wages and benefits to be paid or provided to the Employees working at the Kemmerer Assets pursuant to the applicable MLP TSA. The WLB Purchaser shall have no obligation to pay wages and benefits to the UMWA or non-union Employees or to reimburse WLB for such payments, and the Stalking Horse Purchase Agreement shall be amended to provide that WLB Purchaser shall have no obligations or assume any liabilities of WLB on account of such wages and benefits, in each case, except as provided in the preceding sentence. In the event of a breach by the WLB Purchaser under this section, WMLP shall notify the WLB Purchaser of such breach (which may be via e-mail), and WMLP shall be entitled to seek relief (on an emergency basis) from the Bankruptcy Court to enforce the terms of this Term Sheet and for specific performance; provided, however, that the parties to such dispute consent to have it heard by the Bankruptcy Court on shortened notice of not less than two (2) days' notice (if requested).<br><br>• Assignment: (a) The applicable WMLP Debtor shall have the right, after consulting in advance with the WLB Debtors and the WLB Purchaser, subject to the consent of the MLP Secured Lenders, to assign the Management TSA and the Back-Office TSA in connection with the sale of any mine complex or substantially all of the assets of any mine complex, or sale of all or substantially all of the assets, merger, sale of equity interests or other change of control or business combination transaction of WMLP or any such mine complex to a purchaser or affiliate of a purchaser (which purchaser or affiliate may be requested by the WLB Purchaser, in its sole discretion, to provide reasonable adequate assurance of future performance under the applicable assigned MLP TSA, the Bankruptcy Court shall determine any dispute regarding such adequate assurance),[9] in which case, WMLP shall cease to have any liability or payment obligations under the applicable MLP TSA so assigned, and the assignee shall have all of the rights and remedies of the assignor thereunder; (b) the WLB Purchaser may assign to a third-party the applicable MLP TSA on or after the date that is six (6) months from the WLB Plan Effective Date after at least 60 days' advance consultation with WMLP and the MLP Secured Lenders; (c) the applicable MLP TSA may be assigned by WLB Purchaser to a third party at any time upon the consent of the Conflicts Committee of the GP (or any successor governance body for WMLP) and the MLP Secured Lenders; (d) after the assignment of the applicable MLP TSA to the Kemmerer Purchaser, the applicable MLP TSA may be assigned by WLB Purchaser to a third party at any time upon the consent of the Kemmerer Purchaser; and (e) the applicable MLP TSA may be assigned by WLB Purchaser upon an uncured breach as per the paragraph entitled "WMLP Breach" above. Notwithstanding the foregoing, no |

