UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | Case No. 18-35672 (DRJ) |
| Debtors. | (Jointly Administered) |

**MOTION OF MAR-BOW VALUE PARTNERS, LLC TO
(I) RECONSIDER THE COURT'S ORDER APPROVING MOTION BY
WESTMORELAND COAL COMPANY AND CERTAIN DEBTOR AFFILIATES
AND MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC IN
FURTHERANCE OF MEDIATION AGREEMENT AND
(II) SET A HEARING REGARDING DISCOVERY ON MAR-BOW'S AMENDED
OBJECTION TO THE DEBTOR'S APPLICATION TO EMPLOY MCKINSEY RTS**

(This relates to Dkt Nos. 452, 669, 1422, 1423 and 1427.)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU
AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A
RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST
FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE
THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE
MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY
RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER
NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT
REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.
UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY
CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE
MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1]     Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

TO THE HON. DAVID R. JONES, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Creditor Mar-Bow Value Partners, LLC ("**Mar-Bow**"), by counsel, hereby respectfully moves for reconsideration of the Court's February 21, 2019 Order (Dkt. 1427) (the "**Order**") granting the Joint Emergency Motion by Westmoreland Coal Company and Certain Debtor Affiliates and McKinsey Recovery & Transformation U.S., LLC in Furtherance of Mediation Agreement (the "**Joint Emergency Motion**") (Dkts. 1422 and 1423), and respectfully states that the Order should be reconsidered and denied, and a hearing date should be set so that the Court may order a discovery schedule on Mar-Bow's Amended Objection (Dkt. 669) and decide threshold discovery issues as follows.[2]

## INTRODUCTION

1.      As a preliminary matter, Mar-Bow notes the so-called "Joint Emergency Motion" of McKinsey Recovery & Transformation U.S., LLC ("**McKinsey**") and Westmoreland Coal Company ("**Westmoreland**") is neither "joint" nor an "emergency." Despite all the revelations of McKinsey's wrongdoing leading up to and during this proceeding, Westmoreland has maintained a remarkable passivity and has never once wavered in its support for McKinsey's employment, even when this Court suggested that Westmoreland's wisest course of action might be to simply select another advisor.[3] McKinsey and Westmoreland have

---

[2]      Mar-Bow respectfully requests a hearing on this motion.  Separately, Mar-Bow asks that the Court schedule a conference so that the Court may order a schedule for discovery on Mar-Bow's Amended Objection.  To the extent that the Court permits further briefing on the motion to reconsider, Mar-Bow does not believe that such briefing should delay the discovery conference.

[3]      *See* Dkt. 981 (1/3/2019 Tr.) at 32:10-17 (THE COURT: "With respect to this issue— and I assume that the Debtor is evaluating—because this is the Debtors' application.  I'm assuming that the Debtor is evaluating the effect that this can have on the case as a whole.  I don't need an answer to that, but I assume that a responsible Debtor, as a fiduciary to its constituents, guided by able professionals, is always listening and thinking and adjusting, and I assume that process will continue."); *see also* Dkt. 868 (12/18/2018 Tr.) at 188:3-13 (THE COURT: "I assume you've got to balance and monitor at some point because there could develop a scenario where you decide, because it is [the Debtors'] motion. . . .  There are a set of circumstances what could result in the exercise of business judgement that says in this case we're simply going to withdraw our application.  And while that may not solve all the issues, again the issue between a 327 issue and something more may not resolve all of them, but it

worked hand-in-glove from the outset, and now, in McKinsey's consistently hubristic style, they propose a plan to allow McKinsey—a serial violator the bankruptcy laws—to decide disclosure rules not only for itself, but for the entire country through a paid expert selected and controlled by McKinsey.  In reality, the Joint Emergency Motion, represents McKinsey's proposed "settlement" with itself.

2.      Nor is the Joint Emergency Motion an "emergency."  Indeed, its core proposal posits a months-long and perhaps a years-long process of developing a "protocol" with no fixed deadline, and bi-weekly "updates" extending that process indefinitely.  The motion seeks, at a minimum, to delay (and perhaps prevent) McKinsey's compliance with Rule 2014 and a searching inquiry into the issues raised by Mar-Bow's Amended Objection (Dkt. 669), which has already been pending for three months.

3.      Westmoreland and McKinsey ignore a crucial point in their motion. Fundamentally, the problem with the Debtor's application to employ McKinsey (Dkt. 452) (the "**Application**") is not simply McKinsey's failure to comply with Federal Rule of Bankruptcy Procedure 2014 ("**Rule 2014**").  Rather, McKinsey's insurmountable problem—regardless of whether it complies with Rule 2014—is that under 11 U.S.C. § 327, it is ***not*** qualified to serve as a bankruptcy professional in this matter because of its investment interests in the Debtors and other Interested Parties.  No disclosure protocol would solve that problem.

4.      But even if the issue were full compliance with Rule 2014 rather than McKinsey's obvious inability to satisfy Section 327, the process described by the Joint Emergency Motion is both unnecessary and inadequate to ensure McKinsey's full compliance with Rule 2014.  McKinsey does not need an "expert" to advise it on how to comply with Rule 2014.  Decades of uniform case law already tell it exactly what to do.  However, despite

---

may resolve it with the Debtor.  And at that point, it's easy to take that proceeding into another place.").

numerous admonitions from Mar-Bow and Jay Alix, the U.S. Trustee's Office, and two bankruptcy judges, McKinsey simply does not want to comply with Rule 2014. Rather, it seeks to bend the established law to suit its own business prerogatives. Notably, the Joint Emergency Motion never states that McKinsey is committed to fully disclose its connections through its investment arm, MIO Partners, Inc. ("**MIO**").

5.       Finally, regardless of what the Court decides with respect to McKinsey's request to hire its own "expert" to condone its Rule 2014 disclosures, discovery should proceed immediately on Mar-Bow's Amended Objection to the Application (Dkt. 669) and McKinsey should not be permitted to further delay the process.   No new protocol or amended disclosures will solve McKinsey lack of disinterestedness under Section 327 or address the serious questions—which the Court itself has stated "could violate Title 18" (Dkt. 632)—raised by the Amended Objection months ago.

6.       Accordingly, the Court should 1) reconsider and vacate its Order granting the Joint Emergency Motion; and 2) set a hearing date so that a schedule can be set for discovery on Mar-Bow's Amended Objection and the Court can rule on threshold discovery disputes.

## BACKGROUND

### A.  McKinsey's Long History of Rule 2014 Violations Prior to *Westmoreland*.

7.       McKinsey entered the restructuring business as a bankruptcy professional in Chapter 11 cases in 2001.  From day one, it has violated the law, refusing to name a single connection in its initial disclosures (and in most instances, at all) in its first eleven Chapter 11 bankruptcy cases.  Even when Jay Alix discovered McKinsey's misconduct many years later and raised the issue with company executives, McKinsey refused to change its ways.

8.       As discussed during the December 31, 2018 deposition of Jay Alix in this proceeding (Dkt. 905-1), beginning in or around September 2014, Alix repeatedly raised McKinsey's failures to comply with Rule 2014 with top management at McKinsey, including

Dominic Barton, then-global Managing Partner of McKinsey's parent, McKinsey & Co., Inc. ("**McKinsey & Co.**").  *See e.g.*, Dkt. 905-1 (Alix Deposition Tr.) at 222:23-223:6 ("I approached McKinsey about it in 2014.  I spent [14] months meeting with McKinsey's CEO, Mr. Dominic[] Barton.  I brought all of this to his attention on eleven occasions.  I brought him documents.  I met with Robert Sternfels who oversees RTS business.  Mr. Garcia works for him.").

9.     McKinsey has ignored Alix's numerous attempts over the past five years to get it to comply with bankruptcy law.  *See, e.g., id.* at 224:11-24 ("***Mr. Barton told me these weren't serious laws.  He told me McKinsey didn't like these laws.  He also admitted they were breaking the laws but he didn't think they were serious***.  Mr. Stenfels told me they were not going to comply with the laws, he wasn't going to change anything.  Mr. Sneader who runs the firm today never answered my email.  Mr. [Pinkus] who runs North America which this all reports into because it happens in North America, he never answered my email.") (emphasis added).

10.    The *Alpha Natural Resources* case, filed on August 3, 2015, marked the beginning of the end of McKinsey's ability to openly flout the bankruptcy laws and avoid scrutiny of its illegal practices (but not its ability to violate the law).[4]  In that case, after McKinsey filed three Rule 2014 disclosures without naming a single connection,[5] the U.S.

