## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | Case No. 18-35672 (DRJ) |
| Reorganized Debtors. | (Jointly Administered) |

**WLB DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF
MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AND
CERTAIN OF ITS AFFILIATES AS PERFORMANCE IMPROVEMENT ADVISORS
FOR THE WLB DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE
AND (II) GRANTING RELATED RELIEF**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON JULY 24, 2019 AT 9:00 A.M. IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] Due to the large number of debtors in these chapter 11 cases, which are consolidated for procedural purposes only, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

Westmoreland Coal Company and certain of its affiliates—other than Westmoreland Resource Partners GP LLC and Westmoreland Resource Partners, LP and its subsidiaries—as reorganized debtors in the above-captioned chapter 11 cases (collectively, the "WLB Debtors")[2] respectfully state the following in support of this application (this "Application").

## Relief Requested

1. The WLB Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the employment and retention of McKinsey Recovery & Transformation Services, U.S., LLC ("RTS") and the Retained Affiliates (as defined below) (collectively, the "Proposed Professionals") as performance improvement advisors to the WLB Debtors (as set forth in further detail below), *nunc pro tunc* to the date of filing of these cases (the "Petition Date"), and approving the terms of the Proposed Professionals' employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in that certain postpetition engagement letter dated as of October 9, 2018, by and between Westmoreland Coal Company ("Westmoreland") and RTS (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to **Exhibit A**. In further support of this Application, the WLB Debtors submit the declarations of Mark W. Hojnacki, a Practice Leader of RTS and partner at McKinsey & Company, Inc. United States ("McKinsey US") (the "Hojnacki Declaration"), attached hereto as **Exhibit B** and incorporated by reference, and Dmitry Krivin, a partner at McKinsey US. (the "Krivin Declaration"), attached hereto as **Exhibit C** and incorporated by reference.

---

[2] A detailed description of the WLB Debtors' businesses and the reasons for commencing these chapter 11 cases is set forth in the *Declaration of Jeffrey S. Stein, Chief Restructuring Officer of Westmoreland Coal Company, in Support of Chapter 11 Petitions and First Day Pleadings*, Dkt. 54 (the "First Day Declaration").

2

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012, as well as pursuant to Article XIII of the Plan (as defined below). The WLB Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2014(a), 2016, and 5002, and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

4. On the Petition Date, each WLB Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. During the course of these chapter 11 cases, the WLB Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 18, 2018, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors. Dkt. 206. No trustee or examiner was appointed in these cases. On March 2, 2019, the Court confirmed the *Amended Joint Chapter 11 Plan of Westmoreland Coal Company and Certain of Its*

*Debtor Affiliates* (the "Plan"). Dkt. 1561. The Plan went effective on March 15, 2009 (the "Effective Date").

## Retention of Proposed Professionals

5.     The WLB Debtors seek to retain the Proposed Professionals as performance improvement advisors to the WLB Debtors as contemplated in the Engagement Letter. As used in this Declaration, the "Engagement Team" means consultants of (a) RTS; (b) McKinsey US; (c) McKinsey and Company Africa (Pty) Ltd. ("McKinsey Africa"); (d) McKinsey Knowledge Centre India Private Limited ("McKinsey India"); (e) McKinsey & Company Canada/McKinsey & Compagnie Canada ("McKinsey Canada"); and (f) McKinsey & Company LME Limited ("McKinsey LME" and, collectively with McKinsey US, McKinsey Africa, McKinsey India, and McKinsey Canada, the "Retained Affiliates"), who comprise the working group that directly provided the services for which the WLB Debtors are seeking to retain the Proposed Professionals.[3]

6.     The WLB Debtors seek to retain the Proposed Professionals as their performance improvement advisors based on their qualifications, skill, and expertise. RTS is a global, full-service advisory firm that supports companies through all aspects of transformation. Its professionals, along with their colleagues from the Retained Affiliates, have extensive experience in improving the operational performance of financially troubled companies. RTS has deep experience in working with clients to execute transformation plans that are focused on improving top-line, bottom-line, capital expenditures, and working capital. As further detailed in

---

[3] Although the Houston Disclosure Protocol contemplates excluding personnel that only episodically provide such services, personnel serving the WLB Debtors were not excluded from the definition of the Engagement Team on this basis. *See* Dkt. 1907, Ex. A, Defined Terms (defining "Proposed Professional Personnel" as the "primary working group within a Proposed Professional entity that directly provides the services for which the Proposed Professional is retained in the particular bankruptcy case, and excludes personnel that only episodically provide such services").

the Hojnacki Declaration, the Proposed Professionals have considerable experience in the energy and mining sectors.

