**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, et al., | Case No. 18-35672 (DRJ) |
| Debtors. | (Jointly Administered) |

**MAR-BOW VALUE PARTNERS LLC'S EMERGENCY MOTION TO COMPEL DISCOVERY REGARDING INVESTMENTS OF MCKINSEY RECOVERY & TRANSFORMATION SERVICES U.S., LLC AND CERTAIN AFFILIATES IN PARTIES-IN-INTEREST IN THIS CASE**

**(This relates to Dkt 2119)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HON. DAVID R. JONES, CHIEF UNITED STATES BANKRUTPCY JUDGE:

Mar-Bow Value Partners LLC ("**Mar-Bow**"), a creditor, submits this emergency motion to compel McKinsey Recovery & Transformation Services U.S., LLC and certain of its affiliates who seek to be retained as professionals under section 327(a) ("**McKinsey**") [*see* Dkt 2119], to respond to Mar-Bow's discovery requests regarding investment interests held by McKinsey in parties-in-interest in this case as set forth below and in the proposed order filed herewith.

## PRELIMINARY STATEMENT

1. At the end of the October 29, 2019 hearing, the Court set a January 31, 2020, deadline for discovery on Mar-Bow's objection to McKinsey's July 3, 2019 employment application. Given the discovery schedule, the very next day Mar-Bow contacted McKinsey in an attempt to focus and prioritize the discovery sought in its existing requests.[1] Mar-Bow's correspondence focused primarily on issues related to investments held by McKinsey's investment affiliate, the MIO, in Interested Parties, and the purported informational "wall" between MIO and the rest of McKinsey. Those issues are central to the upcoming February hearing on McKinsey's employment.

2. Unfortunately, five days later, on November 4, 2019, McKinsey responded by refusing to produce any part of the information requested in Mar-Bow's October 30 correspondence.[2] Also on November 4, Mar-Bow issued formal document requests and interrogatories seeking those items (among others).[3] At two meet-and-confer calls on November 5 and 7, the parties were unable to reach a resolution, and McKinsey repeatedly argued that the

---

[1]   *See* Ex. 1 (10/30/2019 Email from M. Petrella to J. Selendy).
[2]   *See* Ex. 2 (11/4/2019 Letter from J. Selendy to M. Petrella).
[3]   *See* Ex. 3 (11/4/2019 Document Requests to McKinsey) at 14-18 (Request Nos. 2-7); *id.*, Ex. 4 (11/4/2019 Interrogatories to McKinsey) at 13-16 (Interrogatory Nos. 5-6, 10).

2

information sought by Mar-Bow was irrelevant because of the existence of claimed information barriers within McKinsey. The purpose of discovery is to *test* an adversary's factual assertions; Mar-Bow cannot simply take McKinsey's word for it. The information sought in Mar-Bow's October 30 correspondence is indispensable to its ability to prepare for the February hearing, Mar-Bow now moves to compel McKinsey to produce the requested materials.

3.      Emergency relief is sought because the discovery deadline is less than three months away, and that period covers several major holidays. Even after document discovery, the parties anticipate several depositions to occur across the country and, potentially, internationally.

## RELEVANT BACKGROUND

4.      The most critical issues in this case concern the investment interests that McKinsey's partners and employees held in Interested Parties through MIO.  In that regard, three of the central disputed issues to be resolved at trial are: (**1**) what security-level investment interests were held in which Interested Parties; (**2**) to what extent MIO is aware of and directs those investment interests; (**3**) whether there is, in fact, an informational "wall" between MIO and rest of McKinsey and, if so, whether these investments in Interested Parties disqualify McKinsey from retention as a professional.  McKinsey's position is that, for the most part, the MIO entrusts funds to outside investment managers with discretionary investment authority.[4]  McKinsey further contends that MIO has limited visibility into what securities are held in those funds.[5]  McKinsey also claims that there is a strict informational "wall" between MIO and the rest of McKinsey.[6]

5.      Mar-Bow, in contrast, disputes all of these claims.  As to security-level investment interests (Item (1) above), McKinsey's Protocol excuses non-disclosure of investment interests in

