# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.,*[1] | Case No. 18-35672 (DRJ) |
| Debtors. | (Jointly Administered) |

## THE PROPOSED PROFESSIONALS'
## EMERGENCY MOTION FOR PROTECTIVE ORDER

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

A HEARING WILL BE HELD ON THIS MATTER AS SOON AS POSSIBLE BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] Due to the large number of debtors in these chapter 11 cases, which are consolidated for procedural purposes only, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

McKinsey Recovery & Transformation Services U.S., LLC ("RTS") and its affiliates seeking retention in this case (collectively, the "Proposed Professionals") bring this emergency motion for a protective order pursuant to Federal Rule of Bankruptcy Procedure 7026. The Proposed Professionals ask this Court to preclude Mar-Bow Value Partners, LLC ("Mar-Bow") from obtaining irrelevant discovery (i) of documents and communications from years prior to the timeframe relevant to this case and (ii) from McKinsey custodians who have nothing to do with the Proposed Professionals' retention in this case, primarily possess relevant but duplicative information, or are attorneys with little or no involvement in the *Westmoreland* retention applications. The information Mar-Bow seeks is not discoverable because it has no bearing on the Proposed Professionals' qualifications under 11 U.S.C. §327 to serve the WLB debtors. The Court should enter a protective order precluding Mar-Bow's irrelevant discovery demands.[2]

## PRELIMINARY STATEMENT

Mar-Bow demands that the Proposed Professionals collect and search the custodial files of over 120 current and former McKinsey employees,[3] with search parameters in some cases dating back to August 1, 2014 and search terms clearly targeted to identify information related to six other bankruptcy cases where different McKinsey engagement teams served different chapter 11 debtors and filed different disclosures. The discovery Mar-Bow seeks is extreme by any measure: a search for just 26 of Mar-Bow's proposed search terms across 28 custodians using a date range of July 1,

---

[2] Despite the fact that Mar-Bow has made such extreme discovery demands and refused to compromise during meet and confer sessions, McKinsey has forged ahead at great expense and at risk of having to redo certain work. McKinsey began its production of relevant documents to Mar-Bow on Friday, November 8.

[3] Mar-Bow claims that it has asked the Proposed Professionals to search only 61 individuals, not 120. *See* Ex. 3 (Letter from M. Petrella to J. Selendy dated Nov. 11, 2019) at 1. While Mar-Bow may have named 61 specific individuals, it also asks for the remaining members of the Engagement Team, other individuals who prepared the declarations at issue, and the unspecified number of MIO custodians, and an unspecified number of MIO custodians, which, taken together, expands the number of custodians to approximately 120.

2018 through July 3, 2019 yielded over one million non-duplicative results. The scope of the discovery Mar-Bow seeks goes far beyond even this: nearly 100 more custodians, more than 400,000 additional search terms,[4] and a timeframe that spans a period of more than four years prior to the filing of the WLB Debtors' chapter 11 petition. It would take a team of 100 lawyers months, if not years, to review the extraordinary number of documents Mar-Bow asserts should be turned over.[5] The fact that Mar-Bow demands simultaneous privilege logs and seeks duplicative and irrelevant discovery from five attorneys (some of whom did not even work the *Westmoreland* retention applications) greatly compounds the burden it seeks to impose. The discovery Mar-Bow seeks is irrelevant to issues raised in this retention hearing and is wholly out of proportion to its scope. The Court therefore should grant a protective order to limit the relevant time period for this litigation to July 1, 2018 through July 3, 2019 (encompassing the beginning of the Proposed Professionals' service to the WLB Debtors, the first (and now withdrawn application), and the July 3 application and Rule 2014 disclosures that are currently before the Court) and to cabin the universe of custodians only to those with information relevant to this case.

## FACTUAL BACKGROUND

Since the October 29, 2019 hearing in this case, the parties have met and conferred several times in an effort to resolve the chasm between the parties' positions on several key issues, including the relevant time frame and the appropriate universe of McKinsey custodians. The Proposed Professionals' position was and remains that discovery should be limited to the period between

---

[4] Mar-Bow first demanded that the Proposed Professionals run each entity named on the Expanded IPL as a separate search term. In its November 11 letter, Mar-Bow offered to table its demand that all 400,000 entities on the Expanded IPL be included as search terms if the Proposed Professionals would agree to re-do their check of the Expanded IPL— a process that took months—for clients dating back six years rather than three and if Mar-Bow could "see the results of [the] searches." Ex. 3 (Letter from M. Petrella to J. Selendy dated Nov. 11, 2019) at 6.

