# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | Case No. 18-35672 (DRJ) |
| Debtors. | (Jointly Administered) |

## THE PROPOSED PROFESSIONALS' EMERGENCY MOTION TO COMPEL DISCOVERY FROM ALIXPARTNERS LLP

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **A HEARING WILL BE HELD ON THIS MATTER AS SOON AS POSSIBLE BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] Due to the large number of debtors in these chapter 11 cases, which are consolidated for procedural purposes only, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

Pursuant to Federal Rule of Civil Procedure 45, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 9014 and 9016, McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") and its affiliates seeking retention in this case (collectively, the "Proposed Professionals") bring this emergency motion to compel AlixPartners LLP ("AlixPartners") to respond to the Proposed Professionals' Subpoena to Produce Documents dated November 11, 2019, and Subpoena to Testify at a Deposition dated November 6, 2019 (together, the "Subpoenas") regarding AlixPartners's chapter 11 disclosure practices and the motivation behind Mar-Bow's Objection to the Proposed Professionals' retention under 11 U.S.C. § 327, both of which have been put directly at issue in the current litigation by Mar-Bow.  While the Proposed Professionals have offered to meet and confer with AlixPartners to further tailor searches responsive to the Subpoenas, AlixPartners has refused to engage, requiring the Proposed Professionals to bring this formal motion.[2]  The Proposed Professionals respectfully request that the Court hear this motion on an emergency basis in light of the expedited discovery schedule in this matter.[3]

## PRELIMINARY STATEMENT

This motion seeks to compel the production of two categories of documents from AlixPartners.  *First*, the Proposed Professionals seek documents evidencing the flip side of Mar-Bow's allegations concerning the communications between Jay Alix and Dominic Barton.  In 2013, soon after McKinsey RTS entered the bankruptcy advisory space and began competing with AlixPartners, AlixPartners's Board, of which Mr. Alix was and remains a member, documented an aptly

---

[2] At the November 26, 2019 status conference with the Court, the Proposed Professionals and Mar-Bow agreed to raise discovery disputes between them through a status report to be filed by noon on the day preceding contemplated weekly status conferences, reserving the right to raise more significant issues through regular motion practice.  AlixPartners did not participate in that status conference and has not agreed to the informal procedure.  Therefore, the Proposed Professionals are filing this motion to compel.

[3] AlixPartners has been on formal notice of the Proposed Professionals' intention to seek discovery from them since at least December 17, 2018. *See infra* at 10.

named "competitive response" strategy specifically to address the competitive threat McKinsey RTS posed to AlixPartners. AlixPartners itself strenuously maintains that this strategy remains in effect *today*. Shortly after AlixPartners adopted its "competitive response" strategy, the CEO of AlixPartners first approached Dominic Barton, then-head of McKinsey, to bully McKinsey RTS out of the restructuring business by arguing that the industry was filled with "bottom-feeders" and "flounders" that would be incompatible with McKinsey's "blue-blood" approach, and that McKinsey would be asking for a "street fight" if it continued to seek chapter 11 work. When AlixPartners's attempt to press McKinsey failed, in 2014 and 2015 Alix, acting in his capacity as an AlixPartners representative, aggressively pressured Barton to take McKinsey RTS out of the restructuring business. Mar-Bow has put Alix's communications with Barton (about AlixPartners and McKinsey) directly at issue in this case, and in so doing it has put at issue Alix's own good faith in making inflammatory and false allegations about McKinsey—including, according to Alix, that Barton allegedly admitted wrongdoing. There is no question that AlixPartners's anti-McKinsey strategy and related communications in its possession are directly relevant: they will constitute highly probative impeachment evidence and show Mar-Bow's abuse of process.

*Second*, the Proposed Professionals seek the policies governing AlixPartners's Rule 2014 disclosures during the *Westmoreland* application timeframe. These documents will further show that Mar-Bow's outlier interpretation of Rule 2014 is not asserted in good faith in this case because the disclosure policies of Alix's own company, AlixPartners, are inconsistent with the extreme standards he seeks to apply to the Proposed Professionals.

The Proposed Professionals have met and conferred with AlixPartners about their relatively narrow requests, offering to craft a review process that would be targeted and minimally

burdensome.  AlixPartners nonetheless maintains that it will produce *no* documents.  It argues that it is a non-party and its materials are irrelevant to the matters in this case.  Not so.

AlixPartners cannot credibly contend that it is a stranger to these proceedings or that its materials are irrelevant.  The campaign to push McKinsey out of the restructuring business *started* in late 2013 with then-CEO of AlixPartners, Fred Crawford, personally approaching Dominic Barton, pressing to have McKinsey RTS exit the restructuring advisory business.  Crawford evidently made this approach as part of the comprehensive five-pronged competitive response strategy AlixPartners prepared in 2013 for its Board to address McKinsey's competitive threat.  The anti-McKinsey strategy embodied in the "competitive response" materials (the "Competitive Response Documents") are in effect today, according to recent statements by AlixPartners itself.  McKinsey RTS believes that these documents will reveal a strategy by AlixPartners—and, at its behest—its board member and founder Jay Alix, to engage in the current campaign of pressing bad-faith litigation and generating salacious press attention, including in *Westmoreland,* to pressure McKinsey RTS to exit the restructuring business.

