# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| WESTMORELAND COAL COMPANY., *et al.*,[1] | § | Case No. 18-35672 (DRJ) |
|  | § |  |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

## NONPARTY ALIXPARTNERS LLP'S RESPONSE TO PROPOSED PROFESSIONALS' EMERGENCY MOTION TO COMPEL DISCOVERY AND EMERGENCY CROSS-MOTION TO QUASH

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**A HEARING WILL BE HELD ON THIS MATTER AS SOON AS POSSIBLE BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] Due to the large number of Debtors in these chapter 11 cases, which are consolidated for procedural purposes only, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the proposed claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND.....................................................................................................2

    A.    McKinsey Serves A Series Of Irrelevant, Overbroad, And Unduly Burdensome Subpoenas. ..........................................................................................................2

    B.    AlixPartners Timely Responds And Objects To The Subpoenas. .....................................5

    C.    McKinsey Met And Conferred Once Before Filing Its Motion........................................6

    D.    Communications With McKinsey Since The Motion Was Filed .....................................7

ARGUMENT ..........................................................................................................................7

    I.    The Motion Should Be Denied Because The Requests Are Irrelevant, Overly Broad, And Unduly Burdensome. .....................................................................................7

    II.    The Motion Should Be Denied Based On McKinsey's Failure To Meet And Confer In Good Faith. ...................................................................................................10

    III.    The Court Should Grant AlixPartners' Motion To Quash The Latest Subpoenas. .........11

CONCLUSION....................................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Bancroft Life & Cas. ICC, Ltd. v. Lo*,
  Misc. Action H-13-0389, 2013 WL 12142367 (S.D. Tex. Jun. 11, 2013) ...............................13

*Buckeye Ret. Co. v. Wade (In re Wade),*
  No. 10-31139-H3-7, 2012 Bankr. LEXIS 5210 (Bankr. S.D. Tex. Nov. 7, 2012) ...................7

*Campos v. Webb Cty.*,
  No. 5:12-CV-7, 2013 WL 12387157 (S.D. Tex. Oct. 25, 2013) .............................................13

*MetroPCS v. Thomas,*
  327 F.R.D. 600 (N.D. Tex. 2018) ...............................................................................7, 11, 13

**Statutes and Rules**

Fed. R. Civ. P. 37(a)(1)..............................................................................................................10

Fed. R. Civ. P. 45(a)(2)................................................................................................................9

Fed. R. Civ. P. 45(d)(1)..........................................................................................................10, 11

Fed. R. Civ. P. 45(d)(3)(A) ........................................................................................................11

Nonparty AlixPartners LLP ("**AlixPartners**") submits this memorandum (i) in opposition to the November 26, 2019 Emergency Motion To Compel Discovery From AlixPartners LLP (the "**Motion**") filed by McKinsey Recovery & Transformation Services U.S., LLC and its affiliates ("**McKinsey**") and (ii) in support of AlixPartners' cross-motion to quash filed herewith.  Through its Motion, McKinsey seeks to compel AlixPartners to comply in full with a document subpoena that McKinsey served on November 11, 2019 (the "**Document Subpoena**") and a deposition subpoena that it served on November 6, 2019 (the "**Deposition Subpoena**" and, together with the Document Subpoena, the "**Subpoenas**").

**PRELIMINARY STATEMENT**

This year alone, McKinsey has served *seven* nonparty subpoenas on AlixPartners seeking discovery regarding AlixPartners' Rule 2014 disclosure practices, AlixPartners' disclosures in other bankruptcies, AlixPartners' communications regarding McKinsey, AlixPartners' high-level business strategy, and a great deal else that has nothing whatsoever to do with whether *McKinsey's* disclosure practices in *this* Chapter 11 proceeding were proper.  Last Tuesday, McKinsey filed an emergency motion asking this Court to require AlixPartners to fully respond to two of those subpoenas.  The Motion should be denied in its entirety, and the Court should grant AlixPartners' cross-motion to quash the two subpoenas that McKinsey served on AlixPartners ninety minutes before filing the Motion (the "**Latest Subpoenas**").  AlixPartners reserves all rights to seek such other relief as is just and proper, including sanctions.

