# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESTMORELAND COAL COMPANY, *et al.*,[1] | Case No. 18-35672 (DRJ) |
| Reorganized Debtors. | (Jointly Administered) |

**THE PROPOSED PROFESSIONALS' REPLY IN FURTHER SUPPORT OF THEIR EMERGENCY MOTION TO ADMIT FRED CRAWFORD'S DESIGNATED DEPOSITION TESTIMONY AND EXHIBITS THROUGH SUBMISSION AND IN OPPOSITION TO NONPARTY ALIXPARTNERS LLP'S EMERGENCY CROSS-MOTION FOR A PROTECTIVE ORDER[2]**

---

[1] Due to the large number of debtors in these chapter 11 cases, which are consolidated for procedural purposes only, a complete list of the debtors and the last four digits of their tax identification, registration, or like numbers is not provided herein. A complete list of such information may be obtained on the website of the claims and noticing agent in these chapter 11 cases at www.donlinrecano.com/westmoreland. Westmoreland Coal Company's service address for the purposes of these chapter 11 cases is 9540 South Maroon Circle, Suite 300, Englewood, Colorado 80112.

[2] This document is filed under seal pursuant to the December 18, 2019 Amended Stipulated Protective Order. *See* Order at Dkt. 2618 ¶ 11 ("Parties or a Designating Party seeking to file papers attaching, containing, or referencing Designated Material under seal may reference this Order in the pleading in lieu of filing a motion under Local Rule 9037-1.").

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey RTS") and its affiliates seeking retention in this case (collectively, the "Proposed Professionals") respectfully submit this reply in further support of their April 13, 2020 Emergency Motion to Admit Fred Crawford's Designated Deposition Testimony and Exhibits Through Submission (the "Motion"), Dkt. 2923, and in opposition to AlixPartners's April 20, 2020 Emergency Cross-Motion for a Protective Order (the "Opposition Brief"), Dkt. 2936.

**<u>PRELIMINARY STATEMENT</u>**

It is ironic—to say the least—that AlixPartners so arduously seeks to shield from public view Fred Crawford's testimony about a proposed strategy to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The Proposed Professionals have now submitted Mr. Crawford's designated deposition testimony and related exhibits into evidence, and what remains at issue is whether testimony that addresses the substance of the Competitive Response Document (the "Document"), Dkt. 2923-4 (Mot. Ex. D, PPX-110), will be under seal. In that testimony, Mr. Crawford explains a proposed strategy that goes directly to the heart of Jay Alix's motivation, purpose, and credibility in this case. While this testimony may be uncomfortable for AlixPartners, there is no basis to shield Mr. Crawford's testimony about the substance and words on pages nine, ten, and fifteen of the Document from public view—and AlixPartners's Opposition Brief offers none. Indeed, this Court already "cut out everything that was really internal, strategic, [or] economic" in the Document before it was produced. Dkt. 2843, 2/25/20 Hr'g Tr. 13:2–3.

The only factual support AlixPartners offers for sealing Mr. Crawford's testimony is a recycled affidavit of Jay Marshall, executed nearly a year ago in the Delaware Chancery Court case. Opp. Br. Ex. 2. That affidavit does not even address the portion of page fifteen of the Document that was produced in this case and is at issue here: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

██████████████████████████████. Rather, the affidavit summarily states, with no factual support or even reasoning, that strategies and analysis described in the Document *as a whole* "remain as relevant and sensitive today as they were when they were written" and that "AlixPartners is continuing to follow those strategies." *Id.* ¶ 7. But in *this* case, AlixPartners has argued—and Mr. Crawford has testified—just the opposite about the page fifteen strategy: they both have stated that the strategy was never adopted by AlixPartners. Thus, at least that strategy cannot be as relevant and sensitive today as it was when the Document was authored in 2013. Whatever Mr. Marshall's Delaware affidavit states about the full Document, it does not apply to the strategy at issue on page fifteen, which it does not directly address. In fact, none of the information in the full Document that Mr. Marshall's affidavit claims is sensitive—such as referral sources, pitch approaches, and AlixPartners's operations, *id.* ¶¶ 5, 6, 8—is anywhere to be found in the 2.5 pages of the Document that the Court ordered produced in this litigation.

