# Exhibit C

*IN RE: WESTMORELAND COAL COMPANY, et al.*

---

*FRED CRAWFORD*
*January 29, 2020*
*OUTSIDE COUNSEL EYES ONLY MATERIAL*

---



*Original File 298220.txt*
*Min-U-Script® with Word Index*

IN RE: WESTMORELAND COAL COMPANY OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020

Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF TEXAS
 3   HOUSTON DIVISION
     -------------------------------------x
 4   In re:
 5   WESTMORELAND COAL COMPANY, et al.,
 6                    Reorganized Debtors.
 7   Chapter 11
 8   Case No. 18-35672(DRJ)
     -------------------------------------x
 9
10      *** OUTSIDE COUNSEL EYES ONLY MATERIAL ***
11
12                   787 Seventh Avenue
                     New York, New York
13
                     January 29, 2020
14                   1:03 p.m.
15
16           Videotaped Deposition of
17   FRED CRAWFORD, before Kristi Cruz, a Notary
18   Public of the State of New York.
19
20
21
22
23        ELLEN GRAUER COURT REPORTING CO. LLC
            126 East 56th Street, Fifth Floor
24             New York, New York 10022
                    212-750-6434
25                  REF: 298220
```

Page 2

```
 1   A P P E A R A N C E S:
 2
 3   CADWALADER, WICKERSHAM & TAFT LLP
 4   Attorneys for Mar-Bow Value Partners, LLC
 5        200 Liberty Street
 6        New York, New York 10281
 7   BY:  TODD BLANCHE, ESQ.
 8        212.504.6000
 9        todd.blanche@cwt.com
10
11
12   DEBEVOISE & PLIMPTON LLP
13   Attorneys for McKinsey RTS
14        919 Third Avenue
15        New York, New York 10022
16   BY:  MONISOLA SALAAM, ESQ.
17        212.909.6000
18        msalaam@debevoise.com
19
20
21
22
23
24
25
```

Page 3

```
 1   A P P E A R A N C E S: (Cont'd)
 2
 3   SELENDY & GAY PLLC
 4   Attorneys for McKinsey RTS
 5        1290 Avenue of the Americas
 6        New York, New York 10104
 7   BY: MARIA GINZBURG, ESQ.
 8       JOSHUA MARGOLIN, ESQ.
 9       AMY MEMETZ, ESQ.
10       212.390.9000
11       mginzburg@selendygay.com
12
13
14   KIRKLAND & ELLIS LLP
15   Attorneys for WLB Debtors
16        609 Main Street
17        Houston, Texas 77002
18   BY: ALEXANDRA CARITIS, ESQ.
19       713.836.3531
20       alexandra.caritis@kirkland.com
21
22
23
24
25
```

Page 4

```
 1   A P P E A R A N C E S:  (Cont'd)
 2
 3   WILLKIE FARR & GALLAGHER LLP
 4   For AlixPartners and the Witness
 5        787 Seventh Avenue
 6        New York, New York 10019
 7   BY:  WESLEY R. POWELL, ESQ.
 8        JORDAN WALL, ESQ.
 9        212.728.8264
10        wpowell@willkie.com
11        jwall@willkie.com
12
13
14   ALSO PRESENT:
15        ADAM VENTURINI, Videographer
16        KATHRYN KOORENNY, AlixPartners
17
18
19
20
21
22
23
24
25
```

IN RE: WESTMORELAND COAL COMPANY, et al.

OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 5

```
1   ------------------- I N D E X -------------------
2   WITNESS               EXAMINATION BY          PAGE
3   FRED CRAWFORD         MS. GINZBURG               7
4
5
6
7   --------------- E X H I B I T S ---------------
8   CRAWFORD       DESCRIPTION              FOR I.D.
9   Exhibit 1      Subpoena                        8
10  Exhibit 2      E-mail chain, AlixPartners      19
11                 WH00000457
12  Exhibit 3      E-mail, AlixPartners WH455      21
13  Exhibit 4      Deposition transcript           30
14  Exhibit 5      Deposition transcript excerpt   36
15  Exhibit 6      AlixPartners Bates 1 through 20 49
16
17
18             (EXHIBITS TO BE PRODUCED)
19
20
21
```

Page 7

Page 8

```
22   Q.   Mr. Crawford, thank you for coming
23   in today.  Good afternoon.
24   A.   Good afternoon.
25   Q.   Do you understand that you're
```

```
1   appearing here today pursuant to a subpoena
2   that's been issued in connection with the
3   Westmoreland bankruptcy case that's pending in
4   Houston, Texas?
5   A.   Yes.
```

Page 6

IN RE: WESTMORELAND COAL COMPANY, et al.   HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 9

8    Q.   Do you understand that the case is
9 about McKinsey's retention as a professional
10 in the Westmoreland bankruptcy?
11    A.   Yes.
12    Q.   And are you aware that a company
13 called Mar-Bow has objected to McKinsey's
14 retention?
15    A.   Yes.
16    Q.   And are you aware that Mar-Bow is a
17 company that is controlled by Jay Alix?
18    A.   Yes.

Page 10

3    Q.   Okay.  Do you reside within
4 100 miles of Houston?
5    A.   No.
6    Q.   You reside in Connecticut, right?
7    A.   Yes.
8    Q.   Do you regularly do business in
9 Houston?
10    A.   No.
11    Q.   How often have you been in Houston,
12 if at all, in the last year for business?
13    A.   None.
14    Q.   Do you intend to testify at this
15 hearing?
16    A.   No.
20    Q.   And are you represented by counsel
21 here today?
22    A.   Yes.
23    Q.   Who is that?
24    A.   Wes, Willkie Farr.
25    Q.   Mr. Powell?

Page 11

1    A.   Yeah.
2    Q.   Did you discuss this deposition with
3 Jay Alix?
4    A.   No.
5    Q.   Did you meet with Mr. Alix's counsel
6 about this deposition?
7    A.   No.
8    Q.   Did you meet with any
9 representatives of Jay Alix in connection with
10 this deposition?
11    A.   No.
15    Q.   What did you do to prepare for this
16 deposition?
17    A.   I met with Wes and his colleagues
18 for two, two and a half hours a couple of days
19 ago.
20    Q.   Did you review any documents?
21    A.   Yes.
22    Q.   Did they refresh your recollection?
23    A.   Yeah.
24    Q.   Which ones?
25    A.   There was a two and a half page

Page 12

1 document that we went over, which was about
2 McKinsey.
3    Q.   Is that a document that's been
4 referred to as the competitive response
5 document?
6    A.   Yeah.

IN RE: WESTMORELAND COAL COMPANY, et al.  COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 13

25    Q.    Okay.  Mr. Crawford, you joined

Page 14

1    AlixPartners in 2003 or 2004, correct?
2    A.    Yes.

13    Q.    And then you became CEO in 2008; is
14   that correct?
15    A.    I think so.  I'm not sure, but
16   that's about right.
17    Q.    And your position as CEO ended in
18   2015?
19    A.    I believe it was 2016, but I'm not
20   sure.  I'm not certain of that.
21    Q.    Are you now a managing director in
22   AlixPartners' New York office?
23    A.    Yes.  I'm a senior vice chairman of
24   our firm, and I carry the designation managing
25   director.

Page 15

Page 16

IN RE: WESTMORELAND COAL COMPANY, et al.     OUTSIDE COUNSEL EYES ONLY MATERIAL     FRED CRAWFORD
January 29, 2020



**Page 17**

11    Q.   Okay.  During your tenure as CEO,
12  you also sat on the board of directors for
13  AlixPartners LLP, correct?
14    A.   I sat on the board of directors.  I
15  would need a little guidance.  I know we have
16  more than one legal entity, and I'm not
17  certain which part I was on the board of and
18  which I wasn't.  But I certainly sat on the
19  board of one of the entities.
20    Q.   Well, that was actually my next
21  question.  There's also a board of
22  AlixPartners Holdings.
23    A.   I'm not certain which.
24    Q.   Do you know what the distinction is
25  between the two boards?

**Page 18**

1    A.   No.
2    Q.   And today, are you on the board of
3  directors of either AlixPartners LLP or
4  AlixPartners Holdings?
5    A.   Yes.
6    Q.   And that's the same board you
7  continuously sat on?  You didn't switch boards
8  of different companies, you're just not sure
9  which one it is?
10    A.   Correct.
11    Q.   Jay Alix is also on the same board
12  on which you sit?
13    A.   Correct.
18    Q.   So taking you back to 2013, in 2013
19  you attended The Wall Street Journal's annual
20  CEO council meeting, correct?
21    A.   Correct.
22    Q.   And that was sometime in the fall of
23  2013, correct?
24    A.   Yes.
25    Q.   And that was held in Washington,

**Page 19**

1  D.C.?
2    A.   Yes.
3    Q.   You asked to meet with Dominick
4  Barton at that conference, correct?
5    A.   Correct.
6    Q.   Had you ever met with Mr. Barton
7  before that?
8    A.   No.
9    Q.   And you e-mailed Mr. Barton directly
10  to request that meeting, right?
11    A.   I don't recall.
12        MS. GINZBURG: I'm going mark our
13    next exhibit, Crawford 2.
17    Q.   Okay.  Mr. Crawford, so I've handed
18  you an e-mail chain, and if you turn to the
19  second page which is marked AlixPartners
20  WH00000457, do you see there's an e-mail there
21  from you to Dominick Barton dated November 15,
22  2013?  Do you see that?
23    A.   Yes.
24    Q.   Do you recognize this document?
25    A.   I recognize it as I'm reading it,

**Page 20**

1  yes.
5    Q.   And you see that it is an e-mail
6  where you're asking Mr. Dominick in the second
7  paragraph, "I was wondering if I might be able
8  to grab five minutes with you sometime during
9  the council."
10    A.   Yes.
11    Q.   So this was your e-mail to
12  Mr. Barton requesting a meeting at that Wall
13  Street Journal conference, correct?
14    A.   Yes.
15    Q.   And Mr. Barton responded to you, you
16  can just direct your attention above the line
17  on the same page, it says, "Dear Fred, thanks
18  so much for your message.  I would be very
19  keen to meet during the conference."  And it
20  goes on from there.
21    A.   Yes.
22    Q.   Other than exchanging these e-mails,
23  did you otherwise communicate with Mr. Barton
24  before this conference?
25    A.   Not that I recall.

IN RE: WESTMORELAND COAL COMPANY, et al. — ATTORNEYS' EYES ONLY MATERIAL
OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 21

1  Q.   And then before your meeting with
2  Mr. Barton at that conference, you spoke to
3  Jay Alix about meeting with Mr. Barton,
4  correct?
5  A.   Not that I recall.
6  Q.   We'll mark another document in a
7  second.
8        MS. GINZBURG: We'll mark this
9  Crawford 3.

13  Q.   Take a look at the document which is
14  marked AlixPartners WH455.  It's an e-mail
15  from Frederick Crawford to Jay Alix at the
16  Lakeview Capital Inc. e-mail address dated
17  November 18, 2013.
18        Do you recognize this e-mail?
19  A.   Yes.
20  Q.   You sent this e-mail to Mr. Alix,
21  correct?
22  A.   Yes.
23  Q.   It says, subject Barton, flag
24  follow-up, and the text says, "Jay, I am
25  meeting the CEO of McKinsey at The Wall Street

Page 22

1  Journal, WSJ, CEO conference and wanted to
2  pick your brain on messaging.  If you have a
3  chance to call, e-mail, or text your key
4  points in the next 12 hours, that would be
5  great.  He just confirmed the meeting."
6        You see that, correct?
7  A.   Yes.
8  Q.   Did you want to meet with Mr. Alix
9  to formulate a message for Mr. Barton at this
10  meeting?
11        MR. POWELL: Object to form.
12        Go ahead.
13  A.   Once Dominick confirmed the meeting,
14  I had my own agenda for it, but wanted to see
15  if Jay had anything he would want me to pass
16  along.

Page 23

16  Q.   Okay.  And you said you had your own
17  agenda for the meeting with Mr. Barton.  What
18  was that agenda?
19  A.   I was curious as a CEO and a
20  longtime competitor of McKinsey, I don't come
21  from the restructuring world, I come from the
22  management consulting and strategy consulting
23  world, I was really interested to see what
24  Dominick's perspective was or why McKinsey
25  would want to enter that marketplace.  I found

Page 24

1  it curious and interesting as a matter of both
2  competition and strategy.
3  Q.   And you say as a matter of
4  competition.  What does that mean?
5  A.   Historically, McKinsey had not been
6  in the restructuring market space as an
7  advisor or consultant, and it seemed odd to me
8  that they would want to participate in that
9  sector.
10  Q.   Why was it odd?
11  A.   It seemed to me, as a person who has
12  spent a lot of time on brand work and
13  branding, to be at odds with their excellent
14  reputation in the strategy and operational
15  consulting areas.
16  Q.   Why would it be at odds with their
17  reputation?
18  A.   The nature of the work is such that
19  it's very hard to not make enemies just
20  because of the nature of the work.
21  Q.   And when you say you make enemies, what
22  do you mean by that?
23  A.   Well, usually in a bankruptcy
24  situation there are winners and losers
25  financially, and it would be human nature if



**Page 25**

1  you lost, if you will, if you came out on the
2  short end of the financial stick to harbor bad
3  feelings and ill will towards those who had
4  been a part of the other side of that
5  transaction or that situation, and that seemed
6  to me, to be really at odds with McKinsey, who
7  I perceived as wanting to work with as many or
8  all companies if possible. So it just seemed
9  really unusual to me; very curious.

**Page 26**

11      Q.   And were you hoping to dissuade
12  Mr. Barton from continuing to grow his
13  presence in the bankruptcy space?
14      A.   I wouldn't say dissuade. I wanted
15  first to understand, and then based on what
16  Dominick shared with me, I might -- my goal
17  would have been to, one, learn the motivation
18  if he was willing to describe it, and then
19  two, give him any reactions on a CEO to CEO
20  basis.
21      Q.   Would you have been happy if
22  McKinsey pulled out of the restructuring
23  space?

25      A.   McKinsey's a great company, and

**Page 27**

1  having them as a competitor in any of our
2  spaces I viewed -- I view them as very good at
3  what they do and very smart, and I would -- I
4  certainly would have been happy if they had
5  chosen not to go into restructuring.
6      Q.   Other than what we've discussed
7  right now, did you have any other purpose
8  going into the meeting with Mr. Barton at the
9  Wall Street Journal conference?
10     A.   No.

**Page 28**

IN RE: WESTMORELAND COAL COMPANY, et al.

COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 29

Page 31

Page 30

Page 32

```
19    Q.   In that meeting with Mr. Barton, you
20    did not accuse McKinsey of unethical business
21    practices, correct?