---

[9] WLB Purchaser intends to assert that such adequate assurance include the maintenance of the WMLP Bank Account or a replacement thereof for purposes of the Account Debit. The rights of all parties regarding the form of adequate assurance (if any) required under applicable law, as well as any defenses or objections thereto, are reserved pending any hearing on such matter before the Bankruptcy Court.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| | party may assign the applicable MLP TSA if such party is in breach that has not been cured. |
| | • Permit Transfers: For the avoidance of doubt, each MLP TSA will provide for continued cooperation and support with respect to the transfer of any required permits to any purchaser of WMLP assets, and to allow the applicable WMLP Debtor or WMLP asset purchaser entity to continue to operate under existing permits pending the transfer thereof, subject to the applicable WMLP Debtor's (or such purchaser's) reasonable best efforts to effect such transition.  This obligation shall survive until all required permits are transferred to the applicable WMLP buyer entity, or replacement permits are obtained by such purchaser.  Such cooperation and support will be provided for no additional consideration during the period of the applicable MLP TSA; provided that, from and after the date on which the applicable MLP TSA is terminated with respect to the other services provided therein, such cooperation and support shall be reimbursable at cost. |
| **Access** | From and after the WLB Plan Effective Date, the WLB Debtors and WLB Purchaser shall provide, and when the applicable MLP TSA is executed, it shall require, the cooperation of the WLB Debtors and the WLB Purchaser (as may be reasonably requested from time to time) with respect to providing access to employees and books, records and files in the WLB Debtors' and/or WLB Purchaser's (as applicable) possession, including, without limitation, access and information with respect to (a) permits and surety bonds relating to any WMLP Debtor and/or the current and former  assets of any WMLP Debtor, (b) documents, books and records and other information related to the filing of any tax returns with respect to any WMLP Debtor and/or any of its current or former assets, and (c) any other information reasonably requested in connection with the sale of any WMLP Debtor and/or any of its assets, including any of its mine complexes or other assets (including Kemmerer). |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **CBA** | Pursuant to an agreement with the UMWA or authority granted to WLB to the extent provided pursuant the 1113/1114 Order, WLB shall (a) reject the collective bargaining agreement relating to the Kemmerer Assets (the "Kemmerer CBA") as set forth in the 1113/1114 Order, (b) implement any of WLB's final proposals made by the WLB Debtors pursuant to section 1113 of the Bankruptcy Code and agreed to by the UMWA (and acceptable to the MLP Secured Lenders and the Required Consenting Stakeholders), (c) modify pursuant to section 1114 of the Bankruptcy Code any "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code) in return for the OPEB Settlement, and (d) freeze the Elkol-Sorenson Plan as specified above.  Other than as set forth in this section, for so long as the applicable WMLP Debtor is not in default under the applicable MLP TSA, WLB agrees that, notwithstanding rejection of the Kemmerer CBA pursuant to the 1113/1114 Order, it shall voluntarily agree to continue the terms and conditions of employment of UMWA members at the Kemmerer Assets, unless authorized to change any such terms and conditions by the purchaser of the Kemmerer Assets (following the closing of the sale of the Kemmerer Assets) or as otherwise agreed with the WMLP Debtors and the MLP Secured Parties (prior to the closing of the sale of the Kemmerer Assets), in all cases consistent with the 1113/1114 Order.  For the avoidance of doubt, following entry of the 1113/1114 Order, the Elkol-Sorenson Plan shall be frozen as set forth in the Settlement, and neither the WLB Debtors nor the WMLP Debtors shall be required, nor deemed to be required, to continue to provide retiree benefits to any current or former employee subject to a collective bargaining agreement with respect to the Kemmerer Assets. |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Non-Solicitation of Certain Employees** | • With respect to those Employees who are (i) not represented by the UMWA, (ii) management-level Employees that live in or near Kemmerer, Wyoming and who dedicate at least 50% of their services to the Kemmerer Assets, and (iii) identified in a letter from WMLP to WLB to be sent prior to the commencement of the hearing to approve the Settlement (as mutually agreed by WMLP, the MLP Secured Lenders, the WLB Secured Lenders and the WLB Debtors) (collectively, the "Specified Kemmerer Employees"): <br><br> o WLB agrees that, prior to the WLB Plan Effective Date and during the term of the applicable MLP TSA, it shall not reassign or otherwise transfer the Specified Kemmerer Employees from their current roles in providing services to the Kemmerer Assets to other mining operations of WLB and its subsidiaries; provided, that the foregoing does not restrict WLB's rights to terminate a Specified Kemmerer Employee (i) for cause (upon consultation with WMLP and the MLP Secured Lenders); or (ii) upon the closing of the sale of the Kemmerer Assets (it being understood that a purchaser of the Kemmerer Assets will be required to make offers of employment to all Specified Kemmerer Employees on terms substantially similar to their current terms of employment); and <br><br> o The applicable MLP TSA will provide that, from and after the WLB Plan Effective Date until the date which is six (6) months following the closing of the sale of the Kemmerer Assets, WLB Purchaser shall not hire or solicit for hire the Specified Kemmerer Employees; provided, however, that such obligation shall not be applicable in respect of any Specified Kemmerer Employee terminated by the purchaser of the Kemmerer Assets (or any Specified Kemmerer Employee to which WLB or WLB Purchaser is instructed to terminate under the applicable MLP TSA) or in respect of any Specified Kemmerer Employee who does not receive an offer of employment from such purchaser of the Kemmerer Assets on substantially the same terms as such person's then-current employment (it being understood that a purchaser of the Kemmerer Assets will be required to make offers of employment to all Specified Kemmerer Employees on terms substantially similar to their current terms of employment); provided, further, that the foregoing shall not prohibit WLB or WLB Purchaser from fulfilling its obligations and providing services under the MLP TSA or general solicitations for employment not directed at the Specified Kemmerer Employees. |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Wyoming Tax Matters** | Westmoreland Kemmerer, LLC shall, or shall cause another WMLP Debtor to, pay all severance/production taxes (the "Additional Tax") to the Wyoming Department of Revenue (the "Wyoming DOR") for taxes due and all interest and penalties due on the Additional Tax (the "Interest") as set forth in the audit letter dated November 5, 2018 from the Wyoming DOR, in an amount not to exceed $572,000 (the "WMLP Wyoming Tax Payment") and the WLB Debtors shall pay any Additional Tax or Interest in excess of $572,000 in accordance with the WLB Chapter 11 Plan. Upon entry of the Settlement Order, the MLP Secured Parties shall be deemed to consent to payment of the $572,000 of Additional Tax and Interest to the Wyoming DOR as set forth in this section, and such payment shall be made no later than two (2) business days after the entry of the Settlement Order. |