---

[4]     Further relevant background regarding McKinsey's longstanding pattern of willful failure to comply with the Bankruptcy Code is summarized in Mar-Bow's Amended Objection (Dkt. 669), which describes violations by McKinsey in the recent *Alpha Natural Resources*, *SunEdison*, and *GenOn* bankruptcies.  *See, e.g.*, Dkt. 669 at 126-41 (summarizing Rule 2014 violations and other misconduct by McKinsey in *Alpha Natural Resources*).  Additionally, Jay Alix's separate RICO litigation against McKinsey, filed in the Southern District of New York in May 2018, details McKinsey's egregious violations of the Bankruptcy Code going back to the beginning of its involvement as a bankruptcy professional in Chapter 11 cases.

[5]     *See In re Alpha Natural Resources, Inc.*, No. 15-BK-33896 (Bankr. E.D. Va., filed Aug. 3, 2015) ("***Alpha Natural Resources***" or "***ANR***"), Dkt. 212, Ex. B (Carmody Dec., filed Aug. 24, 2015); *ANR* Dkt. 865 (First Supp. Carmody Dec., filed Nov. 9, 2015); *ANR* Dkt. 1854 (Second Supp. Carmody Dec., filed Mar. 25, 2016).

Trustee filed a motion to compel on May 3, 2016, stating: "***McKinsey RTS's disclosures are insufficient to satisfy Bankruptcy Rule 2014***" and that McKinsey's disclosures "***give the appearance of compliance without actually complying with Bankruptcy Rule 2014***."[6] Based on McKinsey's representations to the U.S. Trustee that it would file complete supplemental disclosures in compliance with the law, the U.S. Trustee subsequently withdrew its motion to compel in *ANR*.

11.     McKinsey filed a fourth Rule 2014 declaration in *ANR* on May 19, 2016—nine-and-a-half-months after its initial disclosures in the case—belatedly revealing eighteen Interested Parties who were current or very recent McKinsey clients.[7]  However, that fourth declaration continued to omit and conceal a large number of McKinsey's connections—including MIO investments—in violation of Rule 2014.  Accordingly, on June 6, 2016, Mar-Bow filed a motion in *ANR* seeking to compel McKinsey to fully disclose its connections to Interested Parties.[8]

12.     On July 1, 2016, the *ANR* Court granted Mar-Bow's motion to compel, expressly ruling, in accordance with decades of clear and uniform case law, that McKinsey's purported disclosure by "descriptive category"—rather than specifically identifying its connections to Interested Parties—did not comply with Rule 2014.[9]

13.     The *ANR* Court further ruled that Rule 2014 requires McKinsey to disclose its connections to the Debtors and Interested Parties through investments made by McKinsey's

---

[6]     *ANR* Dkt. 2308 (U.S. Trustee's Motion to Compel McKinsey Recovery & Transformation Services, U.S., Turnaround Advisor for the Debtors, to Comply with the Requirements of Bankruptcy Rule 2014, filed May 3, 2016) at 11 (emphasis added).

[7]     *ANR* Dkt. 2464 (Third Supp. Carmody Dec., filed May 19, 2016).

[8]     *ANR* Dkt. 2603 (Motion of Creditor Mar-Bow Value Partners, LLC to Compel McKinsey Recovery & Transformation Services U.S., LLC, Turnaround Advisors for the Debtors, to Comply with the Requirements of Bankruptcy Rule 2014), filed June 6, 2016.

[9]     *ANR* Dkt. 2895 (Order Compelling McKinsey Recovery & Transformation Services U.S., LLC, Turnaround Advisor for the debtors, to Comply with the Requirements of Bankruptcy Rule 2014).

wholly-owned investment arm, MIO.  Over Mar-Bow's objections, the *ANR* Court permitted

McKinsey to disclose its MIO investments connections *in camera* in July 2016.  Two years

later, and well after plan confirmation, it was revealed that McKinsey's *in camera* disclosures

did not include a substantial and highly lucrative investment that MIO held in the reorganized

debtor, Contura Energy, Inc. ("**Contura**"), through hedge funds with Whitebox Advisors, LLC

("**Whitebox**").[10]  Nor did McKinsey reveal that investment (or various other never-disclosed

connections) in its fifth and final declaration in *ANR*.[11]

14.     Meanwhile, in the *SunEdison* case, filed on April 21, 2016, the U.S. Trustee

filed an objection to the debtors' application to hire McKinsey, citing McKinsey's failure to

comply with Rule 2014 in its initial disclosure declaration.[12]  In response, McKinsey filed an

amended declaration, purportedly to cure its deficiencies, which continued to conceal dozens

of connections and failed to disclose MIO investment connections.[13]  Based on McKinsey's

false representations that it had fully complied with Rule 2014, the U.S. Trustee withdrew its

objection in *SunEdison* and incorrectly stated to the *ANR* Court that in *SunEdison* McKinsey

had "disclosed the identity of *every* connection before its retention was approved."[14]

---

[10]     In 2018, Mar-Bow learned from public records that through MIO, McKinsey held a
substantial interest in a group of Whitebox hedge funds during the *ANR* case in 2016.  Whitebox
acquired secured lender positions during the *ANR* bankruptcy and ultimately became one of
the largest equity owners in Contura, the "NewCo" under the plan in *ANR*, with Whitebox
funds owning 11.1% of Contura's common stock.  Through its interest in Whitebox, McKinsey
profited by at least $50 million in late 2016 as a result of the plan's transfer of assets to
Whitebox and other senior secured lenders, resulting in a 321% increase in Contura's share
price between September and December 2016.   *See ANR* Dkt. 4124 at 4-9.

[11]     *See ANR* Dkt. 3223 (Fourth Supp. Carmody Dec., filed Aug. 5, 2016).

[12]     *In re SunEdison Inc., et al.*, No. 16-BK-10992(SMB) (Bankr. S.D.N.Y., filed April 21,
2016) ("***SunEdison***"), Dkt. 265 (Objection to Motion to Retain McKinsey Recovery &
Transformation Services, filed May 12, 2016); *see also SunEdison* Dkt. 202 (Hojnacki Dec.,
filed May 5, 2016).

[13]     *SunEdison*, Dkt. 484 (Am. Hojnacki Dec., filed June 6, 2016).  Additional detail
regarding McKinsey's violations of Rule 2014 and other misconduct in *SunEdison* is provided
in Mar-Bow's Amended Objection (Dkt. 669) at pages 107 – 126.

[14]     *ANR* Dkt. 3222 (Statement of the Recommendation of the United States Trustee on
Public Disclosures by McKinsey), filed Aug. 5, 2016.

15.     Following plan confirmation in *ANR*, on July 18, 2018, Mar-Bow filed a motion to re-open *ANR*, seeking to disgorge McKinsey's fees as well as other relief based on McKinsey's misrepresentations to the *ANR* Court and other misconduct.[15]

16.     On July 31, 2018, the U.S. Trustee supported Mar-Bow's motion to re-open *ANR*, stating, regarding the *ANR* Court's finding of McKinsey's disinterestedness in 2016:

> In its Motions, Mar-Bow has raised new allegations that may call into question both the settlement of the Motion to Compel and this Court's finding of disinterestedness. Thus, the U.S. Trustee supports the Motion to Reopen in order to investigate these previously unknown allegations.
>
> In particular, Mar-Bow alleges that 'McKinsey profited [by] over $50 million for its partners and other pension beneficiaries as a result of its interest in Whitebox' and, further, that 'McKinsey's ownership interest in Whitebox and thus indirect acquisition of estate assets under the plan has a direct bearing on McKinsey's disinterestedness and had to be fully disclosed.'[16]

17.     In a series of investigatory articles beginning in or around April 2018, the Wall Street Journal began to draw public attention to McKinsey's flouting of Rule 2014.[17]  The broader public concern mounted three months later in July 2018, when a member of the House

---

[15]     *See ANR* Dkt. 4122 (Mar-Bow Value Partners, LLC's Motion to Reopen the Case, filed July 18, 2018); *ANR* Dkt. 4124 (Mar-Bow Value Partners, LLC's Motion for Relief from Judgments and for Indicative Ruling, filed July 18, 2018); *ANR* Dkts. 4128-4129 (Mar-Bow Value Partners, LLC's Amended Motion for Relief from Judgments and for Indicative Ruling and Reply to the United States Trustee's Response to (I) Motion to Re-Open Case and (II) Motion for Relief from Judgments and Indicative Ruling, filed Aug. 9, 2018).

[16]     *ANR* Dkt. 4126 (United States Trustee's Response to Mar-Bow Partners, LLC's (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling, filed July 31, 2018) at 2 ¶¶ 3-4 (quoting *ANR* Dkt. 4124 at 4-5).