7. As a result of the prepetition work performed on behalf of the WLB Debtors, the Engagement Team became familiar with the WLB Debtors and their businesses, including the WLB Debtors' financial affairs, debt structure, operations, employee groups, cost structures, and related matters. Members of the Engagement Team worked closely with the WLB Debtors' management and other professionals on numerous tasks related to performance-improving opportunities, revenue drivers, and cost reduction opportunities. The Engagement Team also gained substantial knowledge of the WLB Debtors' and non-WLB Debtor subsidiaries' operating assets. Therefore, the Engagement Team had the skills, expertise and relevant knowledge to assist the WLB Debtors with performance improvement efforts, which efforts continued following the WLB Debtors' filing of their chapter 11 petitions. Accordingly, the WLB Debtors submit that the retention of the Proposed Professionals on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the WLB Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

8. On the Petition Date, the WLB Debtors and RTS entered into the Engagement Letter to set forth the terms of the WLB Debtors' retention of RTS during the WLB Debtors' chapter 11 cases (except as such terms might be explicitly modified in any order granting this Application). The Engagement Letter was negotiated between the parties at arm's length and in good faith, and reflects the parties' mutual agreement as to the substantial efforts required during the course of the engagement.

9. The WLB Debtors seek to retain the Proposed Professionals in connection with their performance of a broad range of services during these chapter 11 cases aimed at preserving or enhancing the value of the WLB Debtors, including, without limitation, the following:[4]

    a. <u>Operational Improvement Planning</u> – Assist the WLB Debtors with identifying and planning detailed initiatives to support improvements in operating performance in mining operations, corporate functions, and commercial agreements.

    b. <u>Operational Support</u> – Provide the WLB Debtors with hands-on support to implement the detailed initiatives to support operational improvements.

    c. <u>Business Plan</u> – Support the WLB Debtors and their restructuring advisor, Alvarez & Marsal North America, LLC, in incorporating the operational improvement plans into the WLB Debtors' business plan, disclosure statement, and plan(s) of reorganization.

    d. <u>Constituent Management</u> – Assist in developing supporting diligence materials and presentations for use in various stakeholder meetings, attend diligence sessions and working meetings with various stakeholders and constituents, and provide related *ad hoc* support to the management team on matters related to the operational improvement plans.

    e. <u>Other Operational Services</u> - As appropriate, assist the WLB Debtors with other matters as requested by the WLB Debtors and mutually agreed upon between RTS and the WLB Debtors, subject to further Court order.

10. The services provided by the Engagement Team were necessary to enable the WLB Debtors to maximize the value of their estates. The WLB Debtors separately engaged Centerview Partners LLC ("<u>Centerview</u>") to serve as the WLB Debtors' financial advisor and Alvarez & Marsal North America, LLC ("<u>A&M</u>") to serve as the WLB Debtors' restructuring advisor. As set forth herein, the Proposed Professionals carried out unique functions that were not duplicative of the work performed by Centerview or A&M, and at all times, the Engagement Team

---

[4] Any references to, or descriptions of, the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern in the event of any conflict between the Engagement Letter and the descriptions provided herein.

coordinated with the WLB Debtors and their other retained professionals to avoid unnecessary duplication of services. Furthermore, the WLB Debtors directed the services provided by each retained professional in order to avoid duplicative efforts among such professionals.

### The Proposed Professionals' Disinterestedness

11. In February 2019, following a global mediation in these cases, RTS and the WLB Debtors entered into an agreement (the "Mediation Agreement") pursuant to which RTS would continue to serve as an advisor to the WLB Debtors in these chapter 11 cases. Pursuant to the Mediation Agreement, the WLB Debtors stated their belief that "McKinsey has provided unvarnished and independent advice to Westmoreland in these cases," and that they "ha[ve] observed no conflict [of interest] and believe[] that [they have] received unconflicted advice" from the Engagement Team. Mediator's Notice to Court, Ex. B at ¶ 2, Dkt. 1406. Under the terms of the Mediation Agreement, RTS agreed to retain an expert to work with it to develop new disclosure procedures and to apply such new procedures in these chapter 11 cases. *Id.* ¶ 3. The agreement provided that, once the Proposed Professionals prepared new disclosures, the WLB Debtors would seek Court approval of their retention. *Id.* Pending completion of this process, the Proposed Professionals have not sought nor received any fees from the WLB Debtors for services performed during the WLB Debtors' chapter 11 cases.