---

[4]  *See*, *e.g.*, Dkt. 2340 (McKinsey's Omnibus Response) at 26.
[5]  *See*, *e.g.*, *id.* at 31.
[6]  *See*, *e.g.*, *id.*

3

Interested Parties. Specifically, the Protocol that McKinsey used to create its most recent disclosures provides that a proposed professional does not have to disclose investment interests in Interested Parties that are held through funds managed by an outside advisor with discretionary investment authority.[7] Thus, for example, the *Wall Street Journal* recently reported that McKinsey, while serving as a professional in the *ANR* case, held an investment interest in the reorganized debtor, Contura, through an outside fund manager, Whitebox.[8] Contura received the most valuable ANR estate assets.[9] McKinsey does not deny its investment interest in Contura, that it profited handsomely from that interest, or that it failed to disclose that interest to the *ANR* court prior to confirmation, despite an explicit court order to do so.[10] And yet, McKinsey prepared its disclosures in this case under a Protocol that allows it to withhold disclosure of the same type of interests in this case.

6. As to the MIO's awareness of its security-level investments through funds managed by outside advisors (Item (2) above), MIO has a professional staff of 120 people and over $26 billion of investable assets, including more than $2 billion that McKinsey considers to be "direct" investments made by MIO.[11] Those 120 people employed by MIO must be doing something. They are devising, directing, and monitoring investments in funds holding individual securities, including the securities of Interested Parties. McKinsey expects Mar-Bow to take on faith that the

---

[7] *See* Dkt. 1907-1 (Protocol) at 22; Dkt. 2426 at 82, 112, 114.
[8] *See* Ex. 6 (*McKinsey is Big in Bankruptcy – and Highly Secretive*, Wall Street Journal, Apr. 27, 2018).
[9] *See id.* at 6.
[10] *See* Ex. 7 (*One Man vs. McKinsey*, New York Times, Apr. 11, 2019) at 6; *id.*, Ex. 8 (1/9/2019 *ANR* Tr.) at 24:14-25:9.
[11] *See* Ex. 6 (MIO Partners, Inc. – Company Profile) (stating MIO has 120 employees); *id.*, Ex. 7 (MIO Partners, Inc. – SEC Form ADV – 2019) at 11 (showing that MIO has $26,232,953,078 in "regulatory assets under management," of which $6,481,236,491 can be categorized as "pension and profit sharing plans"); Dkt. 2340 at 22 (admitting that "MIO professional staff directly invest approximately 10% of MIO assets under management"—or around $2.6 billion).

4

MIO essentially passes money along to outside managers with discretionary investment authority, and its role ends there. Nonsense. If that is all that the 120 MIO investment professionals do, why would McKinsey need MIO at all?

7. McKinsey implicitly argues that if an investor like MIO uses an outside manager with discretionary investment authority, that investor has no ability to direct or influence how its funds are invested. But in the real world, a client with over $26 billion in funds to invest has considerable influence, and if it tells its manager to buy shares in a particular fund, if that manager wants to keep that client's business, it buys the shares. Just because the manager has discretionary authority does not mean that it cannot and does not make investments at the client's suggestion or outright direction. And indeed, Mar-Bow has already uncovered, in other cases, that MIO's Compass funds (which are owned and managed by MIO, *i.e.*, McKinsey) **do indeed** exercise investment discretion over the "third party" funds in which they invest. *See* Ex. 15 (2Q 2016 Visium SEC Form 13F) at 2 (listing MIO's funds Compass TPM LLC and Compass Offshore TPM LP as "Other Included Managers"); *see generally id.* (listing Compass TPM LLC and Compass Offshore TPM LP as the managers for numerous specific investments).

8. With respect to the so-called "wall" between MIO and the rest of McKinsey (Item (3) above), Mar-Bow and the U.S. Trustee have heard this story before. In *ANR* and earlier cases, McKinsey repeatedly represented to Courts and the U.S. Trustee that MIO was a "blind trust" in which McKinsey personnel had no visibility whatsoever into the MIO's investment activities.[12] But subsequent investigation by the U.S. Trustee and Mar-Bow revealed that MIO's retirement

---

[12]  Ex. 8 (*ANR* Dkt. 4164) at 3-4 (collecting "blind trust" and "walled off" quotes from *ANR* and *SunEdison*).