[5] This does not account for the voluminous MIO-related discovery that Mar-Bow seeks, which is the subject of separate briefing.

July 1, 2018 and July 3, 2019.  This encompasses the entire time period during which the Proposed Professionals served the WLB Debtors and culminates in the filing of the July 3, 2019 retention application.  The proposal put forward by the Proposed Professionals would focus discovery on information relevant to the sole issue before this Court—namely, the Proposed Professionals' qualifications to serve the WLB Debtors under 11 U.S.C. § 327.

The Proposed Professionals further proposed to search the files of 34 McKinsey custodians, including members of the Working Group that prepared the July 3 retention application; five key members of the team serving the WLB Debtors throughout the *Westmoreland* engagement; four individuals closely involved in the preparation of the November 2018 retention application; and Robert Sternfels, the senior McKinsey executive with ultimate oversight responsibility for the Proposed Professionals' work for and retention by the WLB Debtors.  A search of the custodians that the Proposed Professionals have offered will encompass information related to the 2018 and 2019 connection-check processes and will require review of millions of documents in the next 45 days.  To the extent that Mar-Bow wishes to examine the work for the WLB Debtors, the Proposed Professionals have offered a representative sample of custodians who were closely involved in that day-to-day work in varying degrees of seniority—including the senior-most Engagement Team members and more junior members of the team.

Lastly, the Proposed Professionals agreed to run more than 60 search terms proposed by Mar-Bow, reserving objections of relevance and proportionality.  *See* Ex. 1 (Letter from J. Selendy to M. Petrella dated Nov. 8, 2019).  This subset of search terms was chosen to identify the documents responsive to Mar-Bow's document requests and most relevant here—particularly those relating to the application to retain the Proposed Professionals, the connection check process for the Proposed Professionals' Rule 2014 declarations, and work performed by the Proposed

Professionals for the WLB Debtors.  Even this effort requires that the Proposed Professionals amass a team of over 100 attorneys working seven days per week to review and produce documents falling within such a wide scope of discovery before the deadline for document production.

By contrast, Mar-Bow seeks information well beyond the scope of the Proposed Professionals' qualifications for retention under Section 327.  Mar-Bow refuses to narrow the date range to the *Westmoreland* time period for at least 13 McKinsey custodians, instead insisting on searching those custodial files back to 2014.  The majority of these custodians have no connection to the *Westmoreland* engagement or retention applications and Mar-Bow's only argument for their inclusion is that they had some involvement in prior bankruptcy cases or were McKinsey executives named by Jay Alix as having been involved in assessing RTS's prior bankruptcy disclosure practices.  Mar-Bow's proposed search terms for these custodians similarly encompass disclosure practices related to prior bankruptcies that do not concern *Westmoreland*.[6]  The information Mar-Bow seeks regarding prior bankruptcies, prior disclosure practices, and former McKinsey executives with no connection to the *Westmoreland* engagement is plainly irrelevant.[7]

## ARGUMENT

Federal Rule of Civil Procedure 26 mandates that discovery must be "relevant" to the issues presented and "proportional" to the needs of the case.  *In re Trevino*, 564 B.R. 890, 911-12 (Bankr. S.D. Tex. 2017); *see also Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 284 (N.D. Tex.

---

[6] Indeed, Mar-Bow's proposed custodians and search terms appear designed to litigate issues relating to other litigations where Mar-Bow's and/or Jay Alix's claims have already been rejected or dismissed.  Mar-Bow should not be allowed to use this Court as an end-run around the rulings in other courts to conduct wide-ranging discovery on issues that other jurisdictions have already determined Mar-Bow and Jay Alix are not entitled to probe based on their specious allegations.

[7] As reflected in Mar-Bow's November 11, 2019 letter, after several meet and confer sessions, the parties have reached an impasse as to the time frame and custodian issues discussed herein.  *See* Ex. 3 (Letter from M. Petrella to J. Selendy dated Nov. 11, 2019) at 3.