Notably, the first move in the anti-McKinsey litigation campaign was initiated by AlixPartners in 2014 in Delaware Chancery Court, in an action against two former managing directors who left AlixPartners to join McKinsey RTS (the "Delaware Litigation").  The individual defendants in that case argued that AlixPartners's true motivation for the lawsuit was anticompetitive: thwarting McKinsey RTS from developing its relatively new restructuring business and sending a chilling message to any AlixPartners consultant who might want to join McKinsey RTS.  AlixPartners resisted producing the Competitive Response Documents, contending they were attorney-client privileged and work product, but the Delaware Chancery Court reviewed the documents *in camera* and ordered them to be produced mid-trial with only limited redactions.  The next day,

3

AlixPartners questioned Jay Alix about one of the anti-McKinsey Competitive Response Documents on direct examination before the press in open court.  While Alix did not disclose the details of AlixPartners's strategies against McKinsey, he publicly asserted that one of those strategies related to Alix's claim that McKinsey RTS does not properly disclose its connections under Rule 2014.  Following that testimony, AlixPartners immediately settled the Delaware Litigation at a recess, before Alix could be cross-examined about the full content of the Documents.

Jay Marshall, AlixPartners's Chief Growth Officer, and the author of the Competitive Response Documents, has stated in two affidavits filed in the Delaware court *this year* that the strategy in these Documents—designed to "respond[] to the threat posed by McKinsey"—is still in place today: "[i]f anything, the strategies reflected in [the Documents] are even more relevant today given McKinsey's formidable presence in the restructuring field."  May 2019 Marshall Aff. (Ex. A) ¶ 7; *see also* Jan. 2019 Marshall Aff. (Ex. B) ¶ 3 ("The Competitive Response Documents … include proprietary information and confidential work product describing the threat McKinsey's restructuring operations pose to AlixPartners.  The Competitive Response Materials also detail AlixPartners's thinking on a proposed approach to responding to the threat posed by McKinsey.").

The conversations that Mar-Bow alleges occurred between Jay Alix and Dominic Barton in 2014 and 2015 came during and on the heels of the Delaware Litigation and were initiated by Alix not in his personal capacity, but—as he stated in his RICO lawsuit—*as a representative of AlixPartners*.  Alix first confronted Barton while attempting to settle the Delaware Litigation *as a representative of AlixPartners* and then, again *as a representative of AlixPartners*, continued his discussions with Barton about McKinsey RTS's Rule 2014 practices.

In this case, the Proposed Professionals vehemently dispute Alix's defamatory claim that Barton admitted that McKinsey was committing fraud.  Because Alix was acting as *AlixPartners's* representative in those conversations, both AlixPartners's anti-McKinsey strategy documents and related communications in its possession, custody, or control—including, for example, emails sent from Jay Alix's email account at AlixPartners—are highly relevant to Alix's claims in this case and may well shed light on the lack of veracity of his allegations.

The Competitive Response Documents also may establish that AlixPartners's Board adopted a formal strategy to deploy abusive litigation and generate adverse publicity to compete with McKinsey RTS.  That is particularly relevant in this case, as the Proposed Professionals seek to establish that Mar-Bow asserts its Objections in bad faith.  These Documents thus are directly probative of the false narrative presented to this Court.

Production of the Competitive Response Documents and related communications involving searches among only six custodians concerning the ongoing implementation of its anti-McKinsey strategy will impose no burden on AlixPartners: the documents are already collected and have been produced in the Delaware Litigation; and the email searches are narrow.  Moreover, while McKinsey disputes AlixPartners's contention that the Competitive Response Documents are trade secrets, it would agree to their production in this matter under the terms of the Stipulated Protective Order.  Dkt. 2461.

The Proposed Professionals seek one other narrow category of documents: those showing how AlixPartners made its Rule 2014 disclosures during the *Westmoreland* application period of July 2018 to July 2019.  The Proposed Professionals do not seek voluminous records of all of AlixPartners's disclosure processes for particular bankruptcies; instead, they ask only for high-level materials setting forth the procedures AlixPartners used in making its own disclosures during

the *Westmoreland* timeframe.  These materials are highly probative of the veracity of Mar-Bow's assertions in this case.  Jay Alix has testified here that AlixPartners discloses all of its affiliates' connections, does not limit its connection check to a lookback period, and asserts that its employees invest in mutual funds that are somehow different from the investments of MIO.  The Proposed Professionals are entitled to test those contentions to show that AlixPartners does not in fact comply with the draconian interpretation of Rule 2014 that Mar-Bow asserts should be imposed upon McKinsey RTS.  And the fact that Alix seeks to impose a burdensome disclosure regime that AlixPartners itself does not follow further points to Alix's bad faith: Mar-Bow's goal is to uniquely prejudice McKinsey—not to defend the integrity of the bankruptcy process, as Alix claims.

AlixPartners bears the high burden of demonstrating that the discovery sought by the Proposed Professionals is so burdensome as to be unreasonable and oppressive.  But it has presented no substantive justification for its outright refusal to respond to the Subpoenas, nor can it: the targeted collections and narrow searches sought from AlixPartners are reasonable and limited in scope, and, as the Proposed Professionals stated during meet and confers, they are willing to be flexible to ensure compliance.  For the reasons set forth below, the Court should grant the Proposed Professionals' motion to compel AlixPartners to comply with the Subpoenas.

## FACTUAL BACKGROUND

A.   **AlixPartners's Involvement in Alix's and Mar-Bow's Litigation Against McKinsey and McKinsey RTS**

After ten years of investment and development, McKinsey RTS launched in 2011 and began to pose a competitive threat to the firms that had dominated the high-end restructuring advisory market for decades.  In direct response to McKinsey's entrance into the market, AlixPartners's Chief Growth Officer, Jay Marshall, drafted an aptly named "Competitive Response" strategy targeting McKinsey and presented it to the AlixPartners Board.  Alix was then, and is now, a Board

member (as well as a 35% owner of AlixPartners), and in that capacity he was involved in evaluating Marshall's strategy.  According to briefing filed by AlixPartners in the Delaware Litigation and deposition testimony of Jay Alix, this strategy was created approximately in April 2013 and set out a five-pronged plan for addressing the threat posed by McKinsey RTS.