AlixPartners is a nonparty to this action in every sense of the word.  It played no advisory role in the underlying *Westmoreland* Chapter 11 proceeding.  It is not party to Mar-Bow's pending objection to McKinsey's retention in this matter (the "**Objection**") and had not appeared in this action in any respect until filing this opposition to the Motion.

Nonetheless, McKinsey has launched an abusive nonparty discovery campaign against

1

AlixPartners designed to extract broad and burdensome discovery on matters that are untethered to the question of whether the Court should grant McKinsey's retention application.  Rather than seeking information bearing on that topic, the subpoenas seek what amounts to pre-complaint discovery for a lawsuit that McKinsey has threatened against nonparty AlixPartners.  The subpoenas also attempt to end run a recent decision of the Delaware Chancery Court.  They demand production of the "'Competitive Response Documents' referenced in the . . . Delaware Litigation."  (Mot. Ex. D at Request No. 12.)  But the Delaware Chancery Court already denied McKinsey access to those same documents, and McKinsey's appeal to the Delaware Supreme Court with respect to one of the documents is pending.

McKinsey claims to have filed the Motion now—and on an emergency basis—because AlixPartners "refused to engage" on the Subpoenas.  This is false.  AlixPartners met and conferred with McKinsey on Thursday, November 21, less than 24 hours after serving its written responses to the Subpoenas, and wrote McKinsey the following Monday, November 25 to propose reconvening for the next meet-and-confer session after the Thanksgiving weekend.  Rather than responding to that request, McKinsey rushed to Court, filing this emergency Motion last Tuesday.  This reflects a strategy of imposing maximum burden on AlixPartners, not a good faith effort to meet and confer.

For these and other reasons set forth below, AlixPartners respectfully requests that the Court (i) deny the Motion in its entirety and (ii) grant AlixPartners' cross-motion to quash the Latest Subpoenas.

## **FACTUAL BACKGROUND**

### A.  **McKinsey Serves A Series Of Irrelevant, Overbroad, And Unduly Burdensome Subpoenas.**

The Subpoenas subject to the Motion are but two of ***seven nonparty subpoenas*** that McKinsey has served on AlixPartners in the *Westmoreland* proceeding since the start of this year. McKinsey served the first two subpoenas—one for documents and one for a deposition—in January

2

(Powell Decl. Exs. 1 and 2) (the "**January Subpoenas**"), in direct defiance of this Court's December 20, 2018 Order abating document discovery.[2]  (Dec. 20, 2018 Order at ¶ 5.)  After AlixPartners declined to respond to the January Subpoenas in light of the discovery stay, McKinsey agreed to "stand down on discovery for the time being."  (Powell Decl. Ex. 3.)

Then, on November 6, 2019, McKinsey purported to "revive" its January 2019 document subpoena, demanding that AlixPartners serve any response within seven days.  (Powell Decl. Ex. 4.)  At the same time, it served another, supplemental document subpoena and the Deposition Subpoena.  (*Id.*)  AlixPartners requested that McKinsey serve a single, consolidated subpoena because it was unable to decipher the interaction between the "revived" and new document subpoenas.  (Powell Decl. Ex. 5.)  McKinsey relented and served the consolidated Document Subpoena on November 11, 2019.  (Powell Decl. Ex. 6.)

The Document Subpoena contains *twenty requests* for documents, not counting subparts, demanding a broad array of AlixPartners' business information that has nothing to do with McKinsey's retention application, including:

(i)    documents "sufficient to show Your corporate organization and ownership of AlixPartners" (Request No. 2);

(ii)   documents "concerning . . . interpretations of Rule 2014 and Section 327" (Request No. 3);

(iii)  documents about "policies, practices, and procedures that relate to AlixPartners' Rule 2014 disclosures and seeking retention under Section 327" (Request No. 7);

(iv)   "All policies, practices, and procedures that relate to AlixPartners's Rule 2014 disclosures and seeking retention under Section 327" (Request No. 8);

---

[2]    The Motion contains numerous unsupported, self-serving misrepresentations of fact, which AlixPartners disputes regardless of whether they are expressly addressed herein.