AlixPartners offers nothing else to support a finding that disclosure of the proposed (but purportedly rejected) strategy on page fifteen would cause it competitive harm by revealing a trade secret or commercially sensitive information. While it argues the proposed strategy reveals AlixPartners's internal "ideas" or "analysis" about McKinsey, the sum and substance of that internal thinking is that ████████████████████████████████████████████████████████ ██████████████████ This obvious point is hardly the type of substantive commercial or financial analysis that could ever meet the legal test necessary to establish a trade secret or constitute sensitive commercial information worthy of the exceptional remedy of sealing a public trial.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

███████████████████████████████████████.[3] AlixPartners's brief misconstrues the Proposed Professionals' argument about this prior testimony: it is not that the whole Document should be disclosed because Mr. Alix already publicly testified about some of it (although there is some unfairness to the idea that Mr. Alix should be allowed to cherry-pick which portions of page fifteen become public). Rather, it is that AlixPartners itself solicited public testimony from Mr. Alix about the very analysis about McKinsey reflected on page fifteen that AlixPartners now tries to claim is its confidential "secret sauce." The argument is thus twofold: the analysis fails to meet the legal test to constitute a trade secret or sensitive commercial information in the first place, and AlixPartners nonetheless previously elicited public testimony from one of its board members, Mr. Alix, on this strategy.

Nor can AlixPartners offer anything to substantiate its claim of competitive harm that would arise from the disclosure of the page fifteen proposed strategy. While one could surmise that the strategy might be embarrassing to AlixPartners if made public, AlixPartners explicitly disavows any argument that disclosure would cause it embarrassment or reputational harm. Opp. Br. 13. There is nothing else to discuss. It is AlixPartners's burden to show it would be harmed, and it has offered nothing in support.

The Court should also reject AlixPartners's attempt to rewrite the history of the negotiation of the Amended Protective Order to support its request to seal the transcript. The Proposed Professionals never agreed during the course of those negotiations that any document or testimony

---

[3] On direct examination, AlixPartners's counsel showed Mr. Alix page 15 of the Document and asked him to interpret the statement regarding "McKinsey RTS's [alleged] fear in [*sic*] being involved in these cases." Dkt. 2923-8 (Mot. Ex. H), at 650:2–9; *see also id.* at 649:10–11 ("Q. Let me direct your attention [to] page 15[.]"). Mr. Alix then testified in open court revealing AlixPartners's internal thinking about McKinsey, stating that McKinsey is "a very private firm" and opining that the "bankruptcy business is very inconsistent with anyone who wants to remain private, confidential, and off the radar screen." *Id.* at 650:10–24.

about a document shown to the AlixPartners board would be sealed from public view—nor could a protective order be that restrictive, as the law and the Bankruptcy Code require transparency, with only limited exceptions.[4]

To the contrary, the Proposed Professionals rejected AlixPartners's drafts that tried to craft such a standard. The Amended Protective Order contains three tiers, and any materials designated under even the lowest category, "Confidential," must contain "non-public proprietary or confidential technical, business, or financial information." Dkt. 2618 ¶ B.2. The Document and the testimony about it do not even meet that standard, and thus cannot possibly meet the "Highly Confidential" or "Outside Counsel Eyes Only" standards. *See generally id.* ¶¶ B.4–7. Moreover, because counsel for the Proposed Professionals did not see the Document until *after* the Amended Protective Order was signed, they could not have agreed, as AlixPartners suggests, that the content of the Document satisfied any designation in the Amended Protective Order. After AlixPartners produced the Document, it became clear that it does not.

AlixPartners's attempt to draw a false equivalence between confidential treatment of McKinsey's client lists and page fifteen of the Document actually supports the Proposed Professionals' position. Confidential client lists are quintessential competitively sensitive information that is routinely protected by courts.

AlixPartners also wrongly claims that testimony was removed from Mr. Barton's video deposition designations on the basis of confidentiality concerns. The Proposed Professionals did

---

[4] *See, e.g.*, *In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) ("A court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as public monitoring is an essential feature of democratic control." (internal quotation marks omitted)); *In re Bank One Secs. Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004) ("As concealment from the public is disfavored, any 'step that withdraws an element of the judicial process . . . requires rigorous justification.'" (quoting *In re Krynicki,* 983 F.2d 74, 75 (7th Cir. 1992)).