23    A.   No.
24    Q.   And you have -- to be more specific,
25    you did not discuss unethical practices in
```

IN RE: WESTMORELAND COAL COMPANY, et al.   ATTORNEYS' EYES ONLY MATERIAL   FRED CRAWFORD
January 29, 2020



Page 33

```
1   connection with getting referrals in the
2   bankruptcy business, correct?
3       A.   No.
```

IN RE: WESTMORELAND COAL COMPANY, et al.
CONFIDENTIAL COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 37

Page 38

Page 39

Page 40

```
 6    Q.   Did you tell Mr. Alix that you told
 7    Mr. Barton that McKinsey might be involved in
 8    unethical or improper behavior?
 9    A.   I don't recall that.
```

```
17    Q.   So then it's fair to say you don't
18    recall giving Mr. Alix information that would
19    suggest McKinsey engages in unethical
20    practices with respect to referrals?
21    A.   I don't recall that.
```

```
24    Q.   Did you at the time have information
25    to suggest that McKinsey engages in unethical
```

IN RE: WESTMORELAND COAL COMPANY, et al.     OUTSIDE COUNSEL EYES ONLY MATERIAL     FRED CRAWFORD
January 29, 2020

Page 41

1   practices with respect to referrals?
2   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
3      A.   I didn't have specific information,
4   but I can tell you at that time, there were a
5   lot of rumors in the marketplace floating
6   around about that.
7      Q.   And what were the rumors?
8      A.   That McKinsey was trading access to
9   executives for leads in bankruptcy in
10   turnaround situations.
11      Q.   From whom did you hear the rumors?
12      A.   I don't know.  It was a widespread
13   rumor bouncing around the industry, and
14   candidly, I don't pay attention to a lot of
15   rumors.  There's always chatter in our
16   business and, you know, I was running the
17   company, had a lot of areas of our business
18   were growing rapidly, and I found it
19   interesting, but not noteworthy.
20      Q.   So let me back up.  When you say
21   trading access to executives for leads in
22   turnaround situations, what do you mean?
23      A.   The rumor was that McKinsey would
24   offer people who could provide them with leads
25   for bankruptcy work access to senior

Page 42

1   executives that that person would not have
2   otherwise had.
3      Q.   And would that be an exclusive
4   arrangement?
5      A.   I don't know. ▆▆▆▆▆▆▆▆▆▆▆
6   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
7   ▆▆
8      Q.   And you said you didn't know who you
9   heard the rumor from; is that right?
10      A.   Yeah.  I mean, it was a broad-based
11   rumor in the marketplace.
12      Q.   When you say broad-based in the
13   marketplace, what does that mean?
14      A.   Lots of people were talking about
15   it.
16      Q.   What people?  What kind of people?
17      A.   I don't know.
18      Q.   Were they lawyers?
19      A.   I don't know.
20      Q.   Were they bankers?
21      A.   I don't know.
22      Q.   Can you name a person?
23      A.   No.
24      Q.   Can you name a law firm?
25      A.   No.

Page 43

1      Q.   Did you hear it from Skadden?
2      A.   I don't know.
3      Q.   Kirkland & Ellis?
4      A.   I don't know.
5      Q.   Did you speak to anyone about these
6   rumors?
7      A.   No.
8      Q.   And I think you said you found it
9   interesting, but not noteworthy.  Not
10   noteworthy because there was no specific
11   information?
12   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
13      A.   Not noteworthy because it, in my
14   position and with my range of
15   responsibilities, it was not something that
16   was, in my view, something I wanted to spend a
17   lot of time on, if any.
18      Q.   So is it fair to say that these were
19   rumors that you could not substantiate?
20      A.   Yes.
21      Q.   And you do not -- and you did not
22   discuss these rumors with Mr. Alix?
23      A.   Not that I recall.
24      Q.   So you said you don't recall
25   discussing these with anyone.  Is it fair to

Page 44

1   say, then, no one at AlixPartners asked you to
2   look into these rumors in particular?
3   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
4      A.   Not that I recall.
5      Q.   And did you investigate or follow up
6   on these rumors?
7      A.   Not that I recall.
8      Q.   Since that time, have you followed
9   up or investigated these rumors?
10      A.   Not that I recall.
11      Q.   And had you --
12      A.   Not that I know of, I should say.
13   Sorry.
14      Q.   And since that time, since 2013,
15   have you spoken to Mr. Alix about McKinsey's
16   referral practices?
17      A.   Not that I know of.
18      Q.   And you would agree that accusing a
19   competitor of unethical conduct is a serious
20   accusation?
21      A.   Yes.
22   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
23   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
24   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
25   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆



**Page 45**

24    Q.   Did you participate in any board
25    discussions at that time where Mr. Alix

**Page 46**

1     discussed unethical referral practices by
2     McKinsey?
4     A.   I don't recall.
5     Q.   Did you participate in any board
6     discussions at that time where Mr. Alix
7     discussed McKinsey's disclosure practices?
9     A.   I don't recall.
10    Q.   Have you ever participated in any
11    board discussions concerning McKinsey's
12    disclosure practices?
13    A.   I don't recall.
14    Q.   Have you ever participated in any
15    board discussions concerning McKinsey's
16    referral practices?
18    A.   I don't recall.

**Page 47**

3     Q.   Mr. Crawford, did the AlixPartners
4     board of directors ask you to develop a
5     competitive response to McKinsey's entry into
6     the restructuring business?
7     A.   I don't recall that, but we did
8     develop it.  So whether -- I'm not certain
9     whether it was the board or the management
10    team that initiated it, but we certainly did
11    develop it.
12    Q.   And what is the management team
13    versus the board?
14    A.   The management team in this context
15    would be the people that reported directly to
16    me at the firm.

**Page 48**

2     Q.   Okay.  And was the competitive
3     response that was developed, was it a response
4     to the number of employees McKinsey was
5     recruiting from AlixPartners?
7     A.   That is not my memory of it.
8     Q.   Was it a response to McKinsey's
9     developing a presence in the Chapter 11
10    restructuring business?
11    A.   Yes.
12    Q.   And what was the purpose of
13    developing the response?
14    A.   We would, as a matter of regular
15    business, develop reports on our key
16    competitors as a mechanism for making sure
17    that we understood what they were doing in the
18    marketplace, how we were doing against them,
19    and how we could compete most effectively
20    against them in the marketplace.

IN RE: WESTMORELAND COAL COMPANY, et al.   OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 49

3      MS. GINZBURG: I'm going to mark a
4  document.  This is Crawford 6.  And you'll
5  see it's a document produced by
6  AlixPartners Bates stamped 1 through 19.
7  It has a lot of redactions -- 1 through
8  20.

19      Q.   So the document has a lot of
20  redactions, except for pages 9, 10, and 15.
21  So if you can take a look at that.  Do you
22  recognize this document?
23      A.   I recognize it from seeing it a
24  couple of days ago.
25      Q.   In preparation for your deposition?

Page 50

1      A.   Correct.
2      Q.   Is this what we've been referring to
3  as the competitive response document?

6      A.   It looks like it.  I say that
7  because of the level of redaction.  But it
8  looks like it.
9      Q.   And this is the document that
10  refreshed your recollection about the
11  competitive response that you testified to at
12  the beginning?
13      A.   Correct.

Page 51

6      Q.   Did you work on the preparation of
7  this document?
8      A.   I don't know.
9      Q.   You did see it at the time it was
10  prepared, though, correct?
11      A.   Correct.

22      Q.   What was the purpose of this
23  document?
24      A.   From what I see in looking it over,
25  I would believe that it would be the standard

Page 52

1  document, if you will, that we would create
2  when we see a competitor emerging or
3  strengthening in the marketplace so that we
4  can, one, understand what they're doing or
5  have done; two, how they're competing with us
6  so that we can then formulate our strategy for
7  competing against them in the marketplace
8  effectively.



Page 53

Page 55

16   Q.   Do you recall any conversations that
17  you had about the preparation of this document
18  before it was created?
19   A.   No.
20   Q.   So you don't recall any
21  conversations with Jay Alix about the
22  preparation of the document?
23   A.   No.

Page 54

Page 56

19   Q.   Do you recall any conversations
20  about McKinsey's prebankruptcy work stemming
21  from this document?
22   A.   No.
23   Q.   Do you recall board conversations
24  about slide 9?
25   A.   No.





COUNSEL EYES ONLY MATERIAL   FRED CRAWFORD
January 29, 2020



Page 65

```
 5    Q.   Was there a concern that McKinsey
 6  was getting referrals from law firms and
 7  financial advisors that would otherwise go to
 8  AlixPartners?
10    A.   I would say there was a growing
11  concern that McKinsey was becoming active in
12  the turnaround and restructuring space, and as
13  a large and strong competitor, we wanted to
14  understand what cases they were winning and
15  how they were winning them.
16    Q.   When you say how they were winning
17  them, is one way to win a case to be referred
18  by another practitioner in the space?
19    A.   It wouldn't be a way to win the
20  case, but it would be a way to have an
21  opportunity to compete for the case.
22    Q.   It would provide an introduction?
23    A.   Correct.
24    Q.   And so was it relevant to identify
25  the financial advisors and counsel involved
```

Page 66

```
 1  because AlixPartners worked with the same
 2  counsel and hoped to get introductions from
 3  those firms?
 5    A.   It would be relevant because we
 6  would want to know what law firms and what
 7  banks were getting the opportunities, because
 8  in that way, with that knowledge, we know who
 9  we should be spending time with in order to
10  try to get referrals.
18    Q.   Is there anything in this slide that
19  addresses an allegation of unethical referral
20  practices at McKinsey?
22    A.   No.
23    Q.   Is there anything in this slide that
24  addresses a concern that McKinsey was
25  recruiting personnel from AlixPartners?
```

Page 67

```
 2    A.   Slide 10?
 3    Q.   Slide 10.
 4    A.   No.
 5    Q.   Is there anything in this slide that
 6  addresses McKinsey's bankruptcy disclosures?
 7    A.   No.
 8    Q.   At the bottom of the slide, it says,
 9  "Information sourced from bankruptcy filings."
10  Do you see that under "notes"?
11    A.   Yes.
12    Q.   Is the information on this slide
13  based on public sources?
14    A.   I believe so.
15    Q.   Do you recall any conversations
16  about this slide at the AlixPartners board?
17    A.   No.
18    Q.   Do you recall any conversations
19  about this slide with Jay Alix?
20    A.   No.
21    Q.   Do you recall any conversations
22  about the -- you know, not the slide itself,
23  but the subject matter of the slide with the
24  AlixPartners board?
25    A.   No.
```

Page 68