| **Other Assets** | The WLB Debtors (prior to the WLB Plan Effective Date) and the WLB Purchaser (following the WLB Plan Effective Date) will consider in good faith any proposal by the WMLP Debtors, the MLP Secured Lenders, or other parties identified by the WMLP Debtors to acquire the assets related to Haystack Coal Co. |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Allocation of Fees** | • Fees directly attributable to the WLB Debtors' chapter 11 cases (including CRO fees) shall be borne by the WLB Debtors and fees directly attributable to the WMLP Debtors' chapter 11 cases shall be borne by the WMLP Debtors in accordance with the MLP Cash Collateral Order and the DIP Order, as applicable; provided that all parties reserve their respective rights to contest whether any particular services are appropriately attributable to the WLB Debtors and/or the WMLP Debtors, and contest any fees and/or expenses related thereto.<br><br>• Subject to the terms of the DIP Order and the MLP Cash Collateral Order, shared fees and expenses of professionals retained by the Debtors or the Official Committee of Unsecured Creditors shall be allocated 70% to the WLB Debtors and 30% to the WMLP Debtors, other than:<br><br>    o With respect to professional fees and expenses incurred for seeking modifications to the collective bargaining agreements with the UMWA, including through bargaining with the UMWA and the section 1113 proceeding, such fees and expenses shall be allocated as follows: the WMLP Debtors will pay $1 million and the balance shall be paid by the WLB Debtors.<br><br>    o With respect to professional fees and expenses incurred for seeking modification to retiree benefits, including through bargaining with the relevant union and the section 1114 proceeding, such fees and expenses shall be allocated 100% to the WLB Debtors; and<br><br>    o With respect to the Tender Offer described below, the WMLP Debtors shall bear 70% and the WLB Debtors shall bear 30% of the expenses related to the negotiation, documentation, implementation and execution of such Tender Offer. For the avoidance of doubt, the WLB Debtors shall be solely responsible for the purchase price of any of the equity interests in WMLP tendered in the Tender Offer.<br><br>• The WMLP Expense Share shall mean the undisputed amounts to be paid by the WMLP Debtors set forth in this section entitled "Allocation of Fees" and collected through Account Debit in accordance with current practice, subject to the terms of this Term Sheet and the applicable MLP TSA. |
| **Tax Effects of Settlement** | The transactions contemplated by the Term Sheet and the WLB Chapter 11 Plan shall be structured in a tax-efficient manner as defined by the WLB Debtors and the Required Consenting Stakeholders; provided, that, any such structuring that is adverse to the WMLP Debtors (as determined by the WMLP Debtors) shall require the prior written consent of the WMLP Debtors and the MLP Secured Lenders. |
| **Intercompany Claims** | The WLB Debtors and the WMLP Debtors shall continue to process and pay ordinary course intercompany claims and obligations in the manner in which they have been historically processed and paid. |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Releases In the WLB Chapter 11 Plan** | The WLB Chapter 11 Plan shall be modified to provide, in addition to any other releases, for the releases set forth in Exhibit A attached hereto; provided, however, that notwithstanding anything contained in this Term Sheet, any modifications to the WLB Chapter 11 Plan relating to releases from and after the date of this Term Sheet shall be acceptable to all parties to this Term Sheet. |
| **Releases In the WMLP Chapter 11 Plan or Kemmerer Sale** | The WMLP Chapter 11 Plan shall include, in addition to any other releases, for the releases set forth in Exhibit B attached hereto; provided, however, any WMLP Chapter 11 Plan shall be in form and substance acceptable to the MLP Secured Lenders; provided, further, that if the sale of the Kemmerer Assets closes prior to the effective date of the WMLP Chapter 11 Plan, then the releases set forth in Exhibit C attached hereto shall be effective as of such date, without further order or action by the Bankruptcy Court, any person, or any entity provided that any such sale and order approving the same contains the releases and otherwise is in form and substance acceptable to the MLP Secured Lenders; provided, further, that notwithstanding anything contained in this Term Sheet, any modifications to the WMLP Chapter 11 Plan or the order approving the sale of the Kemmerer Assets relating to releases from and after the date of this Term Sheet shall be acceptable to all parties to this Term Sheet. |
| **WLB Chapter 11 Plan Support** | Subject to (1) the entry of the Settlement Order consistent with this Term Sheet and (2) modifications to the WLB Chapter 11 Plan consistent in form and substance with this Term Sheet and otherwise reasonably acceptable to the WMLP Debtors and the MLP Secured Lenders as to the matters described in this Term Sheet, the WMLP Debtors and the MLP Secured Lenders agree to support, and to not directly or indirectly oppose, confirmation of the WLB Chapter 11 Plan and/or consummation of any transaction contemplated thereby (including, for the avoidance of any doubt, the releases, exculpation, discharge, injunction, and similar provisions contemplated by the WLB Chapter 11 Plan), provided that such transaction is consistent with this Term Sheet and does not materially, adversely affect the WMLP Debtors or the MLP Secured Lenders (as determined by the WMLP Debtors or the MLP Secured Lenders, as applicable). <br><br> Subject to Bankruptcy Court approval of the Settlement and the occurrence of the WLB Plan Effective Date, the following motions and objections will be withdrawn with prejudice: <br><br> • *Application of the WMLP Debtors for Allowance of Administrative Expenses* [Docket No. 1199]; <br><br> • *Emergency Motion of the MLP Lenders for Adequate Protection* [Docket No. 1202]; <br><br> • *WLB Debtors' Preliminary Objection to Motion of the MLP Lenders for Adequate Protection* [Docket No. 1262]; and <br><br> • *Preliminary Objection of the Westmoreland Secured Lenders to the Emergency Motion of MLP Lenders for Adequate Protection* [Docket No. 1263]. |