[17]     *See, e.g.*, Gretchen Morgenson and Tom Corrigan, *McKinsey is Big in Bankruptcy—and Highly Secretive*, Wall St. J., Apr. 27, 2018, available at https://www.wsj.com/articles/mckinsey-is-big-in-bankruptcyand-highly-secretive-1524847720; Gretchen Morgenson and Tom Corrigan, *McKinsey Investments Weren't Disclosed in Bankruptcy Cases*, Wall St. J., June 19, 2018, available at https://www.wsj.com/articles/mckinsey-investments-werent-disclosed-in-bankruptcy-cases-1529423138; *see also* Michael Forsythe, Walt Bogdanich, and Bridget Hickey, *As McKinsey Sells Advice, Its Hedge Fund May Have a Stake in the Outcome*, New York Times, Feb. 19, 2019, available at https://www.nytimes.com/2019/02/19/business/mckinsey-hedge-fund.html.

Judiciary Committee asked the U.S. Trustee to investigate "undisclosed conflicts at McKinsey & Co.'s restructuring unit [that] may be compromising the nation's bankruptcy system."[18]

**B. The Application to Hire McKinsey in *Westmoreland*.**

18.     A mere three months later, on October 9, 2018, the Debtors in this proceeding filed their Petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

19.     According to McKinsey, it received the Interested Parties list for this proceeding from Debtors' counsel on October 16, 2018.  Dkt. 452 at 15 ¶ 33 & n.8.

20.     On November 8, 2018, the Debtors filed their Application, seeking authorization to retain McKinsey as a bankruptcy professional *nunc pro tunc* to the petition date.  Dkt. 452.  The Application included, as Exhibit B, the Declaration of Mark W. Hojnacki (the "**Hojnacki Declaration**"), a partner at McKinsey & Co. and a Practice Leader for McKinsey.  *See id.* at 35.

21.     The Hojnacki Declaration purported to disclose some of McKinsey's connections to Interested Parties pursuant to Rule 2014.  *See id.* at 36 ¶ 1.  However, McKinsey admitted that it "ha[d] not asked MIO Partners to search for connections to the Potential Parties in Interest[.]"  *Id.* ¶¶ 40-41.  Thus, McKinsey refused to search for its MIO investment connections in *Westmoreland* despite having been previously ordered by Judge Huennekens two years earlier in the *Alpha Natura Resources* case to disclose such connections—making it abundantly clear that such disclosures are required.

22.     On November 29, 2018, Mar-Bow filed an Objection to the Application, on the ground that McKinsey is not disinterested under Section 327.  On December 3, 2018, Mar-Bow filed an Amended Objection.  Dkt. 669.

---

[18]     *See, e.g.*, Gretchen Morgenson and Tom Corrigan, *Lawmaker Questions U.S. Trustee Over McKinsey's Conflict Disclosures*, Wall St. J., July 18, 2018; Gretchen Morgenson, *Lawmaker Questions Watchdog's Ability to Monitor Bankruptcy Disclosures*, Wall St. J., Oct. 1, 2018, available at https://www.wsj.com/articles/lawmaker-questions-watchdogs-ability-to-monitor-bankruptcy-disclosures-1538433565.

23.     On November 30, 2018, the Court entered an Order stating Mar-Bow's "objection alleges conduct by McKinsey in this case and at least one other case pending before the Court [(*GenOn*)] that, if true, ***could violate Title 18 and otherwise impugn the integrity of the bankruptcy process***."[19] Dkt. 632 at 1 (emphasis added).  The Court asked the U.S. Trustee "to review the allegations set forth in the Mar-Bow objection and make a written recommendation to the Court on how best to proceed." *Id.*

### C.  In *ANR*, the U.S. Trustee Supports Mar-Bow's Motion to Re-open to Disgorge All of McKinsey's Fees on Grounds of McKinsey's Deception Regarding Contura.

24.     After further investigation following Mar-Bow's motion to re-open *ANR*, on November 30, 2018, the U.S. Trustee asked the *ANR* Court to order McKinsey to disgorge all the fees it received in *ANR*, having concluded that McKinsey was not "disinterested" in *ANR* and it had repeatedly misled the *ANR* Court regarding crucial facts—including MIO's investment interest in the reorganized debtor, Contura.[20]   According to the U.S. Trustee, McKinsey's false and misleading representations to the *ANR* Court included the following:

> a.  ***McKinsey's false statements that MIO is a "blind trust":***
>
> McKinsey's repeated characterization in 2016 of MIO's status as a 'blind trust' was inaccurate.  ***MIO was not a blind trust*** and Jon Garcia, McKinsey's president, ratified MIO investment decisions. . . . Moreover, McKinsey still has not adequately disclosed information about MIO's direct investments and Mr. Garcia's role in supervising them.

*Id.* at 1-2 (emphasis added).

> b.  ***McKinsey's concealment of the fact McKinsey's President, Jon Garcia, sat on the Board of MIO, including its Investment Committee, and affirmatively ratified MIO's investment decisions.***

---

[19]     Both the Objection and Amended Objection discuss, as relevant background, McKinsey's alleged failures to disclose and other misconduct in prior Chapter 11 bankruptcies.
[20]     *ANR* Dkt. 4164 (Comments of United States Trustee Regarding McKinsey RTS's Opposition to Mar-Bow Partners, LLC's (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling, filed Nov. 30, 2018).

Jon Garcia, McKinsey's president, ratified MIO investment decisions. Nevertheless, it was not until September 2018 that McKinsey publicly disclosed that Mr. Garcia sat on the MIO board, including its investment committee, during these cases. And it was not until the most recent disclosures filed in November 2018 that McKinsey publicly disclosed that, because of these roles, Mr. Garcia affirmatively ratified MIO's investment decisions. Moreover, McKinsey still has not adequately disclosed information about MIO's direct investments and Mr. Garcia's role in supervising them.

*Id.*

c. ***McKinsey's continued failure to provide adequate information regarding MIO's direct investments.*** [21]

Moreover, McKinsey still has not adequately disclosed information about MIO's direct investments and Mr. Garcia's role in supervising them.

*Id.*

25. The U.S. Trustee concluded that despite McKinsey having, in 2016, "characterized MIO's status as a 'blind trust' no less than four times in sworn disclosures, sworn testimony, or in statements to the Court[,]"[22] declarations filed by McKinsey in 2018 "demonstrate that its prior 'blind trust' explanation in 2016 was, at best, misleading in a way that deflected further questions about MIO at the outset." *ANR* Dkt. 4164 at 4-5 ¶ 5. Moreover, "McKinsey was not forthcoming about Mr. Garcia's service on the MIO board and its investment subcommittee. . . . McKinsey's misleading representation and lack of transparency about Mr. Garcia's role undermines the very purpose of Rule 2014. Ultimately, McKinsey did not publicly disclose Mr. Garcia's role until September 2018." *Id.* at 5-6 ¶ 6. And it was not until November 2018 "that McKinsey publicly disclosed that its president [Jon Garcia]

---

[21]    Notably, the U.S. Trustee's proposed "settlement" does not resolve ***or even address*** McKinsey's continued failure to provide adequate information regarding MIO's direct investments.

[22]    *ANR* Dkt. 4164 at 4 ¶ 3 (citing *ANR* Dkt. 2464 (Third Supp. Carmody Dec., filed May 19, 2016) ¶ 20; *SunEdison* Dkt. 484 (Amended Hojnacki Dec., filed June 6, 2016); *ANR* Dkt. 2834 (6/28/2016 Hearing Tr.) at 142; *ANR* Dkt. 3360 (7/16/2016 Carmody Deposition Tr., filed Sept. 1, 2016) at 143-44).

affirmatively ratified MIO's investment decisions." *Id.* at 8 ¶ 10.  And even then, McKinsey's description of the MIO Board's duties and functions "fell short of explaining what actions Mr. Garcia would reasonably undertake to fulfil his duties.  McKinsey's failure to clarify demonstrates a continued lack of candor." *Id.* at 7 ¶ 8.  The U.S. Trustee further stated on November 30, 2018:

> McKinsey's disclosures concerning Mr. Garcia's role on the MIO remain incomplete.  Although Mr. Garcia's statements provide some information about his review of third party fund managers they say nothing about MIO's direct investments (a separate category of investments altogether) and his role in supervising them.  McKinsey likewise failed to (1) confirm clearly whether Mr. Garcia ever ratified MIO's direct investments in interested parties involved in these cases; or (2) provide the dates on which Mr. Garcia ratified investments.

*Id.* at 8 ¶ 11.

### D. McKinsey Simultaneously Resists and Seeks Discovery in *Westmoreland*; and the U.S. Trustee's Objection in *Westmoreland*.

26.     On December 10, 2018, Mar-Bow filed an emergency motion seeking a status conference to determine, *inter alia*, the timing and contours of discovery on the Amended Objection. Dkt. 715.

27.     On December 11, 2018, the Court ordered Mar-Bow and McKinsey to confer regarding discovery and the timing of an evidentiary hearing on the Amended Objection, and directed principals of both Mar-Bow and McKinsey to attend a December 18, 2018 status conference in this matter.  Dkt. 760 at 1.