12. In accordance with the Mediation Agreement, RTS engaged D.J. (Jan) Baker to develop its new disclosure procedures. RTS later also engaged Berger Singerman LLP to assist Mr. Baker. The process undertaken by Mr. Baker and Paul Singerman and his colleagues to prepare such disclosure procedures was documented in periodic status reports filed with the Court and culminated in the Houston Disclosure Protocol, which was filed with this Court on May 31, 2019.

7

13. Based upon representations in the Krivin Declaration, the WLB Debtors understand that the Proposed Professionals have followed the guidance in the Protocol to generate the disclosures set forth herein. As set forth in the Krivin Declaration, in anticipation of this Application, Mr. Krivin led a working group of McKinsey professionals (the "Working Group") that undertook a multi-stage analysis of the Proposed Professionals' client and other relationships with potential parties in interest in these chapter 11 cases, following the Houston Disclosure Protocol. As set forth in the Krivin Declaration, McKinsey US, on behalf of itself and the other Proposed Professionals, retained Ernst & Young LLP ("EY") to assess the adequacy of the connections-checking procedures used by the Working Group to identify and appropriately disclose connections. The results of that process and EY's assessment are set forth in the Krivin Declaration.

14. Based upon representations in the Krivin Declaration (and other than as set forth in the Krivin Declaration), the WLB Debtors understand that none of the Proposed Professionals (a) have any connection with the WLB Debtors, their creditors, and other parties in interest, or any of the Bankruptcy Judges, the United States Trustee, or anyone employed in the Office of the United States Trustee, in each case for the Southern District of Texas or; (b) holds or represents any interest adverse to the WLB Debtors or their estates, and each Proposed Professional is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Code section 1107(b). As set forth in the Hojnacki Declaration, the Proposed Professionals have waived any prepetition claims they may have held against the WLB Debtors.

15. The Proposed Professionals informed the WLB Debtors that they have not shared or agreed to share any of their compensation from the WLB Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

16. In addition, as set forth in the Krivin Declaration, the Proposed Professionals understand they have the obligation pursuant to Bankruptcy Rule 2014 to further supplement any declaration in the event they become aware of any relationship or other information that requires disclosure.

## Professional Compensation

17. Subject to Court approval, it is contemplated that the WLB Debtors will compensate the Proposed Professionals in accordance with the terms and conditions of the Engagement Letter, which provides a compensation structure (the "Fee and Expense Structure") as outlined below.

18. Hourly Rates:  The Proposed Professionals' fees are to be based on the hours worked by members of the Engagement Team at the following hourly billing rates:

| Title of Professional[5] | Hourly Rate |
| --- | --- |
| Practice Leader: | $995-$1,150 |
| Senior Vice President: | $735-$925 |
| Vice President: | $640-$735 |
| Senior Associate: | $530-$615 |
| Associate: | $425-$515 |
| Analyst: | $300-$425 |

---

[5] These titles are specific to RTS only.  Titles used by Retained Affiliates may vary, but the tiered rate structure and hourly rate amount for such Retained Affiliates correspond to the tiered structure for RTS listed here.

       Paraprofessional:        $250-$275

  19.  <u>Expenses</u>:  The WLB Debtors will reimburse the Proposed Professionals for all reasonable and necessary out-of-pocket expenses incurred in connection with the engagement, such as, but not limited to, travel, consultants, case administrators, lodging, postage, and communications charges following Proposed Professionals' standard expense reporting.

  20.  All fees and expenses due to the Proposed Professionals will be billed in accordance with any orders entered by this Court and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules.

  21.  The Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to the Proposed Professionals for comparable engagements, both in and out of bankruptcy. The Proposed Professionals and the WLB Debtors believe that the Fee and Expense Structure is reasonable, market-based, and consistent with RTS's normal and customary billing levels for comparably sized and complex cases, both in and out of court, involving the services the Engagement Team was engaged to provide to the WLB Debtors.