fund investments are a matter of public record,[13] and the President of McKinsey RTS, Jon Garcia, simultaneously sat on the Board, the Audit Committee, and the Investment Committee of MIO for *over a decade*[14] (only stepping down in mid-2017 after Judge Huennekens ordered McKinsey to disclose MIO's connections in *ANR*).[15] The Investment Committee members, including Garcia, not only knew what the MIO's investments were, but also actually *approved* those investments.[16] When the U.S. Trustee learned the foregoing information, it rebuked McKinsey for misleading it and the Court in its submission in the *ANR* case.[17] The U.S. Trustee characterized McKinsey's claim that the MIO was a blind trust as "inaccurate" and "misleading," and went so far as to say that "McKinsey's misleading representation and lack of transparency about Mr. Garcia's role undermines the very purpose of Rule 2014."[18] The bottom line is that Mar-Bow should not be required to take anything McKinsey says about "the wall" at face value without discovery.

## ARGUMENT

9. Mar-Bow acknowledges that the foregoing issues are disputed. And in litigation, disputed issues are resolved at trial after full and fair discovery. With that in mind, on October 30, the day after this Court opened discovery at the October 29 hearing, Mar-Bow sent McKinsey a highly specific and focused set of discovery requests (all of which were specific subsets of

---

[13] *See, e.g., id.*, Ex. 12 (MMRT Form 5500 – 2018) at 32-37.
[14] *See id.*, Ex. 8 (*ANR* Dkt. 4164) at 1, 6; *id.*, Ex. 10 (*ANR* Dkt. 4159) at 1-2 ¶¶ 1, 4.
[15] *Id.*, Ex. 13 (*ANR* Dkt. 4159) at 3 ¶ 7 ("In June 2017, I stepped down from my role on the MIO Board. . . . I generally understood that there had been some external challenges to RTS's bankruptcy disclosures and it would streamline RTS's disclosure process going forward if I did not serve on the MIO board.").
[16] *See* Ex. 11 (*ANR* Dkt. 4164) at 1 ("MIO was not a blind trust and Jon Garcia, McKinsey's president, ratified MIO investment decisions.").
[17] *See generally id.*, Ex. 11 (*ANR* Dkt. 4164). The U.S. Trustee also noted that "in connection with the U.S. Trustee's investigation, it took seven declarations and many months to elicit important information that McKinsey should have disclosed years earlier." *Id.* at 9 ¶ `3.
[18] *Id.* at 1, 4-6.

6

previously-served discovery) designed to uncover relevant facts about the disputed MIO issues. Each disputed category of documents is addressed *seriatim* below.

1. **MIO Investments**

    10.     Mar-Bow's October 30 correspondence stated:

    > We need documents sufficient to identify all the MIO investments (direct, indirect, or otherwise) for the time period ranging from July 11, 2018 (the date Westmoreland engaged McKinsey) until July 3, 2019 (the date McKinsey filed its last application for employment). The records should include the name of any outside manager for the investment, the name of any fund or fund of fund investments, the security-level holdings of each fund (and, in the case of fund of funds, the security-level holdings of each fund within the fund), and the amount of each investment.

    > We [also] need you identify to us each Compass and SSALT Fund entity [funds owned and managed by MIO] and its security-level holdings for the period July 11, 2018 until July 3, 2019. To be clear, whenever funds of funds are implicated, we are interested in looking through to the security-level holdings of each fund within a fund.

Ex. 1 (10/30/2019 Email from M. Petrella to J. Selendy).

    11.     The relevance of this information is obvious. It will allow Mar-Bow to independently determine the security-level investments that McKinsey's partners and employees held in Interested Parties through the MIO, and the amounts of those investments. McKinsey's existing disclosures unquestionably do not provide that information, because McKinsey's Protocol authorizes it to withhold disclosure of any investments in Interested Parties made by an outside advisor with discretionary investment authority. *See* Dkt. 1907-1 (Protocol) at 22; Dkt. 2426 at 82, 112, 114. Therefore, not only do McKinsey's disclosures not reveal security-level investments in Interested Parties, they do not even reveal the name of the investment funds that hold those security-level interests. In its November 4 letter, however, McKinsey flatly refused to provide **any** of the requested information, dubbing it "made in bad faith, argumentative, overly broad, unduly

7

burdensome. duplicative, and irrelevant . . . ." Ex. 2 (11/4/2019 Letter from J. Selendy to M. Petrella) at 4.