4

2017) (discovery should be denied where "the burden or expense of the proposed discovery out-weighs its likely benefit"); *accord In re Old Cold, LLC*, No. BAP NH 18-048, 2019 WL 2518098, at *26 (B.A.P. 1st Cir. June 18, 2019) ("[I]t is within the discretion of the bankruptcy court to limit discovery in contested matters."); *In re Tollefson*, No. BR 13-24681 TBM, 2015 WL 3897533, at *5 (Bankr. D. Colo. May 13, 2015) ("The special circumstances applicable to 'contested matters' in bankruptcy may require special attention and may warrant discovery limitations beyond those typically available in the Federal Rules of Civil Procedure.").   "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in connection with discovery demands. Fed. R. Civ. P. 26(c)(1); *see also In re Trevino*, 564 B.R. 890, 903 (Bankr. S.D. Tex. 2017) (the court "has broad discretion in fashion-ing protective orders to protect a party or person . . . ." (citations and quotations omitted)); *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 467 (N.D. Tex. 2015) ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." (internal quotations omitted)).   Courts in this district routinely grant protective orders to proscribe overly broad discovery requests. *See, e.g.*, *Montoya v. State Farm Lloyds*, No. 7:14-CV-182, 2015 WL 12940020, at *4 (S.D. Tex. Jan. 27, 2015) (granting protective order where plaintiff was "engaging in an overly burdensome fishing expedition not aligned with the letter and spirit of the discovery rules and outside the proper scope of discovery"); *Huber v. Tex. Woman's Univ.*, No. CV H-06-00303, 2006 WL 8446878, at *2 (S.D. Tex. June 16, 2006) (granting motion for protective order against discovery requests that were "impermissibly over-broad").

The relevant legal question in this retention hearing is whether the Proposed Professionals are qualified to serve the WLB Debtors.  As such, the Court must determine whether the Proposed

Professionals "hold or represent an interest adverse to the estate," so the Court may in turn determine whether they are "disinterested persons" as defined in the Bankruptcy Code. 11 U.S.C. §§ 101(14); 327(a). The Fifth Circuit instructs the court to consider whether the professional "(1) [ ] possess[es] or assert[s] any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possesses a predisposition under circumstances that render such a bias against the estate." *In re Am. Int'l Refinery*, 676 F.3d 455, 461-62 & n.7 (5th Cir. 2012) (quoting *In re World-Com, Inc.*, 311 B.R. 151, 164 (Bankr. S.D.N.Y. 2004)). Thus, discovery must be relevant to resolving this question and proportional to the needs of the case. *In re Wright*, 568 B.R. 770, 779 (Bankr. S.D. Tex. 2017) (granting protective order where requesting party's sole basis for request was the documents' alleged relevance to a matter not currently before the court).

Mar-Bow's demand for discovery extending back to 2014 and for documents from the files of over 120 custodians plainly fails to satisfy these standards. As explained below, the Court should grant a protective order to protect the Proposed Professionals from the abusive and improper discovery demands served by Mar-Bow.

I.   **The Court Should Not Permit Irrelevant Discovery Prior to July 2018 When the Proposed Professionals Began Work for the WLB Debtors**

Mar-Bow's discovery requests demand that the Proposed Professionals search custodial files back to August 1, 2014—nearly four years before the Proposed Professionals' service for the WLB Debtors in this case began. *See* Ex. 2 (Mar-Bow's Nov. 6, 2019 Custodian List). There is no question that the Proposed Professionals' service to the WLB Debtors did not commence prior to July 2018; indeed, there is no allegation of any connection at all between Westmoreland Coal Company and McKinsey before that date. Separately, Mar-Bow raises no *Westmoreland*-specific basis for extending discovery beyond this time period.

6

Mar-Bow's insistence on obtaining information before July 2018 is not tied to any inquiry into the Proposed Professionals' service to the WLB Debtors or the adequacy of the Proposed Professionals' disclosures in this case—the issues that are relevant to their qualifications to serve under Section 327 of the Bankruptcy Code—but instead relates to Mar-Bow's obsession with McKinsey's disclosures in previous bankruptcy cases.  But information dating back to 2014 is irrelevant to the Proposed Professionals' "intent" in formulating their disclosures in satisfaction of Section 327 in this case.  What is relevant is whether the Proposed Professionals have any "connections presently or recently existing . . . which could reasonably have an effect on [the professional's] judgment in the case."  *In re Tribeca Mkt., LLC*, 516 B.R. 254, 279 (S.D.N.Y. 2014); *see also Gutierrez v. State Farm Lloyds*, No. 7:14-CV-430, 2015 WL 13188353, at *5 (S.D. Tex. Jan. 22, 2015) ("Plaintiffs are not permitted to abuse the discovery process to hunt for evidence of a conspiracy theory that goes well beyond the claims at issue in this case.").  Information predating July 2018 simply is not relevant to the *Westmoreland* bankruptcy case.  Rather, only discovery related to the Proposed Professionals' disclosures in *this case* could even plausibly speak to whether the Proposed Professionals do or do not "possess an interest" in the WLB Debtors "such as would color the requisite independent judgment and impartial attitude" of the Proposed Professionals under section 327.  *In re O'Connor*, 52 B.R. 892, 899 (Bankr. W.D. Okla. 1985).[8]