In November 2013, AlixPartners's then-CEO Fred Crawford approached McKinsey's then-Global Managing Partner, Dominic Barton at an industry conference, to try to cajole and threaten McKinsey RTS out of the restructuring business.  Crawford personally told Barton that McKinsey's traditional consulting business was like "swimming in clean waters," and that a "blue-blooded" firm like McKinsey had no place in the restructuring business, "swimming with the flounders and bottom-feeders."  Crawford also stressed that "bankruptcies are public," and thus inconsistent with McKinsey's perceived culture of confidentiality.  Crawford then warned Barton that McKinsey would be inviting a "street fight" with other restructuring advisors who routinely pursued "vendettas" against one another.

After Crawford's threats failed to push McKinsey RTS out of the market, AlixPartners launched the first litigation involving McKinsey's bankruptcy practice in 2014.  In that case, AlixPartners sued two former employees who left AlixPartners to work for McKinsey RTS, alleging that they stole trade secrets.  Immediately after Dominic Barton's deposition in that case, Alix—who had been acting as AlixPartners's representative in the case—confronted Barton and Robert Sternfels (a senior McKinsey partner) about his current theory of McKinsey RTS's Rule 2014 disclosures.

The Competitive Response Documents came to light in that litigation.  AlixPartners withheld the Competitive Response Documents on attorney-client privilege and work product grounds. In the middle of trial, however, after a motion to compel, the court ordered AlixPartners to produce

7

the Documents with specific and minor redactions.  AlixPartners produced the Competitive Re-

sponse Documents as "Highly Confidential" under the applicable protective order, so McKinsey—

who was not a party—could not see them.  The next day, AlixPartners's counsel used one of the

Competitive Response Documents in open court during Alix's direct examination and read specific

portions of the document into the record.  Alix testified that five strategies were proposed in the

document.  One of them concerned a publicity campaign against RTS because of McKinsey's

"fear" of having its Rule 2014 disclosures questioned.  In Alix's own words:

> "A. …McKinsey avoids all publicity and all public disclosure of
> their business, their clients, their contacts, their relationships, their
> alumni network, their referral sources.  They're a very private firm.
> And the bankruptcy restructuring business is a business that requires
> all participants to be open, transparent and fully disclosing of all
> their connections to all parties in all bankruptcy cases…. They are
> inconsistent concepts philosophically.
>
> Q. What's the basis of your statement that they're inconsistent?
>
> A. Well, just the idea that in a bankruptcy filing, when a professional
> firm works for any party – **for any party in interest who is going
> to be paid by the estate, that party in interest under Rule 2014
> has to disclose all connections to the debtor and any party in
> interest**.  McKinsey has historic [*sic*] as a firm not disclosed their
> other clients, not disclosed their alumni network, not disclosed their
> contacts into boardrooms and to firms.  **And it seems to me and to
> our firm that it's inconsistent to be in a business where you want
> to be highly confidential, on the one hand, and be in a forum
> doing work where you have to be completely transparent and
> open with all your connections to a debtor, any party in
> interest**."

Ex. C, Sept. 18, 2014 Trial Tr. (hereinafter "Alix Del. Trial Tr.") at 650:13–651:18, *AlixPartners*

*v. Thompson, et al.*, C.A. No. 9523-VCP (Del. Ch. Sept. 18, 2014) (emphasis added).  Immediately

after this testimony, AlixPartners's counsel asked for a recess, during which the Delaware Litiga-

tion settled.

Mar-Bow has put conversations between Alix and Barton in 2014 and 2015 at issue, *falsely* alleging that Barton agreed that McKinsey RTS's practices were fraudulent.  Alix was acting as a representative of AlixPartners in these conversations.  In fact, Mar-Bow was not even in existence at the time—it was created in 2016.  Moreover, in 2016, Willkie Farr & Gallagher LLP, AlixPartners's counsel now objecting to the Subpoenas served in this case, was *Jay Alix's* personal counsel in 2016 representing him in his repurchase of additional equity in AlixPartners, further confirming the ties between AlixPartners and Alix.

Since 2016, Mar-Bow and Alix have pursued claims against McKinsey and RTS in six different proceedings, filed in five different jurisdictions.  In one of those cases, Alix—standing expressly in the shoes of AlixPartners under an alleged assignment of claims—asserted (now dismissed) RICO claims against McKinsey and RTS in the Southern District of New York, contending that McKinsey RTS had wrongfully obtained chapter 11 assignments that AlixPartners would otherwise have obtained.[4]  Alix represented as recently as September 2019 that AlixPartners legally assigned all of its claims or causes of action against McKinsey or RTS to Jay Alix, giving him complete control over the prosecution of AlixPartners's claims.  *See Alix v. McKinsey & Co.*, 1:18-cv-04141 (JMF) (S.D.N.Y. Sept 3, 2019), Dkt. 105 at 1 (stating "AlixPartners, LLP's [] assignment of claims against McKinsey and its affiliates [] to Alix was 'absolute and unconditional'").

In November 2018, McKinsey sought to make the Competitive Response Documents public under Delaware Rules governing documents presented to the court and filed an application with the Delaware Court of Chancery to confirm that the Competitive Response Documents used in

---

[4] *Alix v. McKinsey & Co.*, 1:18-cv-04141 (JMF) (S.D.N.Y. Sept 4, 2018), Dkt. 73 (Amended Complaint); *Alix v. McKinsey & Co. Inc.*, No. 18-CV4141 (JMF), 2019 WL 3889855 (S.D.N.Y. Aug. 19, 2019) (Order dismissing RICO claims with prejudice).