(v)  documents about "policies, practices, and procedures relating to Your employees' retirement accounts, pension funds, or other retirement investments" (Request No. 9);

(vi)  "All AlixPartners disclosures made pursuant to Rule 2014" (Request No. 10);

(vii)  documents "sufficient to show the information available to persons invested in or with any pension plan, 401(k) plan, or other investment options offered to employees or partners of AlixPartners" (Request No. 16);

(viii)  documents "sufficient to show the retirement investment options available to employees and partners of AlixPartners" (Request No. 17); and

(ix)  documents concerning AlixPartners' response to McKinsey's entry into the corporate restructuring advisory business—*i.e.*, the "Competitive Response" documents (Request No. 19).  (Mot. Ex. D.)

Neither the Subpoenas nor McKinsey's accompanying correspondence offered any explanation of why AlixPartners' corporate organization, ownership structure, historic Rule 2014 filings and related policies, pension plans, or response to McKinsey's entry into the restructuring advisory business was relevant to whether McKinsey should be retained in *Westmoreland.*

The Motion particularly emphasizes McKinsey's demand for the "Competitive Response Documents referenced . . . in the Delaware Litigation[.]"  (Mot. Ex. D at Request No. 19.)  The "Delaware Litigation" refers to a lawsuit that AlixPartners filed in Delaware Chancery Court in 2014 against two former employees who stole AlixPartners' highly confidential business information when leaving to work for their new employer, McKinsey.  (Powell Decl. Ex. 7 at 1-2.)  McKinsey was not party to that litigation (*id*. at 2), and the Chancery Court's Confidentiality Order expressly barred McKinsey from accessing confidential documents produced in discovery (*id*. at 14).  Among those highly confidential documents were the Competitive Response Documents, which detailed AlixPartners' efforts to compete in the restructuring business.  The Court entered a temporary

4

restraining order at the outset of the litigation barring the defendant employees from accessing, making use of, or sharing with McKinsey the confidential business information at issue in the litigation.  (Powell Decl. Ex. 8.)  The case settled during trial in September 2014.

AlixPartners moved on from the litigation, but in November 2018, McKinsey—which was not a party to the underlying case—filed an application with the Delaware Chancery Court seeking access to the Competitive Response Documents, arguing that there was great public interest in their disclosure.  (Powell Decl. Ex. 9 at 2.)  The Chancery Court denied McKinsey's application, finding that the public has shown no interest in the so-called Competitive Response Documents and only McKinsey seeks access to them.  (Powell Decl. Ex. 7 at ¶ 15.)  McKinsey has appealed this decision (specifically with respect to one of those documents) to the Delaware Supreme Court.  Indeed, McKinsey filed its opening brief only three weeks before serving the Subpoenas seeking the Competitive Response Documents.  McKinsey's appeal is pending.  (Powell Decl. Exs. 10, 11.)

The Deposition Subpoena also propounds ten topics for deposition.  These topics mirror the subjects identified in the Document Subpoena.

### B.  AlixPartners Timely Responds And Objects To The Subpoenas.

AlixPartners reviewed the Subpoenas in light of this Court's instructions regarding the scope of discovery that would be permitted in connection with this matter, including that discovery must be focused specifically on McKinsey's application for retention in *Westmoreland* and must not be used "as a vehicle to get discovery for other cases," "to undermine other court orders," or for "other proceedings"  (Nov. 13, 2019 Hr'g Tr. at 07:25 – 08:04); that discovery cannot be "a fishing expedition for the world" (*id*. at 64:14-15); that discovery not be "tit for tat" (*id*. at 09:16); and that it must be tailored to "trying an employment application" (Nov. 20, 2019 Hr'g Tr. at 23:25 – 24:15).