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

not stand on the confidentiality designations they had made in discovery, and those designations were removed at trial. For example, Mr. Barton's personal notes of his meetings with Mr. Alix had been produced with confidentiality designations during discovery, and the corresponding testimony about those notes were designated confidential; but at trial, those notes and the testimony about them were submitted into evidence without any sealing. *See* Ex. A (1/31/20 Email from J. Odom designating Barton transcript "Confidential" in its entirety); PPX-118 (Barton's handwritten notes bearing "Confidential" stamp); PPX-119 (same); MBX-171 (same).

Importantly, the Proposed Professionals have never agreed that the Document or testimony about it merits sealing under the terms of the Amended Protective Order or applicable law. Indeed, they have filed multiple briefs arguing just the opposite. At the last set of trial hearings, as an accommodation to AlixPartners and to try to put this dispute to bed, the Proposed Professionals agreed that after playing the deposition testimony of Mr. Crawford in open court—which would include publicly playing testimony concerning the substance of the Document—the Document itself could then be put into evidence under seal. The Proposed Professionals have now submitted Mr. Crawford's deposition designations and video testimony to the Court electronically and did not back-track from their prior agreement to leave the actual Document sealed on the docket. But they also have been consistent that testimony about the Document, which addresses the substance of all of page fifteen, should remain public.[5]

Finally, AlixPartners is wrong that there would be no prejudice to the Proposed Professionals if testimony about the Document is shielded from public view. The Proposed Professionals

---

[5] The Proposed Professionals questioned Mr. Crawford about the substance of the Document, as the Court permitted them to do. Dkt. 2711, 1/21/20 Hr'g Tr. 30:8–9. AlixPartners's argument that this questioning is somehow an end-run around the agreement to seal the Document fails, as the Proposed Professionals always maintained that there should be a public airing of the testimony for the record.

CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL

should be able to use this testimony in the case going forward like any other evidence—whether in argument, cross examination or closing statements—as it is part of the record. Shielding it from public view would violate the public's interest in a transparent judiciary and prejudice the Proposed Professionals in their ability to present their case to this Court in full.

## ARGUMENT

I.  **Mr. Crawford's Testimony May Not Be Sealed**

AlixPartners has failed to carry its burden to demonstrate that the testimony at issue falls within any of the limited categories of information eligible for sealing under the Amended Protective Order or Bankruptcy Code. *See In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) ("Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the [party seeking protection] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))); *In re Wells Fargo Bank, N.A.*, No. MC 17-204-GLT, 2019 WL 642850, at *2 (Bankr. W.D. Pa. Feb. 14, 2019) (holding that the proponent "has the burden of establishing through evidence that the information should be protected" under 11 U.S.C. § 107(b)). AlixPartners conflates (at Opp. Br. 7) the *procedural* burden in the Amended Protective Order of "requesting relief" from an improper "Outside Counsel Eyes Only" designation, Dkt. 2618 ¶ B.12,[6] with the *substantive* burden of showing that protection is warranted under Rule 26 or Section 107 of the Bankruptcy Code. While the burden of seeking relief under the Protective Order falls on the party seeking to use the evidence (here, the Proposed Professionals), the party seeking protection (here,

---

[6] The Amended Protective Order places the burden of requesting relief as to a "Confidential" or "Highly Confidential" designation, by contrast, on the designating party. Dkt. 2618 ¶ B.12.

6

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

AlixPartners) retains the burden of substantiating why the information should be kept from the public. *In re Terra Int'l*, 134 F.3d at 306; *In re Wells Fargo*, 2019 WL 642850, at *2.

As discussed in the Motion, the Amended Protective Order permits designation only of "non-public proprietary or confidential technical, business, or financial information." Dkt. 2618 ¶ B.2. To constitute "Outside Counsel Eyes Only Material"—as AlixPartners contends Mr. Crawford's testimony about the Document does—the information must be analogous to "confidential board-level or competition materials that reflect trade secrets or other highly sensitive financial or business information." *Id.* ¶ B.6. Information that already was available publicly or was known to the receiving party at the time of production may not be protected. *Id.* ¶ B.2. Section 107 of the Bankruptcy Code is similarly restrictive and requires any bankruptcy filing to remain publicly accessible unless it constitutes "a trade secret or confidential research, development, or commercial information" under Section 107(b)(1) or falls within another exception not at issue here. To qualify for sealing under Section 107(b)(1), the information must either "rise to the level of a trade secret" or be "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *In re Faucett*, 438 B.R. 564, 567 (Bankr. W.D. Tex. 2010) (quoting *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004)); *see also id.* at 569–71 (denying motion to seal sales policy manual).