```
 1    Q.   With Jay Alix?
 2    A.   No.
 3    Q.   Let's turn to slide 15.  So at the
 4  top of the slide, it says, "We recommend five
 5  responses."
 6         Is this slide one of the five
 7  competitive responses that were recommended?
 8    A.   Yes.
 9    Q.   And the top of the slide says, "Make
10  it public and painful."  Do you see that?
11    A.   Yes.
12    Q.   Does this refer to making the
13  restructuring business public and painful for
14  McKinsey?
16    A.   Yes.
17    Q.   And the first entry or the first
18  bullet point says, "Our best intelligence
19  suggests that McKinsey partners are still
20  divided about pursuing restructuring," right?
21    A.   Yes.
22    Q.   Does this slide refer to an internal
23  conflict about McKinsey partners about
24  entering the restructuring business?
```

IN RE: WESTMORELAND COAL COMPANY, et al. CONFIDENTIAL COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020

---

Page 69

1  A. I think you said this, but to
2  restate, I think it suggests that there are a
3  group of McKinsey partners that don't want to
4  see McKinsey in restructuring.
5  Q. And why is that?
6  ▮
7  A. My read of it is that they probably
8  felt the same way about it that I did when I
9  reached out to Dominick.
10  Q. And that's based on conversations
11  you've had with McKinsey partners or reading
12  this slide?
13  A. Reading this slide. I did not have
14  any conversations with McKinsey partners.
15  Q. Do you recall any conversations
16  about the topic in that first bullet about the
17  division among McKinsey partners?
18  Conversations at AlixPartners.
19  ▮
20  A. No, I don't recall.
21  Q. And then the second bullet says, "a
22  key reason they fear the publicity of working
23  in these cases and having the business be
24  visible."
25  Do you see that?

---

Page 70

1  A. Actually, "and of having the
2  business be visible," yes.
3  Q. Did this mean that McKinsey partners
4  would not want there to be public news
5  articles about their business?
6  ▮
7  A. I'm not certain.
8  Q. What's your understanding of that
9  bullet?
10  A. My understanding would be that, as I
11  mentioned earlier, you can't -- it's very
12  difficult, in my limited experience, to be
13  involved in a bankruptcy where there are
14  winners, financial winners and losers and not
15  create ill will, and that that could hurt
16  their ability to serve clients into the
17  future.
18  Q. Who are the financial winners in a
19  bankruptcy?
20  ▮
21  A. When I say winner, it would be
22  sometimes the creditors get a favorable
23  outcome, sometimes they have a less favorable
24  outcome, sometimes people in the finance
25  structure end up with control of the company,

---

Page 71

1  sometimes they get a limited settlement or no
2  settlement. So there are people who do, on a
3  relative basis, better or worse in these
4  cases.
5  Q. And how does that relate to a fear
6  of the cases having the business be visible?
7  ▮
8  A. And I'm reaching because I'm not
9  certain.
10  Q. When it refers to these cases having
11  the business be visible, is it referring to
12  the bankruptcy cases?
13  ▮
14  A. I think so, but I'm not certain.
15  I'm trying to interpret, as you are.
16  Q. The "they" in that sentence is
17  McKinsey; they fear the publicity of working
18  in these cases and having the business be
19  visible?
20  A. It appears that it's referring to
21  the partners, the McKinsey partners.
22  Q. So then the third bullet says, "So
23  we should make it as visible and painful as
24  possible." What's your understanding of that?
25  A. I'm not certain.

---

Page 72

1  Q. Is it referring to the fact that
2  there's a fear of publicity, a fear of
3  visibility in the second bullet, and so it's
4  responding to making bankruptcy as visible and
5  painful as possible?
6  ▮
7  A. I would share that interpretation,
8  but I'm not certain.
9  Q. Do you recall any conversations
10  about bullet 3, about making it as visible and
11  painful as possible?
12  A. No.
13  Q. So you don't recall any
14  conversations with the board?
15  A. No. This would be out of character
16  for me as our CEO to pursue a strategy like
17  this. I would be very surprised if we did.
18  It would be very uncharacteristic.
19  Q. So before we go there, let me just
20  ask, do you recall any conversations with Jay
21  Alix about making it painful and public as
22  possible?
23  A. No.
24  Q. And you said it would be
25  uncharacteristic for you as CEO to pursue a

---

IN RE: WESTMORELAND COAL COMPANY, et al.                    FRED CRAWFORD
                                                            January 29, 2020

Page 73

1  strategy like this.  Was this strategy
2  adopted?
3      A.   Not to my knowledge.
4      Q.   Do you recall whether the board
5  voted on the strategy?
6      A.   No.
7      Q.   If there was a vote, would it be --
8      A.   Sorry.  To be clear, no, I don't
9  recall.
10     Q.   You don't recall, right.  This
11 presentation was made to the board, correct?
12     A.   Yes.

Page 74

17     Q.   For a competitive strategy such as
18 this, who would have the final decision?

20     A.   To my recollection, it would be me.
21     Q.   And you don't recall whether you
22 accepted this strategy or not?
23     A.   I don't recall, but I want to
24 reiterate it would be very uncharacteristic
25 for me to pursue this strategy.

Page 75

Page 76

17     Q.   So I think we stopped at the third
18 bullet.  The fourth bullet, potential
19 elements, it says social -- "- social media
20 campaign to highlight the work, especially
21 negative elements."
22          Was the proposal to create a social
23 media strategy to highlight negative elements
24 of McKinsey's restructuring work?
25     A.   I don't know.



Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 22 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.   FRED CRAWFORD
OUTSIDE COUNSEL EYES ONLY MATERIAL   January 29, 2020



Page 77

1  Q.   How do you read that bullet?
2  A.   To be -- to be as clear as I can be,
3  it is written in a very -- at least to me, in
4  a very unclear way.  So I don't know.
5  Q.   So media means posting on internet
6  sites?
7  A.   Yeah.  I mean, to be specific why
8  I'm unclear, I don't -- when it says
9  especially any negative elements, I don't know
10 what that is referring to.  Like we know what
11 a social media -- I think we can all agree
12 that we know what a social media campaign
13 would be, but I don't know what it is
14 referring to when it says especially any
15 negative elements.  I'm not certain what that
16 was referring to.
17 Q.   Did that relate in any way to
18 McKinsey's disclosure practices?
   ████████████████████████████████
20 A.   No.
21 Q.   Did it relate in any way to
22 McKinsey's referral practices?
23 A.   No.
   ████████████████████████████████
   ████████████████████████████████

Page 78

   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████████
17 Q.   The next bullet, "Planting stories
18 with both local and national media regarding
19 McKinsey's roles in restructuring cases," why
20 would it be public and painful to plant
21 stories about McKinsey's roles in
22 restructuring cases?
   ███████████████████████████████
24 A.   Two thoughts on that.
25      Referring back to our conversation a

Page 79

1  few minutes ago, I really do think that being
2  in restructuring is counter, as we've talked
3  about, is counter to the McKinsey brand
4  position, and I also believe that there are a
5  lot of McKinsey partners that feel that same
6  way.
7      And so I think what this is
8  referring to is given those two things, those
9  two beliefs, to the extent that their role in
10 restructuring cases is being read about and
11 heard about, etcetera, in the media, that
12 would feed that negative feeling that the
13 McKinsey partners have.
14 Q.   Does this goes to the second bullet,
15 the fear of publicity of working on the cases?
   ████████████████████████████████
17 Q.   Planting stories would be public and
18 painful because there was a fear of publicity
19 about the cases?
20 A.   That's how I'm interpreting that
21 point.  But I do want to mention, reiterate,
22 this would be highly unlikely that I would
23 have -- it is highly unlikely that this would
24 have happened while I was CEO.
25 Q.   Do you recall any steps taken after

Page 80

1  this presentation to engage a public relations
2  firm to cause publicity about McKinsey?
3  A.   No.
4  Q.   Does anything on this slide have to
5  do with McKinsey hiring personnel from
6  AlixPartners?
   ████████████████████████████████
8  A.   No.
9  Q.   Does it relate to McKinsey's
10 disclosure practices?
   ████████████████████████████████
12 A.   No.
13 Q.   Does it relate to McKinsey's
14 referral practices?
   ████████████████████████████████
16 A.   No.
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████

IN RE: WESTMORELAND COAL COMPANY, et al. COMPANY COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020



Page 81

Page 83

```
14      Q.   Did you have any discussions with
15   the board about Mar-Bow's pursuit of media
16   concerning McKinsey's disclosure practices?
17      A.   No.
```

Page 82

Page 84

```
13      Q.   Does AlixPartners follow the
14   strategy on page 15 as it competes with
15   McKinsey?
16      A.   No.
```

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 24 of 36

IN RE: WESTMORELAND COAL COMPANY, et al.    CONFIDENTIAL - COUNSEL EYES ONLY MATERIAL    FRED CRAWFORD
January 29, 2020



Page 86

11    Q.   Has Mr. Alix ever told you that he's
12    pursuing his own media campaign against
13    McKinsey?
14    A.   No.
15    Q.   Have you had discussions at the
16    board level about news articles concerning the
17    litigation between Mr. Alix and McKinsey?
18    A.   I don't recall.  One thing you
19    probably are aware of, our firm is not a -- we
20    try to keep this out of our line of sight.
21    Q.   And how so?
22    A.   We just try to get up every day and
23    go serve our clients and compete and grow the
24    firm.

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 25 of 36

IN RE: WESTMORELAND COAL COMPANY, et al.   OUTSIDE COUNSEL EYES ONLY MATERIAL   FRED CRAWFORD
January 29, 2020



Page 89

15    Q.   Mr. Crawford, have you discussed the
16   Westmoreland litigation with Jay Alix?
17    A.   No.

Page 91

1    A.   No.

Page 90

22    Q.   Have you had communications with Jay
23   Alix or any of his representatives concerning
24   providing resources to Mr. Alix or Mar-Bow for
25   his litigation against McKinsey?

Page 92

IN RE: WESTMORELAND COAL COMPANY, et al. CONFIDENTIAL COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020

Page 93

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 95

```
1                    C E R T I F I C A T E

2

3    STATE OF NEW YORK      )

4                           ) SS.:

5    COUNTY OF SUFFOLK      )

6

7            I, KRISTI CRUZ, a Notary Public

8    within and for the State of New York, do hereby

9    certify:

10            That FRED CRAWFORD, the witness

11   whose deposition is hereinbefore set forth, was

12   duly sworn by me and that such deposition is a

13   true record of the testimony given by such

14   witness.

15            I further certify that I am not

16   related to any of the parties to this action by

17   blood or marriage; and that I am in no way

18   interested in the outcome of this matter.

19            IN WITNESS WHEREOF, I have hereunto

20   set my hand this 29th day of January 2020.

21

22

23

24   _____

25   KRISTI CRUZ
```

Page 94

```
1         A C K N O W L E D G M E N T

2

3    STATE OF NEW YORK   )

4                 :SS

5    COUNTY OF        )

6

7         I, FRED CRAWFORD, hereby certify

8    that I have read the transcript of my

9    testimony taken under oath in my deposition of

10   January 29, 2020; that the transcript is a

11   true, complete and correct record of my

12   testimony, and that the answers on the record

13   as given by me are true and correct.

14

15

16         _____

17              FRED CRAWFORD

18

19

20   Signed and subscribed to before

21   me, this         day

22   of            , 2020.