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Kemmerer Sale Support** | Subject to the entry of the Settlement Order consistent with this Term Sheet or confirmation of the WLB Chapter 11 Plan incorporating the terms of this Term Sheet, the WLB Debtors and the WLB Secured Lenders (including the Required Consenting Stakeholders) agree to support, and to not directly or indirectly oppose, the sale(s) of (1) the Kemmerer Assets, and/or (2) the assets of any of the other WMLP Debtors, and, in each case, the consummation thereof, unless such transactions or provisions thereof materially, adversely affect, as determined by each of, the WLB Debtors, the WLB Purchaser (including its Canadian subsidiaries) or the WLB Secured Lenders; provided, that any such consent of the WLB Debtors, the WLB Purchaser (including its Canadian subsidiaries), or the WLB Secured Lenders with respect to the sale of the Kemmerer Assets or any other assets of the WMLP Debtors may not be unreasonably withheld. |
| **WMLP Chapter 11 Plan** | • Any WMLP Chapter 11 Plan must be in form and substance consistent with this Term Sheet and otherwise be reasonably acceptable to the WLB Debtors, the WLB Purchaser and the WLB Secured Lenders solely as to provisions that materially adversely affect the WLB Debtors, the WLB Purchaser or the WLB Secured Lenders (as determined by the WLB Debtors, the WLB Purchaser, or the WLB Secured Lenders, as applicable).[10] <br><br> • Subject to the entry of an order approving the Settlement consistent with this Term Sheet, the WLB Debtors, the Required Consenting Stakeholders, the WLB Purchaser and the WLB Secured Lenders agree to support, and to not directly or indirectly oppose, confirmation of any WMLP Chapter 11 Plan and/or consummation of any transaction contemplated thereby (including, for the avoidance of any doubt, the releases, exculpation, discharge, injunction, and similar provisions contemplated by any WMLP Chapter 11 Plan); provided, that such transaction is consistent with this Term Sheet and does not materially adversely affect the WLB Debtors, the WLB Purchaser or the WLB Secured Lenders (as determined by the WLB Debtors, the WLB Purchaser, or the WLB Secured Lenders, as applicable). |