28.     Also on December 11, 2018, McKinsey filed its response to the Amended Objection.[23]  In its response, McKinsey argued that Mar-Bow was not entitled to any discovery and that McKinsey was not required to disclose any direct or indirect investments in the

---

[23]     Mar-Bow filed its reply brief on the Amended Objection on December 17, 2018.  Dkt. 809.

Debtors or Interested Parties held by McKinsey partners and employees through McKinsey's wholly-owned investment arm, MIO.  Dkt. 763.

29.     On December 14, 2018, the U.S. Trustee's Office filed an objection, urging the Court to deny the Application on the ground that "***McKinsey RTS patently lacks disinterestedness***" under Section 327, Dkt. 785 at 3 (emphasis added), emphasizing in particular that McKinsey has "a 'Confidential Client' that generates a staggering 17.5% of the firm's gross annual revenue."  *Id.* at 2.

30.     On or around that same day, McKinsey and Mar-Bow each served initial discovery requests on the other and on third parties.  Notwithstanding its argument that there should be no discovery (Dkt. 763 at 7), McKinsey served a First Set of Interrogatories to Mar-Bow; a First Set of Document Requests to Mar-Bow; a third-party subpoena to Jay Alix; a third party subpoena to Lakeview Capital Partners; and a third-party subpoena to AlixPartners LLP. Mar-Bow served a First Set of Interrogatories to McKinsey; a First of Document Requests to McKinsey; and Notices of Deposition for four McKinsey employees: Mark Hojnacki, Jon Garcia, Alison Proshan, and Casey Lipscomb.

31.     On the evening before the December 18, 2018 status conference, and after Mar-Bow had filed its reply brief on the Amended Objection, McKinsey filed the Supplemental Declaration of Mark W. Hojnacki, dated December 17, 2018 (the "**Supplemental Hojnacki Declaration**").  Dkt. 810.  The Supplemental Hojnacki Declaration failed to resolve the issues raised by the Amended Objection.

32.     Demonstrating its persistent defiance of existing disclosure laws, during the December 18, 2018 status conference, McKinsey argued that Mar-Bow was over-reaching by even seeking any discovery, and that McKinsey is not legally required to disclose MIO's investments in or other connections to Interested Parties.  *See, e.g.*, Dkt. 868 (12/18/2018 Tr.) at 137:16-138:17; 140:7-10 (MS. CHUNG: "For example, MIO Investments, if we establish

13

separation, which is an obvious gate issue, then they should not be able to sort of get a win out

of a box by getting all that information from us."). However, the Court emphasized that it was

necessary to "get to the bottom of" things. *Id.* at 152:17-20 (THE COURT: "*I have to get to

the bottom of this*. I have to. Before this is said and done, I've got to come to the conclusion

that I've gotten to the truth and that the integrity of this process is intact  I have to do that.")

(emphasis added).

### E.  The Alix and Hojnacki Depositions and the January 3, 2019 Conference.

33.     On December 20, 2018, the Court issued an Order requiring Mark Hojnacki and

Jay Alix to appear for depositions on or before December 31, 2018 and staying further

discovery pending a January 3, 2019 scheduling conference. Dkt. 866 at 1.

34.     On December 29, 2018, in advance of his deposition, Alix made a voluntary

informal production to McKinsey of thirteen (13) binders of documents (and electronic copies

thereof) containing support for allegations made in the Amended Objection. *See* Dkt. 905-1

(Alix Deposition Tr.) at 55:16-56:2. McKinsey produced nothing.

35.     The depositions of both Alix and Hojnacki were conducted on December 31,

2018 and deposition transcripts and exhibits were filed with the Court of January 1, 2019. Dkt.

905.

36.     The Hojnacki deposition was a master class in obfuscation. Counsel for

McKinsey repeatedly directed Hojnacki not to answer, in violation of Federal Rule of Civil

Procedure 37.[24] Additionally, Hojnacki refused to answer or claimed to not know the answer

to dozens of questions.[25] The conduct of Hojnacki and McKinsey was so egregious that, upon

reviewing the transcript, the Court raised Rule 37 *sua sponte*:

---

[24]     *See, e.g.*, Dkt. 905-2 (12/31/2018 Hojnacki Dep. Tr.) at 15-16, 49-50, 115-16, 146-60,
182, 198-200, 202, 204, 225-26, 231-34.
[25]     *See, e.g.*, *id.* at 18-21, 30-32, 37, 39, 44-45, 47-48, 55, 58, 65, 67, 69-70, 73, 75-76,
102-06, 109, 111, 122, 124-25, 128-30, 133-37, 162, 170, 175-76, 183, 188-89, 260-61.

We're not going to have another waste of time like we had with the Hojnacki deposition, I'm not going to do it. ***I know Rule 37 really well; I also know how to implement it harshly***.[26]

37.     Late in the evening on January 2, 2019, and without first conferring with opposing counsel, McKinsey filed a 25-page brief asking the Court to set an expedited briefing schedule to determine the types of connections that McKinsey is required to disclose, rather than proceeding with discovery on Mar-Bow's Amended Objection.[27]   Of course, despite McKinsey's attempts to portray its failure to disclose MIO investment connections as an unsettled legal issue, Judge Huennekens had already ruled in 2016 that McKinsey was obviously required to disclose those connections.[28]   Once again, McKinsey attempted to arrogate to itself the right to determine the scope of its legal disclosure obligations, effectively asking the Court to take McKinsey's word for it that MIO is "separate[] and distinct[]" from the rest of the company.  *See id.* at 16-17.  Based on that conclusory argument, McKinsey argued, it should not be required to disclose MIO's investment connections.  *See id.* at 16-19.

38.     During a continued scheduling conference on January 3, 2019, the Court flatly rejected McKinsey's request to stay discovery in favour of briefing any "gating" or "threshold" issues.  *See id.* at 30:10-11 ("***I'm not going to do any threshold issues***.") (emphasis added); *see also id.* at 51:13-16.

39.     Most significantly, the Court held not only that further discovery is required, including, for example, depositions of McKinsey & Co.'s former Managing Partner, Dominic

---

[26]     *Id.* at 33:5-15 (emphasis added).

[27]     Dkt. 923 (McKinsey Recovery & Transformation Services U.S., LLC's Motion for an Order (I) Setting an Expited Briefing Schedule (II) Limited Discovery, and (III) Excluding Fraud Allegations from the Scope of the January 28, 2019 Hearing, filed Jan. 2, 2019) at 3.

[28]     *See also e.g.*, Dkt. 868 (12/18/2018 Tr.) at 153:3-8 (THE COURT: "[T]hat's not what's currently filed.  This isn't a, we think that they made a mistake because they applied wrong legal standard.  The allegation is, they know what the legal standard is and they hid it from you and that you committed all sorts of heinous acts.").

Barton, and McKinsey executive Robert Sternfels, but also that those executives (presumably because of individual criminal exposure) would require individual counsel:

> I'm going to need to hear from Mr. Barton, and I'm going to need to hear from Mr. Sternfels, and **they're going to need to have their own counsel**, and I'm going to need to understand where this goes.

*Id.* at 29:10-13 (emphasis added).

40.     The Court also dispelled any doubt regarding whether the allegations in the Amended Objection describe unlawful conduct by McKinsey:

> **If what Mr. Alix alleges is true, then McKinsey has a Title 18 problem**.[29]

41.     The Court further made clear that the parties will be required to provide sufficient discovery for the Court to thoroughly and carefully examine the allegations raised before reaching a decision:

> I won't shy away from this at all. I'm not looking to shortcut the process.  If we have to start turning over all of the rocks, I will take as long as it takes; I will be as methodical as I can possibly be. . . . I will go through this sequentially . . . I will make this so painful for everyone, but we will get to the truth . . . .[30]
>
> . . .
>
> This is not a problem that is simply going to go away.  **This is not a problem that a Bankruptcy Judge is going to decide he just doesn't want to be troubled with.  I will get to the end of this**.[31]

42.     The Court also made clear that McKinsey would need to be more forthcoming during the discovery process than it was during Hojnacki's deposition:

> **Mr. Hojnacki's deposition was one of the most frustrating reads that I've had in a long time.**  He won't do, on the stand, what he did in that deposition.  I will get candor and I will get honesty.  And we won't play the word game with what is the

---

[29]     *Id.* at 28:6-7 (emphasis added).
[30]     *Id.* at 28:18-25.
[31]     *Id.* at 31:11-15 (emphasis added).

meaning of the word "is;" we won't do that here.  If there's an attempt to do it, it will be an unpleasant thing.[32]

. . .