<b><u>Indemnification Provisions</u></b>

  22.  As part of the overall compensation payable to the Proposed Professionals under the terms of the Engagement Letter, the WLB Debtors have agreed to certain indemnification and contribution provisions described in the Engagement Letter (the "<u>Indemnification Provisions</u>"). Subject to the terms of the Order, the Indemnification Provisions provide that the WLB Debtors will indemnify, hold harmless, and defend RTS (including its past, present, and future affiliates) and each of their directors, officers, managers, shareholders, partners, members, employees, agents, representatives, advisors, and controlling persons (each, an "<u>Indemnified Party</u>," and collectively, the "<u>Indemnified Parties</u>") against liabilities arising out of

(directly or indirectly) the Engagement Letter and/or RTS's retention by the WLB Debtors in these chapter 11 cases, except for any liabilities judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of any of RTS or the other Indemnified Parties in connection with the services provided under the Engagement Letter. In addition, if indemnification or reimbursement obligations are held to be unavailable by any court (other than in circumstances where a court determines that liability is from the willful misconduct or gross negligence of the Indemnified Party), the Engagement Letter allocates contribution obligations based on the relative benefits and faults of RTS and the WLB Debtors. The Engagement Letter further sets forth that RTS's aggregate liability shall be no more than the amount of its fees actually received under the Engagement Letter.

23. The terms of the Engagement Letter, including the Indemnification Provisions, were fully negotiated between the WLB Debtors and RTS at arm's length and in good faith, and the WLB Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the WLB Debtors, their estates, and creditors. Accordingly, as part of this Application, the WLB Debtors request that this Court approve the Indemnification Provisions.

24. The WLB Debtors and the Proposed Professionals believe that these provisions of the Engagement Letter are customary and reasonable for restructuring advisory, consulting, and support engagements, both in and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district and others. *See, e.g.*, *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Nov. 14 & 15, 2018) (Centerview Partners LLC and Alvarez & Marsal North America, LLC); *In re GenOn Energy, Inc.,* No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13,

2017); *In re Southcross Holdings, LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. May 6, 2016); *In re Edge Petrol. Corp.*, No. 09-20644 (RSS) (Bankr. S.D. Tex. Oct. 26, 2009); *In re Scotia Dev. LLC*, No. 07-20027-C-11 (RSS) (Bankr. S.D. Tex. Mar. 15, 2007); *see also In re Paragon Offshore plc*, No. 16-10386 (CSS) (Bankr. D. Del. Apr. 5, 2016).

25. Notwithstanding the foregoing, based upon representations in the Hojnacki Declaration, the WLB Debtors understand that no Indemnified Party is intending to seek reimbursement or indemnification from the WLB Debtors for any fees or expenses of legal counsel incurred in connection with the Proposed Professionals' retention by the WLB Debtors in these chapter 11 cases.

**Record Keeping and Fee Applications**

26. The WLB Debtors understand that, following their retention and subject to any order of this Court, the Proposed Professionals intend to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines established by the United States Trustee, and any other applicable procedures and orders of the Court.

27. The Proposed Professionals' fee application will include time records setting forth, in reasonable detail, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the WLB Debtors. The Engagement Team was instructed to maintain, and will file, contemporaneous time records in one-tenth hour (.1) increments. The Proposed Professionals are required to maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services as discussed above.

28. Given the numerous issues that the Proposed Professionals were required to address in the performance of the services, the Proposed Professionals' commitment to the variable level of time and effort necessary to address all such issues as they arose, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the WLB Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

29. As set forth in the Hojnacki Declaration, the WLB Debtors paid RTS a retainer in the amount of $1,500,000 (the "Retainer") on August 1, 2018 in connection with prepetition services to be performed by RTS, and during the ninety (90) days prior to the Petition Date, the WLB Debtors paid RTS a total of $5,540,000.00 (inclusive of the Retainer and reimbursable expenses), in connection with prepetition services. None of the Proposed Professionals received any other payments from the WLB Debtors during the ninety (90) days immediately preceding the Petition Date. As set forth more fully in the Hojnacki Declaration, to resolve preference issues related to Retainer shortfalls, RTS disclosed the shortfall and subsequently returned $1,240,000 to the relevant Debtor in December 2018.

30. As of the Petition Date, the WLB Debtors owed RTS $96,000.00 in fees and expenses incurred prior to the Petition Date (the "Prepetition Balance").[6] As set forth in the Hojnacki Declaration, RTS has agreed to waive the Prepetition Balance.

**Basis for Relief**

31. The WLB Debtors submit that the retention of the Proposed Professionals under the terms described herein is appropriate under sections 327(a) and 328(a) of the Bankruptcy

---

[6] Specifically, the Prepetition Balance is comprised of fees for services provided and expenses incurred by the Proposed Professionals on behalf of the WLB Debtors as of October 8, 2018.

Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

   a.   is not a creditor, an equity security holder, or an insider;

   b.   is not and was not, within two (2) years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

   c.   does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). As discussed above, the Proposed Professionals satisfy the disinterestedness requirement of section 327(a).

   32.   Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). The Proposed Professionals' prepetition relationship with the WLB Debtors is therefore not an impediment to the Proposed Professionals' retention as the WLB Debtors' postpetition performance improvement advisors.

   33.   Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). The WLB Debtors submit that the terms and conditions of the Proposed Professionals' retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for

14

engagements of this size and character. Since the WLB Debtors required substantial assistance with the chapter 11 process, it is reasonable that the WLB Debtors have sought to employ and retain the Proposed Professionals to provide consulting services on the terms and conditions set forth herein.

34. The WLB Debtors and the Proposed Professionals believe that approval of the Application *nunc pro tunc* to the Petition Date is appropriate and justified under the circumstances of these chapter 11 cases. The decision to grant *nunc pro tunc* relief rests firmly within the Court's discretion. *See e.g.*, *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983).

35. As an initial matter, the WLB Debtors withdrew their initial application to retain RTS with permission of the Court at the same time they filed this Application. Hr'g Tr. dated June 26, 2019 at 38:24-39:2, *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex.); *see also* Order Granting Motion of McKinsey Recovery & Transformation Services, U.S., LLC in Furtherance of Mediation Agreement, Dkt. 2118. That initial application, if granted, automatically would have been effective *nunc pro tunc* to the Petition Date pursuant to Bankruptcy Local Rule 2014-1(b)(1). Therefore, there has been no change in the scope of the relief being sought, and no party has been prejudiced by the WLB Debtors seeking such relief in this Application.

36. Even setting that aside, the Application meets the requirements for *nunc pro tunc* retention outside the initial 30 days. The Application arises from a settlement reached in the successful February 2019 mediation, not from any delinquency in seeking timely Court approval. The Court may take judicial notice of the full record regarding the mediation and RTS's status reports detailing the protocol development process. The WLB Debtors and RTS have acted

diligently both with respect to the protocol process and subsequent implementation of the Houston Disclosure Protocol. These unique circumstances demonstrate RTS's good faith efforts and constitute extraordinary circumstances warranting *nunc pro tunc* treatment of the Application.

37. Accordingly, the typical concerns presented by belated *nunc pro tunc* applications – unexpected and unbudgeted professional fees accruing to the estate months into a bankruptcy case – are inapplicable here. All parties have been on notice of RTS's pending retention in these cases since last November.

38. Furthermore, the Proposed Professionals provided services to the WLB Debtors in good faith during these chapter 11 cases based on the reasonable understanding that, assuming the Court approved their retention, they would be entitled to submit fee applications for all work on behalf of the WLB Debtors from the Petition Date through March 2, 2019, the date on which the WLB Debtors plan of reorganization was confirmed.[7,8]

## Notice

39. The WLB Debtors will provide notice of this Motion to the following parties or their respective counsel (collectively, the "Notice Parties"): (a) the Office of the United States Trustee for the Southern District of Texas; (b) the WLB Debtors; (c) Mar-Bow Value Partners, LLC; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (g) the offices of the

---

[7] Section II.B.4 of the confirmed Plan states that "[u]pon the Confirmation Date, any requirement that Professionals…comply with sections 327 through 331 and 1103 of the Bankruptcy Code…in seeking retention or compensation for services rendered after such date shall terminate…." *See* Dkt. 1561, Ex. A, at II.B.4.

[8] If *nunc pro tunc* relief is not granted, the Proposed Professionals would be limited in the amount of compensation they could seek for their services to the WLB Debtors in these cases—and if relief were only granted as of the date this Application was filed, the Proposed Professionals would not be entitled to seek any compensation for such work.

16

attorneys general for the states in which the Debtors operated; (h) the Securities and Exchange Commission; (i) the Pension Benefit Guaranty Corporation; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The WLB Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

40. Other than as described above, no prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the WLB Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Date:  July 3, 2019  
       Houston, Texas

/s/ Jeffrey S. Stein  
Jeffrey S. Stein  
Plan Administrator  
Westmoreland Coal Company

**Certificate of Service**

      I certify that on July 3, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      /s/ Matthew D. Cavenaugh
      Matthew D. Cavenaugh