12. In a meet and confer conducted on November 5, Mar-Bow indicated that it might be willing to forego this discovery if McKinsey stipulated that, during the pendency of this case, it held interests in the securities of the Interested Parties, including the debtor and estate creditors, in material and significant amounts. McKinsey has refused that stipulation, and instead has only evinced a willingness to stipulate that it *could* have held interests in Interested Parties during this action. *See* Ex. 14 (11/7/2019 Email from E. Weisberger to M. Petrella). That stipulation, of course, is insufficient to establish what Mar-Bow intends to prove at trial – actual and material investment interests in Interested Parties including the debtor and creditors.

13. Also at the November 5 meet and confer, McKinsey stated that MIO does not know the security-level holdings of the funds it invests in, and that Mar-Bow would have to subpoena all of its outside managers to get that information. It further suggested that it did not have the ability to get any responsive information that MIO might have, because it is on the "other side of the wall." As an initial matter, McKinsey's sudden inability to speak or act for MIO is curious, in light of the fact that it has repeatedly done so throughout this case and that it did so in the *ANR* case.[19] In any event, Mar-Bow intends to subpoena the MIO directly for its documents, which will require it to produce all responsive documents in its "possession, custody, or control." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011). And "control" is "construed broadly to

---

[19] *See, e.g.*, Dkt. 2348 at 6-7 (describing MIO's investment strategy and the holdings and the authority accorded to MIO staff members); Dkt. 2426 at "Exhibit A" (listing all McKinsey entities included when the term "McKinsey" is used in the Krivin Declaration and including MIO Partners, Inc. and other MIO entities); *id.* at 12 (admitting that "McKinsey and MIO" share employees, including legal and administrative personnel); *id.* (describing the structure and function of MIO's board, MIO's investment strategy, and MIO employees); 10/29/2019 Hearing Tr. at 56-57, 61.

encompass documents that the respondent has 'the legal right, authority, or practical ability to obtain ... upon demand.'" *Dietrich v. Bauer,* 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000).[20] Clearly, MIO has the ability to demand and obtain from its fiduciaries (the outside investment managers) the individual security-level holdings of the funds it is invested in. Equally as clear, each outside manager will have discrete, non-voluminous records that concisely list the securities held by each fund and fund-of-funds in which it has invested MIO money. And to the extent that MIO does not want to know what it has invested McKinsey employee funds in, the relevant information can be passed directly to counsel and produced to Mar-Bow.

### 2. Communications Between MIO and McKinsey

14. In its October 30 email, Mar-Bow also requested that McKinsey search the emails of MIO professional staff for communications with McKinsey personnel outside MIO over the last 5 years. The request, at this time, is not for the emails themselves, but rather for disclosure of the *number* of responsive emails so Mar-Bow can attempt to work with McKinsey to narrow the results for production if needed. *See* Ex. 1.

15. Here again, the relevance of Mar-Bow's request is crystal clear. If there is, in fact, a "wall" between MIO and the rest of McKinsey, presumably there will be no (or very few) emails between MIO and the rest of McKinsey. If the search yields a large number of results, relevant documents will need to be produced to see if the so-called "wall" exists in both theory *and reality*. Not surprisingly, in its November 4 letter, McKinsey refused to even *perform the search*, calling it irrelevant. Ex. 2 at 6. In the course of its explanation, McKinsey noted that MIO and McKinsey "share certain administrative functions such as travel procurement," the implication being that the

---

[20] Presumably, MIO will seek to quash any subpoena Mar-Bow issues to it, and Mar-Bow would respectfully request, to the extent practicable and without delaying consideration of this motion, that the Court consider such a motion contemporaneously.

search would yield some irrelevant results. *Id.* at 5-6. During the November 5 meet and confer, Mar-Bow advised McKinsey that it was not interested in emails concerning corporate travel arrangements, and that Mar-Bow was willing to work with McKinsey to narrow the search to exclude such communications and any other similar non-substantive communications McKinsey might identify. McKinsey refused the offer and continued to insist that it would not perform any search for communications between MIO professionals and other McKinsey professionals.