"[C]ourts should not allow parties to roam in the shadow zones of relevancy to explore [a] matter which does not presently appear germane on the theory that it might conceivably become so."  *Boyd v. Am. Airlines, Inc.*, 2002 WL 32360294, at *1 (N.D. Tex. Oct. 17, 2002) (*quoting*

---

[8] Even if the Court were to order discovery related to McKinsey's "intent" dating back to 2014, it does not follow that Mar-Bow is entitled to relitigate every intervening RTS bankruptcy disclosure.  The bankruptcy courts overseeing those matters have already weighed in on Mar-Bow's disclosure claims.  In all decisions made to date, those courts have denied Mar-Bow the relief it requested.  Mar-Bow should not be permitted an end-run around those courts' decisions based on its spurious allegations of McKinsey's malintent.

7

*Spina v. Our Lady of Mercy Medical Center*, 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001)). Mar-Bow's demand for ancient information is not aimed at discovery of information that is actually relevant to this retention hearing.  The Court should enter a protective order precluding discovery of information during that expansive time period.  *See Merrifield v. Gussman*, 296 F. Supp. 3d 362, 364 (D. Mass. 2017) (rejecting request to extend discovery to 2011 and limiting discovery period to January 1, 2014 through August 31, 2015 where alleged incident occurred in August 2014); *U.S. ex rel. King v. Solvay S.A.*, No. CIV.A. H-06-2662, 2013 WL 820498, at *7 (S.D. Tex. Mar. 5, 2013) (granting protective order and limiting time frame for discovery to relevant period); *United States v. Medtronic, Inc.*, No. 95-1236-MLB, 2000 WL 1478476, at *3-4 (D. Kan. July 13, 2000) (granting protective orders and limiting discovery to "reasonable temporal scope").

## II.  Mar-Bow Should Not Be Permitted to Search the Custodial Files of Over One Hundred McKinsey Employees

Mar-Bow also asks the Proposed Professionals to search the files of approximately 120 custodians, including inside and outside counsel, many of whom have little or no involvement with the *Westmoreland* bankruptcy and are included solely to obtain irrelevant or duplicative information.  The Court should issue a protective order preventing Mar-Bow from obtaining this irrelevant discovery.

As discussed above, the legal question before this Court is the Proposed Professionals' disinterestedness.  The Proposed Professionals have agreed to search the files of 34 custodians— including Mark Hojnacki and Dmitry Krivin (the two Rule 2014 declarants); members of the Working Group that performed the multi-month connection check process culminating in the July 3, 2019 retention application; McKinsey professionals that assisted in the connection check process in 2018; Kevin Carmody and several members of the Engagement Team; and Robert

Sternfels, the senior McKinsey executive who has overall responsibility for the entire chapter 11 business. *See* Ex. 1.

Unsatisfied with this expansive roster, Mar-Bow has refused to strike a single person from its overbroad custodian list.  For example, Mar-Bow insists on McKinsey searching the files of every single member of the Engagement Team (including those who were involved only in the day-to-day work for the WLB Debtors, but not in overseeing the connection check process), in-house lawyers and senior executives who had nothing to do with *Westmoreland*, and former employees—like Dominic Barton, McKinsey's former Managing Director—who stepped down from that role before the *Westmoreland* engagement began and left the company entirely in August 2019.  Despite this, Mar-Bow attempts to justify Mr. Barton's inclusion as a custodian based on a theory that his conversations with Jay Alix in 2014 evidence a policy of noncompliance with Rule 2014.  McKinsey's history of working in good faith with the U.S. Trustee and modifying its Rule 2014 disclosures in connection with those conversations since 2014 belies such a theory.  But in any case, Mar-Bow will be able to discover relevant facts about the policies in place at McKinsey during the time of the *Westmoreland* engagement, including by reviewing documents produced by Robert Sternfels, who was responsible for the chapter 11 business at all times relevant to *Westmoreland*.