Alix's direct examination were not confidential under Delaware law.  AlixPartners vociferously opposed, claiming that the documents contained trade secrets, were "highly sensitive," and that the strategies contained in the Competitive Response Documents are "even more relevant today." May 2019 Marshall Aff. (Ex. A) ¶ 7; Jan. 2019 Marshall Aff. (Ex. B) ¶ 3.  Whether the Competitive Response Documents should be disclosed publicly is currently on appeal to the Supreme Court of Delaware, where AlixPartners argued just last week that "the competitive strategy and analysis contained in [the Documents] remains as valuable today as when the document[s] w[ere] created." Appellee's Answering Br. and Cross-Appellants' Opening Br. at 2, *McKinsey & Co., Inc. and McKinsey Recovery & Transformation Services U.S., LLC, v. AlixPartners, LLP et al.,* Del. Supr., No. 384, 2019 (Nov. 18, 2019) (hereinafter, "AlixPartners Del. App. Br.").

**B.      Procedural History**

On December 17, 2018, McKinsey RTS served AlixPartners with a Subpoena to Produce Documents in this case, and a second Revised Subpoena on January 14, 2019.  The Court then stayed discovery by order dated February 21, 2019.  Dkt. 1427.

On October 29, 2019, this Court reopened discovery concerning the Proposed Professionals' retention in this matter, setting January 31, 2020 as the end of fact discovery and a trial to be held on February 5, 2020.  On November 6, 2019, the Proposed Professionals served AlixPartners with a superseding subpoena to produce a witness to testify pursuant to Rule 30(b)(6) (the "Deposition Subpoena") and on November 11, 2019, they served the pending subpoena for production of documents (the "Documents Subpoena").  The Subpoenas seek a narrow set of documents and testimony aimed at understanding the motivation behind and credibility of Mar-Bow's Objection to the Proposed Professionals' retention in this case.  *See* Ex. D (Proposed Professionals' Requests for Production).

In particular, the Subpoenas seek documents and testimony regarding two over-arching issues that are relevant to Alix's and Mar-Bow's positions in this litigation: (1) documents and communications pertaining to Alix's and AlixPartners's efforts to drive RTS out of the restructuring advising market (the "Anti-Competitive Documents"), and (2) documents and communications pertaining to AlixPartners's policies and procedures governing its Rule 2014 disclosures (the "Disclosure Policy Documents").  The Anti-Competitive Documents are responsive to the following requests in the Document Subpoena:

- RFP 5: All Documents and Communications concerning McKinsey, the Proposed Professionals, or MIO related to this Action.

- RFP 6: All Documents and Communications concerning information provided by any other Person, including former employees of affiliates of McKinsey or any other individual, who assisted in identifying connections the Proposed Professionals allegedly concealed in this Action, *see, e.g.*, Alix Deposition at 174:15–176:9.[5]

- RFP 11: All Documents that originated from the Proposed Professionals, McKinsey, or MIO, without regard to whether You obtained such documents directly from the Proposed Professionals, McKinsey, MIO, or any other Person.

- RFP 12: All Documents and Communications related to the "Competitive Response Documents" referenced in the Affidavits of Jay Marshall submitted in the Delaware Litigation, signed on January 7, 2019 and May 22, 2019, respectively.

- RFP 13: All deposition transcripts from the Delaware Litigation.

- RFP 15: All Documents and Communications with or concerning the United States Trustee concerning this Action.[6]

---

[5] Alix testified in this case that Mar-Bow's Objection is based in part on information obtained from former McKinsey employees, some of whom are now AlixPartners employees or board members, and the Proposed Professionals have reason to believe that Mar-Bow or AlixPartners may have obtained confidential McKinsey documents.  *See* Alix Dep. Tr. at 174:20–176:9.  The Proposed Professionals seek discovery from AlixPartners to verify what confidential information—if any—Alix obtained from AlixPartners to support Mar-Bow's Objections in this case.

[6] The Proposed Professionals seek discovery on whether AlixPartners participated in Mar-Bow's communications with the U.S. Trustee to support Mar-Bow's Objections.

- RFP 18: All Documents and Communications concerning any actual or contemplated effect on You, including any benefits or advantages, as a result of litigation commenced by Mar-Bow or Jay Alix in this Action.

- RFP 19: All Documents and Communications concerning any steps taken by You, or planned by You, to compete with RTS in bankruptcy advisory work or Chapter 11 engagements, including, but not limited to, through litigation brought by yourself or by any other Person or entity. This includes, but is not limited to, the Competitive Response Documents referenced in the Affidavits of Jay Marshall submitted in the Delaware Litigation, whose strategy he testified that AlixPartners continues to follow today.

- RFP 20: All Documents and Communications concerning any effort by AlixPartners to be retained in this Action.

Ex. D (Proposed Professionals' Requests for Production).

The Disclosure Policy Documents are responsive to the following requests in the Document Subpoena:

- RFP 1: Documents sufficient to show the nature and extent of Mar-Bow's, Jay Alix's, or Lakeview Capital's ownership and voting or other control rights in AlixPartners.

- RFP 2: Documents sufficient to show Your corporate organization and the ownership of AlixPartners, including: (a) corporate form and management structure; (b) Your members, board members, partners, investors; (c) any positions held by Jay Alix at AlixPartners; (d) the nature and extent of any interest held by Jay Alix in You, directly or indirectly; (e) the nature and extent of any interest held by Lakeview Capital in You, directly or indirectly; and (f) Your parents (including at various times, CDPQ, PSP Investors, Investcorp, and CVC Capital Partners), subsidiaries, and Affiliates.

- RFP 3: All Documents and Communications concerning: (1) the subject matter of the Objections; (2) interpretations of Rule 2014 and Section 327; (3) the Database; and (4) the media reports referenced in the Objections.

- RFP 7: All Documents and Communications concerning any change in AlixPartners's Rule 2014 disclosure policies, practices, and procedures.