On November 20, 2019, AlixPartners served responses and objections to both the Document and Deposition Subpoenas.  (Mot. Ex. E, Powell Decl. Ex. 12.)  AlixPartners objected to all of the

document requests and deposition topics on multiple grounds, including that they (i) call for information irrelevant to this proceeding and are transparently designed to secure discovery for other purposes; (ii) seek to impose an undue burden on a nonparty; and (iii) otherwise ignore the discovery limits imposed by the Court.  Notwithstanding these objections, AlixPartners noted its "willingness to meet and confer in good faith concerning the Subpoena and [its] Responses and Objections."  (Mot. Ex. E at Objections to Definitions and Instructions No. 11; Powell Decl. Ex. 12 at Objection to Definitions No. 8.)

### C. McKinsey Met And Conferred Once Before Filing Its Motion.

On November 21, 2019, the day after AlixPartners served its responses and objections to the Subpoenas, AlixPartners met and conferred with McKinsey.  McKinsey stood firm on every single request.  McKinsey also proposed that AlixPartners conduct an electronic search for documents responsive to the Document Subpoena using a list of seventeen search strings and at least six custodians.  (Powell Decl. Ex. 13.)

During the meet and confer, AlixPartners noted that the Subpoenas went far beyond the scope of inquiry that the Court had identified and sought information that was not remotely relevant to its retention application.  In response, McKinsey claimed that during a November 20 status conference, this Court had addressed McKinsey's nonparty discovery of AlixPartners and authorized the scope reflected in the Subpoenas.  (Powell Decl. Ex. 14 at 1.)  AlixPartners agreed to review the audio recording of that conference in advance of the next meet and confer.  (*Id.*)  AlixPartners' counsel promptly did so, and discovered that McKinsey's characterization of the Court's limited comments about potential nonparty discovery of AlixPartners was inaccurate.

On Monday, November 25, 2019, AlixPartners sent McKinsey a letter noting that it had reviewed the recordings of the November 20 status conference and disagreed with McKinsey's characterization of the Court's comments.  (Powell Decl. Ex. 14 at 2.)  AlixPartners also proposed to

resume the meet-and-confer process the following week, given its limited availability during the holiday week.  (*Id*.)  McKinsey did not respond to AlixPartners' November 25 letter.

At approximately 10:00 p.m. on November 26, McKinsey served the Latest Subpoenas: a supplemental document subpoena containing five ***new*** demands, and a revised deposition subpoena. (Powell Decl. Exs. 15, 16.)  Then, shortly before 11:30 p.m. that same night, McKinsey filed its Motion.

### D.  Communications With McKinsey Since The Motion Was Filed

McKinsey finally responded to AlixPartners' November 25 request to continue the meet-and-confer process three days after filing the Motion, noting last Friday that McKinsey remains available to meet and confer.  (Powell Decl. Ex. 17.)  AlixPartners reiterated its proposal to resume the meet-and-confer process the week of December 2.  (*Id*.)  During a subsequent e-mail exchange, AlixPartners requested that McKinsey put any proposal for narrowing the Subpoenas in writing. (Powell Decl. Ex. 18.)  McKinsey responded that it "would agree to the redaction of the portion(s) of the competitive response documents that are client lists or referral sources, with the production of a log identifying the redaction and reason."  (*Id*.)  In other words, McKinsey still refuses to modify its document requests to nonparty AlixPartners in any respect, apart from permitting limited redactions to a subset of the documents demanded.

### ARGUMENT

### I.  The Motion Should Be Denied Because The Requests Are Irrelevant, Overly Broad, And Unduly Burdensome.

As the party demanding discovery, McKinsey bears the initial burden of showing that "the materials and information it seeks are relevant to the lawsuit[.]"  *Buckeye Ret. Co. v. Wade (In re Wade)*, No. 10-31139-H3-7, 2012 Bankr. LEXIS 5210, at *10-11 (Bankr. S.D. Tex. Nov. 7, 2012); *see also MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) ("[T]he Subpoena may only properly seek testimony and documents that are relevant to any party's claim or defense in that case").

7

It cannot meet that burden.