Importantly, "[e]vidence—not just argument—is required to support the extraordinary remedy of sealing." *In re Motors Liquidation Co.*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016); *see also id.* at 44 (denying motion to seal supported only by "only conclusory statements regarding the information's commercial importance"). AlixPartners has the burden to "demonstrate that [the information's] disclosure would cause an identifiable, significant harm." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 801 (S.D. Tex. 2010). AlixPartners fails to show that the testimony about the

7

Document satisfies the standard for information that could be sealed, and it does not even attempt to show how the disclosure of testimony about the 2.5 pages of the Document would cause it any harm at all.[7] *See Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381, 388–90 (E.D. La. 2015) (granting motion to de-designate internal reports where proponent provided only "speculative and unsupported" arguments of commercial sensitivity); *see also S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 850 (5th Cir. 1993) (reversing district court's order sealing hearing transcript as abuse of discretion where trial court failed to properly weigh presumption in favor of public access and did not articulate any reasons for sealing); *United States v. Abdallah*, No. CRIMA H-07-155, 2009 WL 2246156, at *3 (S.D. Tex. July 24, 2009) (denying the government's motion to seal transcript and exhibits in criminal trial where the government failed to show good cause for sealing).

    The only evidence AlixPartners presents in support of its argument is Jay Marshall's 2019 affidavit from the Delaware litigation. Opp. Br. 7–8. But that affidavit does not specifically address the strategy on page fifteen of the Document that is at issue here. Instead, it discusses the full, unredacted Document and points to parts of the Document that this Court already has excluded from production in this case, such as "AlixPartners' top referral sources for restructuring business," "strategies designed specifically to develop and leverage referral sources, recruit and retain talent, and bolster public relations," and information about how AlixPartners's executives "strategically

---

[7] While AlixPartners summarily asserts that the information at issue may constitute a "trade secret," Opp. Br. 8, 10, it offers no evidence to establish any of the six factors courts weigh to determine whether a trade secret exists. *See generally In re Mud King Prod., Inc.*, 514 B.R. 496, 510 (Bankr. S.D. Tex. 2014) ("Texas courts weigh six factors in the context of the surrounding circumstances to determine whether a trade secret exists: (1) the extent to which the information is known outside of plaintiff's business; (2) the extent of the measures taken to guard the secrecy of the information; (3) the extent to which it is known by employees and others involved in plaintiff's business; (4) the value of the information to plaintiff and its competitors; (5) the amount of effort or money expended by plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 875 (5th Cir. 2013))), *aff'd*, No. BR 13-32101, 2015 WL 862319 (S.D. Tex. Feb. 27, 2015). The Document is not a trade secret.

think about the industry and pitch for business," *id.* at Ex. 2 ¶¶ 5, 6, 8.  None of this information is included in the unredacted 2.5 pages of the Document at issue here.

As this Court has noted, "everything that was really internal, strategic, [or] economic" was already redacted before the Document was produced.  Dkt. 2843, 2/25/20 Hr'g Tr. 13:2–3.[8]  The produced portion of the Document contains ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌  Dkt. 2923-4 (Mot. Ex. D, PPX-110), at 9, 10, 15.  None of this information could possibly be critical to AlixPartners's operations, because AlixPartners contends this strategy was rejected and because the high-level bullet points outlining the strategy reveal nothing about how AlixPartners operates.  As in *United States v. International Business Machines Corp.*, the Document "reveals directly little, if anything at all, about [AlixPartners's] current operations."  67 F.R.D. 40, 49 (S.D.N.Y. 1975) ("Rather than revealing the market stratagem Honeywell has adopted, [the planning report at issue] discusses options Honeywell might explore . . . .").