23

24   _____

25   Notary Public, State of New York
```

Page 96

```
1            ***ERRATA SHEET***

2        ELLEN GRAUER COURT REPORTING CO. LLC
         126 East 56th Street, Fifth Floor
3           New York, New York 10022
              212-750-6434
4
5    NAME OF CASE:  IN RE WESTMORELAND
     DATE OF DEPOSITION:  JANUARY 29, 2020
6    NAME OF WITNESS:  FRED CRAWFORD
7    PAGE  LINE      FROM        TO        REASON
     ___|____|_____|_____|_____
8    ___|____|_____|_____|_____
9    ___|____|_____|_____|_____
10   ___|____|_____|_____|_____
11   ___|____|_____|_____|_____
12   ___|____|_____|_____|_____
13   ___|____|_____|_____|_____
14   ___|____|_____|_____|_____
15   ___|____|_____|_____|_____
16   ___|____|_____|_____|_____
17   ___|____|_____|_____|_____
18   ___|____|_____|_____|_____
19
20           _____
21   Subscribed and Sworn before me
22   this _____ day of _____, 2020.
23
24   _____        _____
25   Notary Public            My Commission Expires:
```

IN RE: WESTMORELAND COAL COMPANY, et al. — CONFIDENTIAL COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD<br>January 29, 2020

---

## $

**$888,000 (1)**
58:1

## A

**ability (1)**
70:16
**able (2)**
20:7;82:25
**above (1)**
20:16
**absolutely (2)**
74:3,3
**accepted (1)**
74:22
**access (3)**
41:8,21,25
**accurate (1)**
31:2
**accusation (1)**
44:20
**accuse (1)**
32:20
**accusing (1)**
44:18
**achieved (1)**
26:3
**act (1)**
74:5
**active (1)**
65:11
**activities (4)**
81:23;82:12,16,23
**actual (1)**
27:22
**actually (6)**
8:14;17:20;38:3;
54:17;70:1;82:21
**Adam (1)**
6:9
**address (1)**
21:16;66:11
**addresses (3)**
66:19,24;67:6
**administrative (1)**
47:21
**adopted (1)**
73:2
**advance (2)**
23:1;27:22
**advantage (1)**
56:14
**advisor (2)**
24:7;64:18
**advisors (6)**
64:14,14;65:2,3,7,25
**affairs (1)**
57:17
**affiliate (1)**
58:2

**afternoon (2)**
7:23,24
**again (6)**
17:7;47:23;58:21;
61:24;75:17;91:16
**against (12)**
48:18,20;52:7;84:22;
86:12;89:22;90:3,25;
91:12,21;92:14,19
**agenda (3)**
22:14;23:17,18
**ago (4)**
11:19;49:24;57:7;
79:1
**agree (2)**
44:18;77:11
**agreement (5)**
88:23;91:3,10,19;
92:4
**ahead (4)**
15:24;22:12;25:14;
81:15
**ALEXANDRA (2)**
3:18;7:1
alexandracaritis@kirklandcom (1)
3:20
**Alix (62)**
9:17,19;11:3,9;
18:11;21:3,15,20;22:8;
23:7;27:18,21;33:23;
34:15;35:16,24;37:4,
14;38:17;39:2,6,16,21;
40:6,10,15,18;43:22;
44:15;45:17,25;46:6;
51:12;55:21;67:19;
68:1;72:21;81:1,10,18;
82:5;83:3,10;86:11,17;
87:13,18;89:16;90:4,
10,14,17,20,23,24;
91:3,9,11,18,20;92:11,
17
**AlixPartners (44)**
7:6,19;14:1;17:13,
22;18:3,4;19:15,19;
21:11,14;28:7,25;29:4,
5;30:13,15;39:8,18;
44:1;45:5;47:3;48:5;
49:6,9;58:9;60:10,15,
16;64:22;65:3,8;66:1,
25;67:16,24;69:18;
80:6;83:4;84:13;85:4;
90:9;91:2,21
**AlixPartners' (3)**
14:22;45:18;84:10
**Alix's (11)**
11:5;12:18;28:21;
29:7,14;36:10;37:1;
88:4,24;89:21;90:2
**allegation (1)**
66:19
**along (2)**
22:16,18
**aloud (1)**

35:6
**always (2)**
41:15;73:14
**Americas (1)**
3:5
**AMF (2)**
57:2;63:25
**among (1)**
69:17
**AMR (5)**
57:2,14;58:1,17;64:1
**AMY (2)**
3:9;6:20
**annual (1)**
18:19
**appear (2)**
61:9,18
**appearances (1)**
6:17
**appearing (2)**
8:1,20
**appears (6)**
34:17;35:20;56:5;
58:25;61:16;71:20
**application (3)**
60:22,24;61:2
**applications (1)**
61:3
**appropriate (1)**
82:25
**approximately (2)**
50:17;55:8
**approximating (1)**
47:23
**areas (3)**
15:12;24:15;41:17
**around (3)**
41:6,13;74:4
**arrangement (1)**
42:4
**article (1)**
88:19
**articles (3)**
70:5;86:16;88:25
**aside (1)**
27:14
**assess (2)**
58:5;63:4
**assignment (1)**
62:12
**assignments (6)**
15:14,19;58:6;60:11;
62:20;63:22
**assume (1)**
88:6
**attend (4)**
73:21;83:23;84:19;
85:4;87:11
**attended (2)**
18:19;85:7
**attention (4)**
20:16;34:1,12;41:14
**Attorneys (2)**

3:4,15
**audible (1)**
13:21
**audibly (1)**
13:5
**August (1)**
37:6
**authority (1)**
74:12
**authorized (2)**
45:18;81:8
**available (1)**
61:18
**Avenue (1)**
3:5
**aware (21)**
8:18,23;9:12,16,24;
18:16;33:20;73:16;
81:1,18,21,22,25;
82:11,14,17;83:5,9;
84:12;86:19;87:13

## B

**back (18)**
18:18;29:13;30:5;
36:6,17;37:17;41:20;
47:1;54:13,17,25;76:9,
12;78:25;84:19,24;
88:22;89:13
**background (2)**
16:11,17
**bad (1)**
25:2
**bankers (1)**
42:20
**bankruptcies (2)**
58:11;64:3
**Bankruptcy (29)**
6:5;8:3;9:1,10;
12:21;24:23;26:6,13;
33:2;41:9,25;56:16;
57:4;59:5,7,9,10,12,21;
60:7;61:14,23;62:2;
67:6,9;70:13,19;71:12;
72:4
**bankruptcy-related (1)**
62:18
**banks (1)**
66:7
**Barton (40)**
19:4,6,9,21;20:12,15,
23;21:2,3,23;22:9;
23:1,17;26:12;27:8,12,
14,21;29:20;31:15;
32:19;33:7,15,22;
34:16;35:17,25;37:15;
38:18,19;39:7,9,17,22;
40:7;50:24;87:14,19,
22;88:5
**based (5)**
26:15;50:18;63:21;
67:13;69:10

**Basic (1)**
16:11,16;92:15
**basically (1)**
34:4
**basis (6)**
26:20;59:3,17,21,25;
71:3
**Bates (3)**
30:12;49:6,10
**became (6)**
14:9,11,13;81:21,22;
82:11
**become (6)**
57:15;81:1,18,25;
82:14,17
**becoming (1)**
65:11
**began (1)**
14:5
**begin (2)**
37:24,25
**beginning (1)**
50:12
**begins (1)**
38:13
**behalf (1)**
9:19
**behavior (1)**
40:8
**beliefs (1)**
79:9
**Berger (4)**
85:16,24;86:1,4
**best (5)**
13:11;28:10,13;
31:16;68:18
**better (1)**
71:3
**big (1)**
63:21
**bit (5)**
16:19;34:9;37:20;
54:17;88:21
**Blanche (3)**
7:3,3;92:25
**board (52)**
17:12,14,17,19,21;
18:2,6,11,14,15;25:21;
28:7,24;29:3,5;45:18;
21,24;46:5,11,15;47:4,
9,13,25;48:1;56:23;
67:16,24;72:14;73:4,
11,13,17,20,24;74:5,
11,15;75:9,24;76:2,11;
80:19,23;83:4,15,19,
23;86:16;87:2,3
**boards (3)**
17:25;18:7;26:5
**board's (1)**
74:4
**Bob (8)**
28:3,4,6,17,18,20,23;
86:25

---

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 28 of 36

IN RE: WESTMORELAND COAL COMPANY, et al.     CONFIDENTIAL - COUNSEL EYES ONLY MATERIAL     FRED CRAWFORD
January 29, 2020

**Bob's (1)**
87:2
**both (2)**
24:1;78:18
**bottom (5)**
35:13;38:3,10;60:21;
67:8
**bouncing (1)**
41:13
**Bowling (1)**
57:2
**boxes (4)**
57:1,12;59:3;62:11
**brain (3)**
22:2;28:9;29:14
**brand (10)**
24:12;25:12,19,23,
24;26:1,3;39:24;40:2;
79:3
**branding (1)**
24:13
**break (6)**
13:14,16,17;46:20,
20;89:7
**bring (1)**
30:4
**broad-based (2)**
42:10,12
**building (1)**
53:25
**bull (1)**
40:11
**bullet (21)**
57:13,24;58:21;
59:18;62:10,17;64:2;
68:18;69:16,21;70:9;
71:22;72:3,10;76:18,
18;77:1,25;78:12,17;
79:14
**business (26)**
10:8,12;29:21,25;
31:24;32:3,20;33:2;
39:23;40:4;41:16,17;
47:6,20;48:10,15;
57:16;68:13,24;69:23;
70:2,5;71:6,11,18;
84:11

**C**

**Cadwalader (1)**
7:4
**call (3)**
22:3;23:6;31:20
**called (4)**
7:13;9:13;81:2,19
**calling (1)**
23:11
**came (1)**
25:1
**campaign (3)**
76:20;77:12;86:12
**can (30)**

13:11,14;15:24;
16:12;20:16;23:15;
27:25;30:11;31:13,16;
32:17;35:1;41:4;42:22,
24;46:19;49:21;50:5;
52:4,6;54:25;56:2;
61:10,24;66:14;77:2,
11;81:5;85:2;89:6
**candidly (1)**
41:14
**Capital (4)**
21:16;29:11;82:20;
91:20
**career (1)**
54:7
**CARITAS (3)**
3:18;7:1,1
**carry (1)**
14:24
**Case (25)**
6:3;8:3,21,24;9:2,4,
7,8;12:11,21;30:15;
31:7;36:17;37:5;45:5,
11,14,19,22;59:16;
63:25;64:1;65:17,20,
21
**cases (18)**
57:4;59:9;62:25;
63:9,13;64:1;65:14;
69:23;71:4,6,10,12,18;
78:19,22;79:10,15,19
**cause (1)**
80:2
**CEO (14)**
14:13,17;16:1;17:11;
18:20;21:25;22:1;
23:19;26:19,19;72:16,
25;73:19;79:24
**CEOs (2)**
25:21;26:5
**certain (22)**
14:20;17:17,23;47:8;
48:25;50:16;52:22;
55:11;57:11;59:1;
61:19;70:7;71:9,14,25;
72:8;76:7;77:15;78:6,
8,16;82:2
**certainly (10)**
15:11;17:18;27:4;
30:19;34:17;35:19;
47:10;81:21;85:21,23
**certify (1)**
94:7
**chain (2)**
19:14,18
**chairman (1)**
14:23
**chance (2)**
22:3;23:5
**changed (1)**
58:3
**Chapter (3)**
16:21;48:9;59:9

**character (1)**
72:15
**characteristics (1)**
75:18
**characterize (1)**
63:24
**chatter (1)**
41:15
**China (1)**
40:11
**chosen (1)**
27:5
**City (1)**
85:7
**clarification (2)**
13:10;78:7
**clear (5)**
35:5;36:24;73:8;
77:2;84:17
**clients (2)**
70:16;86:23
**Co (1)**
6:3
**Coal (1)**
6:3
**Code (6)**
59:5,7,9,10,12,21
**co-head (3)**
14:9,11;54:11
**colleagues (1)**
11:17
**collective (1)**
74:11
**coming (1)**
7:22
**commencement (1)**
59:15
**committee (9)**
55:1,5,7;83:7;84:20;
85:8;87:8,9,12
**common (6)**
91:3,10,19;92:4,7,18
**communicate (1)**
20:23
**communicated (1)**
23:8
**communication (1)**
23:9
**communications (2)**
90:22;92:11
**companies (8)**
16:23;17:2,8;18:8;
25:8;29:7;56:16;62:7
**company (12)**
6:10,14;9:12,17;
16:1;26:25;41:17;
70:25;81:2,19;91:11,
14
**compete (3)**
48:19;65:21;86:23
**competency (2)**
53:24;54:5
**competes (1)**

84:14
**competing (2)**
52:5,7
**competition (2)**
24:2,4
**competitive (17)**
12:4;47:5;48:2,22;
50:3,11;51:13,16;
56:14;63:2;68:7;74:17;
75:12;76:4;84:21;
85:19;86:8
**competitor (8)**
23:20;27:1;44:19;
52:2;60:11;61:10;
65:13;86:1
**competitors (3)**
48:16;52:12,16
**complete (1)**
94:11
**completed (1)**
58:3
**concern (4)**
56:13;65:5,11;66:24
**concerning (12)**
46:11,15;63:12,15;
83:16;86:16;87:10;
90:23;91:10,19;92:12,
18
**concerns (1)**
91:24
**concluded (1)**
93:3
**conduct (1)**
44:19
**conference (8)**
19:4;20:13,19,24;
21:2;22:1;27:9,12
**confirm (2)**
49:12;50:21
**confirmed (2)**
22:5,13
**confirms (2)**
85:21,23