---

[10] Upon entry of the Settlement Order, the WMLP Debtors and the MLP Secured Lenders agree that any final non-appealable order dismissing or converting the WMLP Debtors' chapter 11 cases will provide for the payment in full of all accrued but unpaid (whether or not billed) post-petition administrative expense obligations of the WMLP Debtors on account of the applicable MLP TSA Fee, the Employee Payroll/Benefits Reimbursement, the WMLP Expense Share, the WMLP OPEB Settlement Payment and the WMLP Wyoming Tax Payment for the period prior to such dismissal or conversion.

| OBLIGATION | TERMS OF TREATMENT |
|---|---|
| **Tender Offer** | The Required Consenting Stakeholders will (a) not object to a subsidiary of WLB tendering for all of the equity interests in WMLP not directly or indirectly held by WLB for a total price, for all such equity interests collectively, not to exceed $15,000 and (b) cause WLB Purchaser to make such a tender if a subsidiary of WLB has not done so; provided, that the Required Consenting Stakeholders' agreement not to object to such tender, and to cause a subsidiary of WLB or WLB Purchaser to make such a tender, is conditioned on the filing of a motion to approve the tender offer (which may be the motion to approve the Term Sheet), which may be filed on an expedited basis, and entry of an order of the Bankruptcy Court authorizing and approving (the "Tender Offer Motion and Order") such tender in form and substance reasonably satisfactory to the WLB Debtors and the Required Consenting Stakeholders in all material respects. The Tender Offer Motion and Order shall be reasonably acceptable to the WLB Secured Lenders and the MLP Secured Parties and shall be heard prior to or contemporaneously with the Confirmation Hearing for the WLB Chapter 11 Plan. The Tender Offer shall not close unless and until (x) an order granting approval of the Tender Offer is entered and (y) the Settlement has been approved by the Court. |
| **WMLP Wind Down** | • "WMLP Liquidator" means (a) the individual appointed by the Bankruptcy Court to wind down the WMLP Debtors' affairs, including filing any required tax returns, following consummation of a sale of the Kemmerer Assets, whether pursuant to a chapter 11 plan of liquidation or otherwise, or (b) the WMLP Debtors, as applicable.<br><br>• The WLB Debtors, the Liquidating Trust under the WLB Chapter 11 Plan, and the WLB Purchaser will, at the WMLP Liquidator's sole cost and expense, provide, at cost, the WMLP Liquidator with reasonable access, during normal business hours upon prior written notice to counsel, to any reasonable documents, records, information, and/or personnel engaged by the WLB Debtors, the Liquidating Trust, or the WLB Purchaser, as applicable, that are reasonably necessary for the WMLP Liquidator to wind down the WMLP Debtors' affairs, including filing any required tax return |
| **Consent Rights** | The terms and conditions of this Term Sheet and the order approving the Settlement shall be acceptable to the WMLP Debtors, the WLB Debtors, the WLB Secured Lenders and the MLP Secured Lenders. |
| **Implementation** | Certain terms of this Term Sheet shall be incorporated into the WLB Chapter 11 Plan, and this Term Sheet shall be annexed to and memorialized in an expedited motion to approve a settlement between the WMLP Debtors and the WLB Debtors pursuant to Bankruptcy Rule 9019 or other motion approving the relief herein and the parties shall have such motion heard at, or before the commencement of, the Confirmation Hearing for the WLB Chapter 11 Plan; provided that the terms of the Settlement shall not be effective until the WLB Plan Effective Date except as expressly set forth herein. The order approving the Settlement (the "Settlement Order") shall be in form and substance acceptable to the WLB Debtors, the WMLP Debtors, the MLP Secured Lenders and the WLB Secured Lenders. |

The undersigned, in their capacity as counsel to the WLB Debtors, the WMLP Debtors, the WLB Secured Lenders, and the MLP Secured Lenders, as applicable, represent that they are authorized on behalf of their respective clients to execute the Term Sheet as of the date written above.