And I will also tell you we're not going to have another deposition like Mr. Hojnacki's deposition.  If we continue that process, we're going to take all the depositions in my conference room.  And any time that there's a problem, we'll come in here and we'll visit. . . .[33]

43.    The Court emphasized that evaluation of Mar-Bow's Amended Objection would not only be thorough, but also exceedingly transparent:

One of the things that has bothered me, as I look at the process as a whole—and again, I am not criticizing any other court.  The only other court I will ever criticize is the one that I'm responsible for because I get things wrong all the time.  But I have—I am bothered by the lack of transparency that has taken place in another bankruptcy case.

There won't ever be in camera discussions in this court, there won't even be in camera meeting; it will not happen in this court.  The process demands transparency.[34]

. . .

I required these two depositions because I wanted some insight into what this dispute really was. I also, quite honestly, was bothered by the lack of public scrutiny, if you will, which is why I required that the depositions be filed.[35]

44.    The Court then ordered the parties to confer on discovery in advance of a status conference scheduled for January 14, 2019, and clarified that the extremely limited discovery previously advocated by McKinsey would not suffice, stating that discovery "***will be far more invasive than McKinsey thinks it should be***."  *Id.* at 33:1-4 (emphasis added).[36]

---

[32]    *Id.* at 30:22-31:4 (emphasis added).
[33]    *Id.* at 33:5-15.
[34]    *Id.* at 21:20-22:4.
[35]    *Id.* at 30:10-18.
[36]    Notably, although two months have passed since the Court made that statement, McKinsey still has not produced a single document and is flouting the Court's expressed concerns by continuing to avoid and delay the discovery process.

45.     Following the January 3, 2019 conference, the parties' counsel conferred on discovery multiple times, including two in-person meetings on January 7 and January 8, 2019. As discussed in Mar-Bow's January 11, 2019 motion to compel discovery, the parties have disputes regarding several fundamental and threshold discovery issues, including McKinsey's positions that there should be extremely little to no discovery of electronic documents such as emails; that McKinsey should only be required to produce three to four witnesses total for discovery (Barton, Sternfels, Laurie Basch, and perhaps Mark Hojnacki for a second deposition); and that discovery should be completed in a matter of weeks.  *See* Dkt. 1029 at 2-3 ¶¶ 1-4.

## F.   Judge Huennekens Re-opens *Alpha Natural Resources* and McKinsey Continues to Resist Discovery in *Westmoreland*.

46.     On January 9, 2019, McKinsey, Mar-Bow, and the U.S. Trustee's Office attended a hearing on Mar-Bow's motion (first filed on July 18, 2018) to re-open the *Alpha Natural Resources* bankruptcy.[37]  *See ANR* Dkt. 4182 (1/9/2019 Tr.).  During that hearing,

---

[37]     *See ANR* Dkt. 4125 (Mar-Bow Value Partners, LLC's Motion to Reopen Case, dated July 18, 2018); *ANR* Dkt. 4124 (Mar-Bow Value Partners, LLC's Motion for Relief from Judgment and for Indicative Ruling, dated July 18, 2018); *ANR* Dkt. 4126 (United States Trustee's Response to (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling, dated July 31, 2018); *ANR* Dkt. 4128 (Mar-Bow Value Partners, LLC's *Amended* Motion for Relief from Judgment and for Indicative Ruling *And* Reply to the United States Trustee's Response to (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling, dated August 9, 2018); *ANR* Dkt. 4149 (McKinsey Opposition to Motion to Reopen Case and Motion for Relief from Judgments and for Indicative Ruling), dated September 12, 2018); *ANR* Dkt. 4154 (Mar-Bow Value Partners, LLC's Reply to McKinsey Opposition to Reopen Case and Motion for Relief from Judgments and for Indicative Ruling, dated September 26, 2018); *ANR* Dkts. 4159, 4160, 4161, 4162 (McKinsey Supplemental Declarations in Opposition to Motion to Reopen Case and Motion for Relief from Judgments and for Indicative Ruling, dated November 9, 2018); *ANR* Dkt. 4163 (Mar-Bow Value Partners, LLC's Supplemental Response to McKinsey Supplemental Declarations in Opposition to Motion to Reopen Case and Motion for Relief from Judgments and for Indicative Ruling), dated November 21, 2018); *ANR* Dkt. 4164 (United States Trustee Comments Regarding McKinsey opposition to Mar-Bow Partners, LLC's (I) Motion to Reopen Case and (II) Motion for Relief From Judgments and for Indicative Ruling, dated November 30, 2018).

Judge Huennekens re-opened the case, emphasizing the seriousness of McKinsey's alleged conduct:

> THE COURT:       I don't need more briefing.  I've read through all of everybody's submissions in this case.  And ***these are some of the most serious allegations I've ever seen.***  . . . [W]e've got to get to the bottom of it.
>
> . . .
>
> [T]hese allegations are extremely serious.  So I am going to reopen the case.

*Id.* at 31:19-24 (emphasis added).

47.     On January 10, 2019, the *Alpha Natural Resources* Court scheduled a status conference in that case for January 15, 2019.  *ANR* Dkt. 4186.[38]

48.     On January 11, 2019, in advance of the status conference then-scheduled in this matter for the following Monday, January 14, 2019, Mar-Bow filed a Motion to Compel and Set a Discovery Schedule ("**Motion to Compel**"), which set forth the threshold areas of disagreement between the parties on discovery and asked the Court to set a discovery schedule. Dkt. 1029 at 10-20 ¶¶ 26-41.  Also, on January 11, 2019, Mar-Bow served supplemental document requests and interrogatories on McKinsey and McKinsey served revised discovery requests on Mar-Bow as well as discovery requests to third parties.

49.     Later in the day on January 11, 2019, the Court issued an Order (Dkt. 1030) continuing the January 14, 2019 status conference "pending the outcome of the status conference in the Alpha Natural Resources, Inc. case" on January 15, 2019.

50.     On January 12, 2019, McKinsey filed its response to Mar-Bow's Motion to Compel.  Dkt. 1031.  Rather than addressing the substantive points raised by Mar-Bow, McKinsey merely argued (without basis) that the Motion to Compel was premature because

---

[38]     *See also ANR* Dkt. 4189 (Notice of Agenda of Matters Set for January 15, 2019 Status Conference at 11:00 a.m., filed January 14, 2019); *ANR* Dkt. 4193 (1/15/2019 Tr.).

the parties had not yet conferred in good faith.[39]  *See id.* at 2.  McKinsey asked the Court to deny the Motion to Compel and to instead sign an order stating that "RTS and Mar-Bow shall meet and confer regarding the scope of discovery" (Dkt. 1031 at 8), notwithstanding that they had already done so and had clearly reached an impasse on threshold issues, requiring the Court's intervention.  *See* Dkt. 1029 (Mar-Bow's Motion to Compel Discovery).

### G.  The *Westmoreland*, *ANR*, and *SunEdison* Courts Order Mediation.

51.    At the January 15, 2019 conference, the *ANR* Court ruled that the parties would participate in a joint mediation process concerning the issues raised by Mar-Bow in both *ANR* and *Westmoreland*.  The *ANR* Court further ordered, over McKinsey's objections, that the *in camera* disclosures submitted by McKinsey in July 2016 would be filed on the public docket. *ANR* Dkt. 4198 (Order, filed January 16, 2019); *see also ANR* Dkt. 4193 (1/15/2019 Tr.) at 30:13-15; *see also id.* at 30:21-25 (THE COURT: "I've got to know, in real time, whether or not I'm invested in an entity that appears before me.  And that's what Rule 2014 requires.  And *it's McKinsey's burden to be able to provide that information*.  That's what we're missing here, a little bit.") (emphasis added).[40]

52.    On January 16, 2019, this Court and the *ANR* Court issued an Order requiring the parties to participate in a mediation conducted by United States Bankruptcy Judge Marvin Isgur.  Dkt. 1088.

53.    On January 22, 2019, in the *SunEdison* case, Mar-Bow filed a Motion for Relief from Orders under Bankruptcy Rule 9024 and Civil Rule 60(d)(3), seeking a ruling disqualifying McKinsey in that proceeding.  *SunEdison* Dkt. 5751.  On January 25, 2019, the

---

[39]    This was plain obfuscation and misdirection by McKinsey, since it has used the meet and confer process as its own avenue to for McKinsey to create delay.  *See* Background Point I, *infra*.

[40]    When McKinsey's *in camera* disclosures in *ANR* were publicly docketed (*ANR* Dkt. 4195, filed Jan. 16, 2019), they also revealed further connections that McKinsey should have disclosed, but did not, in other bankruptcies that were either contemporaneous or close in time to *ANR*.

*SunEdison* Court ordered the parties to address the matter in the joint mediation to be conducted by Judge Isgur.  *SunEdison* Dkt. 5756.