16. At a subsequent meet and confer on November 7, in what appears to be a delay tactic, McKinsey indicated that it was considering ways to perform the search Mar-Bow requested without breaching to so-called "wall" between MIO and McKinsey. Mar-Bow responded with an obvious solution – since MIO and McKinsey share a general counsel, the results of the search could be reported only to that general counsel and outside counsel. That way no one who worked solely for McKinsey would see the documents (and of course, any communications between MIO and McKinsey have already, by definition, already passed through "the wall.") In response, McKinsey changed the subject.

### 3. MIO Professional Staff and Outside Managers

17. Finally, Mar-Bow requested the names of all MIO professional staff, and the names of all outside investment managers for MIO and their email domains (e.g., @blackrock.com) for the last five years. Mar-Bow also requested that McKinsey search for all emails between those MIO professional staff and the relevant outside manager email domains and simply disclose the number of responsive results. Mar-Bow noted that if the number of results was very large, it would then work with McKinsey to refine and narrow the results to relevant information. *See* Ex. 2.

18. This request is also patently relevant. As noted above, McKinsey claims that MIO has no influence over the investments of its outside managers, and indeed limited knowledge of what those investments are. *See, e.g.*, Dkt. 2340 at 26, 31. Mar-Bow believes that responsive

10

documents will show that in fact, MIO professionals are deeply involved in the investments made by their outside managers, deeply knowledgeable about the holdings of the funds that those outside managers maintain and, in fact, direct that many investments be made. Despite the clear relevance of this information, McKinsey once again refused to produce anything, unleashing a veritable thesaurus of obstructionist objections, including irrelevant, non-proportional, argumentative, overly broad, unduly burdensome, duplicative, and bad faith. Ex. 2 at 7.

## **CONCLUSION**

19. The discovery discussed above is directly relevant to core issues in this matter. Mar-Bow has tried (and will continue to try) to work with McKinsey and MIO to minimize the burden of these requests to the extent possible. But Mar-Bow cannot even get basic gating information that would allow Mar-Bow to eliminate unnecessary discovery. In sharp contrast, Mar-Bow has not refused to provide *any* of the discovery requested by McKinsey. As with the Alix and Hojnacki depositions last year, Mar-Bow has been open and responsive, and McKinsey remains in delay, stonewall, and obfuscate mode. The parties have precious little time to prepare for trial. Mar-Bow respectfully requests that the Court order McKinsey and MIO to turn over all the information requested in its October 30 correspondence immediately.

Respectfully submitted, November 8, 2019.

        CADWALADER, WICKERSHAM & TAFT LLP
        Sean F. O'Shea, Esq. (*pro hac vice*)
        Michael E. Petrella, Esq. (*pro hac vice*)
        Amanda L. Devereux, Esq. (*pro hac vice*)
        200 Liberty Street
        New York, NY 10281
        Tel. 212-504-6000
        Fax. 212-504-6666
        soshea@cwt.com
        michael.petrella@cwt.com
        amanda.devereux@cwt.com

-and-

STEVEN RHODES CONSULTING, LLC
Steven Rhodes, Esq. (*pro hac vice*)
1610 Arborview Blvd.
Ann Arbor, MI 48103
Tel. 734-646-5406
rhodessw@comcast.net

-and-

Daniel L. Lemisch (*pro hac vice*)
Lakeview Capital Inc.
151 S. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
Tel. 248-554-4900
dlemish@lakeviewcapitalinc.com

-and-

JONES MURRAY & BEATTY LLP

   */s/ Christopher R. Murray*
Christopher R. Murray (TBN 24081057)
Erin E. Jones (TBN 24032478)
4119 Montrose, Suite 230
Houston, TX 77006
Tel. 832-529-1999
Fax. 832-529-3393
chris@jmbllp.com
erin@jmbllp.com

*Attorneys for Mar-Bow
Value Partners, LLC*

### Certificate of Service

I certify that on November 8, 2019, I caused a copy of this pleading to be filed through the Court's electronic filing system and thereby served all parties registered to receive such service.

                                                    */s/ Christopher Murray*
                                                    Christopher Murray