Allowing discovery into the additional, irrelevant custodians Mar-Bow has demanded would only serve to harass and burden the Proposed Professionals and is not reasonably calculated to lead to the discovery of relevant information.  Discovery into the custodial files of in-house and outside counsel, for example, could bring back thousands of documents irrelevant to *Westmoreland* but relevant to McKinsey's litigation strategy in one of the six other lawsuits that Jay Alix and/or Mar-Bow have pressed during the same period.  The Proposed Professionals should

9

not be forced to engage in a protracted privilege review for purposes of digging up irrelevant information.  Under such circumstances, a protective order is warranted.  *See, e.g.*, *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, No. 14-civ-9372 (GBD), 2018 WL 2215510, at *12 (denying request to designate certain custodians on grounds that "marginal utility" of their documents was low in light of other discovery); *In Re Disposable Contact Lens AntiTrust Litig.*, No. 3:15-MD-2626-J-20JRK, 2016 WL 6518660, at *3 (M.D. Fla. Nov. 1, 2016) (concluding that "strik[ing] [a] proper balance" warranted restricting number of custodians); *Bartolini v. Abbott Labs., Inc.*, No. 12-CV-52-NJR, 2015 WL 11439048, at *2 (S.D. Ill. Oct. 2, 2015) (limiting searches to 20 custodians where list of 40 additional custodians was proposed); *see also Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (concluding that district court did not err in granting protective order preventing plaintiffs from deposing employer's CEO where CEO "had no knowledge as to facts pertinent to plaintiffs' action").

The Proposed Professionals have not only disclosed their connections pursuant to Rule 2014 but have also agreed to (and already begun to provide) expansive and unprecedented discovery into the connection-check process employed in this case—including discovery into the connection-check process that RTS undertook in connection with its initial, *withdrawn* retention application from last year.  To further ensure adequate discovery of information related to the Proposed Professionals' disinterestedness, they have also offered to search a representative sample of Engagement Team members for terms relevant to the work actually performed for the WLB Debtors and other senior McKinsey executives.  Given the narrowness of the issues presented (as well as the appropriately limited amount of time before the February 2020 retention hearing, which properly reflects the narrow nature of the issues before the Court), permitting discovery into additional custodians' files would be abusive and unwarranted.

The Proposed Professionals have already agreed to a significant cross-section of the custodians proposed by Mar-Bow and respectfully request that, absent discovery of information that would justify adding further custodians, this Court issue an order precluding Mar-Bow searching custodial files beyond those already agreed-upon, as listed in **Exhibit A** to the Proposed Order filed herewith.

## CONCLUSION

For the reasons discussed above, the Proposed Professionals request that this Court enter a protective order precluding discovery of information prior beyond the July 1, 2018 through July 3, 2019 time period, and discovery of information beyond the 34 custodians offered by the Proposed Professionals.

Dated:   November 11, 2019                    Respectfully submitted,
         Houston, Texas
                                             ZACK A. CLEMENT PLLC


                                    By:   /s/          *Faith E. Gay*
                                          Faith E. Gay (*pro hac vice*)
                                          Jennifer M. Selendy (*pro hac vice*)
                                          Erica R. Iverson (*pro hac vice*)
                                          SELENDY & GAY PLLC
                                          1290 Avenue of the Americas
                                          New York, New York 10104
                                          Telephone: (212) 390-9000
                                          E-mail: fgay@selendygay.com
                                          jselendy@selendygay.com
                                          eiverson@selendygay.com

                                          Zack A. Clement
                                          ZACK A. CLEMENT PLLC
                                          3753 Drummond Street
                                          Houston, Texas 77025
                                          Telephone: (832) 274-7629
                                          E-mail: zack.clement@icloud.com

                                          M. Natasha Labovitz (*pro hac vice*)
                                          John Gleeson (*pro hac vice*)
                                          Erica Weisgerber (*pro hac vice*)
                                          DEBEVOISE & PLIMPTON LLP
                                          919 Third Avenue
                                          New York, New York 10022
                                          Telephone: (212) 909-6000
                                          Email: nlabovitz@debevoise.com
                                          jgleeson@debevoise.com
                                          eweisgerber@debevoise.com

                                          *Attorneys for the Proposed Professionals*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2019, I caused the foregoing pleading to be filed with the Court and thereby served by the Court's CM/ECF noticing to all parties registered to receive electronic notice in this case.

/s/          *Zack A. Clement*