- RFP 8: All policies, practices, and procedures that relate to AlixPartners's Rule 2014 disclosures and seeking retention under Section 327.

- RFP 9: All policies, practices, and procedures relating to Your employees' retirement accounts, pension funds, or other retirement investments, including mutual funds, blind trusts, or investments with third-party managers.

- RFP 14: All Documents and Communications regarding the Proposed Professionals' disclosure practices, including their disclosure practices in this Action.

- RFP 16: Documents sufficient to show the information available to persons invested in or with any pension plan, 401(k) plan, or other investment options offered to employees or partners of AlixPartners.

- RFP 17: Documents sufficient to show the retirement investment options available to employees and partners of AlixPartners, and the administrator or manager of any such option.

Ex. D (Proposed Professionals' Requests for Production).

On November 20, 2019, AlixPartners served its responses and objections to the Subpoenas, refusing to produce or search for any requested documents and rejecting the request for a deposition of a corporate representative out of hand.  *See* Ex. E (AlixPartners LLP's Responses and Objections).

On November 21, 2019, counsel for the Proposed Professionals and AlixPartners met and conferred in good faith regarding AlixPartners's objections to the Subpoenas.  As the Proposed Professionals explained, the materials are discrete: the Competitive Response Documents, deposition transcripts, and policies constitute a narrow set of documents that are readily available to AlixPartners's counsel.  The Proposed Professionals provided narrow search terms and a small set of custodians to search for the remaining documents and communications.  Ex. F (Proposed Search Terms and Custodian List).  During this discussion, counsel for AlixPartners reiterated its position that the Subpoenas impose an unnecessary burden and expense on a non-party.  Counsel for the Proposed Professionals explained the relevance of the discovery and emphasized a willingness to work with AlixPartners to craft reasonable search parameters for responsive materials that would not be burdensome, including by revising any search terms if they proved too voluminous once searches were run.  On November 25, 2019, AlixPartners sent the Proposed Professionals a letter confirming that it stands on its objections to the Subpoenas and will not produce any documents

or provide any testimony.[7]  On November 26, 2019, the Proposed Professionals served an incre-

mental subpoena for documents and an amended subpoena for deposition testimony on AlixPart-

ners seeking a narrow set of additional discovery to capture documents and information relating

to the Alix/Barton communications as well as the Barton/Crawford communication and related

Anti-Competitive Documents.  AlixPartners's response to these subpoenas is due on December

10, 2019.

## **ARGUMENT**

The Proposed Professionals seek a limited set of materials from AlixPartners that are highly

probative of the Objections and assertions by Mar-Bow in this case and do not create an undue

production burden.  AlixPartners has refused to produce any materials on the basis that it is a non-

party and the materials are irrelevant.  AlixPartners's arguments are without merit.

Non-party subpoenas, like party subpoenas, may seek "any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its likely ben-

efit."  Fed. R. Civ. P. 26(b)(1).  The discovery sought "need not be admissible in evidence to be

discoverable."  *Id*.; *Ford Motor Co. v. Versata Software, Inc*., 316 F. Supp. 3d 925, 933 (N.D. Tex.

2017) ("When a subpoena is issued as a discovery device, relevance for purposes of the undue

---

[7] Following the meet and confer on November 21, 2019, the Proposed Professionals sought to resume discussions either on November 22 or 25, 2019.  AlixPartners rejected those requests, stating that it was not available until the week of December 2, 2019.  At the same time, AlixPartners has given no indication that it is willing to change any of their positions and have instructed us not to raise any issues with the Court absent notice to them.  Given all this, and the expedited schedule, the Proposed Professionals are bringing this motion so that these important issues can be resolved by the Court promptly.

burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1).")
(quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998)).

Relevance is construed broadly in the discovery context. "[A]ny party to a civil action is
entitled to all information relevant to the subject matter of the action before the court unless such
information is privileged." *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 820 (5th Cir. 2004)
(quoting *Wehling v. Columbia Broad. Sys*., 608 F.2d 1084, 1086 (5th Cir. 1979)).  To satisfy the
relevance standard, a discovery request need only be "reasonably calculated" to lead to admissible
evidence.  *Id.; see also DAC Surgical Partners P.A. v. United Healthcare Servs., Inc*., No. 4:11-
CV-1355, 2014 WL 585750, at *3 (S.D. Tex. Feb. 14, 2014) ("Relevancy is broadly construed,
and a request for discovery should be considered relevant if there is 'any possibility' that the in-
formation sought may be relevant to the claim or defense of any party." (citations omitted)).

Pursuant to Federal Rule of Civil Procedure 45(d), a party serving a subpoena may move
for an order compelling production.  Fed. R. Civ. P. 45(d)(2)(B)(i).  While courts may be more
sensitive to the cost and inconvenience of extensive discovery on third parties, it is the burden of
the party resisting discovery to show that "compliance with the subpoena would be unreasonable
and oppressive."  *Wiwa*, 392 F.3d 818; *In re Subpoenas to Plains All Am. Pipeline, L.P*., No. 1:11-
CV-03543-WHP, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014).  This burden is high: discov-
ery cannot be avoided with "mere unsupported generalizations, conclusory statements or asser-
tions."  *Sines v. Kessler*, 325 F.R.D. 563, 565–66 (E.D. La. 2018); *accord Nasufi v. King Cable,
Inc*., No. 3:15-CV-3273-B, 2017 WL 3334110, at *7 (N.D. Tex. Aug. 4, 2017) (rejecting objection
based on undue burden where the assertions were "conclusory and unsupported by specific facts
as to the nature and extent of any burden in complying with the … [s]ubpoena").  Rather, the "party
opposing discovery must show how the requested discovery was overly broad, burdensome, or

15

oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Ford Motor Co.*, 316 F. Supp. 3d at 933 (noting further that "whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." (quoting *Wiwa*, 392 F.3d at 818)).