McKinsey purports to seek documents falling into two categories: (1) "documents and communication pertaining to Alix's and AlixPartners's efforts to drive [McKinsey] out of the restructuring advising market" and (2) "documents and communications pertaining to AlixPartners's policies and procedures governing its Rule 2014 disclosures."  (Mot. at 11.)  No such categorical division is apparent on the face of the Document Subpoena (or Deposition Subpoena).  Almost all of the requests and topics in the Subpoenas instead are directed at: AlixPartners' structure and governance (Requests Nos. 1-2 / Topics Nos. 1, 4); its internal policies, practices, and procedures (Requests Nos. 3, 7-10, 12, 16-20 / Topics Nos. 2-3, 8-10); or its internal and external correspondence (Requests Nos. 4-6, 11, 14-15 / Topics Nos. 5-7).  McKinsey's suggestion that all of the Document Subpoena's requests for production fall into these two categories is plainly designed to obscure the breadth and burden of the requests, which seek a wide range of AlixPartners' confidential business information.

In all events, neither of these categories of information (nor the many underlying requests) is remotely relevant to the "employment application" pending before the Court.  How *AlixPartners* is organized, who owns interests in *AlixPartners*, how *AlixPartners* construes the disclosure obligations under Rule 2014 and the Bankruptcy Code, what internal procedures *AlixPartners* has adopted in this regard, *AlixPartners'* historic Rule 2014 filings, *AlixPartners'* retirement plan offerings, and *AlixPartners'* internal or external communications about its views on competition with McKinsey have nothing whatsoever to do with whether *McKinsey* should be retained as the debtors' restructuring advisor in *Westmoreland*.  After all, AlixPartners never sought to be retained by the debtors in this Chapter 11 Proceeding.  The Motion particularly focuses on purported evidence of some effort by AlixPartners and Jay Alix to "drive [McKinsey] out of the restructuring market," but this has nothing at all to do with the pending question of whether *McKinsey* should be retained here

either.  *See* Comments of United States Trustee at 9 n.11, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Nov. 30, 2018), ECF No. 4164 ("McKinsey's suggestions of bad faith motives by Mar-Bow do not excuse either its opposition to making public disclosures that should have been made voluntarily, or the deficiencies in the disclosures it ultimately made.").

The Document Subpoena is otherwise overbroad, seeking broad swaths of documents without any particularity, which unduly burdens a nonparty.[3]  Request No. 5 demands, for example, all documents and communications "concerning McKinsey, the Proposed Professionals, or MIO related to this Action," without any limitation to the issues concerning McKinsey's retention.  Other requests suffer the same defect, for example: Request No. 11 demands documents that "originated from the Proposed Professionals, McKinsey, or MIO" regardless of whether they have any connection to this Action or the relevant issues; Request No. 13 demands "[a]ll deposition transcripts from the Delaware Litigation," an entirely unrelated proceeding; and Request 15 demands documents "with or concerning the United States Trustee concerning this Action."  Even where AlixPartners has specifically responded that it has no relevant documents (Mot. Ex. E at Responses Nos. 3, 4, and 15), McKinsey has simply ignored this fact and demanded full compliance.

Ultimately, the Motion—particularly its allegations of a joint effort by AlixPartners and the Objectors to harm McKinsey—leaves little doubt that McKinsey has not served this mass of subpoenas on AlixPartners because of any substantive relationship between the information sought and the employment application before the Court.  Rather, it seeks this information for other purposes.  ***First***, the Motion's elaborate, detailed, and unfounded allegations concerning AlixPartners' purported efforts to drive McKinsey out of the restructuring business reveal what McKinsey has previously threatened: that it is considering filing an action against AlixPartners.

---

[3]      The Document Subpoena is also procedurally defective, having been issued from the Southern District of New York rather than the district in which this action is pending.  *See* Fed. R. Civ. P. 45(a)(2).

McKinsey thus appears to be pursuing pre-complaint discovery in search of claims against AlixPartners, thereby flouting the Court's admonishment that the parties are not to seek discovery in this case for "use in other proceedings."  (Nov. 13, 2019 Hr'g Tr. at 07:25 – 08:04.)  **Second**, McKinsey seeks the Competitive Response Documents to end run the Delaware Chancery Court's denial of access to many of the same documents (Powell Decl. Ex. 7 at ¶¶ 15-16), thereby ignoring this Court's direction that the parties not use discovery in this case "to undermine other court orders." (Nov. 13, 2019 Hr'g Tr. at 07:25 – 08:04.)  And, **third**, the rapid-fire service of multiple burdensome subpoenas and an "emergency" motion to compel reveal that McKinsey is abusing the discovery process by seeking a deluge of discovery from a nonparty even greater than what appears to have been required of the Objector.