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌  AlixPartners's contention that Mr. Alix's testimony was "carefully tailored to ensure that the sensitive contents of the Competitive Response Document were not revealed" and that its counsel "elicit[ed] only general testimony, avoiding questions about specific content of the document," Opp. Br. 11, cannot be squared with the public record.

---

[8] AlixPartners's argument that it should be permitted to "request targeted redactions" of Mr. Crawford's testimony about the Document, Opp. Br. 14, ignores the fact that the Court already imposed targeted redactions of the Document when it compelled production.

9

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

In the Delaware trial, AlixPartners's counsel showed Mr. Alix page fifteen of the Document, ▮

▮

▮

▮  The following exchange ensued:

> Q. What's your understanding of what – what's your understanding of what Mr. Marshall is saying with respect to McKinsey RTS's fear in being involved in these cases?
>
> A. Well, it's widely known and widely written about and widely publicized, and even testified to in this trial as I heard this week, that McKinsey avoids all publicity and all public disclosure of their business, their clients, their contacts, their relationships, their alumni network, their referral sources.  They're a very private firm.

Dkt. 2923-8 (Mot. Ex. H), at 650:6–16.  Mr. Alix continued, "And it seems *to me and to our firm* that it's inconsistent to be in a business where you want to be highly confidential, on the one hand, and be in a forum doing work where you have to be completely transparent and open with all your connections to a debtor, any party in interest."  *Id.* at 651:12–18 (emphasis added).[9]  Having publicly disclosed ▮ PPX-110, at 15, AlixPartners cannot claw-back that so-called "analysis" as some sort of secret formula.

And while Mr. Marshall's Delaware affidavit summarily states that "[t]he competitive analysis and competitive strategies described in [the Document] remain as relevant and sensitive today as they were when they were written" and that "AlixPartners is continuing to follow those strategies as it competes aggressively with McKinsey and others," Opp. Br. Ex. 2 ¶ 7, AlixPartners repeatedly has represented to *this* Court that ▮

---

[9] Immediately following this testimony, counsel for AlixPartners asked for a break in the proceedings and the parties reached a settlement of the employment dispute off the record.  Mot. Ex. H, at 650:19–654:18.  So there was no cross-examination regarding the Document.

10

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was never adopted by AlixPartners, Dkt. 2751, at 2; Dkt. 2768, at 5 & n.9. So, Mr. Marshall's statement cannot be read as applying to the rejected strategy on page fifteen. AlixPartners cannot have it both ways.

At bottom, AlixPartners's conclusory statements about commercial sensitivity and competitive harm are insufficient to warrant sealing. *See In re Supplement Spot, LLC*, No. 06-35903-H4-11, 2009 WL 2006834, at *11–*13 (Bankr. S.D. Tex. July 8, 2009) (denying motions to seal based only on "sweeping statement" and "broad assertion" of entitlement to protection); *In re Faucett*, 438 B.R. at 569, 571 (denying motion to seal sales policy manual based only on "conclusory" testimony of potential harm from disclosure).[10]

The cases on which AlixPartners relies for the proposition that "[c]ompetitive strategy documents are not rendered stale simply by the passage of time," Opp. Br. 13 (emphasis omitted), are of no moment. As an initial matter, the proposed strategy on page fifteen would not have warranted sealing even contemporaneously for the reasons stated above. In any event, the cases AlixPartners cites do not provide a basis for sealing here and actually support the Proposed Professionals' position. In *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co.*, the party opposing sealing conceded that some of the documents constituted confidential commercial information and argued only that they were too stale to warrant protection. 133 F. Supp. 3d 1079, 1090 (N.D. Ill. 2015). Here, by contrast, the Proposed Professionals have consistently argued that "*none* of the information in the 2.5 produced pages of the Document or Mr. Crawford's testimony about it qualifies for protection." Mot. 6. Moreover, the *Global Material Technologies* court declined to

---

[10] *See also In re Dreier LLP*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013) (holding that proponent of sealing who submitted only "conclusory statements" had "failed to show that [the information's] disclosure in a public filing would place [the proponent] at a competitive disadvantage"); *In re Bank One Secs. Litig.*, 222 F.R.D. 582, 589 (N.D. Ill. 2004) (unsealing record where proponent offered only "a 'conclusion without the required reasoning' that will not pass muster under the good cause standard of [Rule] 26(c)(7)").

seal another set of documents reflecting four-year-old pricing information, because the designating party had "not explained how [its disclosure] could cause the kind of 'unwarranted commercial harm' that would justify preserving its AEO designation" and had "made no attempt to show that the information in these documents could be extrapolated by [the opposing party] to predict future pricing strategies or otherwise give it a current competitive advantage." *Id.* at 1086. Here, too—at best—AlixPartners has made only "broad allegations of unspecified harm." *Id.* at 1085.