**conflict (1)**
68:23
**Connecticut (1)**
10:6
**connection (15)**
8:2,12,25;11:9;33:1;
45:4;58:10;60:2,5;
61:23;62:2,19;90:10,
17;91:4
**consensus (1)**
73:14
**consider (1)**
63:20
**consistent (2)**
52:15;86:5
**consists (1)**
36:11
**constitute (1)**
28:11
**consultant (1)**

24:7
**consulting (4)**
16:3;23:22,22;24:15
**Cont'd (1)**
3:1
**context (1)**
47:14
**continuing (2)**
26:12;62:5
**continuously (1)**
18:7
**control (2)**
18:14;70:25
**controlled (1)**
9:17
**controversy (3)**
29:25;32:3,12
**conversation (17)**
28:5;16;31:15,16,20;
33:11;34:15,18;35:16,
21,25;37:15;38:18;
39:12,14;77:25;78:25
**conversations (26)**
55:16,21;56:19,23;
61:21,25;67:15,18,21;
69:10,14,15,18;72:9,
14,20;74:4;78:9;81:10;
87:4,14,18,22;88:3,4,
10
**Corporation (2)**
57:2;58:17
**cost (1)**
57:18
**council (2)**
18:20;20:9
**Counsel (19)**
6:16;8:16;10:20;
11:5,12;12:24,25;
49:16;64:5,7,10,12;
65:25;66:2;88:7,8,11;
89:19;90:7
**counter (2)**
79:2,3
**COUNTY (1)**
94:5
**couple (3)**
11:18;39:4;49:24
**Court (6)**
6:5,11;7:10;13:6;
16:8,9
**cover (3)**
28:10,13;30:22
**Crawford (27)**
6:2;7:22;8:8,11;
10:18;13:25;19:13,14,
17;21:9,10,15;30:6,8,
14;36:18,19;37:10;
38:5;47:3;49:4,9;
54:14;84:24;89:15;
94:7,17
**create (2)**
29:24;32:2;52:1;
70:15;76:22

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 29 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.                    OUTSIDE COUNSEL EYES ONLY MATERIAL                    FRED CRAWFORD
January 29, 2020

**created (3)**
32:18;52:16;55:18
**creating (1)**
32:11
**creation (1)**
52:24
**creditors (1)**
70:22
**Cruz (1)**
6:12
**cultivating (1)**
26:3
**curiosity (1)**
29:20;31:23
**curious (5)**
23:19;24:1;25:9;
26:9,10

**D**

**date (14)**
8:10;19:16;21:12;
30:10,18,22;36:21;
49:11;51:1;58:4,15,23;
62:18;64:3
**dated (2)**
19:21;21:16
**David (1)**
57:3;63:24
**day (2)**
86:22;94:21
**days (2)**
11:18;49:24
**DC (1)**
19:1
**Dear (1)**
20:17
**Debevoise (1)**
6:25
**debriefed (2)**
34:17;35:20
**debt (1)**
57:17
**debtor (2)**
59:13,15
**Debtors (6)**
3:15;7:2;57:15;
60:24;64:11,15
**debtor's (1)**
57:16
**decision (10)**
73:24;74:7,9,11,14,
16,18;75:2,5,18
**decisions (2)**
73:13;75:14
**deck (1)**
51:4
**deep (1)**
16:13
**definition (1)**
92:13
**Delaware (8)**
30:6;36:7,17;37:5,9,

13;44:24;45:6
**deliver (1)**
62:6
**delivered (2)**
25:20;26:5
**depend (3)**
74:13;75:10,17
**deposed (2)**
10:17;30:20
**deposition (29)**
6:2,6;8:13;11:2,6,10,
13,16;12:10,14,18,23;
30:5,8,15;31:6,10;
32:7;36:7,10,19;37:2,4,
9,14;45:3;49:25;54:14;
94:9
**depositions (1)**
12:20
**derailed (1)**
81:17
**describe (4)**
17:6;26:18;55:25;
56:6
**described (1)**
31:22
**describes (1)**
56:3
**designation (1)**
14:24
**detail (1)**
9:3
**determine (1)**
51:1
**develop (5)**
32:17;47:4,8,11;
48:15
**developed (2)**
48:3,22
**developing (2)**
48:9,13
**development (1)**
54:2
**dies (1)**
88:22
**different (3)**
18:8;25:22;38:9
**difficult (3)**
29:24;32:2;70:12
**direct (1)**
20:16
**direction (1)**
28:21
**directly (2)**
19:9;47:15
**director (3)**
14:5,21,25
**directors (4)**
17:12,14;18:3;47:4
**disagreement (1)**
88:24
**disclosed (1)**
63:21
**disclosure (13)**

46:7,12;77:18;80:10,
18;81:3,20;83:16,20;
87:23;88:12;89:23;
90:4
**disclosures (1)**
67:6
**discuss (10)**
8:17;11:2,13;22:21,
25;29:18;32:25;43:22;
45:18;74:6
**discussed (13)**
27:6;33:13;39:7;
46:1,7;84:2,4;85:19;
89:15,18,21;90:2,6
**discussing (6)**
39:13;43:25;50:19,
21;85:15;86:9
**discussion (4)**
55:1;76:3;90:14,19
**discussions (16)**
45:22,25;46:6,11,15;
59:24;60:4;80:17,21;
83:14,19;86:15;87:8;
91:8,17;92:16
**disqualified (4)**
59:11;60:6;61:22;
62:1
**dissuade (2)**
26:11,14
**distinction (1)**
17:24
**distress (3)**
16:24;17:3,9
**District (1)**
6:5
**divided (1)**
68:20
**division (1)**
69:17
**document (32)**
12:1,3,5;19:24;21:6,
13;30:4;34:2;36:6;
37:16;49:4,5,19,22;
50:3,9,15;51:7,23;52:1,
10,11,14,19;55:9,14,
17,22;56:21;80:19,23;
86:8
**documents (5)**
11:20;12:7;33:17;
49:2;52:15
**Dom (1)**
40:10
**Dominick (9)**
19:3,21;20:6;22:13;
26:16;27:16;34:18;
35:21;69:9
**Dominick's (1)**
23:24
**Donahue (4)**
52:25;54:19;55:10,
14
**Donahue's (2)**
53:3;54:9

46:7,12;77:18;80:10,
**done (1)**
52:5
**down (3)**
13:5;59:6;88:22
**draw (1)**
34:11
**duly (1)**
7:13
**During (4)**
17:11;20:8,19;73:19

**E**

**earlier (2)**
61:14;70:11
**Edison (2)**
57:3;63:25
**effect (1)**
75:15
**effectively (2)**
48:19;52:8
**either (1)**
18:3
**elaborate (2)**
57:20,22
**elaborates (1)**
59:8
**elements (5)**
76:19,21,23;77:9,15
**Ellen (2)**
6:9,13
**ELLIS (3)**
3:14;7:2;43:3
**else (6)**
23:13;27:15,20;28:2,
15
**e-mail (14)**
19:14,18,20;20:5,11;
21:10,14,16,18,20;
22:3;23:6;29:13;85:12
**e-mailed (1)**
19:9
**e-mailing (1)**
23:11
**e-mails (1)**
20:22
**emerging (1)**
52:2
**employ (1)**
60:25
**employed (2)**
29:6,11
**employee (1)**
57:18
**employees (1)**
48:4
**employment (2)**
59:11,14
**end (6)**
25:2;38:20,21;54:3;
70:25;85:5
**ended (1)**
14:17

**enemies (1)**
24:19,21;29:25;32:3,
4
**Energy (1)**
57:3
**engage (1)**
80:1
**engages (2)**
40:19,25
**ensures (1)**
53:25
**enter (1)**
23:25
**entering (1)**
68:24
**entirety (1)**
34:7
**entities (1)**
17:19
**entity (1)**
17:16
**entry (2)**
47:5;68:17
**Eric (3)**
30:16;45:8,10
**especially (3)**
76:20;77:9,14
**ESQ (4)**
3:7,8,9,18
**essentially (1)**
31:21
**established (1)**
83:1
**estimate (1)**
16:4
**etcetera (4)**
79:11;85:17,25;86:2
**evening (1)**
12:15
**event (1)**
91:25
**everyone's (1)**
49:14
**exact (2)**
30:18;53:13
**exactly (1)**
90:1
**EXAMINATION (1)**
7:20
**examined (1)**
7:14
**example (1)**
88:18
**excellent (1)**
24:13
**Except (3)**
49:17,20;82:22
**excerpt (5)**
36:9,20;37:1,4,8
**exchanging (1)**
20:22
**exclusive (1)**
42:3

IN RE: WESTMORELAND COAL COMPANY, et al. — OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020

executives (3)
41:9,21;42:1
exhibit (11)
8:7,8;19:13,14;
21:10;30:8;36:15,19,
25;37:7;49:9
exist (3)
76:8,12,15
existence (1)
92:4
experience (2)
16:18;70:12
expert (2)
61:14;83:2
expressed (1)
88:23
extent (1)
79:9

**F**

fact (2)
27:11;72:1
facts (1)
50:18
fair (3)
40:17;43:18,25
fall (1)
18:22
familiar (3)
9:6;57:15;59:20
Farr (3)
6:7;7:6;10:24
favorable (2)
70:22,23
fear (7)
69:22;71:5,17;72:2,
2;79:15,18
feed (1)
79:12
feel (1)
79:5
feeling (1)
79:12
feelings (1)
25:3
fees (7)
57:25;58:5,20,22;
62:18;63:16,21
felt (2)
26:2;69:8
few (3)
16:12;57:7;79:1
filing (1)
62:6
filings (1)
67:9
final (4)
51:3;74:14,15,18
finance (1)
70:24
financial (15)
16:24;17:3,8;25:2;

32:16;57:17;64:13,14,
18;65:2,2,7,25;70:14,
18
financially (1)
24:25
find (1)
49:1
finish (1)
89:25
firm (13)
6:19;14:24;42:24;
47:16,21;53:7;54:4;
55:6;80:2;85:9;86:19,
24,25
firms (7)
64:21,22;65:6;66:3,
6;86:3,5
first (9)
8:7;26:15;31:1;37:6;
57:12;62:10;68:17,17;
69:16
Five (4)
17:5;20:8;68:4,6
flag (1)
21:23
flip (1)
36:22
floating (1)
41:5
Focused (1)
75:19
focuses (1)
54:3
focusing (1)
56:10
follow (2)
44:5;84:13
followed (1)
44:8
following (1)
38:8
follows (1)
7:15
follow-up (1)
21:24
footnote (2)
59:4,6
form (84)
15:10,23;22:11,24;
25:13;26:8,24;27:24;
29:9;30:1,3;32:22;33:4;
40:22;41:2;42:6;43:12;
44:3,22,25;45:15;46:3,
8,17;48:6,24;50:4;
51:20;52:10,13,17;
56:1,17;58:7,12,24;
60:17;61:7,12;62:23;
63:7,23;64:8,19,24;
65:9;66:4,13,21;67:1;
68:15,25;69:6,19;70:6,
20;71:7,13;72:6;73:15;
74:1,19;75:16,22;76:1,
6,10;77:19;78:2,23;

79:16;80:7,11,15,24;
81:4;82:18;83:8,12;
84:7;88:13;89:3;90:12;
91:13;92:20
formally (1)
73:14
formation (1)
82:9
formed (1)
81:22
forming (2)
81:2,19
forms (2)
23:9,10
formulate (2)
22:9;52:6
forward (3)
16:10;37:20;75:3
found (5)
23:25;26:9,10;41:18;
43:8
four (3)
62:7;63:13,20
fourth (1)
76:18
frame (1)
50:20
framework (1)
54:6
Fred (5)
6:2;20:17;85:14;
94:7,17
Frederick (1)
21:15
front (1)
50:14
function (3)
53:14,20,22
functions (1)
47:21
further (1)
33:14
future (1)
70:17

**G**

Gallagher (2)
6:7;7:6
Garcia (1)
40:11
gave (6)
31:6;32:6;37:10,16;
45:3;91:7
GAY (2)
3:3;6:19
generally (2)
83:18;88:14
genuinely (1)
26:10
GINZBURG (33)
3:7;6:18,18;7:16,21;
16:11,16;19:12;21:8;

30:3,25;34:8;35:1,8;
36:5;37:3;38:15,24;
46:19;47:2;49:3,17;
81:9,14;88:8;89:6,14;
90:15,21;91:14;92:3,
10,22
given (3)
50:20;79:8;94:13
giving (2)
30:14;40:18
goal (1)
26:16
goes (3)
20:20;34:9;79:14
Good (7)
7:23,24;27:2;46:20;
57:7;78:4,7
gotcha (1)
38:11
grab (1)
20:8
Grauer (2)
6:10,13
great (3)
22:5;26:25;89:8
grew (1)
61:14
group (2)
14:10;69:3
groups (1)
57:18
grow (2)
26:12;86:23
growing (2)
41:18;65:10
guess (2)
38:13;78:6
guidance (1)
17:15
guy (1)
52:21

**H**

half (2)
11:18,25
hand (1)
36:15
handed (3)
19:17;36:25;37:8
hands (1)
58:3
happened (1)
79:24
happy (2)
26:21;27:4
harbor (1)
25:2
hard (2)
24:19;88:17
Harry (2)
57:3;63:24
head (4)

13:7;52:20;53:5,11
heading (2)
56:8;62:5
heads (1)
53:19
hear (2)
41:11;43:1
heard (2)
42:9;79:11
hearing (4)
8:24;9:20,23;10:15
held (2)
6:6;18:25
help (1)
84:9
helping (1)
16:23
hereby (1)
94:7
highlight (2)
76:20,23
highly (3)
78:5;79:22,23
himself (3)
34:25;35:7,9
hiring (3)
60:15,16;80:5
Historically (1)
24:5
Holdings (2)
17:22;18:4
hoped (1)
66:2
hoping (1)
26:11
hours (2)
11:18;22:4
Houston (5)
3:17;8:4;10:4,9,11
human (1)
24:25
hurt (1)
70:15