*[Signatures on Following Pages]*

/s/ Heather Lennox

Heather Lennox (admitted *pro hac vice*)
Oliver S. Zeltner (TX 24104000)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
E-mail: hlennox@jonesday.com
        ozeltner@jonesday.com

Timothy W. Hoffmann (admitted *pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
Email:  thoffmann@jonesday.com

***Conflicts Counsel for the WMLP Debtors and
Counsel for the Conflicts Committee of the
Westmoreland Resources GP, LLC Board of
Directors***

/s/ Gregory F. Pesce
--------------------------------
James H.M. Sprayregen, P.C.
Michael B. Slade (Bar No. 24013521)
Gregory F. Pesce (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email: james.sprayregen@kirkland.com
       michael.slade@kirkland.com
       gregory.pesce@kirkland.com

and

Edward O. Sassower, P.C.
Stephen E. Hessler, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email: edwardsassower@kirkland.com
       stephen.hessler@kirkland.com

and

Anna G. Rotman, P.C. (Bar No. 24046761)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600
Email: anna.rotman@kirkland.com

*Counsel for the Debtors*
*and Debtors in Possession*

/s/ Thomas M. Mayer_____
Thomas Moers Mayer (admitted *pro hac vice*)
Stephen Zide (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Jennifer Sharret (admitted *pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
E-mail: tmayer@kramerlevin.com
        szide@kramerlevin.com
        ayerramalli@kramerlevin.com
        jsharret@kramerlevin.com

and

John F. Higgins
Eric M. English
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
E-mail: jhiggins@porterhedges.com
        eenglish@porterhedges.com

*Counsel for the WLB Secured Lenders*

*/s/ Kristine Manoukian*＿＿＿＿＿＿＿＿＿＿＿＿
David M. Hillman (admitted *pro hac vice*)
Kristine Manoukian (admitted *pro hac vice*)
Lucy F. Kweskin (admitted *pro hac vice*)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
Email: David.Hillman@srz.com
        Kristine.Manoukian@srz.com
        Lucy.Kweskin@srz.com

and

Joseph E. Bain
Texas Bar No. 24085187
Texas S.D. Bar No. 1140193
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, Texas  77002
Telephone:  (713) 437-1800
Facsimile:  (713) 437-1917
Email: jbain@joneswalker.com

**Counsel for the MLP Secured Lenders**

## EXHIBIT A

### Release Provisions in WLB Plan

The WLB Chapter 11 Plan shall be modified to amend the following Defined Terms in Article I.A.:

The definitions of "*Releasing Parties*" and "*Released Parties*" in the WLB Chapter 11 Plan shall include the following additional parties, in their respective capacities as such: (a) the WMLP Debtors; (b) the Conflicts Committee; (c) the MLP Secured Parties, (d) each current and former Affiliate of each Entity in clauses (a) through (c); (e) with respect to each Entity in clauses (a) through (d), each such Entity's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"*Cash Collateral Order*" means the *Final Order (I) Authorizing the MLP Debtors to Use Cash Collateral (II) Granting Certain Protection to Prepetition Lenders, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 521] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

In addition, the WLB Chapter 11 Plan shall be modified to add the following additional Defined Terms in Article I.A.:

"*Conflicts Committee*" means the Conflicts Committee of the board of directors of Westmoreland Resource Partners GP, LLC (the "GP").

"*MLP Intercompany Term Sheet*" means that certain term sheet, dated as of February 12, 2019, by and among the WMLP Debtors, the WLB Debtors, the WLB Secured Lenders (as defined therein) and the MLP Secured Lenders (as defined in the Cash Collateral Order).

"*MLP Loan Documents*" shall have the meaning in the Cash Collateral Order.

"*MLP Secured Lenders*" shall have the meaning in the Cash Collateral Order.

"*MLP Secured Parties*" shall have the meaning in the Cash Collateral Order.