54.     On February 7, 2019, Mar-Bow and McKinsey participated in the mediation conducted by Judge Isgur in Houston.  Dkt. 1406 (Mediator's Notice to the Court, filed Feb. 19, 2019).  As indicated in the Mediator's Report, McKinsey and Mar-Bow failed to reach any settlement during the mediation.  *Id.* at 1 ¶ 2.

## H. The Ineffectual Settlements Between McKinsey, Westmoreland, and the U.S. Trustee.

55.     The U.S. Trustee's Office and the "McKinsey Entities" (defined as McKinsey; McKinsey & Co.; McKinsey Holdings, Inc.; and McKinsey & Company, Inc., United States) entered into a "Mediated Settlement Term Sheet" under which (*inter alia*) McKinsey agreed to a pay a total of $15 million to reorganized debtors in the *ANR* and *SunEdison* matters and the bankruptcy estate in *Westmoreland*, and the U.S. Trustee's Office agreed not to take action against McKinsey in any existing bankruptcy proceeding on the ground that McKinsey has not complied with Rule 2014 (Dkt. 1406, Ex. A).  As explained in greater detail below, the proposed remedy is woefully inadequate, and akin to proposing that the fox create a protocol for how he will stop stealing chickens from the henhouse.

56.     Additionally, Westmoreland and McKinsey agreed to a term sheet that effectively left the "remedy" for McKinsey's misconduct in the hands of ***McKinsey***.  *See* Dkt. 1406, Ex. B.

57.     Further, McKinsey's proposed "settlement" with the U.S. Trustee is a toothless slap on the wrist given the magnitude of McKinsey's wrongdoing.  *First*, the proposed $15 million settlement represents only a small fraction of the total of pre- and post-petition fees that McKinsey has generated as a result of its unlawful conduct in fourteen separate Chapter 11 bankruptcies over the years.  Although the proposed settlement contemplates resolution of *all* Rule 2014 disputes between McKinsey and the U.S. Trustee in all fourteen Chapter 11 matters

in which McKinsey has appeared, it would only collect and distribute funds to creditors in *three* of those fourteen bankruptcies: *ANR*, *SunEdison*, and *Westmoreland*. Bizarrely, the settlement contemplates no fine or remedy for creditors in McKinsey's last case before this Court, *GenOn*, despite the same violations and the clear concerns expressed by this Court that any misconduct in *GenOn* be uncovered and rectified.[41]

58.     *Second*, strikingly, the U.S. Trustee's proposed settlement with McKinsey, an admitted wrongdoer,[42] lacks any means to monitor or correct McKinsey's past or future behavior in Chapter 11 bankruptcy cases. Such a resolution, lacking any corrective mechanism whatsoever, and taking place without any discovery beforehand, would be highly unusual, if not unique, in the annals of Department of Justice settlements with proven violators.

59.     *Third*, the proposed settlement fails to address the crucial questions of whether McKinsey was, in fact, disinterested in any of its past or current bankruptcies, and whether McKinsey's longstanding pattern of unlawful failure to disclose was intentional. With respect to *Westmoreland* specifically, the "settlement" with McKinsey completely ignores the vital question of McKinsey's undisclosed MIO investment connections. Without that information, the Court cannot determine whether McKinsey is, in fact, disinterested in *Westmoreland* (and for the reasons stated in Mar-Bow's Amended Objection (Dkt. 669), McKinsey is ***not*** disinterested and no Rule 2014 disclosures could possibly cure that fact). It is incomprehensible that the U.S. Trustee (or, for that matter, the Debtors) would "settle" with a recalcitrant lawbreaker who still has not provided full disclosure in *Westmoreland* and whose past transgressions go far beyond mere questions of compliance with Rule 2014.

---

[41]     *See* Dkt. 868 (12/18/2018 Tr.) at 174:19-23 ("I'm worried to death that I made a mistake in GenOn. I hope I didn't. I never want to intentionally make a mistake. But I'm worried that I did something wrong in GenOn. And if I did something wrong, I'm going to fix it.").

[42]     *See* Video (Interview of Kevin Sneader), *Consulting firm McKinsey goes on the record about media scrutiny*, CNBC, Mar. 1, 2019, available at https://www.cnbc.com/video/2019/03/01/consulting-firm-mckinsey-goes-on-the-record-about-media-scrutiny.html.

60.     In short, the U.S. Trustee's proposed settlement with McKinsey leaves significant and gaping holes in the truth which this Court stressed would be undertaken without fear or favor.

### I. McKinsey's Request to Further Delay Discovery Post-Mediation

61.     Following the issuance of the Mediator's Report, on February 19, 2019, McKinsey's counsel at Selendy & Gay LLP agreed with Mar-Bow's counsel at Boies Schiller Flexner LLP to schedule a meet and confer regarding discovery before pursuing any further discovery in *Westmoreland* or any other matters. However, it quickly became apparent that McKinsey's counsel was slow-walking the meet-and-confer process so that it could file its Joint "Emergency" Motion. Notwithstanding McKinsey's agreement to meet-and-confer on discovery with Mar-Bow, and *without providing notice to Mar-Bow*, on February 20, 2019, the Debtors and McKinsey filed their Joint Emergency Motion, which sought to stay all discovery pending the eventual filing of McKinsey's disclosures. *See* Dkt. 1422; Dkt. 1422-1 at 2 ¶ 2. Although McKinsey subsequently withdrew its request for a stay of discovery pending a meet-and-confer with Mar-Bow (Dkt. 1423), as discussed below, McKinsey has effectively received its requested stay in the interim by strong-arming the meet-and-confer process— including by simply not appearing for a scheduled telephone conference on February 27, 2019.

62.     The Joint Emergency Motion also asked the Court to yet again delay the time for McKinsey to file supplemental disclosures, and for the Court to defer consideration of the Application until after McKinsey, pursuant to its proposed "settlement" with Westmoreland, has hired its own paid expert to develop "new disclosure protocols for McKinsey in this and other cases[.]" Dkt. 1422 at 3 ¶ 5.

63.     The Joint Emergency Motion provided no proposed schedule for this vaguely described process. However, the contemplated timeline is assuredly lengthy, given that

McKinsey proposes that it should be given two weeks to disclose the identity of its "expert" and that it shall then "file a status report every two weeks thereafter[.]" *Id.* at 3 ¶ 6.

**J. McKinsey Resists Mutual Discovery While Selectively Seeking Discovery for Itself.**

64.     On February 10, 2019, while the mediation was ongoing, McKinsey pressed forward on and argued a motion that it had earlier filed in Delaware Chancery Court, seeking to unseal a confidential document provided to the court under a protective order in a 2014 litigation between AlixPartners LLP and two former AlixPartners employees.   Neither McKinsey nor Jay Alix were parties to that litigation, which settled years ago before Mar-Bow was formed.   During the oral argument, which was attended by McKinsey's attorneys from Selendy & Gay LLP, McKinsey made clear that it was seeking to unseal the confidential document in the Delaware litigation for use in litigation against Jay Alix and Mar-Bow.   Thus, McKinsey, in a breathtaking display of arrogance, apparently believes that Mar-Bow is entitled to ***no*** discovery on the myriad troubling issues raised in the Amended Objection, while it is free to take whatever discovery it sees fit.

**K. The Court Grants the Joint Emergency Motion without Hearing from Mar-Bow.**

65.     On February 21, 2019, the Court granted the Joint Emergency Motion before Mar-Bow had an opportunity to respond and without the benefit of the history set forth above.

66.     Mar-Bow now moves for reconsideration of, and to vacate, the Order.

## THE LEGAL STANDARD

67.     "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders."   *St. Ames Development Co., Inc. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("*Murphy Farms*")); *see also Murphy Farm*, 326 F.3d at 514-15 ("[A]

district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgments when such is warranted.").

68.     Under Federal Rule of Civil Procedure 54(b), which governs reconsideration of interlocutory orders and made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7054(a), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 846 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

## ARGUMENT

### I.   THE PROCESS PROPOSED BY MCKINSEY IS UNNECESSARY AND OVERLY VAGUE.

#### A.  Because McKinsey is Not Disinterested under Section 327, the Application Must Be Denied Regardless of Whether McKinsey Eventually Complies with Rule 2014.

69.     Unsurprisingly, given that its suggested "protocol" is ***not*** the result of an arms-length process of dispute resolution and negotiation, McKinsey's proposed process is hopelessly flawed.  McKinsey ignores the fundamental point that the issue with the Debtors' Application to hire McKinsey is ***not*** McKinsey's failure to comply with Rule 2014. McKinsey's insurmountable problem is that ***it is not qualified under Section 327 because of its investment interests through MIO.***  No amount of compliance with Rule 2014 can cure those problems. Even exemplary compliance with Rule 2014 would not solve McKinsey's lack of disinterestedness of Section 327.[43]

---

[43]     McKinsey also ignores Section 327 in offering to "waive" its fees if it is not retained. Congratulating itself for its generosity, McKinsey states in the Joint Emergency Motion: "If the revised disclosure does not result in McKinsey's retention, then McKinsey will remain proud of its work and waive any fees."  Dkt. 1422 at 3 ¶ 7.  But of course, under Section 327, if this Court does not authorize McKinsey's retention, then McKinsey is not entitled to any fees.