"[T]he Court does not generally decide discovery matters based on another party's or non-party's 'strong belief in the merits of [a party's] litigation positions.'" *Nasufi*, 2017 WL 3334110, at *7 (citations omitted). The existence of a protective order, the potential for *in camera* review, and production of documents subject to redactions are all relevant to the determination of whether the objecting party must comply with the subpoena. *See, e.g., Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films*, LLC, 313 F.R.D. 39, 56 (N.D. Tex. 2015); *In re Metal Process Int'l, L.P.*, No. M-13-036, 2013 WL 12155025, at *8–9 (S.D. Tex. May 13, 2013); *SDT Indus., Inc. v. Pennington Seed, Inc.*, No. 10-0014, 2010 WL 2024735, at *6 (W.D. La. May 18, 2010).

The Documents the Proposed Professionals seek are discrete, highly probative, and should be produced.

## I.     AlixPartners Should Produce the Anti-Competitive Documents

The Anti-Competitive Documents are likely to provide critical evidence bearing on Jay Alix's good or bad faith in this case. Whereas Mar-Bow claims that McKinsey RTS made its disclosures in bad faith, McKinsey RTS seeks to prove that Alix is the party acting in bad faith, manufacturing defamatory claims about McKinsey to benefit AlixPartners. The Proposed Professionals seek documents to show that Mar-Bow and Alix are motivated not by any real concern for the integrity of the bankruptcy process or McKinsey RTS's compliance with Rule 2014, but rather to further Alix's and AlixPartners's strategy of eliminating McKinsey RTS as a business competitor by initiating expensive and protracted litigation. These documents—which AlixPartners has recently testified are still in place today—are needed to show the falsity of Alix's claim that his

Objection is intended "to preserve the integrity of the bankruptcy process." *See, e.g.*, Dkt. 2370 at 4; Dkt. 2274 (Mar-Bow's Objection filed 8/20/19) at 9–10, 63, 83, 100.

AlixPartners unquestionably possesses key, relevant documents and communications concerning its anti-McKinsey strategy and the related Alix/Crawford/Barton communications, including the Competitive Response Documents themselves, deposition transcripts from the Delaware Litigation, including of Fred Crawford and Jay Alix, and email communications about the strategy and about Crawford and Alix's interactions with Barton. Mar-Bow itself has put at issue the communications between Alix (acting as a representative of AlixPartners at a time when Mar-Bow did not exist) and Barton, which Alix falsely contends culminated in an admission of wrongdoing. Alix Dep. Tr. at 222:23–25, 224:6–15. AlixPartners's contention that it is a stranger to this case and that its documents are irrelevant thus rings hollow.

Nor are the Proposed Professionals' requests unduly burdensome: they seek a narrow set of documents and communications. The Proposed Professionals have offered to meet and confer with AlixPartners to further determine reasonable search terms, ensuring that its collection is targeted.

### A. The Anti-Competitive Documents and Communications are Relevant

The relevance of the Anti-Competitive Documents and related communications is obvious: they bear directly on the veracity of Mar-Bow's allegations concerning Alix's communications with Barton, and also Mar-Bow's credibility in advocating an extreme, outlier view of Rule 2014 that Mar-Bow contends is supposed to advance the "integrity" of the bankruptcy process but is really made to advance Alix's and AlixPartners's competitive interests. If Alix has been acting in this case at the direction or in furtherance of AlixPartners's anti-competitive strategy, that would be highly probative impeachment evidence.

17

As with any other witness in a litigation, Alix's credibility at the hearing will be highly relevant, and the Proposed Professionals should be permitted discovery of impeachment material, including, for example, Alix's emails on his AlixPartners email exchange concerning his Objections in this case as well as the communications with Barton that Mar-Bow has put at issue. Alix has falsely accused Dominic Barton of admitting serious misconduct and the Proposed Professionals should be permitted discovery to prove that. Alix himself alleged in his RICO litigation that he was acting as a representative of AlixPartners in these very same conversations.[8]

Indeed, Alix's own testimony about the Competitive Response Documents in AlixPartners's Delaware Litigation explicitly tied AlixPartners's Competitive Response strategy with McKinsey RTS and Rule 2014. At trial, Alix explained that the perspective adopted in the Competitive Response Documents assumed that "**McKinsey avoids all publicity and all public disclosure of their business**" which is "inconsistent [] philosophically" with what is required in the bankruptcy context. Ex. C, Alix Del. Trial Tr. 650:13–14, 650:24–651:1 (emphasis added). When asked why McKinsey's general ethos was inconsistent with being a bankruptcy advisor, Alix stated: "**when a professional firm works for any party—for any party in interest who is going to be paid by the estate, that party in interest under Rule 2014 has to disclose all connections to the debtor and any party in interest.**" *Id.* at 651:5–9 (emphasis added). This was the first public airing of the legal position that Alix and Mar-Bow have maintained against McKinsey RTS in the *Westmoreland* case. The Competitive Response Documents may show that the litigation

---

[8] *Alix v. McKinsey & Co.*, 1:18-cv-04141 (JMF) (S.D.N.Y. Sept 3, 2019), Dkt. 105 (stating "AlixPartners, LLP's . . . assignment of claims against McKinsey and its affiliates … to Alix was 'absolute and unconditional'"); *see also Alix v. McKinsey & Co.*, 1:18-cv-04141 (JMF) (S.D.N.Y. Sept 4, 2018), Dkt. 73 at 1, ¶¶ 7, 386, 451, 539, 567–68 (referring to "Alix, as assignee of [AlixPartners]"); ¶ 570 (stating that "… AP, *through Alix*, entered into a binding, valid, and enforceable contract …") (emphasis added).

position in this case is the product of an anti-competitive campaign originating with AlixPartners, which is highly relevant here.