## II.     The Motion Should Be Denied Based On McKinsey's Failure To Meet And Confer In Good Faith.

A party may move for an order compelling disclosure or discovery, but bears an affirmative burden to "take reasonable steps to avoid imposing undue burden or expense" on a nonparty, such as not filing a motion to compel until after meeting and conferring with the discovery target.  *See* Fed. R. Civ. P. 45(d)(1).  Meeting and conferring in good faith is central to that process.  *Cf*. Fed. R. Civ. P. 37(a)(1) (requiring motions to compel under Rule 37 to include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").

The Motion was filed prematurely.  McKinsey alleges generally that it and AlixPartners "met and conferred in good faith regarding AlixPartners's objections to the Subpoenas" on November 21. (Mot. at 13.)  That was the only time that the parties met and conferred.  On that call, McKinsey's counsel simply walked through each of the twenty requests in the Document Subpoena.  (Powell Decl. Ex. 14 at 1.)  Yet, McKinsey asserts that AlixPartners has "refused to engage" concerning the Subpoenas.  Nothing could be further from the truth.  AlixPartners proposed on November 25 to

schedule the next meet and confer after the Thanksgiving weekend.  McKinsey ignored that proposal, and instead served two new subpoenas and the emergency Motion the next day.  Simply put, McKinsey unilaterally terminated the meet-and-confer process.

McKinsey likewise manufactured the "emergency" basis for seeking relief.  AlixPartners understands that, although McKinsey has proposed a December 20 cutoff for document discovery, that proposal has not been adopted, and the current discovery cutoff remains January 31, 2020.  There was, and is, no emergency.

For all these reasons, the Motion to Compel should be denied.

## III.   The Court Should Grant AlixPartners' Motion To Quash The Latest Subpoenas.

AlixPartners respectfully requests that the Court enter an order pursuant to Federal Rule of Civil Procedure 45(d) quashing the Latest Subpoenas.  Under Rule 45(d)(1), McKinsey "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  It has not.  Rather, in the Latest Subpoenas, McKinsey has propounded still more burdensome requests for irrelevant AlixPartners documents, on a schedule that requires AlixPartners to begin preparing responses to the Latest Subpoenas at the same time that it is responding to the emergency Motion.  This Court "must quash or modify a subpoena that . . . subjects a person to undue burden," as the Latest Subpoenas plainly do.  Fed. R. Civ. P. 45(d)(3)(A).

To determine whether a nonparty subpoena presents an undue burden, Courts in this circuit have considered: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *MetroPCS*, 327 F.R.D. at 609 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).  Each of these factors requires quashing the Latest Subpoenas.

The new document requests seek to impose on nonparty AlixPartners the obligation to

conduct searches for emails from "April 1, 2013 to December 31, 2015" (Instruction No. 1) for:

(i)      *internal* AlixPartners documents and communications concerning McKinsey's restructuring business (Request No. 1);

(ii)      communications between AlixPartners and McKinsey on the same topic (*id*., Request No. 2);

(iii)      entirely *external* communications among Jay Alix (who was not employed by AlixPartners during the applicable time period) and certain McKinsey representatives on the same topic (*id*., Request No. 3);

(iv)      "All Documents and Communications" concerning the foregoing topics (*id*., Request No. 4); and

(v)      "All Documents and Communications" responsive to Requests Nos. 12, 13 and 19 in the Document Subpoena—*i.e*., requests subject to the Motion—but for a modified timeframe (*id*., Request No. 5).  (Powell Decl. Ex. 15.)

The twelve deposition topics in the Latest Subpoena largely repeat those in the Deposition Subpoena subject to the Motion and mirror the document requests above.  (Powell Decl. Ex. 16.)