Two other cases cited by AlixPartners involved quintessentially sensitive commercial information that remained sensitive—unlike the Document here. In *Horner v. Cummings*, the court granted the defendant's motion to uphold its protective-order designations of "engineering drawings" and internal memoranda regarding the design and testing of its products to meet federal regulations, except for those that already were in the public domain. No. 14-cv-00639, 2015 WL 4590959, at *9, *12–*13 (M.D. Pa. July 29, 2015). Because the discovery dispute arose at an "early stage in the litigation," before depositions had been taken, the judge expressly "caution[ed]" that the need for public disclosure might "override" trade-secret protection as the case progressed. *Id.* at *13. In *Stanislaus Food Products Co. v. USS-POSCO Industries*, the court similarly rejected a discovery motion to de-designate "historical transactional data," "product pricing strategies," "management committee minutes," and market analyses. No. 09-00560 (LJO), 2012 WL 6160468, at *1, *4 (E.D. Cal. Dec. 11, 2012). It reasoned that the information could "be extrapolated to predict future strategies and practices, and is still relevant today." *Id.* at *2. By contrast, Mr. Crawford's testimony about the Document does not contain any design schematics, pricing information, or market analysis, and supposedly never was adopted.

AlixPartners's focus on *Bradburn Parent/Teacher Store, Inc. v. 3M*, No. Civ. A. 02-7676, 2004 WL 1146665 (E.D. Pa. May 19, 2004), is similarly misplaced. The "Global Strategic Plans"

at issue in *Bradburn* contained 3M's responses "to changing market situations and competitive threats within the marketplace" and "to its competitors' perceived strengths and weaknesses," which the district court found "could in turn be used to anticipate 3M's responses to competition in today's marketplace." *Id.* at *2. A manufacturer's global strategic plan cannot reasonably be compared to the ███████████ on page fifteen of the Document. Moreover, unlike the parties in these cases, AlixPartners utterly has failed to explain how disclosure of the proposed strategy—which AlixPartners maintains was never adopted—could give advantage to its competitors or cause it any specific harm. *Cf. Horner*, 2015 WL 4590959, at *13 (granting motion to seal where proponent had specifically "defined the potential loss" that would result from disclosure).

Finally, because AlixPartners has failed to carry its burden to justify the extraordinary measure of sealing trial testimony, its cross-motion for a protective order also necessarily fails. "The party seeking protection must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *M-I LLC*, 733 F. Supp. 2d at 801. As discussed above, AlixPartners has done neither.

### II.  AlixPartners Misrepresents the Parties' Negotiation History

AlixPartners also misconstrues the history of the Amended Protective Order. *See* Opp. Br. 3. AlixPartners's representations that "McKinsey repeatedly represented that confidentiality was not an issue" and the then-existing protective order "was amended for the express purpose of protecting the Competitive Response Document from public disclosure" are simply disingenuous. Opp. Br. 1, 3. The Proposed Professionals agreed to amend the prior protective order by adding a heightened "Outside Counsel Eyes Only" designation *before* they received the Document in discovery; they expressly insisted that a de-designation mechanism remain in place because they could not agree to any designation before they could see the Document. When AlixPartners first

13

proposed an entirely new protective order that had no mechanism for de-designation or use of designated materials at trial, and an overbroad definition of "Outside Counsel Eyes Only Material," *see* Ex. B ¶ B.2 (12/4/2019 draft protective order), the Proposed Professional rejected that draft.