**I**

identification (6)
8:9;19:16;21:12;
30:9;36:21;49:11
identified (1)
64:21
identifies (5)
62:11,17;64:2,5,13
identify (2)
64:6;65:24
ill (3)
25:3;32:17;70:15
image (1)
40:2
implement (1)
75:21
implicit (1)
49:13

IN RE: WESTMORELAND COAL COMPANY, et al.  CONFIDENTIAL COUNSEL EYES ONLY MATERIAL   FRED CRAWFORD
January 29, 2020

**importance (2)**
63:1,3
**important (4)**
63:11,14;64:6,18
**improper (1)**
40:8
**improve (1)**
16:24
**improvement (1)**
14:6
**improving (1)**
17:8
**Inc (1)**
21:16
**includes (2)**
23:11;92:13
**including (1)**
57:16
**inconsistent (2)**
26:7;39:23
**indicate (1)**
63:17
**individuals (1)**
45:5
**industry (2)**
41:13;61:15
**inform (1)**
82:5
**information (11)**
40:18,24;41:3;43:11;
60:22,23;61:6,9,19;
67:9,12
**in-house (1)**
49:15
**initiated (1)**
47:10
**insight (1)**
25:20
**instance (3)**
63:10,13;88:18
**instructs (1)**
12:25
**intelligence (1)**
68:18
**intend (1)**
10:14
**interactions (1)**
75:9
**interest (7)**
88:21;91:3,10,19;
92:4,7,18
**interested (3)**
23:23;58:9;82:23
**interesting (3)**
24:1;41:19;43:9
**internal (1)**
68:22
**internationally (2)**
15:4,7
**internet (1)**
77:5
**interpret (1)**
71:15

**interpretation (1)**
72:7
**interpreting (1)**
79:20
**into (8)**
16:14;27:5,8;44:2;
47:5;56:16;70:16;
75:15
**introducing (1)**
85:15
**introduction (1)**
65:22
**introductions (2)**
49:14;66:2
**investigate (1)**
44:5
**investigated (1)**
44:9
**involved (10)**
16:2;40:7;44:23;
45:13;56:4;57:5;62:12;
64:5;65:25;70:13
**involves (1)**
16:21
**issued (2)**
8:2;92:8
**item (2)**
58:14,18
**Ivo (3)**
30:16;45:9,11

**J**

**January (2)**
6:8;94:10
**Jay (44)**
9:17,19;11:3,9;
18:11;21:3,15,24;
22:15,17,20;23:2;
27:18,21;28:6,20;
33:23;34:17;35:20;
37:4;45:17;51:12;
52:21,24;53:7,25;54:3,
19;55:10,21;67:19;
68:1;72:20;81:1,10,18;
89:16;90:10,14,16,20,
22;91:3,20
**job (1)**
85:14
**joined (1)**
13:25
**Jordan (1)**
7:8
**JOSHUA (2)**
3:8;6:22
**Journal (3)**
20:13;22:1;27:9
**Journal's (1)**
18:19
**judge (2)**
91:7;92:8
**jump (1)**
37:21

**K**

**Kathryn (1)**
7:18
**keen (1)**
20:19
**keep (1)**
86:20
**kept (1)**
76:2
**key (4)**
22:3;23:6;48:15;
69:22
**kind (2)**
42:16;86:6
**KIRKLAND (3)**
3:14;7:2;43:3
**knew (2)**
51:19;92:1
**knowledge (4)**
61:17;66:8;73:3;
84:18
**Koorenny (2)**
7:18,18
**Kristi (1)**
6:12

**L**

**Lakeview (3)**
21:16;29:11;91:20
**language (3)**
57:20,22;82:25
**large (4)**
63:13,16;64:1;65:13
**last (1)**
10:12
**law (5)**
42:24;64:21,22;65:6;
66:6
**lawsuits (1)**
92:13
**lawyers (2)**
42:18;49:15
**lead (4)**
62:11;64:5,10,21
**leading (1)**
52:23
**leads (3)**
41:9,21,24
**learn (1)**
26:17
**learned (1)**
82:9
**learning (2)**
53:19,22
**least (1)**
77:3
**led (1)**
52:20
**left (2)**
57:1,2

**left-hand (1)**
62:7
**Legal (4)**
6:10,13;9:5;17:16
**less (3)**
63:11,11;70:23
**level (4)**
50:7;86:16;87:8,9
**levels (1)**
53:23
**likely (1)**
28:23
**limited (3)**
61:17;70:12;71:1
**limiting (1)**
92:8
**line (14)**
20:16;31:14;34:12,
19,20;38:21;54:19,24;
55:2;58:14,18;85:3,13;
86:20
**lines (1)**
54:15
**Lisa (7)**
52:25;53:3,5;54:9,
19;55:10,14
**listed (1)**
60:12
**lists (1)**
62:7
**litigation (10)**
44:24;86:17;87:4;
89:16;90:17,25;91:4,
12,21;92:18
**litigations (3)**
89:22;90:3,11
**little (5)**
17:15;37:20;54:17;
61:13;88:21
**LLC (1)**
61:1
**LLP (4)**
3:14;6:7;17:13;18:3
**local (1)**
78:18
**long (1)**
28:8
**longtime (1)**
23:20
**look (7)**
21:13;30:22,24,25;
44:2;49:21;57:1
**looking (1)**
51:24
**looks (2)**
50:6,8
**losers (2)**
24:24;70:14
**losing (2)**
32:15,17
**lost (1)**
25:1
**lot (11)**

9:3,5;24:12;41:5,14,
17;43:17;49:7,19;
78:14;79:5
**Lots (1)**
42:14

**M**

**Main (1)**
3:16
**mainstream (1)**
88:20
**making (9)**
48:16;58:10;63:5;
68:12;72:4,10,21;78:4,
7
**management (12)**
23:22;47:9,12,14;
55:1,5;83:6;84:20;
85:8;87:7,9,11
**managing (3)**
14:5,21,24
**many (3)**
25:7;47:22;55:7
**Mar-Bow (19)**
7:4;9:13,16,20;81:2,
19,21,23;82:1,8,10,14,
19,22;83:4,7;90:24;
91:20;92:25
**Mar-Bow's (1)**
83:15
**MARGOLIN (3)**
3:8;6:22,22
**MARIA (2)**
3:7;6:18
**mark (7)**
8:6;19:12;21:6,8;
30:3;36:5;49:3
**marked (10)**
8:9;19:15,19;21:11,
14;30:9;36:18,20;
49:10;54:14
**market (1)**
24:6
**marketplace (11)**
23:25;41:5;42:11,13;
48:18,20;52:3,7;63:2,
6;82:24
**Marshal (5)**
52:22,24;53:7;54:19;
55:10
**material (1)**
54:1
**matter (7)**
6:3;24:1,3;48:14;
67:23;73:17;91:25
**matters (1)**
57:19
**may (2)**
12:24;85:5
**McKinsey (80)**
3:4;6:19,21,23,25;
9:22,24;12:2;21:25;

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 32 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.   OUTSIDE COUNSEL EYES ONLY MATERIAL                    FRED CRAWFORD
January 29, 2020

23:20,24;24:5;25:6,17;
26:22;29:21,24;31:23;
32:20;39:19;40:7,19,
25;41:8,23;46:2;48:4,
22;56:4,7,8,13;57:4,15;
58:2,10,22;60:6,16,25;
61:22;62:1,11;63:5;
65:5,11;66:20,24;
68:14,19,23;69:3,4,11,
14,17;70:3;71:17,21;
79:3,5,13;80:2,5;
82:23;84:15,22;85:16;
86:4,13,17;87:10;
89:22;90:3,25;91:11,
12,15,22;92:19
**McKinsey's (37)**
  8:25;9:9,13;25:19;
  26:25;39:7,23;40:2;
  44:15;46:7,11,15;47:5;
  48:8;56:11,20;57:25;
  58:5;62:18;66:11;67:6;
  76:24;77:18,22;78:19,
  21;80:9,13,18,22;81:3,
  11,20;83:16,20;87:23;
  88:11
**mean (20)**
  23:8;24:4,22;25:12,
  17;29:17;32:11;41:22;
  42:10,13;45:7;51:19;
  53:21;57:22;70:3;75:2;
  77:7,24;85:25;88:6
**meaning (1)**
  58:20
**means (2)**
  77:5;86:3
**meant (1)**
  59:25
**mechanism (1)**
  48:16
**media (14)**
  76:19,23;77:5,11,12;
  78:18;79:11;83:15,19;
  86:12;88:15,20,20,25
**medium (1)**
  64:1
**meet (8)**
  11:5,8;19:3;20:19;
  22:8,21,25;27:11
**meeting (39)**
  18:20;19:10;20:12;
  21:1,3,25;22:5,10,13,
  22,25;23:1,17;27:8,15,
  21,22;28:11;29:19;
  32:19;33:7,10,15,18,
  22,23;38:5,19;40:14,
  15;50:23;75:24;76:2,
  12;84:20;85:23;86:6,9,
  10
**meetings (5)**
  75:25;76:8,11;83:24;
  87:12
**member (3)**
  28:7;29:3,5

**members (3)**
  25:21;28:25;48:1
**MEMETZ (3)**
  3:9;6:20,20
**memorialize (1)**
  33:10
**memorialized (1)**
  75:6
**memory (3)**
  48:7;74:4;85:22
**mention (1)**
  79:21
**mentioned (2)**
  26:2;70:11
**message (2)**
  20:18;22:9
**messaging (3)**
  22:2;29:15,17
**met (2)**
  11:17;19:6
**mginzburg@selendygaycom (1)**
  3:11
**middle (1)**
  85:13
**might (4)**
  20:7;26:16;38:9;
  40:7
**miles (1)**
  10:4
**minutes (6)**
  20:8;57:7;75:24;
  76:2,12;79:1
**missed (1)**
  7:16
**missing (1)**
  63:18
**Mission (2)**
  57:3;63:25
**mm-hmm (2)**
  13:7;54:23
**model (2)**
  53:24;54:5
**money (3)**
  58:3,10;63:4
**Monisola (1)**
  6:24
**more (10)**
  7:17;16:12,19;17:16;
  32:24;39:4;63:14;
  66:15;83:18;92:15
**most (2)**
  28:24;48:19
**motivation (1)**
  26:17
**move (1)**
  62:4
**much (3)**
  20:18;58:10;63:4
**must (1)**
  13:4

## N

**name (3)**
  6:9;42:22,24
**named (1)**
  52:21
**names (1)**
  47:19
**national (1)**
  78:18
**nature (4)**
  24:18,20,25;40:3
**Naumann (2)**
  30:16;45:11
**necessarily (1)**
  52:13
**need (3)**
  13:16;16:19;17:15
**negative (5)**
  76:21,23;77:9,15;
  79:12
**New (6)**
  3:6,6;14:22;85:6;
  94:3,25
**news (2)**
  70:4;86:16
**next (13)**
  8:24;9:4,7;17:20;
  19:13;22:4;29:1;57:24;
  58:14;62:4;64:2;78:17;
  87:17
**nice (1)**
  85:14
**nod (1)**
  13:7
**None (1)**
  10:13
**nonexecutive (1)**
  73:20
**nor (1)**
  61:14
**Notary (2)**
  7:14;94:25
**noted (1)**
  93:5
**notes (7)**
  33:6,9;67:10;75:8,
  11,14,20
**noteworthy (4)**
  41:19;43:9,10,13
**notice (2)**
  91:6,24
**noticed (1)**
  57:8
**November (2)**
  19:21;21:17
**number (4)**
  48:4;85:1;86:4;
  87:14

## O

**oath (2)**
  31:7;94:9
**object (85)**

12:25;15:10,23;16:7;
22:11,24;25:13;26:8,
24;27:24;29:9;30:1;
32:22;33:4;40:22;41:2;
42:6;43:12;44:3,22,25;
45:15;46:3,8,17;48:6,
24;50:4;51:20;56:1,17;
58:7,12,24;60:17;61:7,
12;62:23;63:7,23;64:8,
19,24;65:9;66:4,13,21;
67:1;68:15,25;69:6,19;
70:6,20;71:7,13;72:6;
73:15;74:1,19;75:16,
22;76:1,6,10;77:19;
78:2,23;79:16;80:7,11,
15,24;81:2,4,19;82:18;
83:8,12;84:7;88:13;
89:2;90:12;91:13;
92:20
**objected (1)**
  9:13
**objective (2)**
  25:20;26:4
**obtaining (1)**
  56:14
**obvious (1)**
  50:22
**odd (2)**
  24:7,10
**odds (5)**
  24:13,16;25:6,11,16
**off (3)**
  46:22;89:9;93:4
**offer (1)**
  41:24
**office (1)**
  14:22
**off-site (2)**
  84:20;85:4
**often (3)**
  10:11;23:7;28:23
**Once (1)**
  22:13
**one (23)**
  7:16;8:14;14:3;
  17:16,19;18:9,14;
  26:17;28:23,24;37:17;
  39:17;44:1;52:4,11;
  65:17;68:6;73:25;75:3;
  76:5;81:9;86:18;92:10
**ones (3)**
  11:24;12:13;55:10
**only (1)**
  36:13
**operating (2)**
  73:18,23
**operational (2)**
  16:22;24:14
**operations (3)**
  15:8;16:25;57:17
**opportunities (3)**
  54:2;63:18;66:7
**opportunity (1)**

65:21
**opposed (1)**
  34:25
**order (4)**
  16:9;66:9;91:7;92:8
**ordered (1)**
  16:9
**organization (1)**
  53:24
**others (2)**
  12:16;53:25
**otherwise (4)**
  20:23;33:10;42:2;
  65:7
**out (10)**
  25:1,22;26:22;27:18;
  28:20;49:1;63:18;69:9;
  72:15;86:20
**outcome (3)**
  32:18;70:23,24
**outcomes (1)**
  32:16
**outside (5)**
  49:15;89:4;90:13;
  91:5,23
**outstanding (2)**
  58:15,16
**over (5)**
  12:1;51:24;81:22;
  82:11,17
**owed (1)**
  58:22
**own (3)**
  22:14;23:16;86:12