The WLB Chapter 11 Plan shall contain the following release provisions by the WLB Debtors and Released Parties:

**Releases by the WLB Debtors**.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed released and discharged by the WLB Debtors and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the WLB Debtors, that the WLB Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a WLB Debtor or other Entity, based on or

relating to, or in any manner arising from, in whole or in part, the WLB Debtors, the WLB Debtors' capital structure, the assertion or enforcement of rights and remedies against the WLB Debtors, the WLB Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a WLB Debtor and another WLB Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence.  Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action or Retained Causes of Action, such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (1) release any post-Plan Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (2) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan.  Further, notwithstanding anything to the contrary in this Article IX or any other provision of the Plan, the release, discharge, injunction, exculpation and other provisions with similar effect in the Plan shall exclude (and nothing herein shall release, waive or discharge):  (a) any Claim, Cause of Action and/or obligation arising under the MLP Intercompany Term Sheet and/or any document, agreement or transaction entered into pursuant thereto; (b) any Claim or Cause of Action of the WMLP Debtors or the MLP Secured Parties arising after the earlier of the order approving the MLP Intercompany Term Sheet and the Effective Date; (c) any Claim, Cause of Action and/or any other claim (whether arising under the MLP Loan Documents or the Cash Collateral Order or otherwise) of any of the MLP Secured Parties against any WMLP Debtor or any of its current or former equity holders (including the GP but excluding the WLB Debtors (other than those claims against the WLB Debtors that are preserved under the MLP Intercompany Term Sheet and/or this Plan)), subsidiaries, officers, directors, managers, principals, members, the Conflicts Committee and members thereof, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals in their capacity as such; (d) any intercompany or other claims that arose or will arise in the ordinary course of business between any of the WLB Debtors, on the one hand, and any of the WMLP Debtors, on the other hand, and any general unsecured claims of any WMLP Debtors against any WLB Debtor, in each case, except for those claims expressly released under the MLP Intercompany Term Sheet; (e) any unsecured claim of any MLP Secured Party against any WLB Debtor, each such WLB Debtor's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, including any such claim based on equitable contribution, any of the arguments or theories asserted in the MLP Secured Lenders' emergency motion for adequate protection and objection to the Plan, or otherwise; and/or

(f) any Claim and/or Cause of Action of any of the MLP Secured Parties and/or any WMLP Debtors against the (i) Committee, (ii) the members thereof and (iii) their respective professionals, (iv) each current and former Affiliate of each Entity in clauses (i) through (iii), and, with respect to each Entity in clause (i) through (iv), each such Entity's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (collectively, the "Committee Parties") and none of the Committee Parties shall otherwise be released, exculpated or receive similar relief under the MLP Intercompany Term Sheet or otherwise by or from the WMLP Debtors and/or the MLP Secured Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases herein are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases herein; (3) in the best interests of the WLB Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the WLB Debtors and after notice and opportunity for hearing; and (6) a bar to any of the WLB Debtors asserting any claim released by the releases herein against any of the Released Parties.

**Releases by Holders of Claims and Interests**.

As of the Plan Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released and discharged each WLB Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the WLB Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the WLB Debtors, the WLB Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a WLB Debtor and another WLB Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (1) release any post-Plan Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (2) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the

3

Plan.  Further, notwithstanding anything to the contrary in this Article IX or any other provision of the Plan, the release, discharge, injunction, exculpation and other provisions with similar effect in the Plan shall exclude (and nothing herein shall release, waive or discharge):  (a) any Claim, Cause of Action and/or obligation arising under the MLP Intercompany Term Sheet and/or any document, agreement or transaction entered into pursuant thereto; (b) any Claim or Cause of Action of the WMLP Debtors or the MLP Secured Parties arising after the earlier of the order approving the MLP Intercompany Term Sheet and the Effective Date; (c) any Claim, Cause of Action and/or any other claim (whether arising under the MLP Loan Documents or the Cash Collateral Order or otherwise) of any of the MLP Secured Parties against any WMLP Debtor or any of its current or former equity holders (including the GP but excluding the WLB Debtors (other than those claims against the WLB Debtors that are preserved under the MLP Intercompany Term Sheet and/or this Plan)), subsidiaries, officers, directors, managers, principals, members, the Conflicts Committee and members thereof, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals in their capacity as such; (d) any intercompany or other claims that arose or will arise in the ordinary course of business between any of the WLB Debtors, on the one hand, and any of the WMLP Debtors, on the other hand, and any general unsecured claims of any WMLP Debtors against any WLB Debtor, in each case, except for those claims expressly released under the MLP Intercompany Term Sheet; (e) any unsecured claim of any MLP Secured Party against any WLB Debtor, each such WLB Debtor's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, including any such claim based on equitable contribution, any of the arguments or theories asserted in the MLP Secured Lenders' emergency motion for adequate protection and objection to the Plan, or otherwise; and (f) any Claim and/or Cause of Action of any of the MLP Secured Parties and/or any WMLP Debtors against the (i) Committee, (ii) the members thereof and (iii) their respective professionals, (iv) each current and former Affiliate of each Entity in clauses (i) through (iii), and, with respect to each Entity in clause (i) through (iv), each such Entity's current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (collectively, the "Committee Parties") and none of the Committee Parties shall otherwise be released, exculpated or receive similar relief under the MLP Intercompany Term Sheet or otherwise by or from the WMLP Debtors and/or the MLP Secured Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the WLB Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