70.     As detailed in Mar-Bow's Amended Objection (Dkt. 669), McKinsey is not disinterested for reasons including the following:

     a.   McKinsey and MIO's investment interests in the Debtors;

     b.   McKinsey and MIO's investment interests in members of two Ad Hoc Groups;

     c.   McKinsey and MIO's investment interests in other Interested Parties;

     d.   McKinsey and MIO's respective fiduciary obligations irreconcilably conflict;

     e.   McKinsey represents as clients numerous Interested Parties with "interests adverse to the estate";

     f.   McKinsey has numerous disqualifying connections Interested Parties who are MIO service providers;

     g.   McKinsey has numerous disqualifying connections to competitors of the Debtors; and

     h.   McKinsey holds an interest adverse to the estate because it is liable for avoidable preferences totalling $1,565,000.

*See* Dkt. 669 at 30-54).

71.     None of these critically important issues is remediated by McKinsey's self-oversight.

**B.  McKinsey Does Not Need an "Expert" to Tell it How to Comply with Rule 2014.**

72.     It is unclear why McKinsey suddenly needs to hire for itself an "expert" to assist it in identifying a "protocol" in order to comply with Rule 2014 except as a way to paper over its misconduct and extricate itself from what this Court has found to be a potentially criminal history involving its bankruptcy involvements.  McKinsey has virtually unlimited access to sophisticated legal counsel and decades of uniform case law that make McKinsey's obligations under the Rule abundantly clear.  McKinsey also knows from prior rulings in *Alpha Natural Resources* that it must disclose its MIO investment connections to this Court.  No "expert" is

required to tell McKinsey what it already knows: it must disclose (*inter alia*) MIO's investment connections to the Debtors and the Interested Parties.

73.     To the extent that McKinsey needs a "protocol" to help it comply with the U.S. Bankruptcy Code, here is the best methodology imaginable:

> 1)     Fully comply with Bankruptcy Rule 2014 and disclose *all* connections to the Debtors and Interested Parties, including MIO investment connections;
>
> 2)     Fully comply with Section 327 of the Bankruptcy Code and demonstrate that it has *no* adverse interests and is, in fact, disinterested;
>
> 3)     Fully comply with Section 101(14) of the Bankruptcy Code and demonstrate that it has *no* financial interests, direct or indirect, in any of the Debtors or Interested Parties;
>
> 4)     To the extent that any questions arise in carrying out Steps 1-3 above, look to existing case law, which is readily accessible, insightful, clear, and consistent, and which has repeatedly clarified *all* of the issues currently presented, and which already governs these issues; and
>
> 5) ***When in doubt, disclose, disclose, disclose***.

74.     Other bankruptcy advisors seem to not have any trouble understanding or complying with their disclosure obligations.  The existing Bankruptcy Code and Rules work.  The bankruptcy system is not broken.  The only problem here is McKinsey's unwillingness to comply with clear, existing law.  McKinsey has intentionally and repeatedly chosen to ignore well-established laws which have worked fine for decades for everyone except for McKinsey, including large law and financial firms.[44]  Despite decades of uniform case law making it clear that Rule 2014 required McKinsey to fully disclose (*inter alia*) MIO's investment

---

[44]     And obviously, even if McKinsey had some good faith argument (and it does not) that the existing laws should be altered, it would be required to fully comply with existing law unless and until the law was changed.  Instead, McKinsey has repeatedly demonstrated its bad faith not only through (*inter alia*) consistent wilful failure to comply with Rule 2014, but also by violating the *ANR* Court's clear order commanding it to disclose all MIO investment connections.

connections,[45] McKinsey refused to comply in *ANR*, *SunEdison*, *GenOn*, and now in this case. And despite the *ANR* Court's express ruling on the already-obvious point that McKinsey is required to disclose its MIO investment connections to debtors and Interested Parties, McKinsey never did so in its subsequent Chapter 11 bankruptcy matters: *SunEdison*, *GenOn*, and now *Westmoreland*.

75.    Moreover, even if a "global protocol" were necessary (and it is not), McKinsey's proposal presents the worst possible approach from both a substantive and public perception standpoint.  The idea that an admitted serial violator of the bankruptcy rules—one that this Court has itself acknowledged may have committed multiple federal crimes—should be able to select, pay for, and control an "expert" to develop a "protocol" to be applied in all U.S. Bankruptcy Courts is dubious at best.  The damage to the integrity and credibility of the bankruptcy system from such a procedure would be incalculable.  This is all the more so given the wide panoply of independent, unbiased expert bodies and organizations that are far better suited to develop a universal protocol for Rule 2014 disclosures than a lone paid expert beholden to McKinsey, the poster child for Rule 2014 violations, self-dealing, and undisclosed conflicts.  Such groups include the Senate and House Judiciary Committees; the Supreme Court Federal Rules Committee's Bankruptcy Subcommittee; 30-member National Bankruptcy Conference; the American Bankruptcy Institute;  the National Conference of Bankruptcy Judges; the Turnaround Management Association; and the American College of Bankruptcy.

76.    Notably, the Joint Emergency Motion provides the Court with no description of the proposed qualifications or specific responsibilities of McKinsey's proposed "expert," much less any explanation of why the task of identifying and disclosing McKinsey's connections to the Court cannot be performed by McKinsey and its attorneys.

---

[45]    *See, e.g.*, **Exhibits 1-2** hereto (Joint Declaration (Exhibit C to Amended RICO Complaint); (Joint Reply Declaration (Exhibit to Opposition to Motion to Dismiss Amended RICO Complaint) (citing cases).

77.     Additionally, the ironically-styled Joint "Emergency" Motion (which is neither "joint" nor an "emergency") curiously omits any mention of MIO.  McKinsey never states that it is committed to fully disclosing MIO's connections.  Indeed, based on McKinsey's past statements in this case and its failure to fully comply with the *ANR* Court's order to disclose MIO's connections *in camera*, it is abundantly clear that McKinsey does ***not*** intend to fully disclose MIO's investment connections in any supplemental disclosures or "expert" report it files with this Court.  The more likely outcome is that McKinsey will, through its "expert," seek to launder its conduct and re-hash its already rejected argument that it is not required to, or as a practical matter cannot, disclose MIO's connections.  McKinsey should not be permitted to further delay discovery and the inevitable finding that it is disqualified.

78.     Further, McKinsey contends that it does not need to disclose MIO investments in Interested Parties because there is a "wall" between MIO and the rest of McKinsey.  Not only has that argument been reduced to rubble,[46] but also any "expert" would have no first-hand basis to opine on whether there is, in fact, a "wall" between MIO and McKinsey. Accordingly, McKinsey's own position dictates that searching discovery into the purported separation between McKinsey and MIO is required before an "expert" opinion could have any value to the Court.

79.     To the extent that McKinsey is seeking to have its "expert" sanction its supplemental disclosures and thereby avoid further scrutiny, the Court should reject McKinsey's proposal as improper.  Any expert selected and hired by McKinsey would be entitled to no more weight than any other attorney or agent of McKinsey—again, calling into question the need for McKinsey to retain an "expert" at this late stage.  Such an "expert," paid for by and answering to McKinsey, could not possibly be seen as impartial, and the Court

---

[46]     *See, e.g.*, *ANR* 1/15/2019 Tr. at 30:21-25; *ANR* Dkt. 4124 (Mar-Bow's Motion for Relief from Judgments and for Indicative Ruling) at 4-9; *ANR* Dkt. 4164 (U.S. Trustee's Comments) at 3-10 ¶¶ 3-15.

should not allow McKinsey to delay or avoid proper scrutiny simply by stamping its disclosures with the imprimatur of its own hired gun.  Nor should McKinsey be permitted to make an end-run around any part of Mar-Bow's Amended Objection or any of the discovery that this Court has already stated should go forward by supplying an "expert" report.[47]

### C.  No More Time is Required.

80.     Moreover, there is no reason why McKinsey, which says it first received the Interested Parties list in this case five months ago, should require *any* additional time to file its supplemental disclosures, beyond perhaps a few days to allow Debtors' counsel to review them. Nearly three months have passed since the Amended Objection was filed pointing out deficiencies in McKinsey's Rule 2014 disclosures in this case.   And it has been two-and-a-half months since McKinsey filed its deficient supplemental Hojnacki Declaration, and nearly two months since the deposition of Hojnacki further underscored the deficiencies in McKinsey's disclosures and conflicts checking process.  The extended time period has to create in the mind of any fair-minded observer this question: What has McKinsey been doing these last months to fix what it acknowledges are deficient disclosures?