AlixPartners recently has testified in the Delaware Litigation that the strategy contained in the Competitive Response Documents is *still in effect today* and thus is probative of Alix's conduct in this case.  *See* May 2019 Marshall Aff. (Ex. A) ¶ 7 (stating that the strategies "remain as relevant and sensitive today as they were when they were written [in 2013]" and "[i]f anything, the strategies … are even more relevant today given McKinsey's formidable presence in the restructuring field"); *see also* AlixPartners Del. App. Br. at 2.  Alix's Objections in *Westmoreland* may be an extension of AlixPartners's strategy.

Communications concerning the Competitive Response strategy and its implementation are relevant for the same reasons.  Alix has insisted that he bears no vendetta against McKinsey RTS; the Proposed Professionals are entitled to test that assertion by examining internal communications among Alix, Crawford, Marshall, and their colleagues at AlixPartners.  AlixPartners should produce any documents in its possession that bear on those conversations.  Indeed, in its November 25, 2019 meet and confer with Mar-Bow's counsel, Mar-Bow refused to produce any documents related to AlixPartners—even if in Mar-Bow's possession (and Mar-Bow refused to say one way or another if they were)—on the basis that AlixPartners has objected to their production, and Mar-Bow does not want to step on its toes in objecting to the Documents' production. Both AlixPartners and Mar-Bow should produce their responsive materials as they may have different documents about the same topics.

"There is nothing in the Federal Rules that permits a party to refuse to produce impeachment evidence that is responsive to an opponent's discovery requests" and no discovery rules "preclude impeachment materials from being subject to a discovery request." *Bradley v. Liberty Mut.*

*Grp., Inc.*, No. CIV.A. 13-100-SDD-RL, 2013 WL 3864316, at *2–3 (M.D. La. July 24, 2013) (denying plaintiff's request to withhold production of witness statements and investigative materials containing "impeachment value" until after his deposition); *see also Pointer v. DART*, 417 F.3d 819, 821–22 (8th Cir. 2005) (finding that district court erred in denying motion to enforce subpoenas since information was sought for impeachment purposes and "thus fell within the broad scope of Rule 26"); *Karr v. Four Seasons Mar., Ltd.*, No. CIV.A.02-3413, 2004 WL 797728, at *2 (E.D. La. Apr. 12, 2004) ("[D]iscovery parties are free to seek impeachment evidence in discovery, as [plaintiff] has done here, and parties responding to discovery are *not* entitled to withhold impeachment materials on that ground." (emphasis in original)).  Here, the Court has already recognized the relevance of Alix's motivation, and the role of AlixPartners (if any), with respect to Mar-Bow's Objection. *See e.g.*, Oct. 29, 2019 Hr'g Tr. 80:9–12; Nov. 20, 2019 Hr'g Tr. 22–23. AlixPartners's objection to producing the requested information on relevance grounds is thus untenable.

### B.     The Requests are not Burdensome

AlixPartners offers no information demonstrating that locating or producing the Anti-Competitive Documents would be unduly burdensome.  Nor can it: AlixPartners refused to even conduct a search for these materials.

Producing the Competitive Response Documents themselves is easy, as they are discrete and production-ready.  Indeed, AlixPartners already produced these Documents during trial in the Delaware Litigation with court-ordered redactions for privilege and they already are collected and in the possession of AlixPartners's attorneys.  Even Mar-Bow's counsel stated it believes the materials are discrete and could be produced quickly, but it is unwilling to conduct a search to determine if Mar-Bow, Lakeview, or Alix possesses them in deference to AlixPartners's objections, absent a Court order.

While the Proposed Professionals dispute that these Documents contain trade secrets, AlixPartners's concern about revealing sensitive strategies to its competitor is amply addressed by the Stipulated Protective Order in this case, which would allow AlixPartners to designate them as "highly confidential," meaning they would be produced to counsel and the Court but not to McKinsey's business personnel.  Dkt. 2461 at 5–6.[9]

Similarly, the Proposed Professionals seek responsive deposition transcripts from the Delaware Litigation, where Crawford, Alix, and Barton all testified.  Those documents are also distinct and, by definition, not privileged.  They are easily identified and already in the possession of AlixPartners's attorneys.

The remaining production sought is a narrow set of communications that require email review.  The Proposed Professionals are not seeking voluminous records or looking for a needle in a haystack.  They seek context around Alix's and Crawford's communications with Barton and the Competitive Response strategy.[10]  As a demonstration of its good faith and desire to avoid imposing unduly burdensome searches on AlixPartners, the Proposed Professionals suggested *seven* search strings as to the Anti-Competitive Documents.  Ex. F (Proposed Search Terms and Custodian List).  These narrow search terms would be applied to only six custodians:  Crawford, Marshall, Alix, Simon Freakley (co-CEO of AlixPartners as of 2015), and the chairs of AlixPartners's Board and Management Committee during the relevant time periods.  *Id*.  Some of the

---

[9] In its November 25, 2019 letter, AlixPartners argued that the Proposed Professionals' request for the Competitive Response Documents in this case constitutes an improper end-run around McKinsey's application under Delaware rules to deem public the exhibit AlixPartners used at trial in the Delaware Litigation.  McKinsey's application in Delaware has no bearing on the relevance of these documents in this Court.  As explained herein, these documents are highly relevant to this matter and should be produced.

[10] The subpoena at issue in this motion seeks email searches in the July 2018 – July 2019 time frame.  The subpoena served on November 26, 2019 extends this request to April 2013 – December 2015, consistent with the Crawford/Alix/Barton communications.

burden of collection can be alleviated by running the proposed search terms across AlixPartners's production that it already made in the Delaware Litigation.  In addition, counsel for the Proposed Professionals made plain in the meet and confer that the Proposed Professionals are willing to work with AlixPartners if these searches produce outsized numbers of results.