As with the Subpoenas subject to the Motion, the information sought in the Latest Subpoenas is not relevant to the question of whether *McKinsey* should be retained in this Chapter 11 proceeding. As an initial matter, documents and communications from the 2013-2015 period by definition would not pertain to the *Westmoreland* Chapter 11 proceeding—and specifically whether McKinsey's Rule 2014 disclosures in this proceeding were adequate—since *Westmoreland* was not filed until years later.  Moreover, the request for communications *entirely within* AlixPartners about McKinsey's restructuring business seeks AlixPartners' internal deliberations about a competitor, which is not relevant to this matter and, once again, is designed to obtain the same type of documents that McKinsey was denied in Delaware Chancery Court.  To the extent that the other requests seek

communications ***among*** Mr. Alix and McKinsey representatives, or documents about those communications, nonparty AlixPartners is the wrong target.

These same deficiencies also render the Latest Subpoenas overbroad, which alone is sufficient to quash the subpoenas. *MetroPCS*, 327 F.R.D. at 610 (holding that courts "may find that a subpoena presents an undue burden when the subpoena is facially overbroad" (citation omitted)); *Campos v. Webb Cty.,* No. 5:12-CV-7, 2013 WL 12387157, at *3 (S.D. Tex. Oct. 25, 2013) ("Courts have held that a request for 'any and all documents' relating to a particular subject, such as the subpoena request at issue, is overbroad and amounts to little more than a fishing expedition." (internal quotations omitted)); *Bancroft Life & Cas. ICC, Ltd. v. Lo*, Misc. Action H-13-0389, 2013 WL 12142367, at *1-2 (S.D. Tex. Jun. 11, 2013) (quashing as "patently overbroad" request seeking "all documents and communications with or relating to").

Finally, McKinsey cannot offer any reasonable basis for imposing on nonparty AlixPartners the obligation to search for emails on ***any topic***, particularly with respect to a timeframe ending nearly four years ago, for purposes of a retention application in a Chapter 11 proceeding with which AlixPartners has had no involvement, apart from its unsolicited role as a nonparty target of seven subpoenas. Nor can it justify a request to depose AlixPartners on these same topics.

For these reasons and those offered in opposition to the Motion, the Latest Subpoenas should be quashed.

## **CONCLUSION**

AlixPartners respectfully requests that the Motion be denied and that its cross-motion to quash

be granted, and reserves the right to seek such further relief as is just and proper.

Dated:  December 2, 2019                    Respectfully submitted,
          Houston, Texas


**WILLKIE FARR & GALLAGHER LLP**

By:  /s/ Jennifer J. Hardy
      Jennifer J. Hardy (Texas Bar No. 24096068)
      600 Travis Street, Suite 2100
      Houston, Texas 77002
      Telephone: (713) 510-1700
      Facsimile: (713) 510-1799
      jhardy2@willkie.com

      **AND**

      Wesley R. Powell (*pro hac vice* admission
      pending)
      Jordan C. Wall (*pro hac vice* admission pending)
      787 Seventh Avenue
      New York, New York 10019
      Telephone: (212) 728-8000
      Facsimile: (212) 728-9000
      wpowell@willkie.com
      jwall@willkie.com

      *Attorneys for AlixPartners LLP*

**<u>Request for Emergency Consideration</u>**

Pursuant to Local Rule 9013-1(i), the undersigned counsel requests emergency consideration and hereby certifies the accuracy of the foregoing pleading.

/s/ Jennifer J. Hardy_____
Jennifer J. Hardy

## **Certificate of Conference**

I hereby certify that in advance of filing the foregoing pleading, counsel for AlixPartners conferred with counsel for McKinsey via email to narrow the scope of the Subpoenas, in accordance with Local Rule 9013-1(g)(1). Despite these efforts, McKinsey and AlixPartners were unable to reach an agreement on the scope of the discovery.

/s/ Jennifer J. Hardy
Jennifer J. Hardy

**<u>Certificate of Service</u>**

I certify that on December 2, 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Jennifer J. Hardy
Jennifer J. Hardy