AlixPartners also incorrectly implies that the Proposed Professionals' agreement to file the Document under seal reflects their consent to the Document's qualification for confidential treatment under the Amended Protective Order. *See* Opp. Br. 6. As the Proposed Professionals have maintained throughout this proceeding, neither the Document nor any testimony about it merits sealing. Mot. 5–6. Although the Proposed Professionals consented to having the Document sealed as a compromise, they did not waive their objection to AlixPartners's designation of it, and in no way consented to sealing Mr. Crawford's testimony about it, as the motion bears out. *Id.* at 6.

AlixPartners further suggests that the Proposed Professionals' protection of their own confidential information shows a double standard. *See* Opp. Br. 5 ("When McKinsey's own sensitive materials were used in the proceeding, it argued vociferously to protect **its** information from public disclosure." (emphasis original)). This argument borders on the specious: the information at issue in the colloquy cited by AlixPartners was a spreadsheet containing "all client engagements for McKinsey worldwide during the two-year, look-back period"—in other words, every client McKinsey has served since 2016, including ones it currently serves. Dkt. 2791, 2/6/20 P.M. Tr. 53:5–9. Unlike the rejected strategy in the Document, confidential client lists are the quintessential type of confidential information that courts regularly protect as trade secrets. *E.g.*, *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 625 (S.D. Tex. 2011) ("[C]ustomer lists may be protected as trade secrets.").

AlixPartners's suggestion that the Proposed Professionals scrubbed the videotaped deposition of Dominic Barton of confidential information is similarly wrong. Opp. Br. 5. Although

14

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

the Proposed Professionals had produced certain documents in discovery with confidentiality designations under the Amended Protective Order, such as Mr. Barton's handwritten notes from the relevant time period, they did not stand on those designations at trial.  *See* Dkt. 2868, 2/28/20 A.M. Tr. 6:22 (admitting MBX-171); Dkt. 2869, 2/28/20 P.M. Tr. 17:23 (admitting PPX-118, PPX-119). And Mr. Barton's videotaped deposition testimony about those documents was played in open court in full without any restrictions.  *See* Dkt. 2857, 2/27/20 A.M. Tr. 104:23–24 (playing Barton deposition testimony); Dkt. 2867, 2/27/20 P.M. Tr. 7:12–15 (same); Ex. A (1/31/20 Email from J. Odom designating Barton transcript "Confidential" in its entirety).  This only underscores the unreasonableness of AlixPartners's position.

**CONTAINS OUTSIDE COUNSEL EYES ONLY MATERIAL**

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Proposed Professionals' opening brief, the Court should grant the Proposed Professionals' motion and deny AlixPartners's cross-motion for a protective order.

Dated: April 23, 2020
       Houston, Texas

Respectfully submitted,

ZACK A. CLEMENT PLLC

By: */s/ Faith E. Gay*
Faith E. Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Maria Ginzburg (*pro hac vice*)
David S. Flugman (*pro hac vice*)
Joshua S. Margolin (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 390-9000
E-mail: fgay@selendygay.com
jselendy@selendygay.com
mginzburg@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com

Zack A. Clement
ZACK A. CLEMENT PLLC
3753 Drummond Street
Houston, Texas 77025
Telephone: (832) 274-7629
E-mail: zack.clement@icloud.com

*Attorneys for McKinsey Recovery and Transformation Services U.S., LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2020, I caused the foregoing pleading to be filed with the Court and under seal and served by e-mail to the following addresses.

/s/  Zack A. Clement

*Addresses for E-Mail Service*

**AlixPartners LLP:**

Wesley R. Powell, wpowell@willkie.com
Stuart R. Lombardi, slombardi@willkie.com

**Mar-Bow Value Partners, LLC:**

Sean F. O'Shea, soshea@cwt.com
Michael E. Petrella, michael.petrella@cwt.com
Amanda L. Devereux, amanda.devereux@cwt.com
Alexander Owings, alex.owings@cwt.com
Steven Rhodes, rhodessw@comcast.net
Christopher R. Murray, chris@jmbllp.com

**U.S. Trustee:**

Henry Hobbs, henry.g.hobbs@usdoj.gov
Hugh M. Bernstein, hugh.m.bernstein@usdoj.gov
Diane Livingstone, diane.g.livingstone@usdoj.gov

**WLB Debtors:**

Gregory F. Pesce, gregory.pesce@kirkland.com
Susan D. Golden, susan.golden@kirkland.com