## P

**page (35)**
  11:25;19:19;20:17;
  30:12;31:1,9,13;34:2;
  35:10;36:8,8,22;37:7,7,
  18,18,18,18,19,21;
  38:10,10,21;50:14;
  54:14,20,21,22,25;
  55:3,25;56:3;84:5,14;
  85:14
**pages (8)**
  34:4,7;35:3,9;36:11,
  13;37:12;49:20
**paid (1)**
  58:2
**painful (8)**
  68:10,13;71:23;72:5,
  11,21;78:20;79:18
**paragraph (1)**
  20:7
**part (3)**
  17:17;25:4;73:22
**participate (1)**
  24:8;45:21,24;46:5
**participated (2)**
  46:10,14
**participating (1)**

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 33 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.                 CONFIDENTIAL - COUNSEL EYES ONLY MATERIAL                 FRED CRAWFORD
January 29, 2020

26:6
**particular (2)**
    39:13;44:2
**partner (1)**
    62:11
**partners (12)**
    62:12;68:19,23;69:3,
    11,14,17;70:3;71:21,
    21;79:5,13
**parts (1)**
    73:21
**pass (2)**
    22:15,18
**past (3)**
    15:16,19;16:15
**path (1)**
    54:8
**pay (1)**
    41:14
**pending (2)**
    8:3;13:17
**people (15)**
    39:8;41:24;42:14,16,
    16;47:15,19,22;54:2,7;
    55:5,7;70:24;71:2;
    88:16
**perceived (1)**
    25:7
**percent (3)**
    16:3;17:3,5
**perception (1)**
    25:23
**performance (1)**
    14:6
**performed (1)**
    57:13
**period (1)**
    58:4
**permissible (1)**
    89:4
**person (10)**
    7:17;23:12,13;24:11;
    28:9;39:17;42:1,22;
    52:23;59:11
**personally (1)**
    54:3;87:21
**personnel (4)**
    60:15,16;66:25;80:5
**person's (1)**
    59:14
**perspective (1)**
    23:24
**petition (4)**
    58:4,15,23;64:3
**pick (3)**
    22:2;28:9;29:14
**planning (1)**
    53:14
**plant (1)**
    78:20
**Planting (2)**
    78:17;79:17
**Pleasant (1)**

31:19
**please (3)**
    7:11;13:10;36:22
**Plimpton (1)**
    6:25
**PLLC (1)**
    3:3
**pm (7)**
    6:15;46:23;47:1;
    89:10,13;93:4,5
**point (8)**
    36:13;57:7,13,24;
    58:21;68:18;78:4;
    79:21
**points (2)**
    22:4;23:6
**position (10)**
    14:17;29:2;43:14;
    53:3,10,15,18;54:9;
    79:4;88:24
**positions (1)**
    82:20
**possession (1)**
    59:13
**possible (5)**
    25:8;71:24;72:5,11,
    22
**post (1)**
    62:6
**posting (1)**
    77:5
**potential (2)**
    60:11;76:18
**potentially (1)**
    90:15
**Powell (108)**
    7:5,5;10:25;15:10,
    23;16:6,12;22:11,24;
    25:13;26:8,24;27:24;
    29:9;30:1,24;32:22;
    33:4;34:6,23;35:4,11;
    36:24;37:23;38:12,20;
    40:22;41:2;42:6;43:12;
    44:3,22,25;45:15;46:3,
    8,17,21;48:6,24;49:12,
    18;50:4;51:20;54:20;
    56:1,17;58:7,12,24;
    60:17;61:7,12;62:23;
    63:7,23;64:8,19,24;
    65:9;66:4,13,21;67:1;
    68:15,25;69:6,19;70:6,
    20;71:7,13;72:6;73:15;
    74:1,19;75:16,22;76:1,
    6,10;77:19;78:2,23;
    79:16;80:7,11,15,24;
    81:4,12,15;82:18;83:8,
    12;84:7;88:6,13;89:2,
    8;90:12,18;91:5,13,23;
    92:6,20;93:2
**practice (2)**
    14:6;15:2
**practiced (1)**
    15:12

**practices (28)**
    32:21,25;40:20;41:1;
    44:16;46:1,7,12,16;
    66:12,20;77:18,22;
    80:10,14,18,22;81:3,
    20;83:16,20;87:24;
    88:1,12;89:23;90:4;
    92:12,14
**Practicing (1)**
    13:21
**practitioner (1)**
    65:18
**prebankruptcy (8)**
    56:9,11,15,20;57:9,
    14,25;60:8
**preference (1)**
    35:5
**preparation (5)**
    12:11;49:25;51:6;
    55:17,22
**prepare (2)**
    11:15;51:15
**prepared (5)**
    50:15,23;51:10,13;
    52:18
**presence (3)**
    26:13;48:9;63:5
**present (2)**
    83:3,6
**presentation (3)**
    55:25;73:11;80:1
**presented (6)**
    75:2;80:19,23;83:11;
    84:21;86:8
**press (1)**
    87:9
**pressed (1)**
    88:17
**prior (3)**
    58:4,15,22
**privilege (2)**
    91:25;92:7
**privileged (1)**
    92:5
**probably (3)**
    69:7;86:2,19
**procedure (2)**
    73:18,23
**proceed (1)**
    74:9
**produced (1)**
    49:5
**productive (1)**
    28:11
**professional (2)**
    9:1,9
**proper (1)**
    92:2
**proposal (1)**
    76:22
**protective (1)**
    91:6
**provide (2)**

41:24;65:22
**provided (2)**
    36:16;90:9
**provides (1)**
    59:10
**providing (3)**
    54:1;90:16,24
**Public (5)**
    7:14;61:3,6,11;
    67:13;68:10,13;70:4;
    72:21;78:20;79:17;
    80:1;94:25
**publicity (6)**
    69:22;71:17;72:2;
    79:15,18;80:2
**publicly (1)**
    61:18
**pulled (1)**
    26:22
**purpose (4)**
    27:7;48:12;51:22;
    52:14
**pursuant (2)**
    8:1,20
**pursue (3)**
    72:16,25;74:25
**pursuing (2)**
    68:20;86:12
**pursuit (1)**
    83:15
**put (2)**
    75:15;90:18

## Q

**question's (1)**
    60:18
**quite (2)**
    82:21,21

## R

**ran (1)**
    47:19
**range (1)**
    43:14
**rapidly (1)**
    41:18
**reach (1)**
    28:20
**reached (2)**
    27:18;69:9
**reaching (1)**
    71:8
**reactions (1)**
    26:19
**read (27)**
    12:10,14,16,20;34:3,
    6,24;35:1,6,7,9,12,23;
    36:13;37:11;38:13,14,
    15,20,22,25;55:3;69:7;
    77:1;79:10;82:19;94:8
**reading (6)**

19:25;25:16;30:21;
    45:4;69:11,13
**really (4)**
    23:23;25:6,9;79:1
**reason (6)**
    13:22;20:2;31:25;
    51:2;56:10;69:22
**reasons (2)**
    50:22;78:15
**recall (73)**
    19:11;10:25;21:5;
    22:17,19;23:4;27:19;
    28:14,15,22;30:14,18;
    33:8,12;39:12,13,14,
    20,25;40:1,5,9,13,14,
    18,21,23;43:23,24;
    44:4,7,10;45:23;46:4,9,
    13,18;47:7;52:18,20;
    55:16,20;56:19,23;
    59:24;61:21,25;67:15,
    18,21;69:15,20;72:9,
    13,20;73:4,9,10;74:8,
    21,23;75:13;77:25;
    78:9;79:25;82:3;83:23;
    84:1,3;86:7,18;87:20;
    88:9
**receivables (3)**
    58:14,16,20
**receive (2)**
    8:14,16
**received (1)**
    8:12
**Recess (2)**
    46:24;89:11
**recognize (5)**
    19:24,25;21:18;
    49:22,23
**recognized (2)**
    15:4,7
**recollection (12)**
    11:22;12:8;33:18;
    34:14;35:15;37:13;
    38:17;39:1;50:10;
    55:13;74:20;85:18
**recollections (1)**
    33:14
**recommend (1)**
    68:4
**recommended (1)**
    68:7
**record (13)**
    6:14,17;7:17;34:25;
    35:2;46:23;47:1;49:13;
    89:10,13;93:4;94:11,
    12
**Recovery (1)**
    60:25
**recruiting (3)**
    39:8;48:5;66:25
**redaction (1)**
    50:7
**redactions (2)**
    49:7,20

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 34 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.    OUTSIDE COUNSEL EYES ONLY MATERIAL    FRED CRAWFORD
January 29, 2020

**redo (1)**
90:1
**refer (3)**
58:21;68:12,22
**reference (1)**
57:21
**References (1)**
59:4
**referral (9)**
44:16;46:1,16;66:12,
19;77:22;80:14,22;
88:1
**referrals (5)**
33:1;40:20;41:1;
65:6;66:10
**referred (2)**
12:4;65:17
**referring (14)**
17:1;45:1;50:2;57:9;
59:1;71:11,20;72:1;
77:10,14,16;78:14,25;
79:8
**refers (3)**
59:22;71:10;85:12
**reflect (1)**
76:3
**refresh (7)**
11:22;33:18;34:13;
35:15;39:1;55:13;
85:18
**refreshed (3)**
12:7;35:23;50:10
**refreshes (2)**
37:12;38:16
**regarding (1)**
78:18
**register (1)**
29:20
**registered (1)**
31:22
**regular (1)**
48:14
**regularly (1)**
10:8
**reiterate (2)**
74:24;79:21
**relate (5)**
71:5;77:17,21;80:9,
13
**related (5)**
57:19;89:22;90:3;
91:11,21
**relations (1)**
80:1
**relationship (1)**
56:15
**relative (4)**
63:1,3,9;71:3
**relevance (1)**
59:17
**relevant (9)**
58:5,18;62:15,22;
65:24;66:5;84:5,9,10

**relied (1)**
28:23
**relief (4)**
59:3,18,22,25
**remember (7)**
14:3;30:19;31:16;
36:2;51:19;52:23;
86:10
**rephrase (1)**
15:5
**reported (3)**
34:14;35:16;47:15
**reporter (3)**
6:12;7:11;13:6
**reports (1)**
48:15
**representation (1)**
59:14
**representatives (5)**
11:9;90:23;91:9,18;
92:17
**represented (1)**
10:20
**reputation (2)**
24:14,17
**request (2)**
19:10;28:6
**requesting (1)**
20:12
**reside (2)**
10:3,6
**resources (3)**
90:9,16,24
**respect (5)**
17:2;40:20;41:1;
58:6,17
**respected (1)**
28:24
**respond (1)**
84:8
**responded (1)**
20:15
**responding (1)**
72:4
**response (17)**
12:4;22:19;47:5;
48:3,3,8,13,22;50:3,11;
51:13,16;75:12;76:4;
84:21;85:20;86:8
**responses (2)**
68:5,7
**responsibilities (1)**
43:15
**responsible (1)**
55:6
**rest (1)**
17:6
**restate (3)**
13:11;69:2;81:16
**restructuring (33)**
15:8,13,18,22;16:1,4,
21,23;23:21;24:6;
25:21;26:22;27:5;32:1,

14;39:22;47:6;48:10;
53:6;54:12;56:5;65:12;
68:13,20,24;69:4;
76:24;78:19,22;79:2,
10;82:24;83:1
**retain (1)**
60:24
**retained (2)**
60:7;61:2
**retention (6)**
8:25;9:9,14;81:11;
92:12,14
**review (1)**
11:20
**reviewed (1)**
31:10
**right (18)**
10:6;14:16;19:10;
27:7;30:7;31:11;38:2,
23;42:9;45:10;49:15;
53:8;54:1,1;62:20;
68:20;73:10;90:21
**Roland (4)**
85:16,24;86:1,4
**role (1)**
79:9
**roles (2)**
78:19,21
**RTS (3)**
3:4;48:23;62:11
**rumor (4)**
41:13,23;42:9,11
**rumors (10)**
41:5,7,11,15;43:6,19,
22;44:2,6,9
**run (1)**
53:13
**running (2)**
41:16;55:6

## S

**sage (1)**
28:9
**Salaam (2)**
6:24,24
**same (12)**
18:6,11;20:17;36:16;
37:8,12;53:15;62:7;
65:1;66:1;69:8;79:5
**sat (4)**
17:12,14,18;18:7
**saying (3)**
9:5;40:1;52:10
**scale (1)**
63:18
**scanning (1)**
51:1
**scheduled (1)**
8:24
**scope (5)**
16:8;89:4;90:13;
91:6,24

**second (8)**
19:19;20:6;21:7;
37:17;62:17;69:21;
72:3;79:14
**section (4)**
59:4,7,12,22
**sections (2)**
59:8,20
**sector (1)**
24:9
**seeing (1)**
49:23
**seemed (5)**
24:7,11;25:5,8,22
**SELENDY (2)**
3:3;6:19
**send (1)**
20:3
**senior (2)**
14:23;41:25
**sense (2)**
16:17;47:24
**sent (1)**
21:20