4

## EXHIBIT B

### Release Provisions in WMLP Plan

The parties to the Term Sheet agree that they will seek the following provisions in any WMLP Plan, which plan shall be acceptable to the MLP Secured Lenders:

Except as otherwise provided in the WLB Chapter 11 Plan and the Term Sheet, the (a) WLB Debtors, (b) Stalking Horse Purchaser; (c) Consenting Stakeholders; (d) Holders of First Lien Claims; (e) Holders of Bridge Loan Claims; (f) DIP Lenders; (g) Bridge Loan Agent; (h) the Credit Agreement Agent; (i) DIP Agent; (j) First Lien Notes Trustee,[1] and their respective current and former equity holders, subsidiaries (other than the WLB Debtors), officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, (x) will be "released parties" and "releasing parties" under any chapter 11 plan of liquidation for the WMLP Debtors (the "WMLP Chapter 11 Plan"); (y) will otherwise release and discharge (and be released and discharged by) each of the WMLP Debtors and the MLP Secured Parties and their respective current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, from any and all Claims and/or Causes of Action (which shall have similar definitions in the WMLP Chapter 11 Plan as in the WLB Chapter 11 Plan), including any derivative claims asserted on behalf of the WMLP Debtors; and (z) will release the "released parties", in each case, as may be set forth in any WMLP Chapter 11 Plan; provided, however, that, notwithstanding anything contained in the MLP Intercompany Term Sheet (as defined in the WLB Chapter 11 Plan), the WLB Chapter 11 Plan, the order confirming such plan or any related document, the foregoing releases and discharge shall exclude (and nothing in those documents shall release): (a) any Claim, Cause of Action and/or obligation arising under the MLP Intercompany Term Sheet or any document, agreement and/or transaction entered into pursuant to thereto and (b) any Claim, Cause of Action and/or obligation arising after the entry of an order approving the Settlement.

---

[1]   Items (b) – (j) as defined in the WLB Chapter 11 Plan.

**<u>EXHIBIT C</u>**

**Release Provisions Upon Closing Of Kemmerer Sale**

Except as otherwise provided in the WLB Chapter 11 Plan or the Term Sheet, subject to the entry of the order approving the Settlement and upon the closing of the sale of the Kemmerer Assets, which sale shall be acceptable to the MLP Secured Lenders, the (a) WLB Debtors, (b) Stalking Horse Purchaser; (c) Consenting Stakeholders; (d) Holders of First Lien Claims; (e) Holders of Bridge Loan Claims; (f) DIP Lenders; (g) Bridge Loan Agent; (h) the Credit Agreement Agent; (i) DIP Agent; (j) First Lien Notes Trustee,[2] and their respective current and former equity holders (except for the Debtors' respective equity holders), subsidiaries (other than the WMLP Debtors), officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, will release and discharge (and be released and discharged by) each of the WMLP Debtors and MLP Secured Parties and their respective current and former equity holders (except for the WMLP Debtors' public unit holders), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such from any and all Claims and/or Causes of Action (which shall have similar definitions as in the WLB Chapter 11 Plan, including any derivative claims asserted on behalf of the WMLP Debtors); <u>provided</u>, <u>however</u>, that, notwithstanding anything contained in the MLP Intercompany Term Sheet (as defined in the WLB Chapter 11 Plan), the WLB Chapter 11 Plan, the order confirming such plan or any related document, the foregoing releases and discharge shall exclude (and nothing in those documents shall release):  (a) any Claim, Cause of Action and/or obligation arising under the MLP Intercompany Term Sheet or any document, agreement and/or transaction entered into pursuant to thereto and (b) any Claim, Cause of Action and/or obligation arising after the entry of an order approving the Settlement.

---

[2]    Items (b) – (j) as defined in the WLB Chapter 11 Plan.