81.     In terms of the life of a bankruptcy case, McKinsey has already had an extremely long period of time to search for and fully disclose its connections—and to devise and describe for the Court any "protocol" used in that process.[48]  Yet McKinsey has not done

---

[47]     The Joint Emergency Motion misses the point when it states: "No genuine party-in-interest should harbor concerns about McKinsey RTS's disinterestedness." Dkt. 1422 at 3 ¶ 4. This statement is obviously targeted at Mar-Bow, which is a creditor and thus a party-in-interest with standing to bring the Amended Objection, notwithstanding McKinsey's attempts to distort the facts.  More importantly, however, McKinsey ignores that under Section 327, its MIO investment connections *will* render it disqualified regardless of its compliance with Rule 2014. Indeed, McKinsey's statement is absurd given that it held a financial interest in the reorganized debtor and unlawfully profited from its role in *ANR*.

[48]     As described above in Background Points B-J, McKinsey has expended significant efforts over the past three months in seeking to avoid discovery at all costs and still has not produced even a single document.  To the extent that McKinsey has participated in discovery at all, it has slow walked the process, including by not showing up for a scheduled meet-and-confer.  And in the only instance in which McKinsey has provided any discovery to date—the

so.  Indeed, it has not even identified any potential "experts" who would carry out the process, and asks for another two weeks of delay from the date of this Court's Order to do so.  McKinsey also fails to propose any schedule for compliance with Rule 2014, instead merely proposing that it provide the Court with "status reports" every two weeks indefinitely.  McKinsey's request for a vague, open-ended period for an expert to devise and sanction a "protocol" is a transparent attempt to delay its day of reckoning and should be denied.

## II.   THOROUGH DISCOVERY SHOULD PROCEED IMMEDIATELY.

82.   Regardless of whether the Court entertains McKinsey's request for an open-ended period of time for it to devise an "expert" protocol and supplement its disclosures, discovery on Mar-Bow's Amended Objection should proceed immediately and McKinsey should not be permitted to create further delays.

83.   The Court acknowledged in its Order that it would vacate the existing discovery stay and implement "an orderly discovery process" upon a request for a hearing.  Dkt. 1427 at 2 (footnote).  Mar-Bow hereby requests that hearing so that the Court can set a reasonable discovery schedule, and resolve any existing disputes over the scope of discovery.

84.   Mar-Bow urges the Court to impose a substantial discovery period, and to accord discovery the time required to fully explore the weighty and complex issues raised in the Amended Objection.  Indeed, the Court has already stated that it will "not shy away" from a thorough discovery process; will not "shortcut the process"; will "start turning over all the rocks"; and will allow discovery to continue "as long as it takes."  Dkt. 981 (1/3/2019 Hearing Tr.) at 28:18-21.  Further, the Court has recognized the importance of "methodical" and "sequential[]" discovery that "get[s] to the truth."[49]  *Id.* at 28:21-25.  The integrity of the

---

Hojnacki deposition—its conduct was so obstructionist that the Court raised *sua sponte* Federal Rule of Civil Procedure 37.  *See* Dkt. 981 (1/3/2019 Hearing Tr.) at 33:5-15.

[49]    As this Court has also noted, discovery must include, *inter alia*, the deposition of McKinsey's former Managing Partner, Dominic Barton (who stepped down in 2018 prior to

bankruptcy process requires no less.  Mar-Bow is, of course, prepared to proceed expeditiously and efficiently within the bounds of the discovery schedule to be set by the Court.

85.     In addition, Mar-Bow respectfully requests that the Court open the discovery process quickly, and require McKinsey to provide rapid and substantive responses to Mar-Bow's long-outstanding discovery requests.

86.     To date, Mar-Bow has served the following discovery:

| Date | Discovery Request | Recipient |
|------|-------------------|-----------|
| 12/14/2018 | First Set of Interrogatories | McKinsey |
| 12/14/2018 | First Set of Document Requests | McKinsey |
| 1/11/2019 | Supplemental Interrogatories | McKinsey |
| 1/11/2019 | Supplemental Document Requests | McKinsey |

87.     Nevertheless, Mar-Bow has yet to receive a single document or interrogatory response.

88.     Perhaps the biggest existing impediment to an efficient and through discovery process is the parties' fundamental disagreement.  While Mar-Bow requires a searching and rigorous discovery process, McKinsey has made clear that it will oppose the vast majority of the discovery sought by Mar-Bow.  For example, before the parties can proceed to depositions,[50] they will need to answer interrogatories and complete document production.  Document production, in turn, will require the parties to attempt to agree upon electronic document custodians and search parameters.  By the time of the next conference, Mar-Bow

the *Westmoreland* engagement), and other testimony and documents pre-dating the supplemental disclosures and even *Westmoreland*.

[50]     Mar-Bow has preliminarily informed McKinsey that it requires the following depositions: McKinsey & Co., Inc. corporate representative (pursuant to Fed. R. Civ. P. 30(b)(6); McKinsey & Co., Inc. US corporate representative (pursuant to Fed. R. Civ. P. 30(b)(6); McKinsey Recovery & Transformation Services U.S., LLC corporate representative (pursuant to Fed. R. Civ. P. 30(b)(6); MIO Partners, Inc. corporate representative (pursuant to Fed. R. Civ. P. 30(b)(6); Dominic Barton; Laurie Basch; Victoria Crane; Kevin Carmody; Jon Garcia; Mark Hojnacki; Casey Lipscomb; Alison Proshan; Robert Sternfels; Guy Talarico (MIO); Peter Ivanick and Alex Sher (Hogan & Lovells LLP); and Christine Chung and Joshua Margolin (Selendy & Gay LLP).  *See* Dkt. 1029 (Mar-Bow's Motion to Compel Discovery, filed Jan. 11, 2019) at 19-20.  This list may change as discovery proceeds.

will have initiated that process.  However, based on past discussions, Mar-Bow anticipates that McKinsey will resist electronic document discovery in its entirety, and particularly electronic discovery focused on MIO's investments in Interested Parties in bankruptcy cases.

89.     McKinsey's uncooperative approach to discovery underscores the need to resolve fundamental differences regarding the scope of discovery as expeditiously as possible so the exchange of actual information can begin.  After McKinsey failed to appear for the parties' scheduled meet and confer on February 27, 2019, it insisted during the parties' re-scheduled telephone conference on March 5, 2019 that *no* discovery should proceed until after McKinsey has completed its "protocol" and submitted supplemental disclosures.  McKinsey also continues to deny that Mar-Bow is entitled to the discovery outlined in Mar-Bow's January 11, 2019 motion to compel discovery.  Accordingly, the parties' positions on discovery have crystallized and an intervention by the Court is required so that discovery may finally proceed. Thus, Mar-Bow asks that the Court set a hearing date so that a discovery schedule may be ordered.  At the forthcoming conference, Mar-Bow requests that the Court resolve any existing discovery disputes so that disposition of Mar-Bow's Amended Objection can move forward.

## <u>CONCLUSION</u>

Based on the foregoing, the Court should grant this motion, vacate its prior order and set a date for a discovery conference on Mar-Bow's Amended Objection.

Respectfully submitted, March 6, 2019.          JONES MURRAY & BEATTY LLP

 */s/ Christopher R. Murray*
Christopher R. Murray (TBN 24081057)
Erin E. Jones (TBN 24032478)
4119 Montrose, Suite 230
Houston, TX 77006
Tel. 832-529-1999
Fax. 832-529-3393
chris@jmbllp.com
erin@jmbllp.com

-and-

CADWALADER, WICKERSHAM
& TAFT LLP
Sean O'Shea, Esq. (*pro hac vice*)
Michael E. Petrella, Esq. (*pro hac vice*)
Amanda L. Devereux, Esq. (*pro hac vice*)
200 Liberty Street
New York, NY 10281
Tel. 212-504-6000
Fax. 212-504-6666
soshea@cwt.com
michael.petrella@cwt.com
amanda.devereux@cwt.com

-and-

STEVEN RHODES CONSULTING, LLC
Steven Rhodes, Esq. (*pro hac vice*)
1610 Arborview Blvd.
Ann Arbor, MI 48103
rhodessw@comcast.net
Tel. 734-646-5406

-and-

Daniel L. Lemisch (*pro hac vice*)
dlemish@lakeviewcapitalinc.com
Lakeview Capital Inc.
151 S. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
Tel. 248-554-4900

*Attorneys for Mar-Bow Value Partners, LLC*

## Certificate of Service

I certify that on March 6, 2019, I caused a copy of this pleading to be filed through the Court's electronic filing system and thereby served all parties registered to receive such service.

*/s/ Christopher Murray*
Christopher Murray