AlixPartners's refusal to even *attempt* to look for these documents means it cannot carry its burden of establishing that any of the Proposed Professionals' narrow requests—let alone *all* of them—are "unreasonable and oppressive."  *See Wiwa*, 392 F.3d 818.  The Court should compel AlixPartners to produce the Anti-Competitive Documents.[11]

## II.      AlixPartners Should Produce its Disclosure Policy Documents

Mar-Bow has adopted a draconian and unprecedented interpretation of Rule 2014 and Section 327.  Whether AlixPartners, Alix's own company, complies with this extreme standard is clearly relevant to whether Mar-Bow's interpretation is made in good faith, or whether the extreme position is taken to harass the Proposed Professionals.  The Proposed Professionals require narrow discovery from AlixPartners about its policies in effect during the *Westmoreland* case to establish whether Mar-Bow's position contradicts the procedures employed by his own company.

### A.      The Disclosure Practice Documents are Relevant

The Disclosure Practice Documents consist of basic information concerning AlixPartners's policies and practices governing Rule 2014 disclosures and organizational information to test whether its disclosures comply with Mar-Bow's extreme interpretation that mandates disclosure of *all* affiliates, including retirement investments, and prohibits use of a lookback period.  Mar-Bow itself has argued in this case that AlixPartners's procedures are somehow different from

---

[11] The Competitive Response Documents are not privileged or protected work product.  The Delaware Court of Chancery ruled in the middle of the Delaware Litigation that AlixPartners had inappropriately asserted privilege and work product protection over the Competitive Response Documents.

those of the Proposed Professionals; the Proposed Professionals require discovery from AlixPart-

ners to test that assertion.  Alix testified in his deposition in this case, for example, that AlixPart-

ners discloses its affiliates' connections, and that AlixPartners's own reliance on business separa-

tion between its investment affiliates is somehow different from McKinsey's practice of imple-

menting ethical policies and procedures to protect the flow of information between itself and MIO.

*See* Alix Dep. Tr. at 340:3–343:16.  Alix also insisted that AlixPartners does not use a lookback

period in making its Rule 2014 disclosures.  *Id*. at 91:5–22.  Both Alix's suggestion that AlixPart-

ners has complied with his extreme view of the law while McKinsey has not, and the potential

misrepresentation of what AlixPartners in fact does in making its Rule 2014 disclosures, is relevant

to the issues being tried in this case.

### B.      AlixPartners's Burden Objection is not Well-Founded

The Disclosure Policy Documents sought are a narrow set consisting of readily-available

policies and procedures concerning AlixPartners's Rule 2014 disclosures of affiliates, investments,

and its use of lookback periods.  The Proposed Professionals are not seeking voluminous materials

that reflect the disclosure processes in specific bankruptcies.  They seek high-level information

regarding AlixPartners's policies, ownership and corporate structure to enable McKinsey to test

whether AlixPartners's public disclosures comply with Alix's positions concerning disclosure of

affiliate connections.

Like the Anti-Competitive Documents, many of the Disclosure Policy Documents can be

located through targeted collections of policy materials at AlixPartners for complying with Rule

2014 and Section 327.  The rest of these documents and communications can be located through

limited electronic searches of the same handful of custodians at the top of AlixPartners's leader-

ship, who have been involved in the anti-McKinsey strategy.  *See* Ex. F (Proposed Search Terms

and Custodian List).  The Proposed Professionals have asked AlixPartners to select its own

custodian who maintains its disclosure policies. *Id.* The search terms are narrowly tailored to find communications reflecting whether AlixPartners complies with Rule 2014 in the same way that Alix and Mar-Bow contend McKinsey RTS must in this case, or whether AlixPartners admits that its practices are not consistent with Alix's draconian interpretation. Again, the Proposed Professionals have offered to narrow terms if the results prove voluminous, but AlixPartners has refused to conduct any searches.

AlixPartners has not—and cannot—meet its burden of establishing that locating and producing the Disclosure Practice Documents will be so "oppressive" that the Proposed Professionals are entitled to *no* discovery on this issue. *See Wiwa*, 392 F.3d 818. Because AlixPartners cannot meet its burden with respect to the Disclosure Practice Documents, the Court should order AlixPartners to search for and produce these materials.

## CONCLUSION

For the reasons discussed above, the Proposed Professionals request that this Court compel AlixPartners to produce the Anti-Competitive Documents and Disclosure Practice Documents in compliance with the Subpoenas.

Dated:   November 26, 2019       Respectfully submitted,
        Houston, Texas

                                     ZACK A. CLEMENT PLLC

By:   */s/ Faith E. Gay*
      Faith E. Gay (*pro hac vice*)
      Jennifer M. Selendy (*pro hac vice*)
      Maria Ginzburg (*pro hac vice*)
      David S. Flugman (*pro hac vice*)
      SELENDY & GAY PLLC
      1290 Avenue of the Americas
      New York, New York 10104
      Telephone: (212) 390-9000
      E-mail: fgay@selendygay.com
      jselendy@selendygay.com
      mginzburg@selendygay.com
      dflugman@selendygay.com

      Zack A. Clement
      ZACK A. CLEMENT PLLC
      3753 Drummond Street
      Houston, Texas 77025
      Telephone: (832) 274-7629
      E-mail: zack.clement@icloud.com

      *Attorneys for McKinsey Recovery and Transfor-*
      *mation Services U.S., LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2019, I caused the foregoing pleading to be filed with the Court and thereby served by the Court's CM/ECF noticing to all parties registered to receive electronic notice in this case.

*/s/ Zack A. Clement*