**sentence (3)**
71:16;89:25;90:1
**September (2)**
30:17;31:3
**serious (1)**
44:19
**serve (2)**
70:16;86:23
**services (2)**
58:2;61:1;62:6
**sessions (1)**
73:20
**settlement (6)**
44:23;45:13,19,22;
71:1,2
**several (1)**
86:3
**shake (1)**
13:7
**share (2)**
72:7;74:6
**shared (2)**
26:16;31:25
**Shields (3)**
28:3,4;86:25
**Shields's (1)**
29:2
**shop (1)**
40:12
**short (3)**
25:2;46:19;89:7
**shortly (1)**
14:11
**side (8)**
25:4;32:14,15,17,18;
49:17;62:7;81:17
**sight (1)**
86:20
**Signed (1)**

94:20
**Similar (1)**
28:6
**sit (1)**
18:12
**sites (1)**
77:6
**situation (3)**
24:24;25:5;32:1
**situations (2)**
41:10,22
**size (1)**
62:24;63:9
**Skadden (1)**
43:1
**slide (37)**
51:4;55:24;56:24;
60:2,5,12,14,18,18,21;
61:5,23;62:2,4,8;66:11,
18,23;67:2,3,5,8,12,16,
19,22,23;68:3,4,6,9,22;
69:12,13;75:19;80:4;
83:11
**small (2)**
63:10,22
**smaller (1)**
63:25
**smart (1)**
27:3
**social (5)**
76:19,19,22;77:11,
12
**solely (1)**
59:13
**sometime (2)**
18:22;20:8
**sometimes (4)**
70:22,23,24;71:1;
74:14
**somewhat (1)**
61:17
**sorry (5)**
15:5;44:13;61:24;
73:8;91:14
**sound (2)**
50:17;81:6
**sourced (4)**
60:22,23;61:6;67:9
**sources (2)**
61:11;67:13
**Southern (1)**
6:5
**space (11)**
16:5;24:6;26:7,13,
23;56:5;63:19;65:12,
18;85:16;86:2
**spaces (1)**
27:2
**speak (5)**
27:17,20;28:2;43:5;
87:17
**speaking (2)**
27:19;39:2

Case 18-35672   Document 2999-3   Filed in TXSB on 06/10/20   Page 35 of 36
IN RE: WESTMORELAND COAL COMPANY, et al.   OUTSIDE COUNSEL EYES ONLY MATERIAL   FRED CRAWFORD
January 29, 2020

**speaks (1)**
64:4
**specialist (2)**
6:11;15:9
**specialization (1)**
15:1
**specialize (1)**
15:25
**specialized (1)**
15:21
**specific (8)**
16:20;32:24;39:5;
41:3;43:10;66:15;77:7;
88:18
**spend (1)**
43:16
**spending (1)**
66:9
**spent (1)**
24:12
**spoke (6)**
21:2;29:19;33:23;
35:24;37:14;38:17
**spoken (1)**
44:15
**SS (1)**
94:4
**stamped (2)**
30:13;49:6
**stand (2)**
25:24;26:1
**standard (5)**
51:25;52:9,17;73:18,
22
**stands (1)**
25:19
**Start (1)**
38:12
**Starting (3)**
37:7;56:9;85:3
**starts (2)**
37:18;56:7
**state (3)**
6:16;94:3,25
**stated (1)**
32:13
**States (1)**
6:4
**stemming (1)**
56:20
**steps (1)**
79:25
**Sternfels (4)**
87:15,19,22;88:5
**stick (1)**
25:2
**still (5)**
26:10;53:7;68:19;
86:25;87:2
**Stock (2)**
57:19,21
**stood (1)**
26:4

**stop (1)**
15:19
**stopped (1)**
76:17
**stories (3)**
78:17,21;79:17
**strategic (1)**
53:14
**strategies (3)**
75:12,15;76:4
**strategist (2)**
15:5,8
**strategy (25)**
23:22;24:2,14;25:20;
26:4;52:6,21;53:11;
72:16;73:1,1,5,25;
74:17,22,25;75:1,19,
21;76:23;83:10;84:5,
14,22;85:15
**Street (5)**
3:16;18:19;20:13;
21:25;27:9
**strengthening (1)**
52:3
**strong (1)**
65:13
**structure (3)**
57:17;70:25;82:20
**structures (1)**
57:18
**struggle (1)**
47:18
**stuff (1)**
9:5
**subject (2)**
21:23;67:23
**subjects (3)**
28:10,13;29:18
**subpoena (6)**
8:1,6,8,11,17,21
**subscribed (1)**
94:20
**subset (1)**
47:25
**substance (1)**
28:5
**substantiate (1)**
43:19
**substantive (1)**
73:17
**suggest (2)**
40:19,25
**suggests (2)**
68:19;69:2
**Sunday (1)**
12:15
**Support (3)**
6:10,13;52:22
**sure (14)**
14:12,15,20;18:8;
30:2,21;34:24;46:21;
48:16;58:13,13;61:16;
81:5;82:22

**surprised (1)**
72:17
**surrounding (1)**
83:20
**swear (1)**
7:11
**switch (1)**
18:7
**sworn (1)**
7:14
**sync (1)**
25:23

## T

**Taft (1)**
7:4
**talk (2)**
38:4;60:14
**talked (3)**
31:21;79:2;86:3
**talking (2)**
42:14;45:8
**talks (2)**
54:18;57:24
**tape (2)**
46:25;89:12
**tarnished (1)**
40:3
**team (3)**
47:10,12,14
**telling (1)**
74:2
**tenure (2)**
17:11;73:19
**terms (3)**
28:12;32:15;90:19
**testified (2)**
7:15;50:11
**testify (4)**
9:20,23,25;10:14
**testimony (4)**
13:23;32:6;94:9,12
**Texas (5)**
3:17;6:6;8:4;9:4,7
**texting (1)**
23:11
**thanks (1)**
20:17
**therefore (1)**
63:11
**third (2)**
71:22;76:17
**Thompson (2)**
30:16;45:10
**though (2)**
8:19;51:10
**thoughts (2)**
74:6;78:24
**threat (1)**
85:15
**three (3)**
34:9;35:3;81:7

**Thursday (1)**
31:3
**times (1)**
74:15
**tip (1)**
74:2
**title (1)**
53:13
**today (20)**
6:12;7:23;8:1;10:21;
13:23;15:2,14;16:10;
18:2;31:11;33:20;
50:19;53:8,16,18;
54:10;84:6,11,17;87:1
**Todd (1)**
7:3
**told (2)**
40:6;86:11
**top (7)**
34:22;35:9;36:8;
54:3;56:7;68:4,9
**topic (4)**
39:13;69:16;74:13;
75:10
**topics (7)**
16:8;81:7,9;89:5;
90:13;92:9,10
**towards (2)**
25:3;32:17
**trading (2)**
41:8,21
**transaction (1)**
25:5
**transcript (10)**
30:5,9,12;36:10,16,
20,23;84:25;94:8,10
**transcripts (1)**
12:11
**Transformation (1)**
60:25
**true (2)**
94:11,13
**truthful (2)**
13:23;32:9
**try (5)**
13:6;66:10;86:20,22;
92:15
**trying (3)**
35:5;63:4;71:15
**Tuesday (1)**
37:5
**turn (9)**
19:18;30:11;31:9;
34:1;54:13;55:24;68:3;
85:2,11
**turnaround (10)**
16:20,22;17:7;32:1;
41:10,22;53:5;54:11;
61:12;86:2
**two (12)**
11:18,18,25;16:25;
17:25;26:19;37:17;
45:5;52:5;78:24;79:8,9

**Type (2)**
57:13;75:17
**typical (1)**
74:5
**typically (3)**
32:13;75:8,11

## U

**ultimate (1)**
74:12
**unbiased (1)**
26:4
**uncharacteristic (3)**
72:18,25;74:24
**unclear (3)**
36:25;77:4,8
**under (5)**
31:7;59:9,12;67:10;
94:9
**understood (1)**
48:17
**undertaking (1)**
81:24
**unethical (8)**
32:20,25;40:8,19,25;
44:19;46:1;66:19
**Unfortunately (1)**
74:3
**unit (2)**
53:6;54:12
**United (1)**
6:4
**units (1)**
47:20
**unless (1)**
12:25
**unlikely (3)**
78:5;79:22,23
**unusual (1)**
25:9
**up (10)**
36:6;41:20;44:5,9;
53:19;54:17,25;61:15;
70:25;86:22
**upon (2)**
59:8;75:17
**use (1)**
82:25
**used (1)**
52:11
**usually (2)**
24:23;88:19

## V

**Venturini (1)**
6:9
**version (1)**
51:3
**versus (2)**
30:16;47:13
**via (1)**

IN RE: WESTMORELAND COAL COMPANY, et al.

OUTSIDE COUNSEL EYES ONLY MATERIAL

FRED CRAWFORD
January 29, 2020

23:8
**vice (1)**
  14:23
**video (1)**
  6:11
**VIDEOGRAPHER (7)**
  6:1;7:10;46:22,25;
  89:9,12;93:3
**videotaped (1)**
  6:2
**view (4)**
  27:2;28:8;43:16;
  60:10
**viewed (1)**
  27:2
**visibility (1)**
  72:3
**visible (8)**
  69:24;70:2;71:6,11,
  19,23;72:4,10
**voiced (1)**
  31:24
**vote (3)**
  73:7,14,16
**voted (1)**
  73:5
**voting (1)**
  74:8

**W**

**Wall (6)**
  7:8,8;18:19;20:12;
  21:25;27:9
**Washington (1)**
  18:25
**way (15)**
  31:10;62:25;65:17,
  19,20;66:8,14;69:8;
  74:5;75:3;77:4,17,21;
  78:13;79:6
**week (3)**
  8:24;9:4,7
**Wes (3)**
  7:5;10:24;11:17
**Westmoreland (6)**
  6:3;8:3;9:1,10;
  12:21;89:16
**WH00000457 (2)**
  19:15,20
**WH143 (1)**
  30:13
**WH455 (2)**
  21:11,14
**What's (4)**
  53:21;54:5;70:8;
  71:24
**whole (1)**
  35:2
**Wickersham (1)**
  7:4
**widespread (1)**
  41:12

**willing (1)**
  26:18
**Willkie (3)**
  6:7;7:5;10:24
**win (2)**
  65:17,19
**winner (1)**
  70:21
**winners (4)**
  24:24;70:14,14,18
**winning (4)**
  32:14;65:14,15,16
**wise (1)**
  28:8
**within (3)**
  10:3;16:7;81:7
**witness (4)**
  7:7,9,11,13
**WLB (1)**
  3:15
**wondering (1)**
  20:7
**word (1)**
  82:22
**work (28)**
  15:13,18;16:2,3,14,
  21;17:4,6;24:12,18,20;
  25:7;41:25;51:6;52:25;
  55:9;56:3,9,11,20;
  57:13;58:11;60:8;
  61:23;62:2;63:18;
  76:20,24
**worked (4)**
  55:14;64:23;65:3;
  66:1
**working (3)**
  69:22;71:17;79:15
**world (2)**
  23:21,23
**worse (1)**
  71:3
**written (2)**
  77:3;78:13
**WSJ (1)**
  22:1

**Y**

**year (2)**
  10:12;14:12
**York (6)**
  3:6,6;14:22;85:7;
  94:3,25

**1**

**1 (4)**
  8:8;49:6,7,10
**1:03 (1)**
  6:15
**1:54 (1)**
  46:23
**10 (4)**

49:20;62:4;67:2,3
**100 (7)**
  10:4;39:18;54:15,21,
  22,25;55:3
**101 (3)**
  38:3,4,10
**10104 (1)**
  3:6
**10114 (2)**
  59:5,8
**102 (6)**
  36:11,13,22;37:8,21,
  25
**104 (1)**
  36:14
**105 (1)**
  38:21
**109 (1)**
  36:12
**11 (3)**
  16:21;48:9;59:9
**1107b (2)**
  59:5,7
**12 (3)**
  22:4;37:6;47:24
**1290 (1)**
  3:5
**13 (3)**
  47:24;55:8,9
**134 (1)**
  36:12
**137 (1)**
  36:12
**149 (3)**
  30:12;31:9,13
**15 (7)**
  19:21;49:20;68:3;
  75:19;83:11;84:5,14
**151 (5)**
  34:2,3,4;35:9;36:8
**152 (6)**
  34:4,12,19,20;35:9,
  13
**153 (4)**
  34:3,4,22;35:10
**16 (2)**
  15:20;54:15
**167 (1)**
  85:2
**172 (1)**
  85:11
**18 (3)**
  21:17;34:3;54:19
**18-35672 (1)**
  6:4
**19 (2)**
  49:6;54:15

**2**

**2 (3)**
  19:13,14;46:25
**2:06 (1)**

47:1
**20 (4)**
  38:12;49:8,10;85:3
**2003 (1)**
  14:1
**2004 (1)**
  14:1
**2005 (1)**
  14:10
**2008 (1)**
  14:13
**2009 (1)**
  58:3
**2013 (11)**
  18:18,18,23;19:22;
  21:17;44:14;48:21;
  50:15;76:9,13;85:5
**2014 (7)**
  12:15;30:17;31:3;
  37:6;87:15,23;88:5
**2015 (5)**
  14:18;15:20;87:15,
  23;88:5
**2016 (1)**
  14:19
**2020 (3)**
  6:8;94:10,22
**212.390.9000 (1)**
  3:10
**23 (1)**
  36:8
**25 (3)**
  34:12,20;38:21
**29 (2)**
  6:8;94:10

**3**

**3 (4)**
  21:9,10;72:10;89:12
**3:09 (1)**
  89:10
**3:23 (1)**
  89:13
**3:27 (2)**
  93:4,5
**327 (1)**
  59:12
**327a (2)**
  59:4,8

**4**

**4 (8)**
  30:6,8,17;31:3,14;
  54:14;84:25;85:1

**5**

**5 (2)**
  36:18,19

**6**

**6 (7)**
  34:3,19;37:18;49:4,
  9;55:2;85:13
**609 (1)**
  3:16

**7**

**7 (1)**
  37:18
**713.836.3531 (1)**
  3:19
**77002 (1)**
  3:17

**8**

**8 (1)**
  37:18

**9**

**9 (10)**
  37:19;49:20;55:24,
  25;56:3,24;60:12,18,
  18;62:8
**90-day (1)**
  58:4